## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AUXIN SOLAR, INC., AND CONCEPT CLEAN ENERGY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES; UNITED STATES DEPARTMENT OF COMMERNCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Court. No. 23-00274

**Non-Confidential Version**

Business Proprietary Information Removed from Brackets at Page 11 and in Exhibits 6 & 7.

## <u>COMPLAINT</u>

Crystalline silicon photovoltaic ("CSPV") modules convert sunlight into electricity. Generating electricity using the sun's rays instead of fossil fuels eliminates carbon emissions. 130 countries, including the United States, but not the People's Republic of China (the "PRC"), committed to tripling the world's installed renewable energy generation capacity by 2030. This "boom" for solar manufacturing comes at a time when very few American solar manufacturers remain standing. Nearly all of America's solar manufacturing base has been gutted by unfair Chinese trade practices — ranging from intellectual property theft to massive state-sponsored industrial subsidization to predatory pricing. Having found that Chinese solar producers also evade U.S. trade measures using third country export platforms, the Biden Administration nonetheless turned its back on American solar manufacturing workers. It failed to follow established law and instead provided a tariff free holiday exclusive to Chinese-linked trade cheats. When a bicameral, bipartisan Congress rejected the Biden Administration's tariff free

holiday, President Biden vetoed Congress' actions, further standing with Chinese manufacturers of solar panels and against the beleaguered and injured domestic industry.

Putting aside the questionable policy choice of rewarding the Chinese government with unfettered U.S. market access to the detriment of existing U.S. manufacturers and new entrants that are trying to resuscitate a U.S. CSPV manufacturing base, there is no legal basis for this tariff holiday. The ill begotten tariff holiday precipitated a lawless CSPV cell and module marketplace characterized now by massive and sustained waves of cheap below-cost CSPV cells and modules from Southeast Asia made primarily from components originating in the PRC. Importers are stockpiling these dumped imports to continue to undermine America's clean energy manufacturing base and erode the United States' national security objectives. Current import volumes are at record levels.

Plaintiffs, Auxin Solar, Inc. ("Auxin Solar") and Concept Clean Energy, Inc. ("CCE") (collectively "Solar Plaintiffs"), file this complaint to contest the final rule promulgated by the United States Department of Commerce ("Commerce") under 19 C.F.R. Part 362 suspending the collection of antidumping and countervailing duties on entries of CSPV cells and modules found to be circumventing the antidumping and countervailing duty orders covering CSPV cells and modules from the PRC. *See Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Sept. 16, 2022) ("*Final Solar Duty Holiday Rule*").

By and through their attorneys, Solar Plaintiffs allege and state as follows:

NON-CONFIDENTIAL VERSION

## JURISDICTION

1.      Solar Plaintiffs bring this action pursuant to the Administrative Procedure Act and Declaratory Judgment Act to contest Commerce's *Final Solar Duty Holiday Rule* and the consequent non-collection antidumping and countervailing duty cash deposits and failure to suspend liquidation on products determined to be circumventing the antidumping and countervailing duty orders concerning CSPV cells and modules from the People's Republic of China.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dec. 7, 2012) ("*CSPV from the PRC AD Order*"); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017 (Dec. 7, 2012) ("*CSPV from the PRC CVD Order*").

2.      The U.S. Court of International Trade (this "Court" or "USCIT") has subject matter jurisdiction over this action by operation of 28 U.S.C. § 1581(i)(1)(B), which confers upon this Court exclusive jurisdiction over civil actions commenced against the United States, its agencies, or its officers arising out of any U.S. law providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  In the alternative, this Court possesses subject matter jurisdiction over this action by operation of 28 U.S.C. § 1581(i)(1)(D), which confers upon the Court exclusive jurisdiction over civil actions commenced against the United States, its agencies, or its officers concerning the "administration and enforcement with respect to," *inter alia*, any U.S. law providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."

NON-CONFIDENTIAL VERSION

3.      As of the date Solar Plaintiffs initiated this action before this Court, circumvention inquiries concerning CSPV cells or modules completed in Cambodia, Malaysia, Thailand, or Vietnam using parts and components from the People's Republic of China have already yielded affirmative, countrywide final determinations with respect to circumvention occurring via all four countries.  *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419, 57,419 (Aug. 23, 2023) ("*Final Affirmative Determinations of Circumvention*").  For the Court's awareness, Solar Plaintiffs' action does not challenge the factual findings or legal conclusions underlying Commerce's *Final Affirmative Determinations of Circumvention*.  Put differently, this action does not challenge Commerce's affirmative determinations that circumvention is in fact occurring.[1]  As such, a cause of action does not lie under 19 U.S.C. § 1516a, and 28 U.S.C. § 1581(c) does not provide an alternative jurisdictional basis for this action.

4.      To the extent that Solar Plaintiffs' action challenging Commerce's *Final Solar Duty Holiday Rule* implicates the circumvention inquiries, such implication is limited to the enforcement of Commerce's *Final Affirmative Determinations of Circumvention*.  As such, as a final alternative, this Court may consider that it possesses jurisdiction over this action by operation of 28 U.S.C. § 1581(i)(1)(D)'s conferral of exclusive jurisdiction upon this Court over civil actions commenced against the United States, its agencies, or its officers concerning the

---

[1] Separate actions that contest certain aspects of Commerce's *Final Affirmative Determinations of Circumvention* have been initiated under this Court's 28 U.S.C. § 1581(c) jurisdictional provision.  *See, e.g.*, *Auxin Solar, Inc. v. United States*, USCIT Ct. Nos. 23-00223; *Auxin Solar, Inc. v. United States*, USCIT Ct. No. 23-00224; *Auxin Solar, Inc. v. United States*, USCIT Ct. No. 23-00225; *Auxin Solar, Inc. v. United States*, USCIT Ct. No. 23-00226.

NON-CONFIDENTIAL VERSION

"administration and enforcement with respect to," *inter alia*, matters referred to in 28 U.S.C. § 1581(c), which include actions challenging "factual findings or legal conclusions upon which" a circumvention determination is based.  *See* 28 U.S.C. § 1581(c); 19 U.S.C. §§ 1516a(a)(2)(A), 1516a(a)(2)(B)(vi).

## PARTIES

5.    Plaintiff Auxin Solar is a U.S.-headquartered and U.S.-operated manufacturer of CSPV modules.  **Exhibit 1-A**.  Auxin Solar filed the request for an anti-circumvention ruling pursuant to 19 U.S.C. § 1677j that led Commerce to initiate the circumvention inquiries concerning CSPV cells and modules completed in Cambodia, Malaysia, Thailand, or Vietnam using parts and components from the People's Republic of China.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 19,071, 19,071 (Apr. 1, 2022) ("Notice of Circumvention Inquiries Initiation").

6.    Plaintiff CCE is a U.S.-headquartered and U.S.-operated designer of solar structures, including PowerShingle® and Solar Tub®, that incorporate CSPV modules manufactured in the United States.  CCE has designed its solar structures to operate on the already-built environment, to avoid the expense and logistical complications associated with long transmission distances and the connection of utility-scale projects to the existing electrical grid.  **Exhibit 1-B**.

7.    Defendant United States of America is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581.

NON-CONFIDENTIAL VERSION

8.     Defendant United States Department of Commerce is the agency that promulgated the challenged *Final Solar Duty Holiday Rule*.  Commerce is, moreover, the agency charged with instructing U.S. Customs and Border Protection ("CBP") to suspend liquidation and collect cash deposits of estimated duties on entries of products subject to affirmative preliminary and/or final circumvention findings.  *See* 19 C.F.R. §§ 351.226(l)(2)-(3)

9.     Defendant Gina M. Raimondo currently holds the position of Secretary of Commerce.  In this capacity, she made numerous decisions regarding the challenged regulation, which was signed by Lisa W. Wang, the Assistant Secretary for Enforcement and Compliance, who is a subordinate of Secretary Raimondo. *See Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,886.

10.     Defendant CBP is the agency that collects duties on imports and determines whether or not imported products are subject to cash deposit requirements and/or the suspension of liquidation.

11.     Defendant Troy A. Miller is the Acting Commissioner of CBP.  In this capacity, he oversees CBP's suspension of liquidation and collection of duties and estimated duties associated with, *inter alia*, imported products subject to antidumping and countervailing duty orders, including those that have been found to circumvent antidumping and countervailing duty orders.

## STANDING

12.     Solar Plaintiffs have standing to sue because each is "adversely affected or aggrieved by agency action within the meaning of" the APA.  5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be

NON-CONFIDENTIAL VERSION

commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Below, Solar Plaintiffs outline the adverse effects of Commerce's *Final Solar Duty Holiday Rule*.

13. CSPV cells and modules found to be circumventing the antidumping and countervailing duty orders covering CSPV cells and modules from the People's Republic of China are within the scope of those orders and are thus subject to antidumping and countervailing duties. *See* 19 U.S.C. § 1677j(b). Auxin Solar petitioned Commerce as a domestic "interested party" within the meaning of 19 U.S.C. § 1677(9)(C) to initiate circumvention inquiries with respect to CSPV cells and modules assembled in Malaysia, Thailand, Vietnam, and Cambodia using parts and components from the People's Republic of China. *See* Petition for Anti-Circumvention Ruling (**Exhibit 2**); 19 C.F.R. § 351.226(c)(1) ("An interested party may submit a request for a circumvention inquiry…"). Commerce thereafter initiated country-wide circumvention inquiries into CSPV cells and modules assembled in Malaysia, Thailand, Vietnam, and Cambodia using parts and components from the People's Republic of China. *See Notice of Circumvention Inquiries Initiation*, 87 Fed. Reg. at 19,071.

14. Shortly after initiation of these inquiries, Commerce initiated a separate rulemaking action, proposing to introduce new regulations that would specifically prevent the suspension of liquidation and assessment of antidumping or countervailing duties on CSPV cells or modules imported from Malaysia, Thailand, Vietnam, and Cambodia that were found to be circumventing the antidumping and countervailing duty orders on CSPV cells and modules from the People's Republic of China. *See Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 39,426 (July 1, 2022) ("*Proposed Solar Duty Holiday Rule*"). Auxin Solar filed extensive comments in

opposition to Commerce's unlawful proposal. *See* Comments in Opposition to Proposed Solar Duty Holiday Rule (**Exhibit 3**). Commerce variously rejected or otherwise ignored Auxin Solar's arguments, ultimately publishing a final rule that foreclosed the possibility of relief from circumvention by "permit{ing} the importation of {circumventing CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia} free of the collection of antidumping and countervailing duties and estimated duties under sections 701, 731, 751 and 781 of the Act until the Date of Termination." *Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,887; 19 C.F.R. § 362.103(a). This rule went into effect on November 15, 2022. *Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,868.

15.     A few weeks later, Commerce's issued affirmative preliminary circumvention determinations in all four inquiries. Commerce concluded that CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia were circumventing the antidumping and countervailing duty orders covering CSPV cells and modules from the People's Republic of China. *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75,221, 75,221 (Dec. 8, 2022) ("*Preliminary Affirmative Determinations of Circumvention*"). Commerce's circumvention regulation provides, in relevant part, that affirmative preliminary circumvention determinations automatically require Commerce to direct CBP as follows: (1) "continue the suspension of liquidation of previously suspended entries and apply the applicable cash deposit rate;" and (2) "begin the suspension of liquidation and require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product not yet suspended, entered, or withdrawn from warehouse, for consumption on or

after the date of publication of the notice of initiation of the inquiry." 19 C.F.R. §

351.226(l)(2)(i)-(ii).

16.    Due to the operation of Commerce's *Final Solar Duty Holiday Rule*, however,

none of the actions required by 19 C.F.R. § 351.226(l)(2) were undertaken.  And, whereas 19

C.F.R. § 351.226(l)(3) mandates the imposition of cash deposits and suspension of liquidation in

response to a final affirmative circumvention determination, Commerce likewise took none of

the actions required by this regulation after issuing its *Final Affirmative Determinations of

Circumvention* on August 23, 2023.  *See* 88 Fed. Reg. at 57,419.

17.    In particular, Commerce has failed to direct CBP to suspend liquidation and

require a cash deposit of estimated duties for unliquidated entries of CSPV cells or modules from

Malaysia, Thailand, Vietnam, and Cambodia.  *See Preliminary Affirmative Determinations of

Circumvention*, 87 Fed. Reg. at 75,223 ("Pursuant to 19 CFR 362.103(b)(1)(i), Commerce will

direct U.S. Customs and Border Protection (CBP) to discontinue the suspension of liquidation

and collection of cash deposits that were ordered based on Commerce's initiation of these

circumvention inquiries. In addition, pursuant to 19 CFR 362.103(b)(1)(ii) and (iii), Commerce

will not direct CBP to suspend liquidation, and require cash deposits, of estimated ADs and

CVDs based on these affirmative preliminary determinations of circumvention on, any

"Applicable Entries."); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at

57,421 (same); 19 C.F.R. § 362.102 (defining "Applicable Entries" as "entries of Southeast

Asian-Completed Cells and Modules that are entered into the United States, or withdrawn from

warehouse, for consumption before the Date of Termination and, for entries that enter after

November 15, 2022, are used in the United States by the Utilization Expiration Date.").

**NON-CONFIDENTIAL VERSION**

18.     Commerce's instructions to CBP specifically exempt CSPV cell or modules from Malaysia, Thailand, Vietnam, and Cambodia that would otherwise be subject to suspension of liquidation and cash deposit requirements due to Commerce's affirmative preliminary circumvention findings, so long as the "importer and exporter have met the certification requirements" set forth in Commerce's instructions, *i.e.*, "complet{ing} the applicable certification."  *See* Message No. 3041408 (Feb. 10, 2023) at ¶¶ 4, 10, 12b, 12h, 14 (**Exhibit 4**); *see also Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227-28 (Appendix IV, establishing certification language); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,425-27 (same).  Put differently, entries between April 1, 2022, the date of initiation of the circumvention inquiry, and June 5, 2024, the currently scheduled date of expiry of the "emergency" declared in *Proclamation 10414*, that would otherwise be subjected to suspension of liquidation and the collection of cash deposits per 19 C.F.R. §§ 351.226(l)(2), (l)(3) have been summarily excused from both obligations.

19.     Plaintiff Auxin Solar domestically produces CSPV modules and was therefore eligible to petition Commerce for circumvention inquiries as an "interested party" within the meaning of 19 U.S.C. § 1677(9)(C).  *See* 19 C.F.R. § 351.226(a).  Auxin Solar filed such a petition, *see* **Exhibit 2**, and at the conclusion of Commerce's inquiries its *Final Affirmative Determinations of Circumvention* found that CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia were circumventing the AD and CV orders on CSPV cells and modules from the People's Republic of China.  Despite Commerce's circumvention findings and the automatic consequences that flow from Commerce's circumvention regulation, Commerce ignored or rejected Auxin Solar's comments, *see* **Exhibit 3**, in promulgating a *Final Solar Duty Holiday Rule* that has deprived (and continues to deprive) Solar Plaintiffs of their right to relief

from unlawful circumvention of the antidumping and countervailing duty orders on CSPV cells and modules from the People's Republic of China.

20.     By unlawfully denying Solar Plaintiffs the protection from unfairly dumped and subsidized imports that Solar Plaintiffs are due under the Tariff Act of 1930, as amended, Commerce's *Final Solar Duty Holiday Rule* has precipitated a lawless CSPV cell and module marketplace characterized by a massive and sustained wave of cheap CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia that are made from components originating in the People's Republic of China.  Because the cost of production in the People's Republic of China (15 cents per watt) is a fraction of the cost of production in the United States (40 cents per watt), *see* **Exhibit 5-A**, Defendants' withholding of AD and CV duties to remedy this unfair trade is an existential threat to Plaintiffs' businesses—for example, [

] unless AD and CV duty cash deposit and suspension of liquidation requirements are imposed on the circumventing CSPV products from Malaysia, Thailand, Vietnam, and Cambodia, *see* **Exhibit 6**.  Indeed, shortly after the *Final Solar Duty Holiday Rule* went into effect, [

]. **Exhibit 7**.  This likewise threatens downstream users of domestically produced CSPV modules, such as CCE, which will be unable to obtain needed CSPV products domestically for domestic application.  For example, [

].  Moreover, the loss of domestic CSPV product manufacturing will eliminate domestic serviceability for existing projects.

21.     Finally, Solar Plaintiffs note that each individual plaintiff in this action is seeking the exact same relief.  Therefore, as long as this Court concludes that at least one individual plaintiff has established standing, all remaining plaintiffs necessarily possess "piggyback standing."  *See, e.g.*, *California Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022) ("Because in each of these cases the proposed intervenors' requested relief is largely identical to the government's prayer for relief, the proposed intervenors have established piggyback standing.").

## TIMELINESS OF THIS ACTION

22.     Commerce published the *Final Solar Duty Holiday Rule* on September 16, 2022. 87 Fed. Reg. at 56,868.  The *Final Solar Duty Holiday Rule* had an effective date of November 15, 2022.  *Id.*

23.     Commerce issued preliminary affirmative circumvention determinations on December 1, 2022.  Memorandum from Commerce, "Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Cambodia," Case Nos. A-570-979, C-570-980, Segment: Anti-Circumvention Inquiry, ACCESS Barcode: 4316095-02 (Dec. 1, 2022) (Pub. Ver.); Memorandum from Commerce, "Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to Malaysia," Case Nos. A-570-979, C-570-980, Segment: Anti-Circumvention Inquiry, ACCESS Barcode: 4316096-02 (Dec. 1, 2022) (Pub. Ver.); Memorandum from Commerce, "Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Thailand," Case Nos. A-570-979, C-570-980, Segment: Anti-Circumvention Inquiry, ACCESS Barcode: 4316097-02 (Dec. 1, 2022) (Pub. Ver.); Memorandum from Commerce, "Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to the Socialist Republic of Vietnam," Case Nos. A-570-979, C-570-980,

NON-CONFIDENTIAL VERSION

Segment: Anti-Circumvention Inquiry, ACCESS Barcode: 4316098-02 (Dec. 1, 2022) (Pub. Ver.).  Notice of these preliminary affirmative circumvention determinations was published in the Federal Register on December 8, 2022.  *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,221.  As noted above, Commerce's final determinations in these circumvention inquiries were likewise affirmative, *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,419, and thus the suspension of liquidation and cash deposit requirements that *should* have accompanied the *Preliminary Affirmative Determinations of Circumvention* would continue to be in effect today, were it not for the effect of Commerce's unlawful *Final Solar Duty Holiday Rule*.

24.     Solar Plaintiffs commenced this action in accordance with Rule 3(a)(3) of the Rules of this Court on December 29, 2023, with the concurrent filing of a Summons and Complaint.

25.     Whether the cause of action is considered to have accrued on or about the date of publication of the *Final Solar Duty Holiday Rule*, or on or about the date Commerce issued its preliminary affirmative circumvention determinations, this action was commenced within "two years after the cause of action first accrues."  28 U.S.C. § 2636(i).  Thus, this action was timely commenced.

## STATEMENT OF FACTS

**A.     The U.S. Government Has Repeatedly—and Recently—Confirmed that CSPV Cell and Module Imports from the People's Republic of China and the Various Circumventing Export Countries Injure U.S. Solar Manufacturing Capacity**

26.     Acting pursuant to the Tariff Act of 1930, as amended, Commerce published antidumping and countervailing duty orders covering CSPV cells and modules from the People's Republic of China on December 7, 2012.  *See CSPV from the PRC AD Order*, 77 Fed. Reg. at

73,018; *CSPV from the PRC CVD Order*, 77 Fed. Reg. at 73,017.  The U.S. International Trade Commission ("USITC") undertook full five-year reviews of these orders in 2017, ultimately concluding that revocation of the orders would likely lead to a continuation or recurrence of material injury to the U.S. industry within a reasonably foreseeable time, describing the U.S. industry as "be{ing} in a vulnerable position," and voting to continue both orders.  *See Crystalline Silicon Photovoltaic Cells and Modules from China,* Investigation Nos. 701-TA-481 and 731-TA-1190 (Review), USITC Pub. 4874 (Mar. 2019) at 1, 35; *Continuation of Countervailing Duty Order*, 84 Fed. Reg. 10,299 (Mar. 20, 2019); *Continuation of Antidumping Duty Order*, 84 Fed. Reg. 10,300 (Mar. 20, 2019).  Both orders remain in effect.

27.    In addition, acting under Section 201 of the Trade Act of 1974, the USITC undertook a separate safeguard investigation with respect to imports of CSPV cells, modules, and other solar products.  The USITC's final report, published in November 2017, concluded that such products "are being imported into the United States in such increased quantities as to be a substantial cause of serious injury to the domestic industry producing," *inter alia*, CSPV cells and modules.  *See Crystalline Silicon Photovoltaic Cells (Whether or not Partially or Fully Assembled into Other Products)*, Investigation No. TA-201-75, USITC Pub. 4739 (Nov. 2017) at Vol. 1, p.1 ("USITC Pub. 4739"); *Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 82 Fed. Reg. 55,393 (Nov. 21, 2017).  The USITC observed that the U.S. industry suffered from weak financial performance that prevented it from making additional adjustments to compete with these injurious imports.  *See* USITC Pub. 4739 at 20-34, 39-44.  Relevant here, the USITC's injury determination applied not only to the People's Republic of China, but also to countries in Southeast Asia, including Malaysia, Thailand, and Vietnam.  *See* USITC Pub. 4739 at 1 (Cambodia was then excluded as a

developing country).  The USITC found that production capacity in these Southeast Asian countries was increasing, and with it the volumes of low-priced CSPV cells and modules exported to the United States.  *See id.* at 34-39, 45-49.

28.     Acting on the USITC's affirmative Section 201 injury determination, the President issued a Proclamation imposing, *inter alia*, a tariff-rate quota on CSPV cells and increased duties on CSPV modules for a period of four years each.  *See Proclamation 9693: To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes*, 83 Fed. Reg. 3,541 (Jan. 25, 2018).

29.     While that measure was in effect, certain special interests lobbied the President using a misinformation campaign to exclude bifacial CSPV modules from the safeguard remedy. Although the United States Trade Representative ("USTR") initially excluded bifacial CSPV modules from the safeguard remedy, *see Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684, 27,685 (June 13, 2019), USTR withdrew the exclusion months later after being informed that bifacial panels were produced domestically.  *See Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure*, 84 Fed. Reg. 54,244 (Oct. 9, 2019).   Importers and purchasers appealed that decision to the USCIT and the bifacial exclusion remained in effect.  *See Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019).  Months later, USTR tried to withdraw the exclusion again, *see Determination on the Exclusion of Bifacial Solar Panels from the Safeguard Measure on Solar Product*, 85 Fed. Reg. 21,497 (Apr. 17, 2020), but the USCIT enjoined the withdrawal. *See Invenergy Renewables LLC v. United States*, 552 F. Supp. 3d 1382 (Ct. Int'l

NON-CONFIDENTIAL VERSION

Trade 2021); *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020)

30.     In 2020, the U.S. International Trade Commission conducted its statutorily required midpoint review of the safeguard measures imposed by Proclamation 9693.  In a report titled *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products: Advice on the Probable Economic Effect of Certain Modifications to the Safeguard Measure*, Inv. No. TA-201-075, USITC Pub. 5032 (Mar. 2020), the Commission determined that the bifacial exclusion "is likely to have significant effects on prices and trade in both modules and cells" and therefore undermined the positive impact of the safeguard.  On October 16, 2020, the President issued Proclamation 10101 to withdraw the exclusion of bifacial CSPV panels from the duties.  *See Proclamation 10101: To Further Facilitate Positive Adjustment to Competition from Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020).  Importers of bifacial panels challenged Proclamation 10101 in the USCIT, *see Solar Energy Indus. Ass'n v. United States*, 553 F. Supp. 3d 1322 (Ct. Int'l Trade 2021), and the USCIT set aside the modifications contained in Proclamation 10101.[2]

31.     At the conclusion of the original four-year period,[3] domestic CSPV product manufacturers petitioned the USITC for an extension of the safeguard action.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products:*

---

[2] The USCIT's decision was reversed by the U.S. Court of Appeals for the Federal Circuit in *Solar Energy Industries Association v. United States*, __ F. 3d __ (Nov. 13, 2023) finding that "in issuing Proclamation 10101, the President did not commit any significant procedural violation of the Trade Act."

[3] In the interim, the safeguard action was adjusted in certain ways that need not be discussed here.

*Extension of Action*, 86 Fed. Reg. 71,092, 71,092 (Dec. 14, 2021).  In response, the USITC undertook another investigation to determine whether to recommend extension of the safeguard actions.  In December 2021, the USITC concluded that the domestic industry was attempting to compete with CSPV cell and module imports (including those from the People's Republic of China, Malaysia, Thailand, and Vietnam), but that a remedy "continues to be necessary to prevent or remedy serious injury."  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products*, Investigation No. TA-201-75 (Extension), USITC Pub. 5266 (Dec. 2021) at 1.

32.     In February 2022, on the basis of the USITC's recommendation, President Biden concurred that "the safeguard action on imports of CSPV cells {and modules} continues to be necessary to prevent or remedy the serious injury to the domestic industry" and issued a Proclamation extending the safeguard action.  *Proclamation 10339: To Continue Facilitating Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 87 Fed. Reg. 7,357, 7,358 (Feb. 9, 2022) ("*Safeguard Extension Proclamation*").  This included, *inter alia*, the continuation of the tariff rate quota on CSPV cell imports and the continuation of increased duties on CSPV modules for an additional four years each.  *Id.* at 7,359.  President Biden's extension of the safeguard measure also continued the extension of the bifacial panel exclusion.

33.     These three trade remedies applicable to Chinese CSPV cells and modules—the antidumping duty order, the countervailing duty order, and the safeguard action—are each necessary, when enforced, to reduce the injurious impact of unfairly traded CSPV cells and modules from the People's Republic of China.  As a result of the *Final Solar Duty Holiday Rule*, however, the first two remedies are not being applied to CSPV cells and modules from Malaysia,

Thailand, Vietnam, and Cambodia that are circumventing the antidumping and countervailing duty orders on Chinese products.

**B.    With the Bifacial Exclusion to the Safeguard Measure, CSPV Bifacial Module Imports from Southeast Asia Surged into the United States, Prompting a Circumvention Petition that Commerce Refused to Take Up**

34.    Given this disparity in tariff treatment vis-à-vis the PRC, CSPV cell and module import volumes from Southeast Asia surged into the United States by taking advantage of a loophole in the safeguard remedy that both the U.S. International Trade Commission and the President of the United States tried to close.  Even with the AD and CVD orders in place and a safeguard extension proceeding ongoing, American solar manufacturers facing a deluge of imports requested that Commerce initiate an anti-circumvention inquiry in August 2021.  *See* Letter from American Solar Manufacturers Against Chinese Circumvention, "Request for Circumvention Ruling Pursuant to Section 781(b) of the Tariff Act of 1930," Case Nos. A-570-979, C-570-980, Segment: Anti-Circumvention, ACCESS Barcode: 4152547-01 (Aug. 16, 2021) (Pub. Ver.) ("2021 Circumvention Petition").

35.    Fearing retaliation by the Chinese solar manufacturing giants and related parties that had set up circumvention operations in Malaysia, Thailand, and Vietnam subject to the 2021 Circumvention Petition, the American Solar Manufacturers Against Chinese Circumvention ("A-SMACC") requested that Commerce treat the identities of its membership as proprietary.  *See* 2021 Circumvention Petition at 57-58.  In response to Commerce's request for further information, A-SMACC submitted further evidence detailing the "substantial harm" that it anticipated in the event that its members' identities were disclosed.  *See generally* Letter from A-SMACC, "Response to Request for Additional Information," Case Nos. A-570-979, C-570-980,

Segment: Anti-Circumvention, ACCESS Barcodes: 4171380-01, 4171380-02, 4171380-03, 4171380-04 (Oct. 13, 2021) (Pub. Ver.).

36.     Unsympathetic to the concerns of the American solar manufacturers—which, as Auxin Solar's later experience demonstrates, were both valid and prescient—Commerce refused to initiate a circumvention inquiry, reasoning that despite all parties' attorneys having access to the relevant information and the ability to retain expert consultants if needed, the ability of the Chinese producers themselves to independently gather factual information concerning whether A-SMACC's members were "interested parties" outweighed the American solar manufacturers' extensively documented concerns about both retaliation and circumvention.  *See* Letter from Commerce, "Requests for Circumvention Inquiries," Case Nos. A-570-979, C-570-980, Segment: Anti-Circumvention, ACCESS Barcode: 4181178-01 (Nov. 10, 2021) (Pub. Ver.) at 3-4.  Commerce also suggested that country-wide circumvention inquiries would be more appropriate than producer-specific inquiries to avoid potential issues with production patterns shifting within the countries where circumvention was occurring.  *See id.*

## C.     Subsequent to Commerce's 2021 Refusal to Initiate a Solar Circumvention Inquiry, Commerce Introduced a New Anti-Circumvention Regulation with the Express Purpose of Strengthening Trade Remedy Enforcement

37.     Section 1677j of the antidumping and countervailing duty statute, entitled the "Prevention of Circumvention of Antidumping and Countervailing Duty Orders," was added by the Omnibus Trade and Competitiveness Act of 1988.  *See* Pub. L. 100–418, title I, § 1321(a), 102 Stat. 1107, 1192; 19 U.S.C. § 1677j.  Whereas Commerce at first administered circumvention inquiries as a subset of scope inquiries, *see* 19 C.F.R. § 351.225(g)-(j) (1996); *Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7,308, 7,375 (Feb. 27, 1996), Commerce issued a new regulation specifically governing its inquiries into the circumvention of

antidumping and countervailing duty orders in September 2021, *see Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Sept. 20, 2021) ("*New Anti-Circumvention Regulation*").

38.     In the preamble to this regulation, Commerce specifically quoted legislative history stating that "the purpose of the circumvention statute 'is to authorize the Commerce Department to apply AD and {CVD} orders in such a way as to prevent circumvention and diversion of U.S. law,'" *id.* at 52,302 (quoting Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100–71, at 101 (1987)), and highlighting Congress's observation that "'aggressive implementation of {the circumvention statute} by the Commerce Department can foreclose these practices,'" *id.* (quoting S. Rep. No. 100–71, at 101); *see also id.* (noting similar statements in the Statement of Administrative Action accompanying the Uruguay Round Agreements Act and opinions of this Court).  Commerce described the purpose of its regulatory modifications as "to create new enforcement tools for Commerce to address circumvention and evasion of trade remedies…allow{ing} Commerce to better fulfill the Congressional intent behind the AD/CVD laws—namely, to remedy the injurious effects of unfairly traded imports."  *Id.* at 52,303.

39.     Commerce's new circumvention regulation sets forth procedures for requesting, initiating, and conducting circumvention inquiries.  *See* 19 C.F.R. § 351.226.  This includes requiring preliminary and final determinations and fixing deadlines for the same.  *See id.* §§ 351.226(e)(1)-(2), (g)(1)-(2).  Most relevant to this action, Commerce's regulation mandates that Commerce will order CBP to suspend liquidation and collect cash deposits with respect to imports subject to an affirmative preliminary and/or final circumvention determination.  *See id.* §§ 351.226(l)(2)-(3).

40. Specifically, in response to an affirmative preliminary circumvention determination:

> (2) If the Secretary issues an affirmative preliminary determination under paragraph (g)(1) of this section that the product at issue is covered by the scope of the order, the Secretary will take the following actions:
>
> > (i) The Secretary will direct the Customs Service to continue the suspension of liquidation of previously suspended entries and apply the applicable cash deposit rate;
> >
> > (ii) The Secretary will direct the Customs Service to begin the suspension of liquidation and require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product not yet suspended, entered, or withdrawn from warehouse, for consumption on or after the date of publication of the notice of initiation of the inquiry; { . . . }

*Id.* § 351.226(l)(2).

41. Similarly, in response to an affirmative final circumvention determination:

> (3) If the Secretary issues an affirmative final determination under paragraph (g)(2) of this section that the product at issue is covered by the scope of the order, the following rules will apply:
>
> > (i) The Secretary will direct the Customs Service to continue the suspension of liquidation of previously suspended entries and apply the applicable cash deposit rate until appropriate liquidation instructions are issued;
> >
> > (ii) The Secretary will direct the Customs Service to begin the suspension of liquidation and require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product not yet suspended, entered, or withdrawn from warehouse, for consumption on or after the date of publication of the notice of initiation of the inquiry until appropriate liquidation instructions are issued; { . . . }

*Id.* § 351.226(l)(3).

42.     Subsections 351.226(l)(2)-(3) were not an innovation unique to the new circumvention regulation.  Similar provisions already applied to circumvention inquiries administered under the prior regulation.  *See* 19 C.F.R. § 351.225(l) (1996); *New Anti-Circumvention Regulation*, 86 Fed. Reg. at 52,344.  Put differently, the mandates of 19 C.F.R. §§

NON-CONFIDENTIAL VERSION

351.226(l)(2)-(3) reflect longstanding Commerce practice and policy.  *See id.* at 52,345

("Paragraphs (l)(2)(ii) and (l)(3)(ii) clarify and maintain the status quo of the current

regulation.").

43.     Commerce's new circumvention regulation was made effective on November 4,

2021.  *See id.* at 52,300.  The applicability of 19 C.F.R. § 351.226(l)(2)(iii) was specifically

limited to November 4, 2021, such that any suspension of liquidation undertaken pursuant to that

subsection could extend back no further than November 4, 2021.  *See id.* at 52,345.

**D.     In Response to Auxin's Circumvention Inquiry Petition, Commerce Initiated
         Circumvention Inquiries Concerning CSPV Cell and Module Imports from
         Malaysia, Thailand, Vietnam, and Cambodia**

44.     Less than one year after introduction of the *New Anti-Circumvention Regulation*,

and only days after President Biden issued the Proclamation extending safeguard measures on

imported CSPV cells and modules but excluding bifacial modules, Auxin Solar requested that

Commerce undertake anti-circumvention inquiries concerning CSPV cells and modules imported

from Malaysia, Thailand Vietnam, and Cambodia.  *See generally Petition for Anti-*

*Circumvention Ruling* (**Exhibit 2**).  Auxin Solar also added an allegation of circumvention

through Cambodia because of Cambodia's exclusion from the safeguard remedy as a basis for

Chinese producers to set up evasion operations there.  The gravamen of Auxin's request was that

CSPV cells and modules from these four southeast Asian countries had completely replaced

imports from the PRC, increasing from a total value of $578 million in 2011 to *$5.6 billion* in

2020 while the AD and CVD orders on PRC cells and modules were in effect.  *Id.* at 2 (**Exhibit**

**2**).  The new petition detailed the dependence of these newly created southeast Asian export

platforms on the PRC's solar industry, including their reliance on polysilicon ingots, wafers, and other inputs from the PRC to produce the circumventing CSPV products.[4]  *Id.* at 6 (**Exhibit 2**).

45.     Insofar as Commerce's own circumvention regulation expressly contemplates Commerce's self-initiation of circumvention inquiries, 19 C.F.R. § 351.226(b); *see also* 19 C.F.R. § 351.225(b) (1996) (prior version of regulation), and Commerce had repeatedly done so in the past, *see, e.g.*, *Quartz Surface Products From the People's Republic of China: Initiation of Scope and Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 6,844, 6,845 (Feb. 7, 2022); *Oil Country Tubular Goods From the People's Republic of China: Self-Initiation of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 85 Fed. Reg. 71,877, 71,8778 (Nov. 12, 2020), the agency could have investigated the circumventing CSPV cell and module imports at any point in time. Commerce took no action until forced to do so by a named interested party.

46.     By disclosing its identity, Auxin Solar removed the nominal "barrier" identified in Commerce's 2021 refusal to initiate circumvention inquiries.  *See id.* at 84-87 (**Exhibit 2**).  And, just as A-SMACC's members had predicted, Auxin Solar paid a significant price for exercising its rights as an interested party and requesting that Commerce enforce the United States' trade remedy laws against unlawfully circumventing solar products.

47.     Since availing itself of the remedy provided by the circumvention statute and Commerce's regulations, Auxin Solar and its American employees were the victims of physical break-ins, cyber-intrusions using Chinese computer code, vandalism, commercial boycotts, harassment, and unfounded conspiracy theories fueled by a multi-million-dollar smear campaign.

---

[4] When Auxin filed its request for circumvention inquiries full year 2021 import data were unavailable, but a review of calendar year 2021 import data establishes $5.6 billion in imports of CSPV cells, modules, and other products.

*See, e.g.*, E. Halper and J. Stein, "White House alarmed that Commerce probe is 'smothering' solar industry," *Washington Post* (May 7, 2022), *available at* https://www.washingtonpost.com/business/2022/05/07/auxin-solar-projects-frozen/; *but see* D. Dayen, "Trade Group Driving Solar Controversy Includes Slave-Labor Companies," *The American Prospect* (May 12, 2022), *available at* https://prospect.org/environment/trade-group-driving-solar-controversy-includes-slave-labor-companies-china/.  A group sponsored by the left-leaning activist group American Family Voices, Chicago-based Hecate Energy, and New Orleans-based Joule Energy funded a website called "ExposeAuxin.com" to intimidate Auxin Solar and make spurious claims about Auxin Solar's business acumen and ability to produce quality solar modules.  *See* **Exhibit 16**.  The Solar Energy Industries Association, which is ostensibly intended to be the industry association, created a series of webpages calling the circumvention request the "Auxin Solar Tariff Petition," which intended to smear Auxin Solar's name within the solar industry.  *See* **Exhibit 17**.  Commerce was made well aware of these unseemly attempts to punish Auxin Solar for exercising its statutory rights and short-circuit Commerce's administrative process.  *See, e.g.*, Auxin Solar Comments in Opposition to Proposed Solar Duty Holiday Rule at 64-65 (**Exhibit 3**); Letter from Auxin Solar, "Auxin's Response to Rebuttal Comments and Factual Information" (May 16, 2022) at 3-4 (Pub. Ver.) (**Exhibit 8**).  But Commerce did nothing to protect a minority- and woman-owned U.S. manufacturer.

48.     In the wake of this renewed request to initiate circumvention inquiries, CSPV cell and module imports from the four target countries spiked almost immediately—even before Commerce had determined whether to initiate circumvention inquiries.  What had taken *38 weeks* to import in 2021, was—motivated by A-SMACC's and Auxin Solar's circumvention

petitions—brought in from Malaysia, Thailand, Vietnam, and Cambodia in *just one week*.  *See* Letter from Auxin Solar, "Post-Petition Surge of Imported Solar Cells and Modules Covered by Auxin's Circumvention Petition" (Mar. 21, 2022) at 2-3 (**Exhibit 9**).

49.     And while these import volumes surged, more than ten entities filed comments requesting that Commerce decline to initiate any circumvention inquiry.  Ultimately, given the relevant legal standards and based on the merits of the petition, Commerce was constrained to initiate circumvention inquiries into CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia.  *See* Memorandum from Commerce, "Initiation of Circumvention Inquiries," Case Nos. A-570-979, C-570-980, Segment: Circumvention, ACCESS Barcode: 4225929-02 (Mar. 25, 2022); *Notice of Circumvention Inquiries Initiation*, 87 Fed. Reg. at 19,071. Thereafter, in compliance with 19 C.F.R. § 351.226(l)(1), Commerce issued instructions directing CBP to continue suspending liquidation of any CSPV cells or modules exported from Malaysia, Thailand, Vietnam, or Cambodia that were already subject to suspension of liquidation.  *See* Message No. 2097402 (Apr. 7, 2022) (**Exhibit 10**).

50.     As a practical matter, publicly available data do not allow Solar Plaintiffs to determine whether Message No. 2097402 actually caused the liquidation of any entries to become or remain suspended.

**E.     An Unprecedented Presidential Proclamation Invoking a Seldom-Used, 90-Year-Old Tariff Act Provision Invites Commerce to Upend the Orderly Administration of the Circumvention Statute and Commerce's Regulations**

51.     Two months after Commerce initiated circumvention inquiries into CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia; and four months after President Biden determined that "the safeguard action on imports of CSPV cells {and modules} continues to be necessary to prevent or remedy the serious injury to the domestic industry," *Safeguard*

*Extension Proclamation*, 87 Fed. Reg. at 7,358; President Biden took the unprecedented and

incongruous step of declaring an "emergency" to exist under 19 U.S.C. § 1318(a) "with respect

to the threats to the availability of sufficient electricity generation capacity to meet expected

consumer demand," *Proclamation 10414: Declaration of Emergency and Authorization for*

*Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules From*

*Southeast Asia*, 87 Fed. Reg. 35,067, 35,068 (June 9, 2022) ("*Proclamation 10414*").  Glaringly,

despite the ostensible breadth of this "emergency," the "emergency authority" was limited

exclusively to "solar cells and modules, exported from the Kingdom of Cambodia, Malaysia, the

Kingdom of Thailand, and the Socialist Republic of Vietnam."  *Id.*  Put differently, *Proclamation*

*10414* specifically and exclusively targeted the circumvention inquiries initiated in response to

Auxin Solar's petition.[5]

52.   19 U.S.C. § 1318(a), the authority on which *Proclamation 10414* relies, is a rarely

used provision that has not changed since its original promulgation as Section 318 of the Tariff

Act of 1930.[6]  Before *Proclamation 10414*, it had been nearly 80 years since 19 U.S.C. § 1318(a)

---

[5] Solar Plaintiffs consider *Proclamation 10414* itself to be *ultra vires* and unlawful, but this action does not name the President as a defendant or present challenges to *Proclamation 10414* itself for review by the USCIT.  Rather, for purposes of the instant Complaint, it is assumed *arguendo* that *Proclamation 10414* constitutes an emergency declaration issued pursuant to 19 U.S.C. § 1318(a).  Solar Plaintiffs reserve their right to challenge that emergency declaration and *Proclamation 10414* in a separate action.

[6] Prior uses include, *e.g.*, *Proclamation 2708: Emergency Due to Housing Shortage—Free Importation of Timber, Lumber, and Lumber Products*, 11 Fed. Reg. 12,695 (Oct. 29, 1946) (permitting the duty-free importation of timber, lumber, and lumber products to address the housing shortage for war veterans returning from active military service in the immediate aftermath of World War II); *Proclamation 2498: Emergency Due to Drought—Free Importation of Forage for Livestock*, 6 Fed. Reg. 3,715 (July 29, 1941). (waiving duties temporarily on imported forage for livestock to alleviate drought conditions in the northeastern United States); *Proclamation 2223: Emergency Due to Flood Conditions—Free Importation of Food, Clothing, and Medical, Surgical and Other Supplies for Use in Emergency Work*, 2 Fed. Reg. 273 (Feb. 3,

-26-

NON-CONFIDENTIAL VERSION

was invoked to permit duty-free importation.[7]  Based on extensive research, *Proclamation 10414* marks the first time that 19 U.S.C. § 1318(a) has ever been invoked to target products subject to an ongoing antidumping or countervailing duty inquiry or investigation—circumvention or otherwise.  Rather, the use of 19 U.S.C. § 1318(a) was historically limited to regular customs duties and accompanied traceability on any imports that entered the United States duty-free to ensure their use was directed to emergency relief efforts.

53.     *Proclamation 10414* instructed Commerce to "*consider* taking appropriate action" under 19 U.S.C. § 1318(a) "to permit, until 24 months after the date of this proclamation, or until the emergency declared herein has terminated, whichever occurs first, under such regulations and under such conditions as {Commerce} may prescribe" the importation of solar cells and modules "exported from" Malaysia, Thailand, Vietnam, or Cambodia and "not already subject to an antidumping or countervailing duty order as of the date of this proclamation" "free of the collection of duties and estimated duties." *Id.* (emphasis supplied).  Thus, *Proclamation 10414* did not require that Commerce take any action at all.  *See id.*  Nor did *Proclamation 10414* obligate Commerce to deviate from existing regulations, and it certainly did not contemplate Commerce promulgating entirely new regulations that jettison any meaningful safeguards to ensure compliance with the prerequisites of Section 1318(a).

---

1937) (permitting the duty-free importation of "food, clothing, and medical, surgical, and other supplies" in response to severe flooding in the Ohio and Mississippi River valleys).

[7] Other uses, also a rarity, did not involve duty waivers, but provided relief based on the statutory authority in the first clause of the first sentence of 19 U.S.C. § 1318(a) to "extend during the continuance of such emergency the time herein prescribed for the performance of any act." *See, e.g.*, *Proclamation 2215: Merchandise in Bonded Warehouse*, 2 Fed. Reg. 1 (Jan. 1, 1937) (extending bonded warehousing period).

54. *Proclamation 10414* did, however, require that Commerce "shall consult with the Secretary of the Treasury and the Secretary of Homeland Security, or their designees, before exercising, as invoked and made available under this proclamation, any of the authorities set forth in" 19 U.S.C. § 1318(a). *Id.*

55. While this unprecedented attempt to absolve CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia of any duty liability for their unlawful circumventing activity came as a shock to most parties with an interest in the solar energy market, one party was notably ahead of the curve. The Solar Energy Industries Association ("SEIA"), a vocal opponent of the circumvention inquiries with numerous PRC-owned members (including respondents in these circumvention inquiries), *see, e.g.*, Auxin Solar Comments in Opposition to Proposed Solar Duty Holiday Rule at 29-30, 49 n.130 (**Exhibit 3**); Letter from Auxin Solar, "Request for Commerce to Complete the Administrative Record With All *Ex Parte* Materials" (June 9, 2022) at 3-4 ("Auxin Solar's First Request for *Ex Parte* Materials") (**Exhibit 11**), issued a press release announcing *Proclamation 10414* **prior to** President Biden's public announcement of the same on June 6, 2022, and press leaks through Reuters and the Wall Street Journal published on June 5, 2022, in the 10:00PM hour included quotes from SEIA's President and CEO Abigail Ross Hopper, *see* Auxin Solar's First Request for *Ex Parte* Materials at Exhibit 3 (**Exhibit 11**). Evidently, some communication had occurred between the White House and SEIA and/or SEIA's PRC-owned members before *Proclamation 10414* was ever disclosed to other interested parties. This, too, was unprecedented in all prior applications of 19 U.S.C. § 1318(a) and appears to set the unfortunate precedent that a well-funded lobbying campaign servile to injurious foreign production can short-circuit any domestic producer's efforts to exercise rights created by Congress under U.S. trade remedies laws.

-28-

**F.      Commerce Implicitly Rejected Transparency in its Rulemaking**

56.      By proposing a predetermined outcome that jettisons the mandates of 19 C.F.R. §

351.226(l)(2) and 19 U.S.C. § 1677j, *Proclamation 10414* gives the appearance of threatening

the integrity of Commerce's circumvention enforcement mission.  That an outspoken opponent

of the then-ongoing circumvention inquiries was evidently notified of *Proclamation 10414*

before its public announcement (and before the domestic industry that petitioned for those

inquiries) only compounds that concern.

57.      Commerce's unusually quick rulemaking and utter lack of transparency in the

wake of *Proclamation 10414* further exacerbated the appearance that Commerce's decision

making in response to *Proclamation 10414* was pre-determined and that domestic producers

were shut out of meaningful deliberations about what, if any, action Commerce might take.

Days after the publication of *Proclamation 10414*, Commerce was requested to disclose all *ex*

*parte* materials associated with *Proclamation 10414*.  *See generally* Auxin's First Request for *Ex*

*Parte* Materials (**Exhibit 11**).  Because Commerce made no response to this request, yet another

request for disclosure was filed one month later.  *See generally* Letter from Auxin Solar,

"Reiteration and Expansion of Request for Commerce to Complete the Administrative Record

With All *Ex Parte* Materials" (July 14, 2022) (**Exhibit 12**).  This, too, was ignored by

Commerce, prompting the issue to be raised in comments on Commerce's *Proposed Solar Duty*

*Holiday Rule*, discussed *infra*; again in comments in advance of Commerce's preliminary results

in the circumvention inquiries, *see, e.g.*, Letter from Auxin Solar, "Pre-Preliminary Comments

Concerning Jinko Solar Technology Sdn. Bhd. and Hanwha Q Cells Malaysia Sdn. Bhd." (Oct.

20, 2022) at 79-80 (**Exhibit 13**); and yet again in the domestic petitioner's administrative case

brief, *see, e.g.*, Letter from Auxin Solar, "Auxin's Case Brief (Tranche 1)" (Mar. 6, 2023) at 4, 23-24 (**Exhibit 14**).

58.     As of the date of filing this action, despite repeated requests for any *ex parte* communications concerning the development and issuance of Commerce's *Proposed Solar Duty Holiday Rule* and *Final Solar Duty Holiday Rule*, Commerce refused to provide any disclosure or transparency.  Rather, Commerce's *Final Affirmative Determinations of Circumvention* claimed that *ex parte* communications associated with the targeted preclusion of relief sought by these specific anti-circumvention inquiries was "distinct from the AD/CVD proceedings at hand."  Memorandum from Commerce, "Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Cambodia," Case Nos. A-570-979/C-570-980, Circumvention Inquiry, Cambodia 2022 (Aug. 17, 2023) at 112-113.

**G.     Commerce Had Existing Regulations Subject to Extensive Notice and Comment Rulemaking to Address the Goals of *Proclamation 10414*, but Jettisoned Them with Spurious Reasoning**

59.     Even if Commerce had been inclined to take action in response to *Proclamation 10414*, Commerce was neither practically nor legally required to promulgate new regulations in order to do so.  Commerce had published regulations implementing 19 U.S.C. § 1318(a) over a decade earlier and retained discretion under the Proclamation's plain terms to simply utilize the regulations already on the books. *See Proclamation 10414*, 87 Fed. Reg. at 35,068.

60.     Specifically, in 2006 Commerce undertook notice and comment rulemaking procedures to promulgate regulations specifically implementing 19 U.S.C. § 1318(a).  *See Procedures for Importation of Supplies for Use in Emergency Relief Work*, 71 Fed. Reg. 63,230

(Oct. 30, 2006) ("*Section 318(a) Regulations*").  These regulations are codified at 19 C.F.R. Part 358 and are Commerce's first formal engagement with Section 318(a) after responsibility for its administration with respect to antidumping and countervailing duties was transferred from the Department of the Treasury in 1979.  *See* Reorg. Plan No. 3 of 1979, § 5(a)(1)(E).

61.     The *Section 318(a) Regulations* "set{} forth the procedures for importation of supplies for use in emergency relief work free of antidumping and countervailing duties as authorized under Section {1318(a)}." 19 C.F.R. § 358.101.  These procedures, which are set forth in 19 C.F.R. § 358.103, were proposed in coordination with the Department of Treasury, CBP, and U.S. Department of Homeland Security, and subjected to a monthlong public comment period that Commerce then deliberated upon for three more months.  *See Section 318(a) Regulations*, 71 Fed. Reg. at 63,230-31; *Procedures for Importation of Supplies for Use in Emergency Relief Work*, 71 Fed. Reg. 35,846, 35,846 (June 22, 2006).  Commerce sought to balance its "commit{ment} to…do everything within the parameters prescribed by Congress to ensure that domestic industries obtain effective relief from dumped and subsidized imports," with it authority "to permit the importation of supplies for use in relief work free of antidumping and countervailing duties during a declared emergency." *Section 318(a) Regulations*, 71 Fed. Reg. at 63,230.  In other words, the *Section 318(a) Regulations* were specifically promulgated "to prescribe the process by which {Commerce} will exercise its authority under section {1318(a)}" with an eye to allowing Commerce "to respond immediately where the President declares the existence of an emergency"—thereby avoiding the sort of rushed, duplicative, *ad hoc* rulemaking that occurred here.  *See Section 318(a) Regulations*, 71 Fed. Reg. at 63,231.

62.     Importantly, the procedures set forth in 19 C.F.R. § 358.103 are on a quantity-, use-, and destination-specific basis, requiring that importers apply in advance for duty-free

NON-CONFIDENTIAL VERSION

treatment, 19 C.F.R. § 358.103(a)(1), and provide specified information about each entry, including the proposed use of the products, the U.S. price, the quantity, and "the person for whose account the merchandise will be brought into the United States, as well as designation of the geographical location at which the merchandise will be used," *see Section 318(a) Regulations*, 71 Fed. Reg. at 63,232; 19 C.F.R. § 358.103(a)(2).  Duty-free treatment is not automatic; rather, Commerce grants or denies duty waiver requests on a case-by-case basis.  19 C.F.R. § 358.103(b).  Granted requests would "normally" need to enter the United States within 60 days or be subjected to antidumping and countervailing duties.  19 C.F.R. § 358.103(c).  Indeed, "{t}o alleviate concerns about inappropriate long-term use of waivers, {Commerce} modified {Section 358.103(b)} to indicate that waiver of antidumping and countervailing duties on imports of merchandise for use in emergency relief work will be specific and limited to the merchandise explicitly identified in the waiver request." *Section 318(a) Regulations*, 71 Fed. Reg. at 63,233.  This orderly process was intended to ensure that the existence of an emergency did not result in a free-for-all on duty-free imports of dumped and/or subsidized products.  It also comported with the near-90-year history of the prior limited uses of 19 U.S.C. § 1318(a).

63.     To increase transparency in waiver proceedings and the accountability of waiver beneficiaries, the *Section 318(a) Regulations* specified that "requests for importation of emergency relief supplies and the Secretary's determination to permit importation, if any, will be included on the record of the relevant proceeding(s)," and that any such determinations would be "posted on our website."  71 Fed. Reg. at 63,233; 19 C.F.R. § 358.103(e).

64.     And finally, to deter the abuse of these procedures, Commerce "indicate{d} possible penalties {, *e.g.*, seizure of the merchandise or other penalties set forth in 19 U.S.C. § 1592,} where merchandise entered for use in emergency relief work is used in the United States

for some other purpose." *Section 318(a) Regulations*, 71 Fed. Reg. at 63,233; 19 C.F.R. §

358.103(d).

## H.  Commerce's *Ad Hoc* Rulemaking Process Unlawfully Neutralized its Circumvention Inquiries Months Before Commerce Had Even Issued a Preliminary Determination

65.     Commerce eschewed the balanced procedures and safeguards of the established

*Section 318(a) Regulations* summarized above, opting to instead carve out special rules

specifically for the benefit of PRC-linked producers of CSPV cells and modules from Malaysia,

Thailand, Vietnam, and Cambodia.  *See generally Proposed Solar Duty Holiday Rule*, 87 Fed.

Reg. at 39,429.  Evidently, Commerce considered the need for speed in importing dumped and

subsidized CSPV cells and modules circumventing the orders on the PRC in order to contribute a

small minority of the "electricity generation capacity to meet *expected* consumer demand,"

*Proclamation 10414*, 87 Fed. Reg. at 35,068 (emphasis supplied), to be even more pressing and

immediate than the importation of materials to respond to the "natural disasters" Commerce

referenced when promulgating the existing *Section 318(a) Regulations*, *see* 71 Fed. Reg. at

63,230.[8]

66.     Commerce's *Proposed Solar Duty Holiday Rule* was published less than a month

after *Proclamation 10414*, a quick turnaround for new agency rulemaking.  *Compare*

*Proclamation 10414*, 87 Fed. Reg. at 35,067 (June 6th), *with Proposed Solar Duty Holiday Rule*,

87 Fed. Reg. at 39,426 (July 1st).  The vague and sweeping factual bases Commerce recited for

undertaking the *Proposed Solar Duty Holiday Rule* were unsupported by any identified data or

specific sources.  *See* 87 Fed. Reg. at 39,427.  This lack of clarity or transparency severely

---

[8] For context, the process leading to the promulgation of the *Section 318(a) Regulations* was undertaken in the wake of Hurricane Katrina, as one of several initiatives intended to improve the federal government's response to future natural disasters and other emergencies.

hampered commenters' ability to meaningfully identify and address what Commerce viewed as justifying this extraordinary rulemaking, and reinforced the appearance that the rulemaking itself was foreordained for the benefit of PRC-linked circumvention.

67.     In brief, Commerce's *Proposed Solar Duty Holiday Rule* "would add Part 362 {to Commerce's regulations} to extend the time for, and waive, the actions provided for in 19 CFR 351.226(l)(1), (2), and (3), if applicable, in the ongoing circumvention inquiries…" and "in the event of an affirmative final determination of circumvention, no resulting antidumping or countervailing duties would be applied to {circumventing CSPV} cells and modules {entered} before the Date of Termination {of the emergency}." 87 Fed. Reg. at 39,427-28.  These effects were to be automatic and across-the-board, applicable to "all entries of {CSPV} cells and modules, as long as those entries are before the Date of Termination," without any sort of pre-entry application or review process by Commerce.  *See id.*, 87 Fed. Reg. at 39,428, 39,431-32.

68.     Commerce's sole rationale for not using the existing *Section 318(a) Regulations* was as follows: in Commerce's estimation, the *Section 318(a) Regulations* "would not apply" to the CSPV cells and modules subject to the ongoing circumvention inquiry "because none of the merchandise addressed by {*Proclamation 10414*} was subject to an existing antidumping or countervailing duty order as of the date {*Proclamation 10414*} was signed."  *See Proposed Solar Duty Holiday Rule*, 87 Fed. Reg. at 39,429.  This reasoning is circular, and if Commerce had truly believed it, then Commerce would not have undertaken this premature *ad hoc* rulemaking. After all, Commerce had not yet made circumvention determinations, so all products were—at that time—enjoying tariff-free importation.

69.     Commerce provided a one-month period for comments.  *See Proposed Solar Duty Holiday Rule*, 87 Fed. Reg. at 39,426.  Extensive comments were submitted detailing the factual, legal, and logical flaws in Commerce's proposal and opposing the adoption of the *Proposed Solar Duty Holiday Rule* because, *inter alia*, they "constitute an unprecedented and unlawful departure from Commerce's trade enforcement mission; are unnecessary because Commerce already has regulations developed for this specific purpose; are unsupported by any facts, and all available evidence establishes that the declared emergency is not tied to the anti-circumvention inquiries such that a broad tariff holiday is an unreasonable remedy; unlawfully expanded the President's remedy to before he declared an emergency to have occurred; suffer from technical infirmities concerning their implementation; and vastly understate the regulatory impact."  Auxin Solar Comments in Opposition to Proposed Solar Duty Holiday Rule at 3 (**Exhibit 3**).  Commerce was furthermore informed, based on independent third-party reports, of the strong likelihood that CSPV cells and modules from countries subject to circumvention inquiries were produced using forced labor in the value chain, and requested to tailor any regulations to address this issue.  *See id.* at 25-26 (**Exhibit 3**) (quoting J. Cockayne, *et al.*, "The Energy of Freedom? Solar Energy, Modern Slavery and the Just Transition," *University of Nottingham* (March 2022)).

70.     And, bearing in mind that the practical impact of the *Proposed Solar Duty Holiday Rule* would be exclusively limited to CSPV cells and modules found to be circumventing the antidumping and countervailing duty orders on PRC products—*i.e.*, cells and modules that were of PRC origin for antidumping and countervailing duty purposes—Commerce was furthermore apprised of contemporaneous statements of the International Energy Agency voicing substantial concerns over the concentration of the CSPV supply chain in coal-powered

PRC facilities. *See* Auxin Solar Comments in Opposition to Proposed Solar Duty Holiday Rule at 27, 50-52 (**Exhibit 3**). Moreover, the U.S. Department of Homeland Security's updated list of entities on the Uyghur Forced Labor Prevention Act list included at least four major solar companies or affiliated upstream input producers from the People's Republic of China. *See Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47,777, 47,779 (Aug. 4, 2022). And a contemporaneous solar photovoltaics supply chain assessment published by the U.S. Department of Energy voiced significant concerns about the extent to which supply chains were centered on the PRC, as well as "{a}bout 75% of the silicon solar cells incorporated into modules installed in the United States {being} made by Chinese subsidiaries located in just three Southeast Asian countries: Vietnam, Malaysia, and Thailand" that "rely heavily on an upstream Chinese supply chain." *See* "Solar Photovoltaics: Supply Chain Deep Dive Assessment," *U.S. Department of Energy* (Feb. 24, 2022) at iii, 4 (**Exhibit 18**).

71.   Six weeks after receiving comments, Commerce published the *Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,868 (September 16th), setting forth, with minor modifications, essentially the same regime hastily proffered in the *Proposed Solar Duty Holiday Rule*. *Compare Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,868, *with Proposed Solar Duty Holiday Rule*, 87 Fed. Reg. at 39,427.

**I.   Commerce's *Final Solar Duty Holiday Rule* Extends Far Beyond the Bounds of the Declared Emergency, and Incorporates Insufficient Safeguards to Ensure Circumventing Imports Are Actually Being Used in Service of Emergency Relief**

72.   Like Commerce's *Proposed Solar Duty Holiday Rule*, its *Final Solar Duty Holiday Rule* exclusively addresses antidumping and countervailing duty-free treatment for

NON-CONFIDENTIAL VERSION

circumventing CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia.  *See* 87 Fed. Reg. at 56,872.[9]

73.      *Proclamation 10414* connected the broader "electricity generation capacity" emergency and solar energy by reference to "solar projects being postponed or canceled."  *See* 87 Fed. Reg. at 35,067-68.  However, the *Final Solar Duty Holiday Rule* does not provide for the collection of data to link the imported products with "postponed or canceled" solar power generation projects.  *See* 87 Fed. Reg. at 56,875.  Commerce summarily claimed that such data collection would not be "administrable."  *See id.*

74.      The *Final Solar Duty Holiday Rule* requires no connection between the geography of actual electricity generation shortfalls and the use of CSPV cells and modules benefiting from the duty waiver.  *See* 87 Fed. Reg. at 56,880; *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227-28 (certification language, which omits any such reference).

75.      Commerce's *Final Solar Duty Holiday Rule* fails to address how its procedures account for the risk that forced labor is used in the supply chain for CSPV cells and modules exported from Malaysia, Thailand, Vietnam, and Cambodia, stating that such concerns are "outside the scope" of the *Final Solar Duty Holiday Rule. See* 87 Fed. Reg. at 56,879; 19 C.F.R. § 362.103.

76.      Commerce's *Final Solar Duty Holiday Rule* omits any sort of process for determining whether goods are actually bound for emergency relief work *before* they arrive.  *See* 19 C.F.R. §§ 362.103, 362.104 (permitting Commerce to establish some such certification

---

[9] To be explicit, the concomitant safeguard remedy was no remedy at all because bifacial modules were excluded and now account for <u>over 90%</u> of total CSPV module imports.

regime later but permitting duty-free treatment in the meantime); 87 Fed. Reg. at 56,880

(indicating that Commerce might require some form of certification at a later date).  Indeed, the

certification regime that Commerce established does not even require *certification* regarding

utilization of the imported circumvention CSPV cells and modules until the date of entry.  *See*

*Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶¶(F)5, N);

*see also id.* at 75,228 (exporter's certification omitting any such statement).  Notably, this

certification language never underwent any notice-and-comment rulemaking process.  The only

opportunity to comment on the language was in connection with Commerce's circumvention

inquiries, and only after the language was already being used in connection with Commerce's

*Preliminary Affirmative Determinations of Circumvention*.

      77.    Commerce's only justification for abandoning compliance with the use

requirements inherent in 19 U.S.C. § 1318(a) was the supposed need for "market certainty" to

obtain circumventing CSPV cells and modules from Chinese-owned solar producers in Malaysia,

Thailand, Vietnam, and Cambodia.  *See Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,878.

      78.    Commerce's *Final Solar Duty Holiday Rule* and Commerce's ultimate

instructions to CBP expressly claim to apply to CSPV cells and modules "that entered the United

States both *before* and after the signing of the Proclamation," and waives any potential duty

liability until "the Date of Termination (defined as June 6, 2024, or the date the emergency

described in Presidential Proclamation 10414 has been terminated, whichever occurs first)."  87

Fed. Reg. at 56,869-70 (emphasis supplied); *see also* Message No. 3041408 (Feb. 10, 2023) at ¶¶

5 (effectuating the same) (**Exhibit 4**); 19 C.F.R. § 362.103(a).

      79.    The mechanics for obtaining duty-free treatment established by the *Final Solar*

*Duty Holiday Rule* were likewise deficient.  Commerce's regulatory regime essentially leaves it

up to the importers to ensure that the use requirements of 19 U.S.C. § 1318(a) are satisfied.

Commerce's permissive approach even exceeds bounds of what *Proclamation 10414* purported

to authorize:

    a.  Commerce's new regulations define "utilization" of the CSPV cells or modules in purely circular terms, *i.e.*, as being "used or installed in the United States."  19 C.F.R. § 362.102 (definition of "Utilization").

    b.  Commerce permits "utilization" to occur *after* the emergency has concluded. Specifically, the "Date of Termination" of the emergency constitutes a deadline for entry, but an additional 180 days *after the emergency has ended* are provided for those products to be "used."  *See Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,869; 19 C.F.R. §§ 362.102, 362.103(a) (definition of "Applicable Entries" and "Utilization Expiration Date").  And, if President Biden were to declare the "emergency" to be over today (or any day before the two-year deadline set forth in *Proclamation 10414*), Commerce's regulations then provide that duty-free treatment may nevertheless apply "after the Date of Termination."  *See* 19 C.F.R. § 362.103(b)(2).

    c.  Commerce made no explanation of how it would actually ensure that circumventing CSPV cell and module imports were in fact "utilized" in the United States before the relevant emergency deadline.  *See* 19 C.F.R. § 362.102 (definitions of "Utilization" and "Applicable Entry"); *id.* § 362.103(a).  For example, Commerce has not obliged exporters, importers, or installers to inform Commerce if plans for "use" of the circumventing CSPV cells and modules that

were certified on the date of entry ultimately change in the intervening months after importation. *See* 19 C.F.R. Part 362.

d.   Absent suspension of liquidation, the circumventing CSPV cell and module entries will liquidate by operation of law after one year. *See* 19 C.F.R. § 159.11(a). Given the length of the "emergency," and the fact that Commerce has instructed customs not to suspend liquidation, *see, e.g.*, Message No. 3041408 (Feb. 10, 2023) at ¶10 (**Exhibit 4**), such liquidation will therefore occur for certain entries well before the currently scheduled end of the emergency, *i.e.*, June 5, 2024, or Commerce's self-created "utilization" deadline, *i.e.*, December 2, 2024. Commerce's regulations do not provide for the assessment of duties on entries that liquidate but are not ultimately "utilized."

80.   As for Commerce's refusal to simply use the *Section 318(a) Regulations*, Commerce reiterated its original rationale, *i.e.*, that the preexisting regulations only cover entries that are under order. *See Final Solar Duty Holiday Rule*, 87 Fed. Reg at 56,876. As support, Commerce cites one aspect of the *Section 318(a) Regulations*: those applying for duty-free treatment must "state the AD/CVD order case number." *Id.* at 56,876 n.50. Commerce furthermore states that entries subject to a circumvention inquiry would not be subject to an order prior to an affirmative determination. *Final Solar Duty Holiday Rule*, 87 Fed. Reg at 56,876. These assertions ring hollow, considering that Commerce's *Preliminary Affirmative Determinations of Circumvention* expressly requires that entries either (1) file certifications to benefit from duty-free entry; or (2) enter under one of the AD/CVD order case numbers established by the preliminary results—meaning that all entries *could* fulfill this requirement. 87

Fed. Reg. at 75,224; *see also Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at

57,422 (same).

81.    Commerce concludes by reasoning that the fact a minority of entries of CSPV

cells and modules from Malaysia, Thailand, Vietnam, and Cambodia entered (1) after declaration

of the emergency, but (2) before Commerce's affirmative circumvention determination, should

inoculate all such entries from having to comply with the procedural strictures of the *Section

318(a) Regulations* for the entire duration of the emergency.  *See id.* at 56,877.  Yet, even with

respect to this minority of entries, Commerce's *Preliminary Affirmative Determinations of

Circumvention* expressly requires that they either (1) complete certifications to benefit from

duty-free entry; or (2) file a Post Summary Correction with CBP, converting to an AD/CVD type

entry "using one of the following third-country {AD/CVD} case numbers" established by the

preliminary results, 87 Fed. Reg. at 75,225, demonstrating that no actual barrier exists.

82.    Commerce otherwise simply stated that it was not precluded from using different

procedures and asserted—for the first time—that the *Final Solar Duty Holiday Rule* was better

suited to address this particular "emergency" because "{t}he electricity emergency requires

immediate relief as it is impacting an entire industry and a significant number of Americans."  87

Fed. Reg. at 56,877.

**J.    Commerce Issues Affirmative Preliminary and Final Circumvention
Determinations, But Relies Upon the *Final Solar Duty Holiday Rule* to Take No
Action, Instead of Suspending Liquidation and Collecting Cash Deposits as
Required by 19 C.F.R. § 351.226(l)(2)**

83.    Ultimately, persuaded by the strength of the record evidence demonstrating

unlawful circumvention by CSPV cells and modules from Malaysia, Thailand, Vietnam, and

Cambodia, Commerce issued affirmative preliminary circumvention determinations in all four

inquiries.  *See Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,221.

84.     As noted above, Commerce's circumvention regulation provides, in relevant part, that affirmative preliminary circumvention determinations automatically require Commerce to direct CBP as follows: (1) "continue the suspension of liquidation of previously suspended entries and apply the applicable cash deposit rate;" and (2) "begin the suspension of liquidation and require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product not yet suspended, entered, or withdrawn from warehouse, for consumption on or after the date of publication of the notice of initiation of the inquiry." 19 C.F.R. § 351.226(l)(2)(i)-(ii).

85.     Unfortunately for Solar Plaintiffs and all domestic CSPV cell and module producers, Commerce's observance of its unlawful *Final Solar Duty Holiday Rule* resulted in Commerce failing to undertake the actions required by 19 C.F.R. § 351.226(l).  In particular, Commerce directed CBP ***not*** to suspend liquidation or require a cash deposit of estimated duties for entries of CSPV cells or modules from Malaysia, Thailand, Vietnam, and Cambodia.  *See Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,223 ("Pursuant to 19 CFR 362.103(b)(1)(i), Commerce will direct U.S. Customs and Border Protection (CBP) to discontinue the suspension of liquidation and collection of cash deposits that were ordered based on Commerce's initiation of these circumvention inquiries. In addition, pursuant to 19 CFR 362.103(b)(1)(ii) and (iii), Commerce will not direct CBP to suspend liquidation, and require cash deposits, of estimated ADs and CVDs based on these affirmative preliminary determinations of circumvention on, any 'Applicable Entries.'"); 19 C.F.R. § 362.102 (defining "Applicable Entries" as "entries of Southeast Asian-Completed Cells and Modules that are entered into the United States, or withdrawn from warehouse, for consumption before the Date of

-42-

NON-CONFIDENTIAL VERSION

Termination and, for entries that enter after November 15, 2022, are used in the United States by the Utilization Expiration Date.").

86.     Commerce's instructions to CBP in the wake of its *Preliminary Affirmative Determinations of Circumvention* specifically exempt CSPV cell or modules from Malaysia, Thailand, Vietnam, and Cambodia that would otherwise be subject to suspension of liquidation and cash deposit requirements due to Commerce's affirmative preliminary circumvention findings, so long as the "importer and exporter have met the certification requirements" set forth in Commerce's instructions, *i.e.*, "complet{ing} the applicable certification." *See* Message No. 3041408 (Feb. 10, 2023) at ¶¶ 4, 10, 12b, 12h, 14a(J), 14b(G) (also referencing "documentation…requirements," but clarifying that those only apply "upon request," as opposed to requiring actual submission of documentation in connection with certification or before an importer may take advantage of the duty holiday) (**Exhibit 4**).[10]

87.     After several delays and extensions, Commerce issued its final affirmative circumvention determinations on August 23, 2023. *See Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,419.

---

[10] Commerce's instructions to CBP also set forth certification requirements applicable to two other scenarios: companies preliminarily determined not to be circumventing the antidumping and countervailing duty orders on CSPV cells and modules from China, *see, e.g.*, *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (Appendix III); *id.*, 87 Fed. Reg. at 75,228-30 (Appendix V); Message No. 3041408 at ¶¶ 12a (type 2), 15-17 (**Exhibit 4**); and products that were deemed to fall outside the scope of Commerce's inquiry due to the relative share of Chinese components, *see, e.g.*, *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,222 ("Merchandise Subject to the Circumvention Inquiries"); *id.*, 87 Fed. Reg. at 75,230-31 (Appendix VI); Message No. 3041408 at ¶¶ 12a (type 3), 18 (**Exhibit 4**). While Solar Plaintiffs disagree with aspects of these two certification regimes, Solar Plaintiffs understand that Commerce would have treated these specific companies and products as exempt from the preliminary suspension of liquidation and cash deposit requirements set forth in 19 C.F.R. § 351.226(l)(2), even without the *Final Solar Duty Holiday Rule*. Therefore, it is unnecessary to address these two certification regimes in this litigation.

88.     Similar to the course of action prescribed in response to an affirmative preliminary determination, Commerce's circumvention regulation provides, in relevant part, that affirmative final circumvention determinations automatically require Commerce to direct CBP as follows: (1) "continue the suspension of liquidation of previously suspended entries and apply the applicable cash deposit rate;" and (2) "begin the suspension of liquidation and require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product not yet suspended, entered, or withdrawn from warehouse, for consumption on or after the date of publication of the notice of initiation of the inquiry." 19 C.F.R. § 351.226(l)(3)(i)-(ii)

89.     Unfortunately, rather than implement 19 C.F.R. § 351.226(l)(3), Commerce instead persisted in its unlawful reliance on the *Final Solar Duty Holiday Rule* to eliminate suspension of liquidation and cash deposit obligations with respect to CSPV cells and modules from Cambodia, Malaysia, Thailand, and Vietnam that were found to be circumventing the antidumping and countervailing duty orders on CSPV cells and modules from the PRC.  *See Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,422.  In all respects material to Solar Plaintiffs' action, Commerce's unlawful certification regime and its deficient instructions to CBP remained unchanged from those put in place following Commerce's *Preliminary Affirmative Determinations of Circumvention*.

90.     Thus, relying upon and implementing the basic framework created by the *Final Solar Duty Holiday Rule*, importers were, with one exception discussed below, *see* ¶95, *infra*, obliged to certify as follows in order to take advantage of the exemption from suspension of liquidation and cash deposits that would otherwise have taken effect with Commerce's preliminary and final circumvention determinations:

a.  The CSPV cells or modules "{w}ere produced in" Cambodia, Malaysia, Thailand, or Vietnam "using parts and components manufactured in the People's Republic of China."  *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶(F)1); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(F)1).

b.  The CSPV cells or modules "are not covered by" existing antidumping and countervailing duty orders on CSPV products from either of the following two countries: the People's Republic of China or the Republic of China (Taiwan). *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶(F)3); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(F)3-4).

c.  The CSPV cells or modules entered "before 06/06/2024, or before the date the emergency described in Presidential Proclamation 10414 is terminated, whichever occurs first." *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶(F)4); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(F)5).

d.  Any CSPV cells or modules entered "after 11/15/2022…will be utilized in the United States by no later than 180 days after the earlier of 06/06/2024, or the date the emergency described in Presidential Proclamation 10414 is terminated." *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶(F)5); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(F)6).  "Utilized" is further defined as being "used or installed in the United States," and not "remain{ing} in inventory or in a warehouse in the United

States," being "resold to another party," being "subsequently exported," or being "destroyed after importation."  *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶(F)5); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(F)6).

e.   That certification is being "completed and signed on, or prior to, the date of the entry summary," or within "45 days after publication of the {Preliminary Affirmative Determinations of Circumvention}" if entered on or before December 22, 2022, *i.e.*, the 14th day after publication of the *Preliminary Affirmative Determinations of Circumvention*.  *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶(N)); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(N)).

91.   To take advantage of this exemption, exporters must also certify as follows:

a.   The CSPV cells or modules "{w}ere produced in" Cambodia, Malaysia, Thailand, or Vietnam "using parts and components manufactured in the People's Republic of China."  *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,228 (¶(D)1); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(D)1).

b.   The CSPV cells or modules "are not covered by" existing antidumping and countervailing duty orders on CSPV products from either of the following two countries: the People's Republic of China or the Republic of China (Taiwan).  *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,228 (¶(D)3); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(D)3-4).

Case 1:23-cv-00274-N/A   Document 2   Filed 12/29/23   Page 47 of 64

    c.   That certification is being "completed and signed on, and a copy of the certification was provided to the importer, on, or prior to, the date of shipment," or within "45 days after publication of the {*Preliminary Affirmative Determinations of Circumvention*}" if the date of shipment is before the 14th day after publication of the *Preliminary Affirmative Determinations of Circumvention*. *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,228 (¶(K)); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,427 (¶(K)).

92.    For CSPV cells and modules subject to Commerce's affirmative circumvention determinations that enter more than 14 days after publication of Commerce's *Preliminary Affirmative Determinations of Circumvention*, the importer and exporter certifications described above must be "submit{ted}… to CBP as part of the entry process by uploading them into the document imaging system (DIS) in ACE." *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,225; *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,423 (same). Importers of such entries that are not taking advantage of the aforementioned certification option are required to enter as AD/CVD type entries and report a "third country case number{}," *e.g.*, A-555-902-000 / C-555-903-000 for Cambodia. *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,224; *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,422 (same).

93.    For CSPV cells and modules subject to Commerce's affirmative circumvention determinations that entered between the date of Commerce's *Notice of Initiation* (Apr. 1, 2022) and 14 days after publication of Commerce's Preliminary Affirmative Determinations of Circumvention (Dec. 22, 2022) and are <u>not</u> finally liquidated, the importer and exporter

certifications described above must be "completed and signed" not later than January 22, 2023—but need not be submitted to CBP.  *See Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,225; *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,423 (same); *but see* Message No. 3041408 (Feb. 10, 2023) at ¶¶12f (instructing that "the importer's agent, must submit both the importer's certification and the exporter's certification to CBP," but providing no guidance as to how or when this should occur) (**Exhibit 4**).  Importers of such entries that are not taking advantage of the aforementioned certification option are required to file a "Post Summary Correction" with CBP to "conver{t} such entries from non-AD/CVD type entries to AD/CVD type entries" and "report…{a} third-country case number," *e.g.*, A-555-902-000 / C-555-903-000 for Cambodia. *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,225; *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,423 (same).

94.     For CSPV cells and modules subject to Commerce's affirmative circumvention determinations that entered between the date of Commerce's *Notice of Initiation* (Apr. 1, 2022) and 14 days after publication of Commerce's Preliminary Affirmative Determinations of Circumvention (Dec. 22, 2022) and are finally liquidated, duty-free treatment is obtained without any action or certification whatsoever.  *See Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,225; *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,423 (same).  Critically, neither Commerce's *Preliminary Affirmative Determinations of Circumvention*, nor its *Final Affirmative Determinations of Circumvention*, nor its instructions to CBP appear to fix a deadline by which final liquidation must have occurred in order to benefit from this gap in Commerce's instructions.

95.     Commerce's *Final Solar Duty Holiday Rule* has thus deprived (and continues to deprive) Solar Plaintiffs of their right to relief from unlawful circumvention by CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia—the relief for which Commerce was specifically petitioned.  This harms all parties with an interest in viable domestic CSPV cell and module production.

96.     Given that Commerce has found circumvention to be ongoing, the *Final Solar Duty Holiday Rule* creates a strong incentive—sanctioned duty avoidance—for Chinese firms to ship as many circumventing panels as possible, at least until the expiration of the declared "emergency."  Thus, in a very real sense, Solar Plaintiffs are presently *worse* off than if Commerce had never undertaken circumvention inquiries.

**K.     Congress Repeals the Final Solar Duty Holiday Rule Only for the White House to Veto the Measure**

97.     Cognizant of the damage done to the U.S. solar manufacturing base and the United States' national security interests by Commerce's *Final Solar Duty Holiday Rule*, a bipartisan bicameral Congress took the extraordinary step of exercising its authority under the Congressional Review Act (5 U.S.C. § 802) in opposition to the *Final Solar Duty Holiday Rule*. Congress voted to deprive Commerce's regulation of any "force or effect."  H.J. Res. 39 (**Exhibit 15**).

98.     President Biden, however, vetoed the Joint Resolution on May 16, 2023, and Congress could not override his veto.  Thus, President Biden continued to provide benefits to Chinese solar producers over U.S.-based manufacturers.

**COUNT 1:    19 U.S.C. 1318(a) DOES NOT AUTHORIZE DUTY-FREE IMPORTATION OF CSPV CELLS AND MODULES**

99.     Paragraphs 1 through 98 are incorporated herein by reference.

100.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

101.     19 U.S.C. § 1318(a) does not authorize the duty-free importation of products unless, *inter alia*, those products are:

   a.   imported after the proclamation of an emergency by the President; and

   b.   one of the following: "food, clothing, and medical, surgical, and other supplies;" and

   c.   "for use in emergency relief work."

102.     As the Supreme Court has recently reaffirmed, the words of a statute must be given their ordinary meaning.  *See Biden v. Nebraska*, 143 S. Ct. 2355, 2368 (2023) ("statutory permission to 'modify' does not authorize 'basic and fundamental changes in the scheme' designed by Congress.  Instead, that term carries 'a connotation of increment or limitation,' and must be read to mean 'to change moderately or in minor fashion.'") (internal citations omitted); *see also Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) ("it's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning…at the time Congress enacted the statute.'") (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  Moreover, "the rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose." *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019).  As such, duty-free treatment of CSPV cells and modules plainly contravenes the statute, insofar as the *ejusdem generis* canon of interpretation

demonstrates that "other supplies" must be something akin to medical & surgical supplies, *see, e.g.*, *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022) ("the *ejusdem generis* canon, which instructs courts to interpret a 'general or collective term' at the end of a list of specific items in light of any 'common attribute{s}' shared by the specific items.") (*quoting Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 225 (2008)), yet CSPV cells and modules share no apparent similarity with "medical supplies" and "surgical supplies," as ordinarily understood when 19 U.S.C. § 1318(a) was created.

103.    Insofar as CSPV cells and modules are not "food, clothing, and medical, surgical, and other supplies," 19 U.S.C. § 1318(a) does not apply to CSPV cells and modules and Commerce's invocation of this statute does not allow for duty-free importation of CSPV cells and modules.

104.    Insofar as 19 U.S.C. § 1318(a) requires the importation of food, clothing, and medical, surgical, and other supplies "for use in emergency relief work," and Commerce's *Final Solar Duty Holiday Rule* applies to imports that:

      a.   were imported before the emergency was declared; and/or

      b.   lack any link to a specific project necessary to redress the emergency that was declared; and/or

      c.   are not utilized until after the cessation of the emergency,

      Commerce's *Final Solar Duty Holiday Rule* is unlawful.

105.    A process that would avoid precisely these sorts of excesses of authority was set forth in the *Section 318(a) Regulations*, *see, e.g.*, 19 C.F.R. § 358.103(a)(1), but is pointedly omitted over the objection of interested commenters from the *Final Solar Duty Holiday Rule*.

NON-CONFIDENTIAL VERSION

106.    Solar Plaintiffs are entitled to declaratory judgment that Commerce's actions giving rise to the *Final Solar Duty Holiday Rule* is *ultra vires* and contrary to law.

**COUNT 2:    COMMERCE ACTED ARBITARILY AND CAPRICIOUSLY BY NOT ADOPTING CORE PRINCIPLES FROM ITS SECTION 318 REGULATIONS**

107.    Paragraphs 1 through 106 are hereby incorporated by reference.

108.    As noted above, Section 318(a) only permits duty-free importation of products "for use in emergency relief work."  19 U.S.C. § 1318(a).  While Commerce's *Final Solar Duty Holiday Rule* pays lip service to this mandate, it is notably silent as to how it would meaningfully enforce its on-paper requirement that duty-free CSPV cell and module imports be "utilized" in relief of the declared "emergency" before a certain date, *see* 19 C.F.R. § 362.102 (definitions of "Utilization" and "Applicable Entry"), *id.* § 362.103(a), while also precluding CBP from suspending liquidation of those CSPV cells and modules, *see id.* § 361.103(b)(i)-(ii).

109.    Insofar as CBP is supposedly instructed to suspend liquidation of CSPV cells and modules that are "not Applicable Entries," *i.e.*, not yet "Utilized," then it would appear that CBP must suspend all entries until their qualifying use has been confirmed in some form or fashion, *see* 19 C.F.R. § 362.103(b)(iii), but Commerce's new regulations require no such confirmation, *see id.* § 361.104 (permitting "certifications," but providing no detail).

110.    All that Commerce's certification regime actually requires is a vague promise by the importer that the duty-free CSPV cells or modules will be "utilized" by Commerce's deadline.  *See Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶(F)5); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,426 (¶(F)6) (same); Message No. 3041408 (Feb. 10, 2023) at ¶¶14a(F)5 (**Exhibit 4**).  It is telling that

Commerce claims merely "encouraging imports" somehow "provide{s} relief to this emergency." *Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,872.

111.    Given the putative length of this "emergency" (plus Commerce's unlawful 180-day add-on), a CSPV cell or module could enter the United States in December 2022, liquidate by operation of law one year later, *see* 19 C.F.R. § 159.11(a), never be "use{d} in emergency relief work," 19 U.S.C. § 1318(a), but instead sit stockpiled in a warehouse well after the expiration of the "emergency." Such a CSPV cell or module would thus benefit from duty-free treatment in contravention of the requirements of 19 U.S.C. § 1318(a).

112.    Commerce appeals to a supposed need for "market certainty" to obtain CSPV cells and modules from circumventing solar producers in Malaysia, Thailand, Vietnam, and Cambodia, *see Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,878, but this is wholly speculative and outside the bounds of any lawful consideration under 19 U.S.C. § 1318(a).

113.    In marked contrast, Commerce's *Section 318(a) Regulations*, *see, e.g.*, 19 C.F.R. § 358.103(a)(1), include the type of linkage required and were developed through extensive interagency consideration and lengthy notice and comment rulemaking. Yet, Commerce jettisoned the statutory requirements from the *Final Solar Duty Holiday Rule*.

114.    Insofar as Commerce's *Final Solar Duty Holiday Rule* did not apply the same (or reasonably analogous) linkage requirements found in its *Section 318(a) Regulations*, which are tied to the statute's terms, Commerce acted arbitrarily and capriciously. This is an excess of Commerce's authority under 19 U.S.C. § 1318(a) and furthermore violates the standards established by 5 U.S.C. § 706(2)(A).

**COUNT 3:   COMMERCE ACTED CONTRARY TO THE ADMINISTRATIVE PROCEDURE ACT WHEN IT GRANTED DUTY-FREE TREATMENT TO PRODUCTS IMPORTED OUTSIDE THE PERIOD OF THE EMERGENCY**

115.    Paragraphs 1 through 114 are hereby incorporated by reference.

116.    The Administrative Procedure Act ("APA") provides a right of action for any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," and waives the United States' sovereign immunity for this purpose.  5 U.S.C. § 702.

117.    Under the APA, this court may review "{a}gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

118.    The APA specifies that the "reviewing court shall":

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

**A. Commerce's Tariff Holiday Coverage of CSPV Cells and Modules <u>Before</u> the Emergency**

119.    The June 6, 2022, Proclamation 10414 specifically purports to empower Commerce to consider allowing duty-free "importation" of certain CSPV cells and modules from Cambodia, Malaysia, Thailand, and Vietnam "until 24 months *after the date of this proclamation or until the emergency declared herein has terminated, whichever occurs first.*" 87 Fed. Reg. at 35,068 (emphasis supplied); *see also Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,869 (quoting the same). Even assuming that Proclamation 10414's authorization were valid, it expressly excludes products imported (and thus entered) prior to the Proclamation itself. *See, e.g.*, 19 C.F.R. § 101.1 (defining the "Date of Importation" as "the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise"); *id.* §§ 101.1, 141.68 (defining "Date of Entry" by reference to various post-arrival activities). Even Commerce's own Preamble quotes a regulation stating that duty assessment occurs "after merchandise is imported." *See Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,877 & n.58 (quoting 19 C.F.R. § 351.212(a)) (emphasis supplied).

120.    Insofar as Commerce acted contrary to Proclamation 10414's express terms, Commerce acted *ultra vires*.

121.    Similar to Proclamation 10414, the statute permits duty-free "importation" only where certain preconditions are met, including "{w}henever the President shall by proclamation declare an emergency to exist…" 19 U.S.C. § 1318(a). Yet, Commerce's *Final Solar Duty Holiday Rule* expressly applies to CSPV cells and modules "that entered the United States both before and after the signing of the Proclamation," and waives any potential duty liability until "the Date of Termination (defined as June 6, 2024, or the date the emergency described in Presidential Proclamation 10414 has been terminated, whichever occurs first)." 87 Fed. Reg. at

**NON-CONFIDENTIAL VERSION**

56,869-70 (emphasis supplied); *see also* 19 C.F.R. § 362.103(a).  This exceeds the authority allegedly bestowed by Proclamation 10414 and violates an express prerequisite of 19 U.S.C. § 1318(a).  Moreover, it is a formulation without precedent in the *Section 318(a) Regulations*, which exclusively conceive of duty-free treatment of certain post-Proclamation entries.  See 19 C.F.R. §§ 358.103(a), (a)(1).

122.     Insofar as Commerce acted contrary to the plain language of 19 U.S.C. § 1318(a), Commerce acted contrary to law.

**B.      Commerce's Tariff Holiday Coverage of CSPV Cells and Modules <u>After</u> the Emergency Is Over**

123.     Commerce's *Final Solar Duty Holiday Rule* is also deficient in its approach to the end of the "emergency."  For comparison, Commerce's preexisting *Section 318(a) Regulations* set forth a default requirement that goods benefiting from a duty waiver enter the United States within 60 days of approval and be used in emergency relief work.  *See* 19 C.F.R. § 358.103(c)–(d).  Commerce's new *ad hoc* rule instead fixes the "Date of Termination" of the emergency as a deadline for all entries, and then provides an additional 180 days *after the emergency has ended* for those products to be used.  *See Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,869; 19 C.F.R. §§ 362.102, 362.103(a) (definition of "Applicable Entries" and "Utilization Expiration Date").  Put differently, Commerce is effectively extending the length of the emergency by at least 25%.

124.     By definition, "emergency relief work", is only possible during an "emergency."  Commerce itself acknowledges that "section 318 extends to any duty that may result from {circumvention} inquiries that would otherwise apply *before the period of emergency concludes*," *Final Solar Duty Holiday Rule*, 87 Fed. Reg. at 56,871 (emphasis supplied), and that

"declaration of {an} emergency is committed by section 318 to the President's discretion," *id.* at 56,872.

125.     Accordingly, Commerce's decision to allow CSPV cells and modules to be used long after the emergency is terminated is an *ultra vires* action and contrary to law.

**COUNT 4:     COMMERCE ACTED CONTRARY TO THE ADMINISTRATIVE PROCEDURE ACT BY PERMITTING DUTY FREE TREATMENT TO BE DETERMINED LONG AFTER IMPORTATION**

126.     Paragraphs 1 through 125 are hereby incorporated by reference.

127.     At most, 19 U.S.C. § 1318(a) and *Proclamation 10414* each permit the "importation" of qualifying products free of duty.  Because "importation" refers to oceangoing products' "arrival" at port, *see, e.g.*, 19 C.F.R. § 101.1 (defining "Date of Importation"); 19 C.F.R. § 351.212(a) (stating that duty assessment occurs after importation), duty-free "importation" necessarily requires that duty treatment be determined *before* the products arrive at port.  Otherwise, Commerce would be effecting something other than duty-free "importation." *See, e.g.*, 19 C.F.R. §§ 101.1, 141.68 (defining other stages in the process).

128.     Commerce's CBP instructions and its *Final Solar Duty Holiday Rules* purport to retroactively bestow duty-free treatment upon certain products that had arrived in port at some earlier date.  Such retroactive duty-free treatment is not "*importation* free of duty" and therefore exceeds the agency's authority under both 19 U.S.C. § 1318(a) and *Proclamation 10414*.

129.     In addition, Section 318(a) only permits duty-free importation for products "for use in emergency relief work."  19 U.S.C. § 1318(a).  To ensure that this second prerequisite is satisfied, Commerce must therefore establish some reasonable process for determining whether goods will be used in emergency relief work, and this determination must occur *before* their

importation, *i.e.*, arrival in port.[11]  Precisely this sort of process was set forth in the *Section 318(a) Regulations*, *see, e.g.*, 19 C.F.R. § 358.103(a)(1), but is pointedly omitted from the *Final Solar Duty Holiday Rule*.

130.    The *Final Solar Duty Holiday Rule* permits certification of "utilization" to occur *after importation* for goods entered on or before December 22, 2022, and on the date of the entry summary (not importation) for all other entries.  *See* 19 C.F.R. §§ 362.103, 362.104 (permitting Commerce to establish some such certification regime later); *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,227 (¶¶(F)5, (N)) (certification procedures established without notice and comment, which only require importers sign a vague certification of "utilization" and permit such signature to occur *after importation* for certain entries, and on the date of the entry summary for all other entries); *Final Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 57,426 (¶¶(F)6, (N)) (same); Message No. 3041408 (Feb. 10, 2023) at ¶¶13, 14a(F)5 (carrying forward the foregoing requirements) (**Exhibit 4**).

131.    For CSPV cells and modules subject to Commerce's affirmative circumvention determinations that enter more than 14 days after publication of Commerce's Preliminary Affirmative Determinations of Circumvention, *i.e.*, December 23, 2022, or later, the importer and exporter certifications described above must ostensibly be "submit{ted}… to CBP as part of the entry process by uploading them into the document imaging system (DIS) in ACE." *Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,225; *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,423 (same).  By contrast, for CSPV cells and modules subject to Commerce's affirmative circumvention determinations that

---

[11] As noted below, if it were known that "use in emergency relief work" did not ultimately occur following importation, duty-free treatment must be rescinded.

NON-CONFIDENTIAL VERSION

entered between the date of Commerce's Notice of Initiation (Apr. 1, 2022) and 14 days after publication of Commerce's Preliminary Affirmative Determinations of Circumvention (Dec. 22, 2022), the procedures are unclear.  Commerce's Federal Register publications indicate that no party is required to actually *submit* the certification to CBP unless, at some later point, it is requested—an extreme degree of permissiveness that amounts to no process at all, gives the agency no basis to assume that use in emergency relief work occurs within a relevant period, and is ripe for abuse.  *See Preliminary Affirmative Determinations of Circumvention*, 87 Fed. Reg. at 75,226; *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,424 (same).  By contrast, Commerce's instructions to CBP state that for such entries where certifications were not submitted "as part of the entry process, the importer, or the importer's agent, must submit both the importer's certification and the exporter's certification to CBP."  Message No. 3041408 (Feb. 10, 2023) at ¶¶12f (**Exhibit 4**).  No guidance is provided as to how or when this after-the-fact submission should occur.  *See id.*  (**Exhibit 4**).

132.    That Commerce's certification regime permits certification to be completed *after* importation places the *Final Solar Duty Holiday Rule* and Commerce's implementation thereof outside the bounds of what either *Proclamation 10414* or 19 U.S.C. § 1318(a) permit.

**COUNT 5:     COMMERCE'S DEFINITION OF "UTILIZATION" IS CONTRARY TO THE PLAIN LANGUAGE OF THE STATUTE AND FINDS NO REASONABLE JUSTIFICATION IN COMMERCE'S RULEMAKING**

133.    Paragraphs 1 through 132 are incorporated by reference.

134.    19 U.S.C. § 1318(a) permits the duty-free importation of certain products solely "for use in emergency relief work," and *Proclamation 10414* defines the "emergency" as U.S. "electricity generation capacity," 87 Fed. Reg. at 35,068.

135.    Insofar as Commerce's new regulations and its certifications define emergency "utilization" as CSPV cells or modules simply being "used or installed in the United States," 19 C.F.R. § 362.102 (definition of "Utilization"); Message No. 3041408 (Feb. 10, 2023) at ¶¶14a(F)5 (**Exhibit 4**), this definition is inadequate as a matter of law, insofar as a CSPV cell or module could easily be "installed" without actually contributing *anything* to U.S. "electricity generation capacity," *e.g.*, by being fixed into place but not connected to the electricity grid.

136.    Commerce was informed that import duties were far less of an impediment to solar energy deployment than the lack of infrastructure needed to connect solar panels to the grid.  *See, e.g.*, Auxin Solar Comments in Opposition to Proposed Solar Duty Holiday Rule at 41 (**Exhibit 3**).  Indeed, this precise disconnect is being addressed by CCE using systems that exclusively employ domestically produced CSPV modules.  That Commerce failed to account for the foregoing aspect of the declared "emergency" is arbitrary, renders its definition of "use in emergency relief work" inconsistent with both Proclamation 10414 and Section 318(a), and constitutes an unlawful failure to "respond in a reasoned manner to {comments} that raise significant problems."  *City of Waukesha v. EPA*, 320 F.3d 228, 257 (D.C. Cir. 2003).

**COUNT 6:    COMMERCE FAILED TO ENGAGE WITH OTHER SIGNIFICANT COMMENTS RAISED DURING THE NOTICE-AND-COMMENT PERIOD**

137.    Paragraphs 1 through 136 are incorporated herein by reference.

138.    Commerce "must respond in a reasoned manner to {comments} that raise significant problems."  *City of Waukesha v. EPA*, 320 F.3d 228, 257 (D.C. Cir. 2003).  "Significant comments are those which, if true, raise points relevant to the agency's decision and which, if adopted, would require a change in an agency's proposed rule."  *City of Portland v. EPA*, 507 F.3d 706, 715 (D.C. Cir. 2007).

139.    Per *Proclamation 10414*, the connection between the broader "electricity generation capacity" emergency and solar energy specifically was "solar projects being postponed or canceled."  *See* 87 Fed. Reg. at 35,067-68.  Yet, the *Final Solar Duty Holiday Rule* does not limit (or even preference) duty relief to solar products from Cambodia, Malaysia, Thailand, or Vietnam that are to be used in "postponed or canceled" solar power generation projects.  *See* 87 Fed. Reg. at 56,875.  With respect to requiring such a connection, Commerce newly asserted "administrability" concerns in the Preamble to its final rule, *see id.*, yet the sort of certification regime created by the *Section 318(a) Regulations* could easily ensure the necessary connection, and Commerce evidently considered such certifications perfectly "administrable."

140.    Similarly, despite the fact that any electricity generation "emergency" does not affect all locales and regions of the United States equally, Commerce's *Final Solar Duty Holiday Rule* rebuffed requests that it ascertain *where* benefiting CSPV cells and modules were proposed to be installed and utilized.  *See* 87 Fed. Reg. at 56,880.  Commerce's *ad hoc* regulations thus grant duty-free treatment to products that do not actually address any electricity generation "shortfall" where they are actually installed and used.

141.    Whereas Commerce was informed, based on independent third party reports, of the strong likelihood that CSPV cells and modules from countries subject to circumvention inquiries were likely produced using forced labor in the value chain, *see* Auxin Solar Comments in Opposition to Proposed Solar Duty Holiday Rule at 25-26 (**Exhibit 3**) (quoting J. Cockayne, *et al.*, "The Energy of Freedom? Solar Energy, Modern Slavery and the Just Transition," *University of Nottingham* (March 2022)), Commerce's *Final Solar Duty Holiday Rule* fails to address how its procedures account for such risks, instead stating that forced labor concerns related to CSPV cells and modules from Malaysia, Thailand, Vietnam, and Cambodia are

somehow "outside the scope" of Commerce's rulemaking that would streamline the duty-free importation of those very products while refusing to collect any information concerning the same.  *See* 87 Fed. Reg. at 56,879; 19 C.F.R. § 362.103.

142.    Commerce was also informed about the carbon-intensity of China's production of solar modules and the carbon intensity of the international freight associated with shipping such modules and their parts from China to a third country and then to the United States.  Commerce did not engage with these facts in light of the emergency declared.

143.    Commerce advances no coherent reason for failing to collect information that could be used to advance its Congressionally mandated anti-forced labor enforcement mission.

**COUNT 7:    BECAUSE COMMERCE'S FINAL SOLAR DUTY HOLIDAY RULE IS UNLAWFUL, COMMERCE'S FAILURE TO FOLLOW ITS DUTY COLLECTION AND SUSPENSION OF LIQUIDATION REGULATIONS IS UNLAWFUL**

144.    Paragraphs 1 through 143 are hereby incorporated by reference.

145.    Because Commerce's *Final Solar Duty Holiday Rule* is unlawful and otherwise violates the standards set forth in 5 U.S.C. § 706(2), Commerce's refusal to take the actions mandated by 19 C.F.R. § 351.226(l) in reliance upon the *Final Solar Duty Holiday Rule* is an unlawful withholding and unreasonable delay of agency action.

NON-CONFIDENTIAL VERSION

## <u>REQUEST FOR JUDGMENT AND RELIEF</u>

WHEREFORE, Solar Plaintiffs respectfully request that this Court:

a. Hold that Commerce's *Final Solar Duty Holiday Rule* is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or otherwise contrary to the standards set forth in 5 U.S.C. § 706(2);

b. Order vacatur of Commerce's *Final Solar Duty Holiday Rule.* If this Court concludes that it cannot order vacatur of Commerce's *Final Solar Duty Holiday Rule*, then Solar Plaintiffs respectfully request that this Court instead order that Commerce's *Final Solar Duty Holiday Rule* be remanded for further proceedings to address the infirmities identified throughout this Complaint, and that operation and implementation of the *Final Solar Duty Holiday Rule* be suspended until all such infirmities are addressed and this Court issues a judgment sustaining a revised *Final Solar Duty Holiday Rule* that complies with all standards set forth in 5 U.S.C. § 706(2);

c. Order Commerce and its officers to implement the actions mandated by 19 C.F.R. § 351.226(l);

d. Order CBP and its officers to suspend liquidation of entries of CSPV cell and module imports from Malaysia, Thailand, Vietnam, and Cambodia and collect cash deposits of estimated antidumping and countervailing duties on entries of the same unless and until, with respect to the country in question, Commerce reaches a negative final determination in the ongoing circumvention inquiry concerning CSPV cells and modules from that country;

e. Provide reasonable attorneys' fees and costs; and

**NON-CONFIDENTIAL VERSION**

f.   Grant such further relief as this Court deems just and proper.

\*      \*      \*

Respectfully submitted,

December 29, 2023                          /s/ Thoms M. Beline

Thomas M. Beline
James E. Ransdell
Chase J. Dunn

**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone: (202) 567-2316
Fax: (202) 567-2301

*Counsel for Auxin Solar, Inc., and
Concept Clean Energy, Inc.*