**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |
|---|---|
| AUXIN SOLAR INC. AND CONCEPT CLEAN ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES; UNITED STATES DEPARTMENT OF COMMERNCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER, <br><br> Defendants. | Court. No. 23-00274 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**MOTIONS TO INTERVENE**

Thomas M. Beline
Roop K. Bhatti*
James E. Ransdell
Chase J. Dunn
Sydney C. Reed

**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400

Washington, D.C. 20006

Phone: (202) 567-2316
Fax: (202) 567-2301

*Counsel for Auxin Solar Inc. and*
*Concept Clean Energy, Inc.*

February 16, 2024

*Admitted in Illinois; practice
limited to matters before
federal courts and agencies.

# Table of Contents

STATEMENT OF FACTS ............................................................................................... 2

SUMMARY OF ARGUMENT ....................................................................................... 4

ARGUMENT .................................................................................................................. 9

   I.   None of the Proposed Intervenors Has Established Article III Standing............................ 9

     A.   The Motions of Canadian Solar, JA Solar, Risen, and Trina Must Be Denied for Failure to Address Standing ........................................................................................ 10

     B.   No Movant's Submission Is Adequate to Establish "Piggyback" Standing ............... 10

     C.   Invenergy Has Not Established Independent Article III Standing ............................. 13

        1.   What Invenergy Describes as "Injurious" is Either Harmless or Falls Outside the Zone of Interests of the Emergency Duty Waiver Statute.........................................15

        2.   Invenergy's Theory of Causation is Flawed Because its Duty Liability is Traceable to a Different Administrative Determination and Invenergy Has Failed to Establish its Qualification for Final Solar Duty Holiday Rule Benefits......................................16

        3.   Invenergy's Standing Theory Violates the "General Rule" Against Litigants Asserting Third Party Rights and Interests................................................................18

   II.   Proposed Defendant-Intervenors' Asserted Interests in this Litigation Are "Merely Economic" and None Has Established a Right to Intervene under USCIT Rule 24(a)(2)19

     A.   The Proposed Defendant-Intervenors' Asserted Interests Are Foreclosed by Binding Federal Circuit Precedent ........................................................................................ 20

     B.   A Judgment for Solar Plaintiffs Threatens no Direct and Immediate Harm to a Legally Protectable Interest of Proposed Defendant-Intervenors........................................... 26

     C.   The Government Is Presumed to Be an Adequate Representative and Proposed Defendant-Intervenors Fail to Identify any Legally Protectable Interest of theirs that Is Inadequately Addressed ....................................................................................... 28

     D.   This Court Should Assess the "Timeliness" of Proposed Defendant-Intervenors' Motions only as of the Date by which those Motions Are Completed with Pleadings32

   III.   Proposed Defendant-Intervenors Have Failed to Qualify for Permissive Intervention Under USCIT Rule 24(b), and Would Unduly Delay these Proceedings and Cause Prejudice to Solar Plaintiffs............................................................................................. 35

     A.   Proposed Defendant-Intervenors Fail to Identify a Conditional Right for Which they Qualify................................................................................................................... 37

     B.   Proposed Defendant-Intervenors Do Not Possess Any Defense in this Action, Much Less Share One with the Government....................................................................... 39

     C.   Permitting Eighteen New Parties to Intervene Would Unduly Delay Proceedings, Prejudice Solar Plaintiffs, and Accomplish Little to Protect Proposed Defendant-Intervenors' Stated Interests ................................................................................... 41

        1.   Permitting Proposed Intervention Would Unduly Delay these Proceedings and Has Already Prejudiced Solar Plaintiffs .............................................................................41

    2.     Adequate Government Representation and Proposed Defendant-Intervenors' Plans to Introduce Ancillary Issues Further Counsel Against Permitting Intervention .........44

    3.     Amicus Curiae Submissions Offer Proposed Defendant-Intervenors a Potential Path for Expressing their Views Before this Court ..........................................................46

CONCLUSION.......................................................................................................................... 46

# Table of Authorities

Page(s)

U.S. Constitution

Article III ............................................................................................ *passim*

Statutes

19 U.S.C. § 1318(a) ...............................................................................5, 14, 16

19 U.S.C. § 1677j(b)(1) ..........................................................................16, 26

28 U.S.C. 1581(i) ..................................................................................4, 25, 34

28 U.S.C. 1581(c) ................................................................17, 25, 27, 39

28 U.S.C. 2631(j)(1) ........................................................8, 36, 37, 38

Regulations

19 C.F.R. § 351.226(1) ............................................................................3

19 C.F.R. § 362.101 ...............................................................................3

19 C.F.R. § 362.102 ...............................................................................17, 18

Court Decisions

*Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320 (Fed. Cir. 2013) ..............................17

*Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559 (Fed. Cir. 1989)..................21, 23, 26, 27

*Am. Nat'l Bank & Tr. Co. v. Chicago*, 865 F.2d 144 (7th Cir. 1989) ...........................................25

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)................................................................25

*Argentum Pharms. LLC v. Novartis Pharms. Corp.*, 956 F.3d 1374 (Fed. Cir. 2020).................15

*Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667 (D.C. Cir. 2013)...........................13

*Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754 (6th Cir. 2018) ..........................................43

*BBX Capital v. Federal Deposit Insurance Corp.*, 956 F.3d 1304 (11th Cir. 2020)....................17

*Bradley v. Milliken*, 828 F.2d 1186 (6th Cir. 1987)........................................................46

*Bush v. Viterna*, 740 F.2d 350 (5th Cir.1984)................................................................46

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) ....................33

*California Steel Indus., Inc. v. United States*, 48 F.4th 1336 (Fed. Cir. 2022)..................... *passim*

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989) ..................................................42

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).......................................................18

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312 (D.C. Cir. 2015) ........................................................................................................................38

*Diamond v. Charles*, 476 U.S. 54 (1986) .......................................................................40

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978).................19

*Galbreath v. Metro. Tr. Co. of California*, 134 F.2d 569 (10th Cir. 1943) ....................31

*Gen. Elec. Co. v. United Techs. Corp.*, 928 F.3d 1349 (Fed. Cir. 2019) .......................15

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) .............................14, 18

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)................................................................42

*Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141 (S.D. Cal. 1954)........................31, 43

*Hinck v. United States*, 127 S. Ct. 2011 (2007) .............................................................19

*HiSteel Co., Ltd. v. United States*, 592 F. Supp. 3d 1339 (Ct. Int'l Trade 2022) ..........11

*Hoots v. Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982)....................................................43

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)..............22

*In re Section 301 Cases*, 524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ........................15

*John Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001)...........................................33

*Jones v. Prince George's Cnty.*, 348 F.3d 1014 (D.C. Cir. 2003) .................................31

*Kalbers v. United States Dep't of Just.*, 22 F.4th 816 (9th Cir. 2021).........................33

*Keith v. Daley*, 764 F.2d 1265 (7th Cir. 1985) ..............................................................40

*Kirsch v. Dean*, 733 F. App'x 268 (6th Cir. 2018) ........................................................43

*Kneeland v. Luce*, 141 U.S. 437 (1891) ........................................................................43

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ....................40, 41

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ...................................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .......................13, 16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).................................................13, 16, 24

*Macon Cnty. Invs., Inc. v. Warren*, 2006 WL 2927470 (M.D. Ala. 2006)...................22

*Manuli Autoadesivi v. United States*, 602 F. Supp. 96 (Ct. Int'l Trade 1985).............36

*Maverick Media Group, Inc. v. Hillsborough County, Fla.*, 528 F.3d 817 (11th Cir. 2008) ........17

*Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548 (6th Cir. 2021)...........................17

*Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995)..........................................................................................23

*Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345 (1973).............35, 42

*Neo Solar Power Corp. v. United States*, 2016 WL 3390237 (Ct. Int'l Trade June 17, 2016) .....12

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984)...........23

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*,
646 F.2d 117 (4th Cir. 1981) .......................................................................................31

*NLMK Pennsylvania, LLC v. United States*, 553 F. Supp. 3d 1354 (Ct. Int'l Trade 2021)...........38

*N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313 (Ct. Int'l Trade 2021) .......... *passim*

*Ontario Forest Indus. Ass'n v. United States*, 444 F. Supp 2d 1309 (Ct. Int'l Trade 2006) ........37

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) ...............................44

*Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793 (7th Cir. 2019) ..........................44

*PrimeSource Bldg. Prod., Inc. v. United States*, 494 F. Supp. 3d 1307
(Ct. Int'l Trade 2021) ........................................................................................ *passim*

*Raines v. Byrd*, 521 U.S. 811 (1997) .........................................................................11

*Rohm & Haas Co. v. U.S. Int'l Trade Comm'n*, 554 F.2d 462 (C.C.P.A. 1977)..........................38

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ........................................................23

*Sec. & Exch. Comm'n v. Invs. Sec. Leasing Corp.*, 610 F.2d 175 (3d Cir. 1979) ........................12

*Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434 (1940) ........................................35

*Severstal Exp. GmbH v. United States*, 2018 WL 1779351 (Ct. Int'l Trade 2018) ......................35

*Shevlin v. Schewe*, 809 F.2d 447 (7th Cir. 1987) ..................................................11, 12

*Siebring v. Hansen*, 346 F.2d 474 (8th Cir. 1965) ........................................................31

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ........................................................33

*Silver Reed America, Inc. v. United States*, 600 F. Supp. 846 (Ct. Int'l Trade 1984) .................33

*Southmark Corp. v. Cagan*, 950 F.2d 416 (7th Cir. 1991) ..........................................45

*South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir. 1982) ........................................33

*Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326 (9th Cir. 1977) ........................................12

*State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13 (1st Cir. 2001) ........................................46

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987) ........................................36

*Sumecht NA, Inc. v. United States*, 923 F.3d 1340 (Fed. Cir. 2019) ........................................43

*Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703
(C.C.P.A. 1982) ........................................................33, 34, 35, 46

*Taylor Communications Group, Inc. v. Southwestern Bell Telephone Co.*,
172 F.3d 385 (5th Cir. 1999) ........................................................42

*Texas v. E.P.A.*, 726 F.3d 180 (D.C. Cir. 2013) ........................................................17

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ........................................................21

*Texas v. United States Dep't of Energy*, 754 F.2d 550 (5th Cir. 1985) ........................................30, 46

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................................4, 11

*Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regulation Comm'n*,
787 F.3d 1068 (10th Cir. 2015) ........................................................44

*United States v. California Co-op. Canneries*, 279 U.S. 553 (1929) ........................................31

*United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704 (11th Cir. 1991) ..................................45

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) ............................................24

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ...............................................................................................................9

*Vinson v. Washington Gas Light Co.*, 321 U.S. 489 (1944) ..........................................................31

*Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982) ........................................................21, 25, 28

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92 (2d Cir. 1990)............45

*WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192 (10th Cir. 2010)..................................24

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)...........................................41

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fisherman's Associations*, 695 F.3d 1310 (Fed. Cir. 2012)............................................................................................ *passim*

Administrative Determinations

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75,223 (Dec. 8, 2022) .......................................................................3

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023) ......... *passim*

Other Administrative Materials

*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties In Accord With Presidential Proclamation 10414,* 87 Fed. Reg. 56,868 (Sept. 16, 2022) (Final Rule) ........ *passim*

*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 39,426 (July 1, 2022) (Proposed Rule) .........2, 24

Court Rules

F.R.C.P. 24(b)(2) ........................................................................................................................43

F.R.C.P. 24(c) ......................................................................................................................11, 12

USCIT Rule 1 .......................................................................................................................34, 45

USCIT Rule 7(d)...........................................................................................................1

USCIT Rule 8(a)(2)....................................................................................................40

USCIT Rule 8(c)(1).....................................................................................................11

USCIT Rule 8(c)(1)(A)..........................................................................................40, 41

USCIT Rule 8(c)(5).....................................................................................................11

USCIT Rule 8(c)(6).....................................................................................................11

USCIT Rule 24(a)..............................................................................................28, 32, 35

USCIT Rule 24(a)(2)...........................................................................................*passim*

USCIT Rule 24(b)................................................................................................*passim*

USCIT Rule 24(b)(1)................................................................................................4, 36

USCIT Rule 24(b)(1)(A)......................................................................................*passim*

USCIT Rule 24(b)(1)(B)......................................................................................*passim*

USCIT Rule 24(b)(3)........................................................................................36, 41, 42

USCIT Rule 24(c).......................................................................................11, 12, 40

USCIT Rule 24(c)(1)....................................................................................10, 12, 34

USCIT Rule 65(e).........................................................................................................9, 44

Proposed Defendant-Intervenors' submissions largely fail to address—much less satisfy—the controlling in-circuit requirements for intervention. Each has failed to meet Article III standing requirements. In claiming a right to intervene under United States Court of International Trade ("USCIT") Rule 24(a)(2), all rely on economic interests or undifferentiated public interests that were proscribed by the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") in *California Steel*. Nor are any of the proposed intervenors eligible for permissive intervention under USCIT Rule 24(b). The Court should deny all nine pending motions and proceed to establish a briefing schedule on the merits of Solar Plaintiffs' claims.

Pursuant to USCIT Rule 7(d), Plaintiffs Auxin Solar Inc. ("Auxin Solar") and Concept Clean Energy, Inc. ("CCE") (together, "Solar Plaintiffs") hereby submit this consolidated response to the motions to intervene filed in this action.[1] *See* ACP Mot. to Intervene, ECF Doc. 21 (Jan. 26, 2024); SEIA Mot. to Intervene, ECF Doc. 24 (Jan. 26, 2024); Canadian Solar Mot. to Intervene, ECF Doc. 25 (Jan. 26, 2024); JA Solar Mot. to Intervene, ECF Doc. 28 (Jan. 26, 2024); NextEra Mot. to Intervene, ECF Doc. 29 (Jan. 26, 2024); BYD Mot. to Intervene, ECF Doc. 35 (Jan. 26, 2024); Invenergy Mot. to Intervene, ECF Doc. 44 (Jan. 29, 2024); Trina Mot. to Intervene, ECF Doc. 45-1 (Jan. 29, 2024); Risen Mot. to Intervene, ECF Doc. 50 (Jan. 31, 2024) (together collectively, "Proposed Defendant-Intervenors"). All Proposed Defendant-

---

[1] Proposed Defendant-Intervenors include the American Clean Energy Power Association ("ACP"); the Solar Energy Industries Association ("SEIA"); Canadian Solar (USA) Inc. ("CSUSA") and Canadian Solar International Limited ("CSIL") (collectively, "Canadian Solar"); JA Solar USA, Inc., JA Solar Vietnam Company Limited, JA Solar Malaysia Sdn. Bhd., and JA Solar International Limited (collectively, "JA Solar"); NextEra Energy, Inc. ("NextEra"); BYD (H.K.) Co., Ltd. ("BYD HK") and BYD America LLC ("BYD America") (collectively, "BYD"); Invenergy Renewables LLC and its affiliates, including Invenergy Solar Equipment Management LLC (collectively, "Invenergy"); Trina Solar (U.S.), Inc. ("TUS"), Trina Solar Science & Technology (Thailand) Ltd. ("TTL"), Trina Solar Energy Development Company Limited ("TEDC"), and Trina Solar (Vietnam) Science & Technology Co., Ltd. ("TVN") (collectively, "Trina"); and Risen Solar Technology Sdn. Bhd. ("Risen").

Intervenors seek permissive intervention under USCIT Rule 24(b) and all except Risen also claim a right to intervene under USCIT Rule 24(a)(2).  Solar Plaintiffs request that this Court deny the motions of all Proposed Defendant-Intervenors.

**STATEMENT OF FACTS**

The regulation challenged in Solar Plaintiffs' Complaint was published on September 16, 2022, before the U.S. Department of Commerce ("Commerce") had delivered either preliminary or final determinations in the circumvention inquiries covering Crystalline Silicon Photovoltaic ("CSPV") cells and modules imported from Cambodia, Malaysia, Thailand, and Vietnam using parts and components from the People's Republic of China ("PRC").  *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties In Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Sept. 16, 2022) ("*Final Solar Duty Holiday Rule*"); Complaint, ECF Doc. 14 (Jan. 17, 2024) at ¶¶51-55, 65-71.  Before publication of the final rule, Commerce issued a notice of proposed rulemaking and provided "the public" 30 days to submit comments, noting that it "will consider all comments received before the close of the comment period."  *See Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 39,426, 39,429 (July 1, 2022) ("*Proposed Solar Duty Holiday Rule*").  Auxin Solar and six of the eighteen proposed intervenor entities filed comments in response.  *See* **Exhibit 1** (summarizing which proposed intervenor entities filed regulatory comments).

After issuing the *Final Solar Duty Holiday Rule*, Commerce consistently characterized the associated rulemaking as separate and distinct from its final determinations as to whether circumvention was occurring.  *See, e.g.*, *Cambodia Final IDM* at 113; *Malaysia Final IDM* at 104; *Thailand Final IDM* at 113; *Vietnam Final IDM* at 111 ("Commerce was not required to memorialize for the record communications on matters <u>distinct from the AD/CVD proceedings at</u>

hand, including Presidential Proclamation 10414 <u>or the rulemaking resulting from that Proclamation</u>.") (emphasis supplied).[2] Commerce described its *Final Solar Duty Holiday Rule* as preemptively "set{ting} forth the actions the Secretary <u>is taking</u> to respond to the emergency declared in Presidential Proclamation 10414." 19 C.F.R. § 362.101 (emphasis supplied).

Ultimately, Commerce issued preliminary and final determinations that circumvention was occurring, thereby establishing that the products at issue were within the scope of the antidumping and countervailing duty orders on CSPV cells and modules from the PRC and triggering cash deposit obligations and the suspension of liquidation under Section 351.226(l) of Commerce's circumvention regulation. *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75,221, 75,223-26 (Dec. 8, 2022) ("*Preliminary Affirmative Determinations of Circumvention*"); *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419, 57,421-22 (Aug. 23, 2023) ("*Final Affirmative Determinations of Circumvention*"); 19 C.F.R. § 351.226(l). However, instead of applying its ordinary circumvention regulation, Commerce instead applied the *Final Solar Duty Holiday Rule* and instructed CBP to exempt CSPV cells and modules from Malaysia, Thailand, Vietnam, and

---

[2] These four IDMs are attached to Solar Plaintiffs' response to Defendants' Motion to Dismiss. *See* ECF Doc. 55 (Feb. 16, 2024) at Exhibits 2-5.

Cambodia from suspension of liquidation and cash deposit requirements, so long as the importers and exporters complied with Commerce's certification regime.

Because Solar Plaintiffs consider Commerce's *Final Solar Duty Holiday Rule* and associated CBP instructions unlawful, Solar Plaintiffs launched this appeal under 28 U.S.C. § 1581(i) to challenge Commerce's unlawful rulemaking and its failure to enforce its affirmative circumvention determinations. In response, two trade associations and sixteen claimed importers of CSPV cells and modules have moved to intervene on the side of Defendants. Each movant has requested permissive intervention under USCIT Rule 24(b)(1) and each movant, except Risen, has asserted a right to intervene under USCIT Rule 24(a)(2). Defendants defer to the Court concerning the disposition of these requests.

Solar Plaintiffs herein oppose intervention by all eighteen entities and ask the Court to deny all pending motions to intervene.

## SUMMARY OF ARGUMENT

The Federal Circuit's *California Steel* decision confirmed that every proposed defendant-intervenor must establish Article III standing. The motions of Canadian Solar, JA Solar, Risen, and Trina should all be dismissed for failure to address how they possess Article III standing. Although the remaining intervenors assert "piggyback" standing, these claims should be rejected for lack of a responsive pleading setting forth the proposed intervenors' requested relief. The Supreme Court has held that "standing is not dispensed in gross," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), and the proposed intervenors' violation of the USCIT's intervention rules precludes a conclusion that those entities in fact seek the same relief as the Government. (**Section I.A-B**).

Invenergy is the lone intervenor to claim that it possesses Article III standing, but it fails to carry its burden to satisfy every element of standing. Any one of the following deficiencies

would defeat its claim: Contrary to its assertions, "suspension of liquidation" would merely preserve the *status quo*; it would not harm Invenergy. And while Invenergy points to AD/CVD duty assessment as an alternative harm, Commerce's exercise of "administrative grace" to grant duty-free treatment to Invenergy's products pursuant to 19 U.S.C. § 1318(a) has not brought Invenergy within the "zone of interests" necessary to <u>force</u> such treatment. Even assuming *arguendo* that AD/CVD duty imposition were an injury in fact, the causal link is broken because the duties are traceable to an independent agency determination—Commerce's affirmative circumvention determinations. In addition, Defendants' failure to maintain records establishing that duty-free CSPV products were "Utilized" within the meaning of the *Final Solar Duty Holiday Rule* after importation forms part of Solar Plaintiffs' Complaint. For its part, Invenergy's submission provides neither specifics nor evidence that its entries had been "Utilized" by the time of its motion. This raises doubts that Invenergy had actually completed the process of qualifying for duty waiver benefits, a well-established basis for defeating causation. Prudential considerations further warrant denying standing to Invenergy, in that it is fundamentally seeking to invoke the Government's rights to defend its rulemaking, yet the Government is neither closely related to Invenergy nor hindered in its own defense. (**Section I.C**).

Even if the Court were to reach the question of intervention by right under USCIT Rule 24(a)(2), the proposed intervenors have failed to reckon with the Federal Circuit's four-part test, as interpreted and applied in *California Steel*. An intervenor by right must satisfy all four of the following factors: (1) an interest in the subject of the case that is legally protectable; (2) a legally protectable interest "of such a <u>direct</u> and <u>immediate</u> character that the intervenor will either gain or lose by the <u>direct</u> legal operation and effect of the judgment," *California Steel Indus., Inc. v.*

*United States*, 48 F.4th 1336, 1340 (Fed. Cir. 2022); (3) inadequate representation of that legally protectable interest by the Government; and (4) a timely motion. Of the eighteen entities claiming a right to intervene, none has satisfied any factor.

Taking these factors in order, the subject of Solar Plaintiffs' action is Commerce's unlawful rulemaking. No proposed intervenor has identified a legally protectable interest in that rulemaking. Their interests in avoiding AD/CVD duties are "merely economic" and thus expressly proscribed by the Federal Circuit's holdings. And proposed intervenors that submitted comments during Commerce's rulemaking process merely took advantage of a "scheme…that effectively permits anyone to participate in administrative proceedings," which *California Steel* held to "confer a legally protectable interest on no one." 48 F.4th at 1344. (**Section II.A**).

The absence of a legally protectable interest in the subject of Solar Plaintiffs' action necessarily precludes the proposed intervenors from satisfying the second or third Rule 24(a)(2) factors. Nevertheless, Proposed Defendant-Intervenors' interests in avoiding AD/CVD duties are not "of such a <u>direct</u> and <u>immediate</u> character that the intervenor will either gain or lose by the <u>direct</u> legal operation and effect of the judgment." *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fisherman's Associations*, 695 F.3d 1310, 1315 (Fed. Cir. 2012). Rather, proposed intervenors' liability for those duties is rooted in Commerce's affirmative anticircumvention determinations, which are subject to separate appeals in which the proposed intervenors that import are (or could have been) participating as plaintiff or intervenors. Nor would any legally protectable interest in public comments be "gain{ed} or los{t}" by a judgment for Solar Plaintiffs, *id.*, insofar as the comment period was in the past and all proposed intervenors have either submitted comments or waived that opportunity. (**Section II.B**).

The third factor is subject to a presumption of adequacy of Government representation. Proposed Defendant-Intervenors fail make the required "compelling" showing that legally protectable interests of the intervenor may not be adequately protected. *Id.* at 1318. Proposed Defendant-Intervenors each assert that they will seek the same relief as the Government, or make no assertion whatsoever. As in *Wolfsen*, proposed intervenors' ultimate aims are "precisely the same…to see {plaintiff}'s claim fail." *Id.* at 1317. Nor do Commerce's affirmative circumvention determinations alter this analysis. Commerce expressly distinguished its assessment of whether circumvention occurred (which is not at issue in this action) from its enforcement of affirmative findings (which is at issue). And although the Government would receive AD/CVD duty payments in the event Solar Plaintiffs succeed, the only reason the Government is not already receiving those duty payments is because it chose to publish the *Final Solar Duty Holiday Rule* and forego those duties in the first instance. Proposed Defendant-Intervenors have proffered no evidence of a change in Defendants' view of the relative value of the foregone duties versus responding to a Presidentially declared emergency. Moreover, the Proposed Defendant-Intervenors' assertedly different "perspectives" are immaterial to Solar Plaintiffs' administrative law challenge and can, in any event, be shared as *amicus*. The proposed intervenors have failed to rebut the presumption of adequate government representation. (**Section II.C**).

Finally, the motions now pending before the Court do not satisfy the Federal Circuit's test for timeliness. The motions are premature and thus discouraged insofar as no intervenor has demonstrated that government representation is inadequate. Nor is there prejudice to any intervenor, insofar as none has identified a legally protected interest that might be prejudiced. By contrast, Solar Plaintiffs are prejudiced by the need to respond to additional submissions

(including nine motions to intervene and nine repetitive motions to dismiss) and the resultant delay in the Court's disposition of Solar Plaintiffs' Motion for Preliminary Injunction. Moreover, despite seeking party status, none of the proposed intervenors has proffered an Answer which would disclose the intended defenses and relief sought. (**Section II.D**).

Turning to permissive intervention, seventeen Proposed Defendant-Intervenors invoke USCIT Rule 24(b)(1)(A), which permits the USCIT to allow intervention to "anyone…given a conditional right to intervene by a federal statute." While Proposed Defendant-Intervenors purport to possess such a right under 28 U.S.C. § 2631(j)(1) as persons "who would be adversely affected or aggrieved by a decision in {this} action," none has substantiated this assertion. As this Court held, being "adversely affected or aggrieved" within the meaning of the statute requires that the intervenor establish independent Article III standing. *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313, 1329 (Ct. Int'l Trade 2021). No Proposed Defendant-Intervenor has done so, and thus none is eligible to be granted permissive intervention under Rule 24(b)(1)(A). (**Section III.A**).

All eighteen Proposed Defendant-Intervenors request permission to intervene under USCIT Rule 24(b)(1)(B) as persons "ha{ving} a…defense that shares with the main action a common question of law or fact." This approach fails as well, insofar as Solar Plaintiffs' action concerns Defendants' rulemaking and issuance of liquidation instructions, not the acts of proposed intervenors. Just as this Court reasoned in *N. Am. Interpipe*, Solar Plaintiffs have not asserted a claim against the proposed intervenors, thus they possess no "defense" within the meaning of the USCIT rules and cannot intervene under Rule 24(b)(1)(B). *See* 519 F. Supp. 3d at 1335. (**Section III.B**).

Finally, even if this Court were to consider Proposed Defendant-Intervenors theoretically eligible for permissive intervention, it should nevertheless exercise its discretion to deny intervenors' motions. The prejudice and delay associated with eighteen intervenor parties would be "undue." Solar Plaintiffs would continue having to respond to additional submissions, most of which merely duplicate the arguments of one another and the Government. Indeed, the intervenors' participation has already seemingly delayed resolution of Solar Plaintiffs' Motion to Dismiss, despite the precedence afforded to such motions by USCIT Rule 65(e). And Proposed Defendant-Intervenors' uniform failure to include the required Answer with their motions suggests an approach to litigation that is designed to delay proceedings, *i.e.*, awaiting the Government's Answer instead of providing their own and allowing the Government to consolidate positions. The adequacy of government representation under the intervention by right analysis further counsels against permitting intervention. Again, to the extent proposed intervenors simply wish to express their perspectives of the merits of Solar Plaintiffs' claims, they could seek the Court's leave to do so—ideally in a single consolidated submission—as *amici*. (**Section III.C**).

## ARGUMENT

### I.   None of the Proposed Intervenors Has Established Article III Standing

The Federal Circuit has held that the standing of proposed intervenors is a threshold matter. *California Steel*, 48 F.4th at 1340, 1342 (rehearing and rehearing *en banc* denied); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) (Article III of the U.S. Constitution "forecloses the conversion of courts of the United States into judicial versions of college debating forums."). At a minimum, proposed intervenors have "the burden of demonstrating either…independent constitutional standing or…'piggyback standing,' *i.e.*, standing based on seeking the same relief sought by an

9

existing party to the case." *N. Am. Interpipe*, 519 F. Supp. 3d at 1321-22.[3]  None of the

Proposed Defendant-Intervenors has established independent or piggyback standing as required

to intervene in the present matter.

### A.    The Motions of Canadian Solar, JA Solar, Risen, and Trina Must Be Denied for Failure to Address Standing

The motions to intervene by Canadian Solar, JA Solar, Risen, and Trina should

immediately be dismissed for failure to address or establish their standing before this Court.  *See*

*generally* ECF Doc. 25 (Canadian Solar); ECF Doc. 28 (JA Solar); ECF Doc. 45-1 (Trina) ; ECF

Doc. 50 (Risen).  Nor did these movants claim to seek the same relief as Defendants.  *See*

*generally id.*  This Court has previously denied motions that "fail to even address, must less

establish, either…independent constitutional standing or…piggyback standing as required by

Article III." *N. Am. Interpipe*, 519 F. Supp. 3d at 1322.  While the Federal Circuit has instructed

the USCIT to compare the pleadings of the proposed intervenor and the party on whose side

intervention is sought before concluding that the proposed intervenor lacks piggyback standing,

*see California Steel*, 48 F.4th at 1343, this cannot save these four movants, as each failed to

comply with USCIT Rule 24(c)(1)'s mandate that a motion to intervene "be accompanied by a

pleading that sets out the claim or defense for which intervention is sought."  Accordingly, the

motions to intervene by Canadian Solar, JA Solar, Risen, and Trina should be denied.

### B.    No Movant's Submission Is Adequate to Establish "Piggyback" Standing

The remaining Proposed Defendant-Intervenors (ACP, NextEra, SEIA, BYD, and

Invenergy) each assert that they possess piggyback standing.  ECF Doc. 21 (ACP) at 4; ECF

Doc. 29 (NextEra) at 10; ECF Doc. 24 (SEIA) at 11; ECF Doc. 35 (BYD) at 4 n.3; ECF Doc. 44

---

[3] As explained in Section III.A, *infra*, piggyback standing is insufficient for permissive
intervention under Rule 24(b)(1)(A).  Independent Article III standing is required.

(Invenergy) at 3.  This Court has found that "{w}here a putative intervenor seeks only the same relief as an existing party to the litigation, the proposed intervenor may 'piggyback' on the existing party's standing." *HiSteel Co., Ltd. v. United States*, 592 F. Supp. 3d 1339, 1342 (Ct. Int'l Trade 2022) (citing *California Steel*, 48 F.4th at 1343).  However, "{s}tanding is not dispensed in gross; rather, plaintiffs must <u>demonstrate</u> standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431 (emphasis supplied).  No Proposed Defendant-Intervenor filed an Answer to Solar Plaintiffs' Complaint and the vague assertions in their motions to intervene are insufficient to establish whether, and to what extent, they seek relief identical to the Defendants.[4]

The relief sought by a party—including a defendant's defenses—is set forth in their pleading.  *See* USCIT Rule 8(c)(1).[5]  Thus, a plaintiff "must establish that they have standing to sue" "based on their complaint." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Rule 24(c) further provides that a "motion {to intervene} must state the grounds for intervention and be <u>accompanied by</u> a pleading that sets out the claim or defense for which intervention is sought." (emphasis supplied).  Courts, including this one, have applied this rule to deny intervention.  *See Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) ("Federal Rule of Civil Procedure 24(c) is unambiguous in defining the procedure for an intervenor….Intervenor SIBA not only failed to file any pleading on a timely basis as required by the rule, but we find nothing in the record

---

[4] Although this Court's rules of pleading expressly permit parties to state that they lack sufficient information to form a belief about the truth of an allegation, USCIT Rule 8(c)(5), Solar Plaintiffs note that none of the Proposed Intervenors make such argument and that only one out of 145 paragraphs in the Complaint contained confidential information, *see* Complaint at ¶20.

[5] As of the date of this submission, Defendants have not yet filed a responsive pleading.  Were Proposed Defendant-Intervenors' submissions construed as including pleadings, they have manifestly failed to deny the allegations in Solar Plaintiffs' Complaint and therefore admitted to every paragraph.  *See* USCIT Rule 8(c)(6).

suggesting that SIBA at any time offered the requisite pleading."); *Sec. & Exch. Comm'n v. Invs. Sec. Leasing Corp.*, 610 F.2d 175, 178 (3d Cir. 1979) ("Because the requirements of rule 24(c) were not complied with, the owners were not proper parties in the district court."); *Neo Solar Power Corp. v. United States*, 2016 WL 3390237 at *2 (Ct. Int'l Trade June 17, 2016) ("SolarWorld has not complied with Rule 24(c)(1) as it failed to file a pleading with its motion to intervene. Accordingly, although SolarWorld has stated that it will oppose Neo's inclusion in the administrative review, SolarWorld has not indicated specifically what defenses and claims it will raise."); *cf. also Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) ("They therefore were required to file a motion to intervene pursuant to Fed. R. Civ. P. 24(c). They did not do so. The lower court made no determination of their status as intervenors.").

Here, while proposed intervenors seeking to piggyback on Defendants' standing have vaguely asserted an intent to seek relief identical to the Government (which has not yet filed an Answer[6]), all have failed to submit an accompanying pleading setting out a prayer for relief and the defense for which intervention is sought. This violates USCIT Rule 24(c). The Court is prejudiced by the absence of what specific defenses the proposed intervenors intend to raise and the lack of clarity regarding whether they might seek relief different from Defendants. This inhibits the Court's ability to assess questions of standing, eligibility for intervention, and adequacy of representation. It also deprives the Court of proposed intervenors' views as to the substantive merits of Solar Plaintiffs' claims. Moreover, insofar as BYD and Invenergy suggest that the Joint Stipulation between Solar Plaintiffs and Defendants evidences the Government's

---

[6] Consequently, the docket contained no responsive pleading that Proposed Defendant-Intervenors could have attempted to adopt. More fundamentally, adoption by reference fails to satisfy Rule 24(c)'s requirement that a motion to intervene be "accompanied by" a pleading. *See Shevlin*, 809 F.2d at 450.

inadequate representation of their interests, *see* ECF Doc. 35 (BYD) at 6; ECF Doc 44 (Invenergy) at 8,[7] they imply an intent to seek <u>different</u> relief for which independent standing would be required.

In sum, Proposed Defendant-Intervenors have failed to establish piggyback standing, and the Court should dismiss their motions based on this threshold Article III standing deficiency.

### C.    Invenergy Has Not Established Independent Article III Standing

To establish independent Article III standing, "the irreducible constitutional minimum" that an intervenor must establish includes the following:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"

> Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... traceable to the challenged action of the defendant, and not…the result of the independent action of some third party not before the court."

> Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (block quote cleaned up).  The intervenor must also satisfy the "zone of interests" test—*i.e.*, "whether a legislatively conferred cause of action encompasses a particular {intervenor}'s claim."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).[8]  The absence of <u>any</u> of the foregoing elements precludes a putative party from establishing independent Article III standing.  In addition, an

---

[7] Canadian Solar makes a similar assertion, *see* ECF Doc. 25 (Canadian Solar) at 9-10, but has failed to raise any standing argument, *see* Section I.A., *supra*.

[8] *Lexmark* clarified that "'prudential standing is a misnomer' as applied to the zone-of-interests analysis, which asks whether 'this particular class of persons ha{s} a right to sue under this substantive statute.'" 572 U.S. at 127 (quoting *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675–676 (D.C. Cir. 2013) (Silberman, C.J., Concurring)).

intervenor "may still lack standing under the prudential principles by which the judiciary seeks…to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100 (1979).

Invenergy is the only movant to claim to possess individual Article III standing, theorizing as follows: As the importer of record of a "significant number" of entries of subject CSPV cells and modules, Invenergy will suffer particularized and concrete injury in fact if liquidation of those entries were suspended or AD/CVD duties were imposed. ECF Doc. 44 (Invenergy) at 4.[9] Invenergy avers that a "favorable decision by this Court will avoid this harm." *Id.* Invenergy's burden to establish every element of Article III standing to defend against Solar Plaintiffs' claims is not satisfied by its brief recitation.

Invenergy's claim of "injury" by suspension of liquidation is unexplained and fails to tie the purported injury to the legal standard. As for the duty assessment, it is unclear which Invenergy entities are importers of record. In any event, 19 U.S.C. § 1318(a) does not encompass a cause of action by which Invenergy could force Commerce to exercise its discretion to grant duty-free treatment, placing it outside the "zone of interests." (**Section I.C.1**). Even assuming *arguendo* that AD/CVD duty assessment were an injury in fact, Invenergy fails to establish the requisite causal link to Solar Plaintiffs' action for two independent reasons. First, the "harm" of duty assessment is traceable to an independent agency determination— Commerce's affirmative circumvention determination. Second, Invenergy itself may not even be eligible to benefit from the *Final Solar Duty Holiday Rule* regime. (**Section I.C.2**). Finally,

---

[9] Notably, by claiming that the *Final Solar Duty Holiday Rule* is all that stands between Invenergy and "immediate economic" harm, ECF Doc. 44 (Invenergy) at 4, Invenergy necessarily admits that it is importing CSPV cells and modules that otherwise meet the definition of circumventing products set forth in Commerce's affirmative circumvention determinations, *see Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,420.

Invenergy's claim to standing as a defendant invokes the rights of a third party—the Government—which is neither closely related to Invenergy, nor hindered in its own defense (**Section I.C.3**).

1. *What Invenergy Describes as "Injurious" is Either Harmless or Falls Outside the Zone of Interests of the Emergency Duty Waiver Statute*

Invenergy asserts two harms: (1) suspension of liquidation; and (2) imposition of AD/CVD duties. The "harm" posed by the first of these is not apparent. As this Court reasoned, "{s}uspension of liquidation maintains the status quo." *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1370 (Ct. Int'l Trade 2021). Indeed, as a purported beneficiary of the *Final Solar Duty Holiday Rule*, Invenergy has not paid AD/CVD cash deposits on its entries and would not be harmed in the least by merely delaying the finality of the duty computation. *See id.* This claimed injury is no injury at all, much less a constitutionally sufficient "injury in fact."

The second asserted harm, imposition of AD/CVD duties, is likewise constitutionally insufficient. As an initial matter, a non-importer could not assert this theory, and it remains unclear whether both entities identified in Invenergy's motion (Invenergy Renewables LLC and Invenergy Solar Equipment Management LLC) are importers of record. *See* ECF Doc. 44 (Invenergy) at 1, 4. Nor has Invenergy proffered an affidavit, entry number, or other evidence of importer of record status. *See Gen. Elec. Co. v. United Techs. Corp.*, 928 F.3d 1349, 1354-55 (Fed. Cir. 2019) (rejecting GE's economic loss allegation of increased research and development costs where GE failed to provide details such as "an accounting for the additional research and development costs expended" or "evidence that GE actually designed a {product covered by the upheld claims}."); *Argentum Pharms. LLC v. Novartis Pharms. Corp.*, 956 F.3d 1374, 1377–78 (Fed. Cir. 2020) ("Argentum has not provided sufficient evidence to establish an injury in fact through economic harm.").

Setting aside the evidentiary deficiencies, Invenergy fails to address—much less satisfy—the zone-of-interests test. To establish standing, the "legislatively conferred cause of action {must} encompass" Invenergy's claim. *See Lexmark*, 572 U.S. at 127. The zone of protected interests here must be within 19 U.S.C. § 1318(a), *see Lujan*, 497 U.S. at 883, and is assessed by application of "traditional tools of statutory interpretation," *Lexmark*, 572 U.S. at 127. Section 1318(a) "authorize{s}" the Government to "permit…the importation free of duty of food, clothing, and medical, surgical, and other supplies for use in emergency relief work" in response to a Presidentially declared emergency. 19 U.S.C. § 1318(a). By its plain text, the statute does not create any <u>right</u> to the exercise of administrative discretion in favor of duty-free treatment. Invenergy's position is thus akin to that addressed in *California Steel*, wherein the Court reasoned: "That the proposed intervenors chose to seize on Commerce's administrative grace…does not transform their participation during the administrative proceedings into a legally protectable interest…" *California Steel*, 48 F.4th at 1344. Invenergy's risk of AD/CVD duty assessment fails the zone-of-interests test.

2. *Invenergy's Theory of Causation is Flawed Because its Duty Liability is Traceable to a Different Administrative Determination and Invenergy Has Failed to Establish its Qualification for* Final Solar Duty Holiday Rule *Benefits*

Even if the imposition of AD/CVD duties were a constitutionally sufficient injury in fact, Invenergy has failed to establish a causal link between the imposition of AD/CVD duties and Solar Plaintiffs' action. *First*, Invenergy's underlying duty liability is "caused" by Commerce's determinations that CSPV cells and modules which Invenergy assertedly imports are circumventing the antidumping and countervailing duty orders on CSPV products from the PRC. *See* 19 U.S.C. § 1677j(b)(1); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,420. Where an injury is traceable to an independent agency determination, a litigant lacks

standing to challenge a separate determination in isolation.[10] *See, e.g.*, *BBX Capital v. Federal Deposit Insurance Corp.*, 956 F.3d 1304, 1312-14 (11th Cir. 2020) (no standing to challenge Federal Reserve Board determination where prior determination by Federal Deposit Insurance Corporation had precluded the relief sought); *Texas v. E.P.A.*, 726 F.3d 180, 197-99 (D.C. Cir. 2013) (EPA permitting regulations adopted to fill gap in state implementation could not be challenged because lack of permits was due to underlying lack of state implementation). Here, Solar Plaintiffs treat Commerce's circumvention determinations as a matter of fact. That is, Invenergy's imports will remain within the scope of the antidumping and countervailing duty orders regardless of the disposition of this case. Instead, Solar Plaintiffs focus their challenge squarely on Defendants' unlawful failure to enforce that duty liability. This suffices to defeat Invenergy's theory of causation.

Alternatively, Invenergy's theory fails for a second reason. Invenergy has failed to establish that it had, at the time of its motion, completed procedures (including "Utilization") set forth in the *Final Solar Duty Holiday Rule* that are necessary to qualify for duty-free treatment as an "Applicable Entry." *See* 19 C.F.R. § 362.102. Because courts have held that a litigant otherwise ineligible for a benefit cannot establish Article III causation based on the removal of that benefit, *see Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320, 1329 (Fed. Cir. 2013) (plaintiff lawfully excluded from distribution of a compensatory fund not injured by formula for distribution among eligible claimants); *Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548, 556-59 (6th Cir. 2021) (voter ineligible to vote absentee lacked standing to challenge statute requiring in-person voting after registration for absentee voting); *Maverick*

---

[10] Invenergy has not challenged Commerce's circumvention determinations under Section 1581(c).

*Media Group, Inc. v. Hillsborough County, Fla.*, 528 F.3d 817, 820-21 (11th Cir. 2008) (plaintiff whose sign permits were denied for clearly violating unchallenged size regulations lacked standing to challenge ban on billboards), any shortcoming in Invenergy's qualification for duty-free treatment would defeat causation in the standing analysis. Viewed from another angle, a failure to comply with the prerequisites of the *Final Solar Duty Holiday Rule* would deprive Invenergy of standing on the grounds that the unavailability of duty-free treatment was self-inflicted. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (litigant's "self-inflicted injuries {that} are not fairly traceable to the Government's purported activities…does not give rise to standing").

Here, while Invenergy claims to have "relied" on the *Final Solar Duty Holiday Rule*, it has not asserted facts or adduced evidence establishing its compliance with the certification, recordkeeping, and use requirements necessary to qualify for the benefit. *See id.* This failure is particularly troubling, given that the absence of a mechanism by which Defendants might confirm "Utilization" under the *Final Solar Duty Holiday Rule* is a ground of Solar Plaintiffs' Complaint. *See* Complaint at Counts 2 and 3. For example, Invenergy has not been administratively required to submit—and Solar Plaintiffs question whether it possesses— evidence that it has in fact completed the "Utilization" requirements necessary to qualify one or more of its entries for duty-free treatment. *See* 19 C.F.R. § 362.102. Thus, for this additional reason, Invenergy fails to establish constitutional causation.

3.   *Invenergy's Standing Theory Violates the "General Rule" Against Litigants Asserting Third Party Rights and Interests*

Finally, Invenergy "lack{s} standing under the prudential principles by which the judiciary seeks…to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors*, 441 U.S. at 99–100; *see also N. Am. Interpipe*, 519 F.

Supp. 3d at 1332 (citing *PrimeSource Bldg. Prod., Inc. v. United States*, 494 F. Supp. 3d 1307, 1330 n.34 (Ct. Int'l Trade 2021) (Baker, J., Concurring)) (applying prudential standing considerations in context of intervention). In relevant part, these encompass the "general rule that a party 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Hinck v. United States*, 127 S. Ct. 2011, 2017 n.3 (2007) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)); *see also Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 80 (1978) ("We have…narrowly limited the circumstances in which one party will be given standing to assert the legal rights of another."). This rule admits of a "limited exception{}" where the litigant "ha{s} suffered an 'injury in fact,'" "ha{s} a close relation to the third party," and there "exist{s} some hindrance to the third party's ability to protect his or her own interests." *Kowalski*, 543 U.S. at 129. Invenergy fails to address the "general rule," but its theory of standing falls well outside of the "limited exception." Solar Plaintiffs' action challenges Defendants' promulgation and implementation of the *Final Solar Duty Holiday Rule*. As this court reasoned under analogous circumstances in *N. Am. Interpipe*, a private party like Invenergy cannot "'demonstrate a close relationship with the person who possesses the right, *i.e.*, the government, and a hindrance to the government's ability to protect its own interests.'" 519 F. Supp. 3d at 1332.

Accordingly, for any one of the foregoing reasons, the Court should conclude that Invenergy lacks, or is prevented by prudential considerations from asserting, independent Article III standing.

## II. Proposed Defendant-Intervenors' Asserted Interests in this Litigation Are "Merely Economic" and None Has Established a Right to Intervene under USCIT Rule 24(a)(2)

The Federal Circuit has prescribed a test for determining whether a putative party is entitled to intervene under USCIT Rule 24(a)(2). Persons claiming such a right must satisfy each

of the following four factors: (1) the proposed intervenor claims a legally protectable interest in the subject of the action; (2) the proposed intervenor's legally protectable interest is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment"; (3) the proposed intervenor's legally protectable interest is not adequately addressed by the Government's participation; and (4) their motion is timely. *California Steel*, 48 F.4th at 1340; *see also Wolfsen*, 695 F.3d at 1315. If a proposed intervenor fails to satisfy any one element, the Court need not reach the remaining elements. *See, e.g.*, *Wolfsen*, 695 F.3d at 1315-19 (declining to address existence of legally protectable interest or directness and immediacy of harm upon affirming denial of intervention based on adequacy of government representation).

At this stage, Proposed Defendant-Intervenors fail to satisfy any element. They have ignored the Federal Circuit's holdings in both *Wolfsen* and *California Steel*, which expressly foreclose parties situated like Proposed Defendant-Intervenors from establishing a right to intervene. (**Section II.A**). These entities' claims of immediate harm are unrelated to a legally protectable interest. Moreover, the prospective harm is either nonexistent or contingent. (**Section II.B**). Finally, the Proposed Defendant-Intervenors have failed to identify any facts that would overcome the presumption that the Government adequately represents intervenors' legally protectable interest. (**Section II.C**). Finally, it follows that the Court should not find Proposed Defendant-Intervenors' motions to be timely, insofar as their requests to intervene are premature and incomplete. (**Section II.D**).

### A. The Proposed Defendant-Intervenors' Asserted Interests Are Foreclosed by Binding Federal Circuit Precedent

The interest of a prospective intervenor must be "in the property or transaction at issue." *Wolfsen*, 695 F.3d at 1315; *California Steel*, 48 F.4th at 1343-44. Here, as a threshold matter, the

"property or transaction at issue" is the *Final Solar Duty Holiday Rule* itself, which Solar

Plaintiffs wish to see vacated. *C.f., e.g.*, *Texas v. United States*, 805 F.3d 653, 657 (5th Cir.

2015) (noting that DAPA was the "property or transaction" at issue in a case challenging

DAPA); *Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir. 1982) (in a suit by owners of

property in a proposed highway corridor, the "property or transaction" at issue was the

challenged government determination to approve the highway project). In addition, a putative

intervenor's "interest must be 'legally protectable'—merely economic interests will not suffice."

*Wolfsen*, 695 F.3d at 1315; *see also California Steel*, 48 F.4th at 1344 ("{P}roposed intervenors'

alleged economic interests cannot suffice either.").

 *First*, Proposed Defendant-Intervenors' main asserted interest—the risk of paying

AD/CVD duties—fails on both counts. ECF Doc. 21 (ACP) at 9; ECF Doc. 24 (SEIA) at 7; ECF

Doc. 35 (BYD) at 4; ECF Doc. 25 (Canadian Solar) at 5; ECF Doc. 44 (Invenergy) at 6; ECF

Doc. 28 (JA Solar) at 8; ECF Doc. 29 (NextEra) at 6; ECF Doc. 45-1 (Trina) at 4-5. The

proposed intervenors' duty payments are not the *Final Solar Duty Holiday Rule*, and therefore do

not concern the "property or transaction at issue" here. Moreover, duty payments and the

anticipated downstream economic effects of those duty payments are manifestly "economic

interests." *See California Steel*, 48 F.4th at 1344 (rejecting proposed intervenor's "economic"

interest in imports' tariff treatment); *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559,

1560 (Fed. Cir. 1989) (rejecting proposed intervenor's "economic interest…based on the

possibility of increased competition"). For example, BYD straightforwardly admits that they

have "economic interests in the outcome of the litigation," ECF Doc. 35 (BYD) at 5, Invenergy

cites a threat to their ability to "complete existing and planned projects," ECF Doc. 44

(Invenergy) at 6, Trina asserts their "right{} to import duty-free," ECF Doc. 45-1 (Trina) at 5,

and NextEra references an interest in purchasing imported CSPV modules, ECF Doc. 29 (NextEra) at 6. All of these clearly run afoul of the Federal Circuit's prohibition against treating "economic interests" as "legally protectable." *See Wolfsen*, 695 F.3d at 1315; *California Steel*, 48 F.4th at 1344.

*Second*, ACP and Trina attempt to manufacture a "non"-economic interest by invoking the certification procedure used to obtain duty-free treatment through operation of the *Final Solar Duty Holiday Rule*. *See* ECF Doc. 45-1 (Trina) at 4; ECF Doc. 21 (ACP) at 9-10. While Solar Plaintiffs challenge the establishment of a certification regime pursuant to the *Final Solar Duty Holiday Rule*, the particular certifications prepared (or not) by individual persons are not the "property or transaction" at issue here.

Furthermore, because the benefit obtained through the *Final Solar Duty Holiday Rule* certification procedure (*i.e.*, duty-free treatment) is "merely economic," *see Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,422 (describing *Final Solar Duty Holiday Rule* certification as "not be{ing} subject to suspension of liquidation, or the cash deposit requirements"), then *a fortiori* the ultimate interest in *Final Solar Duty Holiday Rule* certifications is likewise "merely economic." *See, e.g.*, *Macon Cnty. Invs., Inc. v. Warren*, 2006 WL 2927470, at *4 (M.D. Ala. Oct. 12, 2006) (charities licensed to operate bingo games lacked legally protectable interest because "possession of a license does not provide a substantive, legally protectable right to participate in rule making." Rather, "{a}t most, the {applicants} have an economic interest in continuing to operate bingo games and in blocking competition…"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 327 n.36 (N.D. Ga. 1993) (travel agency denied intervention based on "what amounts to an economic arrangement between the travel agents and the airlines on the redemption of these certificates does not entitle {applicant}

to intervention.").  The certifications mentioned by ACP and Trina have no inherent value aside from their duty benefit.  Accordingly, any such interest fails to overcome the barrier against reliance on economic interests established by *Am. Mar.*, *Wolfsen*, and *California Steel*.

Though the foregoing "interests" are legally insufficient, they cannot even be asserted by SEIA or ACP, two industry associations, because neither is a real party in interest vis-à-vis any entry of CSPV products.  The Federal Circuit has "required…that 'the interest be one which the <u>substantive</u> law recognizes as <u>belonging to or being owned by the applicant</u>.'"  *Am. Mar.*, 870 F.2d at 1562 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co*., 732 F.2d 452, 464 (5th Cir. 1984)) (second emphasis supplied); *see also Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) ("{A legally protectable} interest is recognized as one belonging to or one being owned by the proposed intervenors"); *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004) ("the intervenor should be the real party in interest regarding his claim.").  Neither SEIA nor ACP claims to have any CSPV imports of its own.  *See* ECF Doc. 24 (SEIA) at 2, 7 (at most claiming that its *members* import); ECF Doc. 21 (ACP) at 1, 7 (same).  It follows that neither SEIA nor ACP could have filed any *Final Solar Duty Holiday Rule* certification for duty-free treatment.  SEIA and ACP have identified no authority supporting their attempt to rely on a third party's interest for purposes of intervention.  *See* ECF Doc. 24 (SEIA) at 7; ECF Doc. 21 (ACP) at 9.  Such a theory was foreclosed by the Federal Circuit in *Am. Mar.*

*Third*, SEIA, BYD, Canadian Solar, and NextEra each claim that their participation in the notice-and-comment rulemaking procedure which precipitated the *Final Solar Duty Holiday Rule* created a legally protectable interest.  *See* ECF Doc. 24 (SEIA) at 7-8; ECF Doc. 29

(NextEra) at 7; ECF Doc. 35 (BYD) at 5; ECF Doc. 25 (Canadian Solar) at 3.[11]  As an initial

matter, most entities proposed as intervenors (including one entity invoking this argument—

Canadian Solar Int'l Ltd.) did not respond to Commerce's request for comments on the proposed

rule.  *See* **Exhibit 1**.  In any event, *California Steel* applies the Supreme Court's prohibition

against "convert{ing} the undifferentiated public interest in executive officers' compliance with

the law into an 'individual right' vindicable in the courts," *Lujan*, 504 U.S. at 577, and concludes

that "any scheme…that effectively permits <u>anyone</u> to participate in administrative proceedings

confers a legally protectable interest on no one."  48 F.4th at 1344 (citing *Lujan*, 504 U.S. at

577).  The comment period at issue here was just such a scheme, insofar as Commerce expressly

invited "the public" to submit comments and confirmed that it "will consider all comments

received before the close of the comment period."  *Proposed Solar Duty Holiday Rule*, 87 Fed.

Reg. at 39,426, 39,429.  *California Steel*'s rule is directly applicable—and thus precludes—

intervenors' third attempt to invent an interest.

Remarkably, BYD's motion never cites *California Steel*, but it does reproduce

descriptions of a pair of Tenth Circuit decisions <u>verbatim from the proposed intervenor's</u>

<u>opening appellate brief in that action</u>.  *Compare* ECF Doc. 35 (BYD) at 4-5, *with* Appellant's

Opening Brief in *California Steel* at 33 (**Exhibit 2**) (describing *Utah Ass'n of Counties v.*

*Clinton*, 255 F.3d 1246, 1253-54 (10th Cir. 2001); *WildEarth Guardians v. Nat'l Park Serv.*, 604

F.3d 1192, 1200 (10th Cir. 2010)).  Plainly, these authorities did not sway the Federal Circuit—

notwithstanding petitions for panel and *en banc* rehearing—and cannot supplant the rule laid

down by *California Steel*.  Moreover, as the Seventh Circuit recognized in denying intervention

---

[11] Although ACP also filed comments on the proposed regulations, *see* **Exhibit 1**, it did not
claim that its comments conferred a legally protectable interest, *see* ECF Doc. 39 (ACP) at 8-10,
implicitly but correctly recognizing the flaw in such assertions.

to supporters of a challenged highway site determination, "{n}one of the actions taken, nor the statutory authority called into question in this case, involves the proposed intervenors who seek to intervene as defendants." *Wade*, 673 F.2d at 185; *see also Am. Nat'l Bank & Tr. Co. v. Chicago*, 865 F.2d 144, 147 (7th Cir. 1989) ("the district court must determine whether Section 82-69 is arbitrary and whether it bears a rational relationship to its purpose. The district court is not concerned with the relative merits of PVC. Thus the Union {which opposes use of PVC} has no direct, legally protectable interest."). The same is true of Proposed Defendant-Intervenors here.

Relatedly, BYD, Canadian Solar, and NextEra suggest that their participation in Commerce's circumvention inquiries confers a legally protectable interest. *See* ECF Doc. 25 (Canadian Solar) at 3; ECF Doc. 29 (NextEra) at 7; ECF Doc. 35 (BYD) at 5. This is irrelevant because, as established in Solar Plaintiffs' response to Defendants' motion to dismiss, this action does not challenge Commerce's determinations as to whether circumvention occurred. *See* ECF Doc. 55 (Feb. 16, 2024) at 14-26. For the same reasons that jurisdiction over Solar Plaintiffs' action lies under 28 U.S.C. § 1581(i) and not under 28 U.S.C. § 1581(c), any interest BYD, Canadian Solar, and NextEra might have in Commerce's circumvention inquiries does not relate to the "property or transaction" now at issue. Moreover, as parties to the appeals of Commerce's circumvention determinations brought under Section 1581(c), BYD, Canadian Solar, and NextEra need not intervene in this action to vindicate their interests in those determinations.

In summary, the Proposed Defendant-Intervenors lack a legally protectable interest as their asserted interests are merely economic or arise out of an administrative scheme that permits anyone to participate. Each theory is proscribed by binding holdings of the Federal Circuit and cannot satisfy the first factor in the test for intervention.

**B. A Judgment for Solar Plaintiffs Threatens no <u>Direct</u> and <u>Immediate</u> Harm to a Legally Protectable Interest of Proposed Defendant-Intervenors**

For a party to intervene under Rule 24, the legally protectable interest must be under both "<u>direct</u> and <u>immediate</u>" threat by the litigation. *See Wolfsen*, 695 F.3d at 1315 (emphasis in original); *see also Am. Mar.*, 870 F.2d at 1562 (discussing directness as distinct from immediacy). Here, as discussed, Proposed Defendant-Intervenors lack any legally protectable interest. Because the interests on which Proposed Defendant-Intervenors attempt to rely are so clearly and conclusively foreclosed, the Court need not discuss the directness and immediacy of any harm. "{E}ven when the outcome of the {litigation} is almost certain to have a significant and immediate economic impact on the applicant {for intervention}," that does not make an inadequate interest legally protectable for purposes of Rule 24(a)(2). *Am. Mar.*, 870 F.2d at 1562. Rather, "without an identifiable, legally protectable interest, the proposed intervenors' arguments about the practicable impairment of their interests have no merit." *California Steel*, 48 F.4th at 1344.

The interests asserted by Proposed Defendant-Intervenors are not threatened by such direct and immediate harm as they claim. *See, e.g.*, ECF Doc. 45-1 (Trina) at 4-5; ECF Doc. 25 (Canadian Solar) at 6. Invenergy, for example, suggests that "{w}hether or not the CSPV cells that Invenergy has imported or will import into the United States…will be subject to significant antidumping and countervailing duties dramatically impacts Invenergy's interests." ECF Doc. 44 (Invenergy) at 6. Such arguments ignore the foundation for AD/CVD duty liability: Commerce's affirmative findings of circumvention. *See* 19 U.S.C. § 1677j(b)(1) (permitting Commerce to bring circumventing products within the scope of an existing order); *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,421. Once again, Commerce's affirmative circumvention determinations are <u>not</u> at issue in this case. Those determinations are,

however, at issue in other 28 U.S.C. § 1581(c) cases, in which many of the parties now seeking intervention are participating, either as plaintiffs or intervenors. *See BYD (H.K.) Co., Ltd. v. United States*, USCIT Ct. No. 23-00221, ECF Doc. 9 (Nov. 16, 2023); *Canadian Solar Int'l Ltd. v. United States*, USCIT Ct. No. 23-222, ECF Doc. 9 (Nov. 20, 2023); *Trina Solar Science & Technology (Thailand) Ltd. v. United States*, USCIT Ct. No. 23-00227, ECF Doc. 9 (Nov. 20, 2023); *Trina Solar (Vietnam) Science & Technology Co., Ltd. v. United States*, USCIT Ct. No. 23-00228, ECF Doc. 9 (Nov. 20, 2023).

To be sure, vacatur of the *Final Solar Duty Holiday Rule* would result in the immediate duty assessment for parties that Commerce determined to be circumventing, pending the outcome of those appeals. But the proposed intervenors' ultimate liability for those duties is contingent upon the results of those separate, ongoing appeals of Commerce's circumvention determinations. Thus, like the proposed intervenor in *Am. Mar.*, Proposed Defendant-Intervenors' interest is "contingent because of the uncertainty that other events will actually follow, causing {them} to suffer any harm." *Am. Mar.*, 870 F.2d at 1561.

As for their asserted interests as commenters upon the *Final Solar Duty Holiday Rule*, no party claiming such an interest has explained how it would be impaired by a final judgment in this action. *See* ECF Doc. 24 (SEIA) at 7-8; ECF Doc. 29 (NextEra) at 7; ECF Doc. 35 (BYD) at 5; ECF Doc. 25 (Canadian Solar) at 3. To the extent the proposed intervenors, like the public at large, had some procedural interest in submitting comments, they have already done so (or elected not to do so). *See* **Exhibit 1**. Their interest has already been exercised (or waived), and thus cannot be harmed by an adverse judgment in this action. And if the *Final Solar Duty Holiday Rule* were indeed vacated as Solar Plaintiffs request, then no further comments would be

necessary.[12]  In short, there is no threat whatsoever to the proposed intervenors' interests as

commenters, much less one that is "<u>direct</u> and <u>immediate</u>."  *See Wolfsen*, 695 F.3d at 1315.

### C.   The Government Is Presumed to Be an Adequate Representative and Proposed Defendant-Intervenors Fail to Identify any Legally Protectable Interest of theirs that Is Inadequately Addressed

The final requirement of Rule 24(a) is that a legally protectable interest belonging to the

proposed intervenor is inadequately addressed by the Government's participation. *Wolfsen*, 695

F.3d at 1315.  Again, the Court need not reach this factor, given the deficiencies in the

previously discussed Rule 24(a)(2) factors.  *See, e.g.*, *id.*  To establish inadequacy of

representation, the proposed intervenor bears the burden of making "a compelling showing that

its interests may not be adequately protected," and must overcome the presumptive bar to

intervention unless they "demonstrate{} that {their} participation could add some material aspect

to the case beyond what is already present." *Id.* at 1318.  *Wolfsen* further states that "entry into a

case" by an "intervenor whose specific litigation goals identically match those of an existing

party" is presumptively barred.  *Id.*

As an initial matter, as established in the earlier discussion of Article III standing,

Proposed Defendant-Intervenors either assert that they will seek the same relief as the

Government or ignore the question.  *See* Section I.A-B, *supra*.  Given the absence of pleadings

and relevant specifics regarding relief, these assertions suffice for purposes of the Rule 24(a)(2)

analysis to erect the "presumptive bar{}" to intervention by parties, like Proposed Defendant-

---

[12] Were Commerce to seek to create a new regulation, then a new round of notice-and-comment proceedings would occur, in which the Proposed Defendant-Intervenors could participate. *See, e.g.*, *Wade*, 673 F.2d at 186 (In a challenge to the government's determination of a highway site, "{t}he ability of applicants {who support the challenged determination} to assert the economic, safety, and environmental interests they allege is not impeded nor impaired by refusal to grant them intervention. Applicants can present these interests to the governmental bodies, if these bodies are called upon again to determine a site for the proposed project.").

Intervenors, with "identically match{ing}" litigation goals.  *See Wolfsen*, 695 F.3d at 1318.

While the proposed intervenors claim to have different underlying interests, *see, e.g.*, ECF Doc.

29 (NextEra) at 8, such distinctions are of no moment.  As in *Wolfsen*, "the government and

{proposed intervenor} have precisely the same motivation, which is to see {plaintiff}'s claim

fail, for as many reasons as possible."  695 F.3d at 1317.

Proposed Defendant-Intervenors otherwise conflate this action with an appeal of

Commerce's affirmative circumvention determinations, by claiming that Commerce's

determinations as to whether circumvention occurred establishes a divergence of views as to the

enforcement of said determinations.  *See, e.g.*, ECF Doc. 21 (ACP) at 10; ECF Doc. 25

(Canadian Solar) at 7.  This is not so; else the *Final Solar Duty Holiday Rule* would never have

existed.  Commerce itself drew a clear line between its views on circumvention and its views on

enforcement:

> Nothing in the proclamation states that Commerce cannot conduct circumvention
> inquiries with respect to solar cells and modules. In fact, in response to
> Proclamation 10414, Commerce added {the Final Solar Duty Holiday Rule}…and
> these regulations, as well as CBP instructions issued by Commerce, specify that no
> AD/CVD duties will be collected on solar cells and modules entering the United
> States to which Proclamation 10414 applies. Thus, Commerce's affirmative
> circumvention findings cannot be implemented until the provisions of the
> Proclamation 10414 expire.

*Cambodia Final IDM* at 77; *Malaysia Final IDM* at 69; *Thailand Final IDM* at 77; *Vietnam*

*Final IDM* at 70 (emphasis supplied).  Notably, these statements were a response to comments

by BYD and NextEra—two of the very same entities now seeking to intervene.  *See id.*

Proposed Defendant-Intervenors relatedly note that a revocation of the *Final Solar Duty Holiday*

*Rule* would result in duties being paid to the U.S. Treasury. *E.g.*, ECF Doc. 24 (SEIA) at 9.  This

is true, but Defendants knew as much when promulgating the *Final Solar Duty Holiday Rule* in

the first instance.  Proposed Defendant-Intervenors identify no basis for suspecting that the

Government has since reversed its original weighing of the relative value of duties vs. responding to the emergency declared by Proclamation 10414. There is no evidence of a divergence in litigation aims as between Defendants and Proposed Defendant-Intervenors that is germane to Solar Plaintiffs' action.

Proposed Defendant-Intervenors furthermore fail to make the required "compelling showing" that their participation would "add some material aspect to the case beyond what is already present." *Wolfsen*, 695 F.3d at 1318. Invenergy argues that the Government lacks Invenergy's perspective as an importer and user of CSPV. ECF Doc. 44 (Invenergy) at 7. But adding a new "perspective" to a case is not sufficient to entitle a person to intervene by right under the law of this Circuit. *See Wolfsen*, 695 F.3d at 1316-18; *California Steel*, 48 F.4th at 1344-45. Indeed, *California Steel* specifically rejected the idea that "factual contributions" could be relevant, "since the administrative record is generally closed once before the judiciary." 48 F.4th at 1344-45. Relatedly, Proposed Defendant-Intervenors "can offer no special expertise on the administrative law issues that will be argued in the appeal—that is, whether the Secretary followed the dictates of the {statute in taking the challenged administrative action}." *Texas v. United States Dep't of Energy*, 754 F.2d 550, 553 (5th Cir. 1985). A new perspective is not a material addition to this case and could just as easily be shared in an *amicus* capacity. *See* Section III.C.3, *infra*.

Finally, BYD and Invenergy additionally assert that Defendants' willingness to enter into a Joint Stipulation to resolve Solar Plaintiffs' preliminary injunction motion demonstrates a divergence in interests which favors intervention. *See* ECF Doc. 35 (BYD) at 6; ECF Doc 44 (Invenergy) at 8; ECF Doc. 19 (Joint Stipulation). However, it is well-established that an intervenor "must join subject to the proceedings that have occurred prior to his intervention; he

cannot unring the bell." *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 153 (S.D. Cal. 1954); *see also, e.g.*, *United States v. California Co-op. Canneries*, 279 U.S. 553, 556 (1929) (describing the "settled rule of practice that intervention will not be allowed for the purpose of impeaching a decree already made.") (collecting cases); *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944) ("one of the most usual procedural rules is that an intervenor is admitted to the proceedings as it stands, and in respect of the <u>pending</u> issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.") (emphasis supplied); *Siebring v. Hansen*, 346 F.2d 474, 478 (8th Cir. 1965) ("as a consequence of the intervention Owen was required to recognize and accept the existence of the consent decree….he is bound by all orders and decrees in the original action."); *Galbreath v. Metro. Tr. Co. of California*, 134 F.2d 569, 570 (10th Cir. 1943) ("one who intervenes in a suit in equity thereby becomes a party to the suit, and is bound by all prior orders and adjudications of fact and law as though he had been a party from the commencement of the suit."); *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981) ("Even intervention of right may properly be made conditional by the exigencies of the particular case. Generally speaking, an intervenor is held to take the case as he finds it…") (internal citations omitted). Defendants were certainly under no obligation to discuss the Joint Stipulation with Proposed Defendant-Intervenors. *See Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1020 (D.C. Cir. 2003) ("even if, as {applicants} contend, {party}'s counsel has refused to cooperate or share information with {applicant}'s lawyers…this alleged deficiency says little about {party}'s representative adequacy for purposes of Rule 24(a)(2). Indeed, we cannot imagine why an existing party would bear such an obligation to a prospective intervenor.").

More fundamentally, the Joint Stipulation does not resolve any of Solar Plaintiffs'

substantive claims, and each Proposed Defendant-Intervenor that addressed the question of relief

claimed that it would seek relief identical to the Government—even after the Joint Stipulation

was <u>already</u> on the docket.  As explained in *Wolfsen*, desires to "argue that the court should

disapprove the settlement and refuse to dismiss," or "receive early warning of what it might

consider a bad settlement" are inadequate to establish inadequacy of representation.  695 F.3d at

1318.  Proposed Defendant-Intervenors have not identified any concrete divergence in approach

vis-à-vis Defendants going forward (which would, in any case, oblige intervenors to establish

independent Article III standing), and the Federal Circuit has held that "speculative" concerns

"cannot justify intervention."  *Id.*  For want of any credible concern, Proposed Defendant-

Intervenors have failed to establish that the Government inadequately represents a legally

protectable interest of Proposed Defendant-Intervenors.

**D.  This Court Should Assess the "Timeliness" of Proposed Defendant-Intervenors' Motions only as of the Date by which those Motions Are Completed with Pleadings**

The Federal Circuit has established the following test for timeliness under Rules 24(a)

and (b):

{T}he following factors must be weighed:

(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene;

(2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention.

(3) existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 707 (C.C.P.A. 1982).[13]  Of

the entities seeking to intervene, only ACP and JA Solar address this test.  *See* ECF Doc. 21

(ACP) at 6-8; ECF Doc. 28 (JA Solar) at 5-7 (both citing *Silver Reed America, Inc. v. United

States*, 600 F. Supp. 846, 849 (Ct. Int'l Trade 1984)).  None of these factors presently favor

finding that the pending requests to intervene were timely.

 The first factor is measured by reference to the point in time when "at least a minimal

showing can be made that a person's {legally protectable} interest is no longer being adequately

represented." *Sumitomo*, 669 F.2d at 707-08.  In this regard, "{c}ourts should discourage

premature intervention {because it} wastes judicial resources." *John Doe No. 1 v. Glickman*, 256

F.3d 371, 376 (5th Cir. 2001) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994))

(alteration in *Glickman*); *see also, e.g.*, *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 823

(9th Cir. 2021) (quoting *Glickman*).  Here, among other fundamental defects, all motions to

intervene are "premature" because no Proposed Defendant-Intervenor has demonstrated that

Defendants inadequately represent a legally protectable interest in the subject of this litigation.

*See* Section II.C, *supra*.  Thus, the Court need not address questions of timeliness.  *See Butler,

Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001) (describing the concurring

rationale of Jacobs, C.J., as "not reach{ing} timeliness (Point III) because the adequacy of

representation throughout means that any motion to intervene would have been premature rather

than late.").  If the first *Sumitomo* factor were considered, prematurity renders it a nullity.

---

[13] *South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (holding that "the holdings
of our predecessor courts, the United States Court of Claims and the United States Court of
Customs and Patent Appeals (CCPA), announced by those courts before the close of business
September 30, 1982, shall be binding as precedent in this court.").

The second factor concerns the balance of timing-related prejudices in granting or denying intervention. ACP and JA Solar claim prejudice in relation to the assessment of duties on certain entries of circumventing CSPV products. *See* ECF Doc. 21 (ACP) at 6-8; ECF Doc. 28 (JA Solar) at 5-7. However, these are irrelevant, because such interests are "merely economic" and therefore not "legally protectable" within the meaning of Rule 24(a)(2), *see* Section II.A, *supra*,[14] nor has any proposed intervenor established its independent Article III standing to assert such interests under Rule 24(b), *see* Section I.C, *supra*.

By contrast, permitting intervention based on the existing submissions would prejudice Solar Plaintiffs' interest in the "just, speedy, and inexpensive determination" of its action. *See* USCIT Rule 1. Eighteen entities are seeking to intervene, each of which "will burden the plaintiffs in {this} action{} with the need to respond to additional submissions and, unavoidably, also cause delays." *PrimeSource*, 494 F. Supp. 3d at 1312. Moreover, insofar as BYD, Canadian Solar, and Invenergy have each criticized the Joint Stipulation, *see* Section II.C, *supra*, they imply an intent to cause prejudice akin to that cited in *Sumitomo* where intervention was held to be untimely due to the "obvious" prejudice to the existing parties that "the probability of getting {the proposed intervenor's} consent to possible settlement appears highly unlikely…" 669 F.2d at 709. And, as already discussed, USCIT Rule 24(c)(1) unambiguously requires any party seeking to intervene in an action brought under 28 U.S.C. § 1581(i) to attach a pleading to their motion. The lack of clarity as to what defenses the proposed intervenors intend to raise prejudices Solar Plaintiffs by limiting their ability to understand the extent to which the intervenors' position actually differs, if at all, from that of the Government. *See* Section I, *supra*.

---

[14] Because ACP is not an importer of record, its claim of "prejudice" by relation to third party interests is inapposite and irrelevant to assessment of timeliness for this additional reason. *See* Section II.A, *supra*.

This is a legally relevant factor in assessing both intervention by right and permissive intervention. *See Severstal Exp. GmbH v. United States*, 2018 WL 1779351 at *2 (Ct. Int'l Trade Apr. 13, 2018) (noting, *e.g.*, that "the admissions and denials contained in Nucor's Answer do not suggest an approach different from that of defendants" in denying intervention).

ACP and JA Solar gloss over the third, catch-all factor, broadly asserting that no unusual circumstances exist. *See* ECF Doc. 21 (ACP) at 8; ECF Doc. 28 (JA Solar) at 7. Solar Plaintiffs agree, rendering the third factor a nullity. Thus, considered as a whole, the three-factor test set forth in *Sumitomo* does not favor finding the pending requests to intervene "timely" within the meaning of Rule 24(a) or (b).

### III. Proposed Defendant-Intervenors Have Failed to Qualify for Permissive Intervention Under USCIT Rule 24(b), and Would Unduly Delay these Proceedings and Cause Prejudice to Solar Plaintiffs

Proposed Defendant-Intervenors also request leave of the court to intervene under USCIT Rule 24(b), which provides that "{o}n timely motion "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Although styled as "permissive intervention," an applicant must nevertheless satisfy several prerequisites before becoming eligible to invoke Rule 24(b). First, "the application must be 'timely.' If it is untimely, intervention must be denied." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973). Second, one seeking to intervene under subsection (b)(1)(A) must identify a conditional statutory right belonging to the applicant. Likewise, one seeking to intervene under subsection (b)(1)(B) must, in relevant part, possess a defense which will be affected by the court's decision of law or fact. *See Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 469 (1940) (holding that applicant's failure to satisfy the requirements of (b)(1)(A) or (b)(1)(B) rendered permissive intervention unavailable).

Only after an applicant's eligibility has been established, "intervention, by leave of the court, is addressed to the sound discretion of the court." *Manuli Autoadesivi v. United States*, 602 F. Supp. 96, 98 (Ct. Int'l Trade 1985). Before exercising this discretion to grant intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." USCIT Rule 24(b)(3). Moreover, in granting permissive intervention, "{e}ven highly restrictive conditions may be appropriately placed on a permissive intervenor, because such a party has by definition neither a statutory right to intervene nor any interest at stake that the other parties will not adequately protect or that it could not adequately protect in another proceeding." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987) (Brennan, J., Concurring).

Here, as a threshold matter, Proposed Defendant-Intervenors have failed to demonstrate their eligibility for permissive intervention. As explained above, Proposed Defendant-Intervenors' incomplete motions cannot be treated as "timely" based upon the record before this court. (**Section II.D,** *supra*). Furthermore, although Proposed Defendant-Intervenors identify 28 U.S.C. § 2631(j)(1) as creating a conditional right to intervene for purposes of Rule 24(b)(1)(A), none possesses that right. (**Section III.A**). Likewise, because Solar Plaintiffs' claims are solely against the Government, Proposed Defendant-Intervenors' assertion that they "share" a defense with the Government (or themselves possess any defense whatsoever in relation to this action) within the meaning of Rule 24(b)(1)(B) necessarily fails. (**Section III.B**). Finally, even if this Court were to find a proposed intervenor theoretically eligible for intervention under Rule 24(b)(1), it should nevertheless decline to exercise its discretion to permit intervention. Proposed Defendant-Intervenors' participation in this action would unduly delay proceedings,

has already prejudiced Solar Plaintiffs, and their intervention submissions fail to establish any material contribution. (**Section III.C**).

## A. Proposed Defendant-Intervenors Fail to Identify a Conditional Right for Which they Qualify

Eight Proposed Defendant-Intervenors suggest that they possess a conditional right to intervene under USCIT Rule 24(b)(1)(A) as persons "who would be adversely affected or aggrieved by a decision in {this} action" within the meaning of 28 U.S.C. § 2631(j)(1). *E.g.*, ECF Doc. 35 (BYD) at 7; ECF Doc. 28 (JA Solar) at 12; *but see* ECF Doc. 50 (Risen) at 5-6 (omitting conditional right to intervene argument). Specifically, Proposed Defendant-Intervenors claim that vacatur of the *Final Solar Duty Holiday Rule* would be followed by the imposition of AD/CVD duties on circumventing CSPV products. *E.g.*, ECF Doc. 45-1 (Trina) at 5; ECF Doc. 25 (Canadian Solar) at 9. Proposed Defendant-Intervenors cite *Ontario Forest* for the proposition that the phrase "adversely affected or aggrieved" "represents a 'congressional intent to cast the {intervention} net broadly." *E.g.*, ECF Doc. 21 (ACP) at 13 (citing *Ontario Forest Indus. Ass'n v. United States*, 444 F. Supp 2d 1309, 1322 (Ct. Int'l Trade 2006)). But their invocation of a truism does not satisfy the constitutional test for qualifying as "adversely affected or aggrieved." Proposed Defendant-Intervenors have not done so and do not possess this conditional right to intervene.

*Ontario Forest* recognized that "{t}he phrase 'adversely affected or aggrieved,'…mirrors the language in numerous statutes, including the Administrative Procedure Act." 444 F. Supp. 2d at 1322. "As used in the APA, 'adversely affected or aggrieved' means Article III 'injury in fact.' It necessarily follows that a putative intervenor invoking 28 U.S.C. § 2631(j)(1) must demonstrate 'injury in fact,' *i.e.*, constitutional standing." *PrimeSource*, 494 F. Supp. 3d at 1328 (Baker, J., Concurring) (quoting *Rohm & Haas Co. v. U.S. Int'l Trade Comm'n*, 554 F.2d 462,

463 (C.C.P.A. 1977)) (internal citations omitted); *see also N. Am. Interpipe*, 519 F. Supp. 3d at 1329 ("a proposed intervenor must demonstrate <u>independent</u> constitutional standing") (emphasis supplied).[15] Specifically, each must "demonstrate that (1) it is threatened with injury in fact (2) from a decision of the court (3) that is redressable by a ruling in favor of the party on whose side the proposed intervenor seeks to intervene." *N. Am. Interpipe*, 519 F. Supp. 3d at 1329.

Proposed Defendant-Intervenors have failed to satisfy this minimum burden. Only one, Invenergy, has argued that it possesses independent constitutional standing. As already discussed, Invenergy's arguments are flawed, *see* Section I.C, *supra*, and the remaining Proposed Defendant-Interveners rely exclusively on assertions of "piggyback" standing, implicitly waiving a critical prong of their claim for permissive intervention, *see* Sections I.A-B, *supra*; *N. Am. Interpipe*, 519 F. Supp. 3d at 1329 & n.29 (deeming permissive intervention arguments waived for "fail{ure} to develop any reasoned argument as to why they are eligible under 28 U.S.C. § 2631(j)(1)").

Even if Proposed Defendant-Intervenors had established their independent Article III standing, the ill effects they identify are not fairly attributable to a decision in Solar Plaintiffs' suit. *See* USCIT Rule 24(b)(1)(A) (requiring adverse effects "by a decision in {this} action"). Circumventing CSPV products came within the ambit of the AD/CVD orders—and duties—on CSPV products from the PRC due to Commerce's <u>affirmative determinations of circumvention</u>. *Final Affirmative Determinations of Circumvention*, 88 Fed. Reg. at 57,419. This *sine qua non*

---

[15] Previously, *NLMK* concluded that a person seeking intervention as defendant need not demonstrate independent standing because such a person does not "invoke" federal jurisdiction. *See NLMK Pennsylvania, LLC v. United States*, 553 F. Supp. 3d 1354, 1364 & n.12 (Ct. Int'l Trade 2021). The Federal Circuit, however, subsequently rejected that theory, holding that "'where a party tries to intervene as another defendant,'" that defendant-intervenor must 'demonstrate Article III standing.'" *California Steel*, 48 F.4th at 1342-43 (quoting *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015)).

of duty imposition is not under review in this action.  *See* Section II.A, *supra*.  Instead, the

complained-of AD/CVD duties are bound up with the ongoing appeals under Section 1581(c), in

which Proposed Defendant-Intervenors had every opportunity to participate as plaintiffs and/or

intervenors.  This action focuses squarely on Commerce's failure to enforce its circumvention

findings by application of the *Final Solar Duty Holiday Rule*.  Commerce separately determined

whether CSPV products fall within the scope of the AD/CVD Orders.

### B. Proposed Defendant-Intervenors Do Not Possess Any Defense in this Action, Much Less Share One with the Government

In relevant part, Rule 24(b)(1)(B) requires that a proposed intervenor possess a defense.[16]

All nine Proposed Defendant-Intervenors rely on the assertion that they possess a defense

sharing a common question of law or fact with those of the Government.  *E.g.*, ECF Doc. 29

(NextEra) at 9; ECF Doc. 44 (Invenergy) at 9-10; ECF Doc. 50 (Risen) at 5.  But their assertions

amount—at most—to a desire to assist in the Government's defense.[17]  Under the standard

established by this Court, none of the Proposed Defendant-Intervenors possess any "defense" in

---

[16] In addition to "defense{s}," Rule 24(b)(1)(B) also references "claims." No proposed intervenor purports to possess a shared claim within the meaning of Rule 8, nor could they. Each Proposed Defendant-Intervenor has requested to enter on the side of Defendants and has denied the USCIT's subject matter jurisdiction over this action.

[17] For example, the Proposed Defendant-Intervenors contend that they "seek{} to defend the lawfulness of the Duty Suspension Rule against Plaintiffs' statutory and Administrative Procedure Act ("APA") challenges." *See* ECF Doc. 44 (Invenergy) at 9-10.  Risen and JA Solar claim shared questions of law and fact stemming from the potential outcome of AD/CVD duties being assessed upon the result of this case, ECF Doc. 28 (JA Solar) at 11; ECF Doc. 50 (Risen) at 5, but these "questions" are not "defenses." NextEra additionally asserts that its subject matter jurisdiction arguments qualify as a defense. ECF Doc. 29 (NextEra) at 10. As an initial matter, NextEra did not actually raise any unique arguments, having submitted only a three-page document incorporating the Government's theory of subject matter jurisdiction by reference.  *See* NextEra Dismissal Arguments, ECF Doc. 32 (Jan. 26, 2024). Regardless, the fact that NextEra's unprompted submission concerns a unique type of question that the court cannot ignore, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), does not mean that Solar Plaintiffs have asserted any claim against NextEra.

Solar Plaintiffs' action, which squarely challenges <u>Defendants'</u> promulgation and implementation of the *Final Solar Duty Holiday Rule*.

A "claim or defense" as written in USCIT Rule 24(b)(1)(B) "must be read in tandem with 'claim' in Rule 8(a)(2) and 'defense' in Rule 8(c)(1)(A)." *N. Am. Interpipe*, 519 F. Supp. 3d at 1334. Accordingly, for an applicant to share a defense with the party it seeks to join, they must meet "the antecedent requirement for a Rule 8(c)(1)(A) 'defense'" which is "a Rule 8(a)(2) 'claim asserted <u>against</u> {the litigant}' proffering the defense." *Id.* (emphasis in original); *see also Diamond v. Charles*, 476 U.S. 54, 76–77 (1986) (O'Conner, Burger, and Rehnquist, Concurring) ("The words 'claim or defense' {in Rule 24} manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit, as is confirmed by Rule 24(c)'s requirement that a person desiring to intervene serve a motion stating 'the grounds therefor' and 'accompanied by a pleading setting forth the claim or defense for which intervention is sought.'"). In other words, before a proposed intervenor may claim to possess a similar defense under Rule 24(b)(1)(B), there must first be a claim, per Rule 8(a)(2), that the plaintiffs could assert against the proposed intervenor. *N. Am. Interpipe*, 519 F. Supp. 3d at 1334; *see also Keith v. Daley*, 764 F.2d 1265, 1272 (7th Cir. 1985) (affirming denial of permissive intervention "because {applicant} had no direct claim or right in the case before the court.") (internal quotation marks omitted); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1127 (9th Cir. 2002) ("The majority's position would allow intervention by virtually anyone who has some affected interest, for anyone can say 'I agree that the government has this particular defense.' Such a result is absurd and robs the 'common question' provision of Rule 24(b) of any meaning.") (Kleinfeld, C.J., dissenting in relevant part), *majority opinion in* Kootenai *abrogated by Wilderness Soc. v. U.S. Forest Serv*., 630 F.3d 1173 (9th Cir. 2011).

Here, as in *N. Am. Interpipe*, because Solar Plaintiffs could not press their claims against the proposed intervenors to seek individual relief, the proposed intervenors lack <u>any</u> defense within the meaning of Rules 8(c)(1)(A) and 24(b)(1)(B). 519 F. Supp. 3d at 1334-45. Indeed, "it would be nonsensical (if not sanctionable) for Plaintiffs to attempt to sue the proposed intervenors in addition to the government, which means it is equally nonsensical for the proposed intervenors to claim a 'shared defense' with the government." *Id.* at 1335. The questions raised by Solar Plaintiffs' action concern the lawfulness of the *Final Solar Duty Holiday Rule* as promulgated and implemented by Defendants, not the proposed intervenors. Accordingly, the Court should deny Proposed Defendant-Intervenors' requests to intervene under Rule 24(b)(1)(B) for failure to possess any "defense," much less share one with the Government.

### C. Permitting Eighteen New Parties to Intervene Would Unduly Delay Proceedings, Prejudice Solar Plaintiffs, and Accomplish Little to Protect Proposed Defendant-Intervenors' Stated Interests

Were this Court to conclude that Proposed Defendant-Intervenors have satisfied the prerequisites for eligibility for permissive intervention, then it "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." USCIT Rule 24(b)(3). Here, the Court should find that permitting intervention under Rule 24(b) would unduly delay these proceedings, prejudice Solar Plaintiffs, and accomplish little to protect Proposed Defendant-Intervenors' interests that could not be more efficiently accomplished by permitting *amicus* submissions.

#### 1. *Permitting Proposed Intervention Would Unduly Delay these Proceedings and Has Already Prejudiced Solar Plaintiffs*

While each Proposed Defendant-Intervenor recites the assertion that it individually will neither delay nor prejudice Solar Plaintiffs and Defendants, *e.g.*, ECF Doc. 24 (SEIA) at 10; ECF Doc. 44 (Invenergy) at 10, they fail to grapple with the fact that <u>eighteen</u> separate entities are

seeking to intervene all at once.  *See* **Exhibit 1**.  Proposed Defendant-Intervenors point to the

early stage of these proceedings, *e.g.*, ECF Doc 44 (Invenergy) at 5, but the timely filing of a

motion to intervene is a <u>precondition</u> to this court's consideration of undue prejudice and delay,

*see NAACP*, 413 U.S. at 365.  Timeliness does not, by itself, infer the absence of undue delay.

*Taylor Communications Group, Inc. v. Southwestern Bell Telephone Co.*, 172 F.3d 385, 389 (5th

Cir. 1999).  Indeed, a contrary reading would violate the interpretive canon against redundancy,

as Rule 24(b)(3) (consideration of undue delay) would as a practical matter be subsumed into the

chapeau of Rule 24(b) (requiring that motions be timely).  *See Gustafson v. Alloyd Co*., 513 U.S.

561, 574 (1995) ("the Court will avoid a reading which renders some words altogether

redundant.").  Here, as a practical matter, the addition of eighteen parties "will burden the

plaintiffs in {this} action{} with the need to respond to additional submissions and, unavoidably,

also cause delays."  *PrimeSource*, 494 F. Supp. 3d at 1312.

     Even assuming *arguendo* that proposed interventions were timely, *see* Section II.D,

*supra*, such conduct nevertheless suggests an approach to litigation that is likely to cause undue

prejudice and delay.  Had Proposed Defendant-Intervenors included proposed Answers with their

intervention motions, Defendants could have then incorporated those defenses into their own

Answer, thus clarifying the issues and streamlining litigation.  However, this would have vitiated

the applicants' asserted basis for seeking permissive intervention.  *See, e.g.*, *Chiles v.

Thornburgh*, 865 F.2d 1197, 1215 (11th Cir. 1989) ("The duplicative nature of the claims and

interests {proposed intervenors} asserted threatens to unduly delay the adjudication of the rights

of the parties in the lawsuit and makes it unlikely that any new light will be shed on the issues to

be adjudicated."); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982) ("The applicants'

motion for permissive intervention under Fed. R. Civ. P. 24(b)(2) was also denied because the

questions of law and fact presented were identical to those already heard and briefed, and intervention would only be a duplication of effort."); *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir. 2018) ("permissive intervention is not appropriate where 'a proposed intervenor ... submit{s} a filing that 'substantially mirror{s} the positions advanced' by one of the parties.") (quoting *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 757–58 (6th Cir. 2018)). Instead, Proposed Defendant-Intervenors seem to be biding their time, presumably to expand upon Defendants' Answer in their own Proposed Answers. Proposed Defendant-Intervenors should not be rewarded with permissive intervention for artificially delaying their identification of what defensive arguments they would present.

As a practical matter, the addition of eighteen new parties would inevitably delay proceedings, as they already have, prejudicing Solar Plaintiffs. Movants are powerless to attack the Joint Stipulation as between the original parties as it was filed with this court before any motion to intervene. *See, e.g.*, *Hartley Pen Co*., 16 F.R.D. at 153; Joint Stipulation in Lieu of Preliminary Injunction, ECF Doc. 19 (Jan. 25, 2024) ("Joint Stipulation").[18] However, despite USCIT Rule 65(e)'s requirement that motions seeking preliminary injunctive relief "be given precedence over other matters pending before the court and expedited in every way" and the original parties' identification of mutually agreeable terms, the nine motions to intervene have

---

[18] In limited scenarios, such as stipulations concerning the use of testimony in later litigation, an intervenor has not been bound by a prior stipulation to which the intervenor was not a party. *See Kneeland v. Luce*, 141 U.S. 437, 440 (1891). The Joint Stipulation at issue here is not implicated by such holdings, because the question of reliquidation concerns governmental authority. *See Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (finding a lack of irreparable harm to plaintiff where Government had "represented unequivocally" that the court had "authority to order the Government to reliquidate" and thus would be judicially estopped from asserting a contrary position); Order, USCIT Ct. No. 21-00052, ECF Doc. 408 (Sept. 8, 2021) at 1 (enforcing reliquidation in the event plaintiffs succeed "in light of Defendants' representation to the Court that it must accept the option to stipulate to refund any duties found to have been illegally collected…").

cumulatively delayed entry of an Order on Solar Plaintiffs' Motion for Preliminary Injunction. This is severely prejudicial insofar as the potential inability to order reliquidation was the irreparable harm identified in Solar Plaintiffs' Motion for Preliminary Injunction, *see* Motion for Preliminary Injunction, ECF Doc. 8 at 9-17 (Jan. 9, 2024), and every additional day threatens further liquidations of entries that took advantage of the unlawful *Final Solar Duty Holiday Rule*. Thus, these motions to intervene have—and continue to—increase the number of entries for which this court may be unable to order relief, prejudicing Solar Plaintiffs.

> 2. *Adequate Government Representation and Proposed Defendant-Intervenors' Plans to Introduce Ancillary Issues Further Counsel Against Permitting Intervention*

Courts have embraced the reasoning that, as a practical matter, "'the case for permissive intervention disappears' when a proposed intervenor fails 'to overcome the presumption of adequate representation by the government.'" *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019); *see also Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regulation Comm'n*, 787 F.3d 1068, 1071-75 (10th Cir. 2015) ("As to {applicant}'s suggestion that Rule 24(b) does not provide for consideration of adequate representation, we have elsewhere affirmed denial of permissive intervention on such grounds."); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (in exercising discretion under Rule 24(b), district court may consider "whether the intervenors' interests are adequately represented by other parties"). As explained in Sections I.A-B and II.D, *supra*, this defect defeats Proposed Defendant-Intervenors' bids because each movant purports to seek the same relief as the Government or otherwise fails to establish independent standing, and each fails to identify any material contribution germane to Solar Plaintiffs' claims.

Rather, as demonstrated by the Motions to Intervene which emphasize policy arguments that supposedly favor the *Final Solar Duty Holiday Rule* and the applicants' disagreement with

Commerce's affirmative circumvention determinations, *see, e.g.*, ECF Doc. 29 (NextEra) at 9 (policy); ECF Doc. 24 (SEIA) at 2-3 (policy); ECF Doc. 28 (JA Solar) at 9 (circumvention); ECF Doc. 45 (Trina) at 5 (circumvention), Proposed Defendant-Intervenors would introduce ancillary matters that do not bear upon Solar Plaintiffs' case. Solar Plaintiffs' claims contest the lawfulness of Commerce's rulemaking, not its wisdom. Permitting intervention for additional parties to air policy arguments and attack a separate administrative determination "would not promote the principle expressed in USCIT Rule 1 that this Court's rules be 'construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *PrimeSource*, 494 F. Supp. 3d at 1313; *see also, e.g.*, *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) ("VDPS would inject issues of Vermont regulatory law into a contractual dispute. The potential for delay and the complication engendered by the injection of such issues justify denial of the motion."); *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991) ("We agree that the request for permissive intervention was properly denied because, as the district court stated, 'allowing the intervenors to present their RICO and fraud {defenses} does not preserve judicial resources, and, in fact, threatens to undermine the efficiency of a straightforward {foreclosure} proceeding.'"); *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 712 (11th Cir. 1991) (affirming denial of permissive intervention based on district court's finding that it would "make this case even more unmanageable than it already appears to be by adding witnesses and collateral issues.") (internal quotation marks omitted).

Accordingly, even if this Court were to find Proposed Defendant-Intervenors eligible for permissive intervention, the Court should exercise its discretion to deny intervention.

3. *Amicus Curiae Submissions Offer Proposed Defendant-Intervenors a Potential Path for Expressing their Views Before this Court*

The Proposed Defendant-Intervenors do not qualify for treatment as intervenor defendants in this action. However, as is often the case, these entities may instead seek leave to present their views and arguments regarding the *Final Solar Duty Holiday Rule* in consolidated *amicus* submissions. *See, e.g.*, *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 710 (C.C.P.A. 1982) ("unsuccessful intervenors are frequently relegated to the status of *amicus curiae* by the court."); *State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 18-20 (1st Cir. 2001) (affirming denial of intervention even though prospective intervenors would present an argument that the government was highly unlikely to make; argument could be presented by them in capacity of *amicus curiae* in district court); *Bradley v. Milliken*, 828 F.2d 1186, 1194 (6th Cir. 1987) ("the district court has already taken steps to protect the proposed intervenors' interests by inviting attorney Atkins to appear as *amicus curiae* in the case. This would allow the district court the benefit of hearing proposed intervenors' concerns and views, as well as the benefit of Atkins' expertise"); *Texas*, 754 F.2d at 553 ("The utilities may seek to present their views as *amicus curiae*, and leave to do so is here granted. As this court noted in *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir.1984), 'when he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief *amicus curiae* and not by intervention.'"). Solar Plaintiffs would not oppose the granting of such leave in these proceedings.

## CONCLUSION

None of the Proposed Defendant-Intervenors has carried their burden to establish that they qualify for intervention as of right, or for this court to exercise its discretion and grant permissive intervention. In any event, the addition of eighteen parties whose submissions to date

indicate nothing more than a desire to repeat the arguments of the Government would unduly delay these proceedings and prejudice the original parties.  If Proposed Defendant-Intervenors wish to be heard on the issues raised in this litigation, the court may act in its discretion to grant leave for them to submit briefs *amicus curiae*.

\*       \*       \*

Respectfully submitted,

/s/ Thomas M. Beline

Thomas M. Beline
Roop K. Bhatti[*]
James E. Ransdell
Chase J. Dunn
Sydney C. Reed

**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006

Phone: (202) 567-2316
Fax: (202) 567-2301

*Counsel for Auxin Solar Inc. and Concept Clean Energy, Inc.*

February 16, 2024

---

[*] Admitted in Illinois; practice limited to matters before federal courts and agencies.

# EXHIBIT 1

| Proposed Intervenor Entity | ECF Doc. | Did Entity Submit Comments on Challenged Regulation? |
|---|---|---|
| American Clean Power Association | 21 | Yes |
| BYD (H.K.) Co., ltd | 35 | Yes |
| BYD America LLC | 35 | Yes |
| Canadian Solar (USA) Inc. | 25 | Yes |
| Canadian Solar International Limited | 25 | No |
| Invenergy Renewables LLC | 44 | No |
| Invenergy Solar Equipment Management LLC | 44 | No |
| JA Solar USA Inc. | 28 | No |
| JA Solar Vietnam Company Limited | 28 | No |
| JA Solar Malaysia Sdn. Bhd. | 28 | No |
| JA Solar International Limited | 28 | No |
| NextEra Energy, Inc. | 29 | Yes |
| Risen Solar Technology Sdn. Bhd. | 50 | No |
| Solar Energy Industries Association | 24 | Yes |
| Trina Solar (U.S.) Inc | 45 | No |
| Trina Solar Science & Technology (Thailand) Ltd. | 45 | No |
| Trina Solar Energy Development Company Limited | 45 | No |
| Trina Solar (Vietnam) Science & Technology Co Ltd | 45 | No |

# EXHIBIT 2

---

**Case Nos. 2021-2172, -2180, -2181, -2182, -2183, -2185**

---

**BEFORE THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

CALIFORNIA STEEL INDUSTRIES, INC.,

*Plaintiff-Appellee*,

v.

UNITED STATES,

*Defendant-Appellee*,

UNITED STATES STEEL CORPORATION,

*Defendant-Appellant*.

---

2021-2172

---

Appeal from the United States Court of International Trade in
Case No. 21-00015
Judge M. Miller Baker

---

NORTH AMERICAN INTERPIPE INC.,

*Plaintiff-Appellee*,

v.

UNITED STATES,

*Defendant-Appellee*,

UNITED STATES STEEL CORPORATION,

*Defendant-Appellant*.

---

2021-2180

---

Appeal from the United States Court of International Trade in
Case No. 20-03825
Judge M. Miller Baker

EVRAZ INC. NA,

*Plaintiff-Appellee,*

v.

UNITED STATES,

*Defendant-Appellee,*

UNITED STATES STEEL CORPORATION,

*Defendant-Appellant.*

---
2021-2181
---

| Appeal from the United States Court of International Trade in Case No. 20-03869 Judge M. Miller Baker |
| --- |

AM/NS CALVERT LLC,

*Plaintiff-Appellee,*

v.

UNITED STATES,

*Defendant-Appellee,*

UNITED STATES STEEL CORPORATION,

*Defendant-Appellant.*

---
2021-2182
---

| Appeal from the United States Court of International Trade in Case No. 21-00005 Judge M. Miller Baker |
| --- |

VALBRUNA SLATER STAINLESS, INC.,

*Plaintiff-Appellee*,

v.

UNITED STATES,

*Defendant-Appellee*,

ELECTRALLOY/G.O. CARLSON,

*Defendant-Appellant*.

2021-2183

Appeal from the United States Court of International Trade in
Case No. 21-00027
Judge M. Miller Baker

VOESTALPINE HIGH PERFORMANCE METALS CORP.,
EDRO SPECIALTY STEELS, INC.,

*Plaintiffs-Appellees*,

v.

UNITED STATES,

*Defendant-Appellee*,

ELECTRALLOY/G.O. CARLSON, CRUCIBLE INDUSTRIES LLC,
ELLWOOD CITY FORGE COMPANY, and ELLWOOD SPECIALTY STEEL,

*Defendants-Appellants*.

2021-2185

Appeal from the United States Court of International Trade in
Case No. 21-00093
Judge M. Miller Baker

DEFENDANTS-APPELLANTS' JOINT OPENING BRIEF

Charles A. Rothfeld
Matthew J. McConkey
MAYER BROWN LLP
1999 K Street N.W.
Washington, DC 20006
Phone: (202) 263-3000
Fax: (202) 331-3101


*Counsel to United States Steel
Corporation in CAFC Ct. No. 21-2180*


Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th Street, Suite 500
Washington, DC 20001
Phone: (202) 223-1700


*Counsel to United States Steel
Corporation in CAFC Ct. No. 21-218*

Thomas M. Beline
James E. Ransdell
Chase J. Dunn
Nicole Brunda
CASSIDY LEVY KENT (USA) LLP
900 19th Street N.W., Suite 400
Washington, DC 20006
Phone: (202) 567-2300
Fax: (202) 567-2301


*Counsel to United States Steel
Corporation in CAFC Ct. Nos. 21-2172,
21-2182*


John R. Magnus
TRADEWINS LLC
1330 Connecticut Ave. N.W.
Washington, DC 20036
Phone: (202)-744-0368


*Counsel to Electralloy/G.O. Carlson,
Ellwood City Forge, Ellwood Specialty
Steel, and Crucible Industries in CAFC
Ct. Nos. 21-2183, 21-2185*

been "made a party to the permitting process" under applicable state regulations.

Any decision by the court would, therefore, practically "impede {its} ability to

protect its interest in the administrative proceeding." *Id*. at 779 & n.8.

Likewise, in *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1253-54

(10th Cir. 2001), public interest groups sought intervention in an action

challenging the legality of the Presidential Proclamation establishing a national

monument.  Noting that intervenors had provided input to the existing monument

management plan, as well as their environmental, conservationist, and economic

interests in tourism revenue, the court concluded these would be impaired if the

monument lost its protected status.  *Id.*; *see also WildEarth Guardians v. Nat'l

Park Serv.*, 604 F.3d 1192, 1200 (10th Cir. 2010) (applying same rationale to

intervenor that "submitted comments to the NPS" in developing a challenged

wildlife management plan).

Other Circuits have furthermore recognized that participation in

development of the record for judicial review is necessary to protect an

intervenor's interest.  In *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir.

2001), the Second Circuit recognized that the "opportunity to develop a record that

would have permitted a full and appropriate ruling" was necessary to the protection

of intervenors' interests.  *Id.* at 133.  The Ninth Circuit likewise recognized that the

intervenor "should be permitted fully to participate in making the record on which