UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| AUXIN SOLAR, INC., AND CONCEPT CLEAN ENERGY, INC., <br><br>               Plaintiffs, <br><br>     v. <br><br> UNITED STATES; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER, <br><br>               Defendants. | Court No. 23-00274 |

## PROPOSED DEFENDANT-INTERVENORS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTIONS TO INTERVENE

February 26, 2024

# TABLE OF CONTENTS

**Page**

I.   INTERVENORS SATISFIED ANY PLEADING REQUIREMENT BY FILING MOTIONS TO DISMISS FOR LACK OF JURISDICTION, CONSISTENT WITH CIT RULE 12(B) ...3

II.  THE INTERVENORS HAVE STANDING ..................................................................5

III. THE INTERVENORS MAY INTERVENE AS A MATTER OF RIGHT ............................8

  A.  Intervenors' Motions Are Timely ......................................................................9

  B.  Intervenors Have an Interest in the Property or Transaction at Issue ...............................11

  C.  There Is a Direct Relationship between this Litigation and Intervenors' Interests............17

  D.  The Intervenors Will Not Be Adequately Represented by the Government's Participation Alone ..................................................................18

IV. ALTERNATIVELY, INTERVENORS SATISFY THE CRITERIA FOR PERMISSIVE INTERVENTION ..................................................................20

  A.  The Intervenors Would Be "Adversely Affected or Aggrieved by a Decision" in This Action..................................................................20

  B.  The Defenses Raised by Intervenors Share Law and Facts in Common with Defendants' Defenses ..................................................................21

  C.  Intervenors' Motions to Intervene Were Timely ...............................................................23

CONCLUSION..................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Bryant v. Yellen,*
    447 U.S. 352 (1980) ............................................................................................... 13

*California Steel Indus., Inc. v. United States,*
    48 F.4th 1336 (Fed. Cir. 2022) ...................................................................... passim

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.,*
    386 U.S. 129 (1966) ............................................................................................... 13

*Ceramica Regiomontana, S.A. v. United States,*
    590 F.Supp. 1260 (Ct. Int'l Trade 1984) ............................................................ 3, 4

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,*
    788 F.3d 312 (D.C. Cir. 2015) .............................................................................. 19

*Eregli Demir Ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n,*
    639 F.Supp.3d 1245 (Ct. Int'l Trade 2023) ..................................................... 8, 22

*FEC v. Akins,*
    118 S.Ct. 1777 (1998) ........................................................................................... 20

*Fund For Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) .............................................................................. 19

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    140 S.Ct. 2367 (2020) ............................................................................................. 5

*N. Am. Interpipe, Inc. v. United States,*
    519 F.Supp.3d 1313 (Ct. Int'l Trade 2021) .......................................................... 21

*Norcal/Crosetti Foods, Inc. v. U.S. Customs Service,*
    14 C.I.T. 702 (1990) ................................................................................................ 4

*Ont. Forest Indus. Assoc. v. United States,*
    444 F.Supp.2d 1309 (Ct. Int'l Trade 2006) .......................................................... 20

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003) ................................................................................ 7

*Sierra Club v. Glickman,*
    82 F.3d 106 (5th Cir. 1996) ..................................................................................... 9

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ............................................................. 12

*Town of Chester, N.Y. v. Laroe Estates*,
    137 S.Ct. 1645 (2017) ........................................................................ 5

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C.Cir.1980) .......................................................... 19

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ......................................................... 13, 14

*Wilderness Soc. v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ............................................................ 9

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Associations*,
    695 F.3d 1310 (Fed. Cir. 2012) ....................................................... 8, 9

## Statutes

19 U.S.C. § 1677(9) ............................................................................. 16

28 U S.C. § 2631(j) .............................................................................. 20

28 U.S.C. § 1581(c) ........................................................................ passim

28 U.S.C. § 1581(i) ........................................................................ passim

5 U.S.C. § 702 ...................................................................................... 20

## Regulations

19 CFR 351.309 ................................................................................... 15

## Administrative Materials

*Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules From Southeast Asia,* 87 Fed. Reg. 35,067 (June 9, 2022) ........................................................................................... 12, 17

*Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam,* 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) ........... passim

*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties In Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't Commerce Sept. 16, 2022) ................................................................................................... passim

**Court Rules**

USCIT Rule 12(b) ............................................................................................................... 3, 4

USCIT Rule 24(a) ............................................................................................................... passim

USCIT Rule 24(b) ............................................................................................................... 20, 22

USCIT Rule 24(c) ............................................................................................................... 3, 4, 7, 10

UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| AUXIN SOLAR, INC., AND CONCEPT CLEAN ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER, <br><br> Defendants. | Court No. 23-00274 |

**PROPOSED DEFENDANT-INTERVENORS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTIONS TO INTERVENE**

The undersigned Proposed Defendant-Intervenors[1] should be allowed to intervene in this action, which directly threatens their legally protectable interests, notwithstanding the attempt by Plaintiffs Auxin Solar, Inc. ("Auxin") and Concept Clean Energy, Inc. to deny them any voice in

---

[1] Proposed Defendant-Intervenors (the "Intervenors") include foreign manufacturers and U.S. importers of merchandise subject to the U.S. Department of Commerce's *Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) (final scope determination and final affirmative determinations of circumvention with respect to Cambodia, Malaysia, Thailand, and Vietnam) (the "Final Determinations"), and include BYD (H.K.) Co., Ltd. ("BYD HK") and BYD America LLC ("BYD America") (collectively, "BYD"); Canadian Solar (USA) Inc. ("CSUSA") and Canadian Solar International Limited ("CSIL") (collectively, "Canadian Solar"); JA Solar USA, Inc., JA Solar Vietnam Company Limited, JA Solar Malaysia Sdn. Bhd., and JA Solar International Limited (collectively, "JA Solar"); Risen Solar Technology Sdn. Bhd. ("Risen"); and Trina Solar (U.S.), Inc. ("TUS"), Trina Solar Science & Technology (Thailand) Ltd. ("TTL"), Trina Solar Energy Development Company Limited ("TEDC"), and Trina Solar (Vietnam) Science & Technology Co., Ltd. ("TVN") (collectively, "Trina").

this appeal.  Plaintiffs' Response in Opposition To Motions To Intervene, ECF No. 56 ("Pls.' Resp"), cannot overcome the persuasive law and facts demonstrating that this Court can and should permit Intervenors to be heard as parties in this action.  Intervenors – as U.S. importers liable for duties and with commitments to U.S. customers and foreign manufacturers serving U.S. energy needs – have an undeniable direct and significant stake in the outcome of this litigation.

In fact, in seeking to silence Intervenors, Plaintiffs only confirm that jurisdiction is not available in this appeal because the action should have been brought pursuant to 28 U.S.C. § 1581(c).  That is, Plaintiffs' opposition acknowledges that this "action focuses *squarely on Commerce's failure to enforce its circumvention findings* by application of the {Final Rule}," and that "Solar Plaintiffs launched this appeal under 28 U.S.C. § 1581(i) to challenge Commerce's unlawful rulemaking and *its failure to enforce its affirmative circumvention determinations*."  Pls.' Resp. at 4, 39 (emphases added).  Plaintiffs thus concede that the heart of their appeal is nothing more than a collateral attack on the U.S. Department of Commerce's ("Commerce") Final Determinations of circumvention and accompanying customs instructions, which are plainly matters within the domain of Section 1581(c).  This case is fundamentally about the imposition and collection of duties, which the Court regularly considers pursuant to the jurisdictional grant defined in Section 1581(c).  Consistent with this Court's practice in Section 1581(c) proceedings, foreign producers and U.S. importers, in light of their direct economic and other interests at stake, clearly have a right to intervene under such circumstances.

Plaintiffs' assurances to the Court that Intervenors can adequately participate as amici are also surprising, particularly because Plaintiffs admit that Intervenors stand to face immediate and direct economic harm as a result of this litigation.  Pls.' Resp. at 21 ("{D}uty payments and the anticipated downstream economic effects of those duty payments are manifestly 'economic

interests.' ").  Intervenors will only be able to seek relief to protect these significant interests and procedural rights – which are legally protectable and both economic and non-economic in nature – as full parties to the action, not as outside observers asking the Court for leave to volunteer additional commentary and views.

The Court should thus grant Intervenors' Motions to Intervene.  Plaintiffs' Opposition fails for at least the following reasons: (1) Intervenors satisfied this Court's pleading requirements by filing Motions to Dismiss for Lack of Jurisdiction; (2) Intervenors have demonstrated standing; (3) Intervenors may intervene as a matter of right pursuant to Rule 24(a); and (4) alternatively, Intervenors satisfy the criteria for permissive intervention.

## I.    INTERVENORS SATISFIED ANY PLEADING REQUIREMENT BY FILING MOTIONS TO DISMISS FOR LACK OF JURISDICTION, CONSISTENT WITH CIT RULE 12(B)

Plaintiffs ask this Court to deny the Motions to Intervene because Intervenors did not file answers with their Motions, ignoring (a) that Defendants themselves also have yet to file an answer in this action, and (b) that CIT Rule 12(b) instructs the filing of a motion rather than a pleading to assert an absence of subject-matter jurisdiction.  Pls.' Resp. at 11.  Here, jurisdiction is not available pursuant to Section 1581(i), and so Intervenors correctly filed Motions to Dismiss for Lack of Jurisdiction rather than answers responding to each of Plaintiffs' claims.

As an initial matter, the CIT has accepted a liberal reading of the Rules' pleading requirement, explaining, for example: "the Court sees no reason to adopt a strict construction of the pleading requirement of this Court's Rule 24(c)."  *Ceramica Regiomontana, S.A. v. United States*, 590 F.Supp. 1260, 1263 (Ct. Int'l Trade 1984) (granting a motion to intervene as a matter of right when the movant only initially filed a "statement of claim" with its motion to intervene). The court there held that a purported procedural defect could be cured without prejudice and noted

that pleadings are "written statements made by the parties of their respective grounds of action or defense." *Id*.

The object of the pleading requirement in Rule 24(c) is to supply this Court with sufficient information to "ascertain what are the matters in controversy, and to keep the inquiry within reasonable bounds." *Id.* (internal citation omitted). Indeed, the CIT has previously considered whether a proposed intervenor "supplied ***any motion*** *or other pleading* explaining its claims" with its motion to intervene. *Norcal/Crosetti Foods, Inc. v. U.S. Customs Service*, 14 C.I.T. 702, 704–705 (1990) (emphasis added).

Here, this Court need not even adopt a charitable reading of the Rules because Intervenors satisfied any pleading requirement by timely filing motions to dismiss for lack of jurisdiction. CIT Rule 12(b)(1) explains: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . . . ." CIT Rule 12. Intervenors complied fully with this requirement. Indeed, in other Section 1581(i) proceedings, the CIT has stricken as moot intervenors' attempts to file answers alongside motions to intervene and motions dismiss. *See, e.g.*, Order, *M S International, Inc. v. United States et al*., No. 19-132 (Ct. Int'l Trade Aug. 15, 2019), ECF No. 26 ("ORDERED that Defendant-Intervenor's proposed Answer, ECF No. 14-2, is stricken as moot in light of the requirements of USCIT Rule 12(b) and Defendant-Intervenor's Motion to Dismiss, ECF No. 23.").

Plaintiffs thus criticize Intervenors for not bombarding the Court with additional papers that the Court may only subsequently need to order as moot. It is difficult to give credence to Plaintiffs' criticisms in this regard given their simultaneous arguments that Intervenors' presence in this action is detrimental to interests of judicial efficiency. Judicial efficiency is not served by

4

demanding the premature filing of papers that would be inconsistent with the Rules and unnecessarily clutter this Court's docket.

## II.    THE INTERVENORS HAVE STANDING

Defendant-intervenors are not required to independently show standing so long as (1) another party has standing, and (2) the intervenor is seeking the same relief as that party.  Invenergy Mot. Intervene, ECF No. 44 at 3–4 (citing, inter alia, *Town of Chester, N.Y. v. Laroe Estates*, 137 S.Ct. 1645, 1650–51 (2017)).  Plaintiffs do not contest that the Government has standing to defend this action.  Instead, Plaintiffs argue that Intervenors only "vaguely asserted an intent to seek relief identical to the Government" and that they "failed to submit an accompanying pleading."  Pls.' Resp. at 11, 12.  Both arguments fail.

Plaintiffs' argument that Intervenors lack standing because they have not shown that they seek the same relief as the Government is without merit.  It goes without saying that industry entities that intervene to defend a government rule pursue the same "relief" as the government: for that rule to be upheld.  Industry defendants are regularly permitted to intervene in defense of government rules that apply to their activities.[2]  Indeed, the Supreme Court recently held that where a government party and supporting intervenor seek the same relief, a court "err{s} by inquiring" into an intervenor's "independent Article III standing."  *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 2379 n.6 (2020).

Furthermore, the Intervenors adequately expressed to the Court that they are seeking the same relief as the Defendants and therefore have standing.  The Federal Circuit has recognized

---

[2]      *See, e.g.*, *American Lung Ass'n v. EPA*, No. 19-1140 (Docs. # 1806066 & 1816311) (D.C. Cir. Sept. 11, 2019 & Nov. 18, 2019) (granting motions to intervene in defense of EPA rule regulating power plant $CO_2$ emissions filed by numerous electricity producers and trade associations).

that this minimal demonstration of standing is sufficient for intervenors to join an action. *California Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022) ("Because in each of these cases the proposed intervenors' requested relief is largely identical to the government's prayer for relief, the proposed intervenors have established piggyback standing."). Intervenors were clear in the relief they seek, and that such relief mirrors the Government's requested relief, and this Court should thus recognize that they have standing.[3]  Plaintiffs' reliance on *California Steel* to try to defeat standing in this regard also lacks merit.  Pls.' Resp. at 10–12. There, the Federal Circuit found that each of the proposed defendant-intervenors *did* have standing but failed to identify a legally protectable interest to satisfy the test for intervention as of right. *California Steel*, 48 F.4th at 1344.  *California Steel* thus only supports proposed Intervenors in regards to the question of standing.

---

[3]    *See, e.g.*, BYD Mot. Intervene at 8, ECF No. 35 ("BYD intends to argue that this Court lacks subject matter jurisdiction, which represents a separate and unique legal interest in this proceeding. BYD concurs with Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction. ECF No. 16. In addition, BYD intends to defend against the merits of Plaintiffs' claims challenging the Final Rule as implemented in Commerce's Final Determination."); BYD Mot. Intervene at n.3, ECF No. 35 ("{a}s of the time of this filing, and upon information and belief, Proposed Defendant Intervenors intend to seek the same relief as the Defendants in this dispute (i.e., that this Court uphold the Final Rule)"; Canadian Solar Mot. Intervene at 10, ECF No. 25 ("Canadian Solar intends to argue that this Court lacks subject matter jurisdiction" and "Canadian Solar intends to address Plaintiffs' attempts to vacate Commerce's Final Rule, upon which both CSIL and CSUSA have relied to reorient Canadian Solar's supply chain over the nearly 500 days since Commerce published the Final Rule in the Federal Register."); Canadian Solar Mot. Dismiss at 14, ECF No. 40 ("The Court should thus dismiss the Plaintiffs' Complaint in its entirety for lack of jurisdiction."); JA Solar Mot. Intervene at 7–11, Attachment, ECF No. 28 (discussing JA Solar's interests in arguing in favor of this Court upholding Commerce's Final Rule and the harm facing JA Solar by "retroactively invalidating its Appendix IV certifications with no mechanisms for separating imports whose exemption eligibility is limited solely to Appendix IV"); Risen Mot. Intervene at 5, ECF No. 50 ("{ }Risen shares with the Government defendants' interest in opposing Plaintiffs' attempt to nullify the *Duty Suspension Rule*."); Trina Mot. Intervene at 2–3, ECF No. 45-1 (discussing Trina's interests in arguing in favor of this Court upholding Commerce's Final Rule).

Moreover, even if it were unclear whether Intervenors seek exactly the same relief as the Government at this stage, the Federal Circuit has indicated that the Court should allow intervenors to clarify rather than summarily conclude that they lack standing. *California Steel*, 48 F.4th at 1343 n.4 ("Even if it were unclear whether the proposed intervenors requested additional relief beyond what the government requested, the appropriate action would have been for the {CIT} to request clarification from the parties before sua sponte raising and deciding the standing inquiry."). Contrary to Plaintiffs' requests, the Court should not assess Intervenors' Motions with a presumption against standing.

The majority of Plaintiffs' arguments regarding standing notably rely almost entirely on their claims that Intervenors failed to satisfy the Court's Rule 24(c) pleading requirement. Pls.' Resp. at 12. But, Intervenors complied fully with this Court's requirements by timely providing Motions to Dismiss. In any event, "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). All Intervenors have demonstrated that they meet the CIT's parallel Rule 24(a), and thus they have simultaneously demonstrated standing.

Finally, Plaintiffs have also assailed certain Intervenors' assertion of piggyback standing because those intervenors pointed to the proposed "Joint Stipulation between Solar Plaintiffs and Defendants {as} evidence{ing} the Government's inadequate representation of their interests." Pls.' Resp. at 12–13. Plaintiffs assert that these intervenors' arguments along these lines suggest an "intent to seek <u>different</u> relief" from that sought by the Government. *Id.* at 13. But, Plaintiffs ignore that the proposed Joint Stipulation (and intervenors' criticisms of the same) addresses a hypothetical future scenario where Plaintiffs *succeed* in their litigation and the Defendants are denied the relief that the seek—the Stipulation has nothing to do with the relief sought by

Defendants, and Intervenors' concerns regarding the Stipulation offer no evidence of divergence between the relief sought by Intervenors and Defendants.  The Intervenors have piggyback standing, and Plaintiffs have failed to provide any evidence or compelling argumentation to the contrary.

## III.    THE INTERVENORS MAY INTERVENE AS A MATTER OF RIGHT

Plaintiffs' assertion that Intervenors may not intervene as a matter of right mischaracterizes both the Intervenors' unique interests in the outcome of this litigation and governing law. Pls.' Resp. at 19–35.  CIT Rule 24(a)(2) explains that "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Intervenors have an interest in "the property or transaction that is the subject of the action" and thus are entitled to intervene as a matter of right pursuant to CIT Rule 24(a).

Consistent with the direction provided by the U.S. Court of Appeals for the Federal Circuit in *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Associations*, 695 F.3d 1310, 1315 (Fed. Cir. 2012) and *California Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1340 (Fed. Cir. 2022), the CIT has explained:

> (1) The motion must be timely; (2) the moving party must claim an interest in the property or transaction at issue that is legally protectable—merely economic interests will not suffice, (3) that interest's relationship to the litigation must be of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment, and (4) the movant must demonstrate that said interest is not adequately addressed by the government's participation.

*Eregli Demir Ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n*, 639 F.Supp.3d 1245, 1253 (Ct. Int'l Trade 2023) (internal citations omitted).  The Federal Circuit has made clear

that these requirements should be construed in favor of intervention. *Wolfsen*, 695 F.3d at 1315; *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) ("In evaluating whether Rule 24(a)(2)'s requirements are met, we normally follow practical and equitable considerations and construe the Rule broadly in favor of proposed intervenors. *We do so because a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.*") (internal citations and quotations omitted) (emphasis added).

Relying on this standard and binding authority, Plaintiffs assert that Intervenors "have ignored the Federal Circuit's holdings in both *Wolfsen* and *California Steel*, which expressly foreclose parties situated like Proposed Defendant-Intervenors from establishing a right to intervene." Pls.' Resp. at 20. Plaintiffs fault Intervenors for citing the four-part test from *Wolfsen* rather than *California Steel*, which is curious because these two cases employ the same four factors and *California Steel* relies on *Wolfsen*. Pls.' Resp. at 5. As set forth below and in the Motions to Intervene, this very precedent confirms that Intervenors may enter this appeal as a matter of right.

### A.    Intervenors' Motions Are Timely

Plaintiffs claim that Intervenors' Motions are untimely. Pls.' Resp. at 32–35. It is challenging to decipher Plaintiffs' theory of untimeliness because Plaintiffs argue simultaneously that the Motions are untimely because they are "premature," and also that the timing of the Motions does not support a "just, speedy, and inexpensive determination" of Plaintiffs' action. *Id.* at 33–34. Plaintiffs' theory is thus internally contradictory, contending that the Motions have been filed both too early and too late. And, in any event, Plaintiffs can point to no judicial precedent suggesting that it is possible for a motion to intervene to be "untimely" for being filed too early following the initiation of an action. *See Sierra Club v. Glickman*, 82 F.3d 106, 109 n.1 (5th Cir. 1996) ("The timeliness requirement only bars intervention applications made too late.").

Plaintiffs also maintain that the Court cannot adequately assess timeliness because "USCIT Rule 24(c)(1) unambiguously requires any party seeking to intervene in an action brought under 28 U.S.C. § 1581(i) to attach a pleading to their motion." Pls.' Resp. at 34. As explained above, however, Intervenors satisfied any pleading requirement by timely filing Motions to Dismiss concurrently with their Motions to Intervene.

Plaintiffs' insistence that Intervenors' participation in this action has already and will inevitably result in unacceptable delays is also peculiar. Plaintiffs argue, for example, that they are "prejudiced by the need to respond to additional submissions (including nine motions to intervene and nine repetitive motions to dismiss) and *the resultant delay in the Court's disposition of Solar Plaintiffs' Motion for Preliminary Injunction*." Pls.' Resp. at 7–8 (emphasis added). This is a puzzling claim because Intervenors have not filed responses to the Motion for Preliminary Injunction, even though that Motion would directly and immediately implicate U.S. importer Intervenors' property interests by suspending the normal course of liquidation of their entries. To the extent Plaintiffs are concerned that the disposition of that Motion is outstanding, Intervenors respectfully direct their attention to the Unopposed Motion to Stay Briefing Upon Plaintiffs' Motion for Preliminary Injunction, which references consultation with Plaintiffs but not Intervenors. ECF No. 20. More generally, though, Intervenors can assure Plaintiffs that they too support the "just, speedy, and inexpensive determination" of this action. For this reason, they moved to join the appeal within *days* of the Defendants' Motion to Dismiss. Plaintiffs, on the other hand, waited *more than one year* after the publication of the Final Rule that they purportedly challenge to initiate this appeal. Intervenors additionally respectfully note that the Rules prioritize a "just" determination over a "speedy" one; the Court should not deny Intervenors the right to be heard with respect to their legally protectable interests to support a "speedy" resolution,

particularly when Plaintiffs have demonstrated no urgency for an expedited disposition in any of their own actions thus far.

Intervenors filed their Motions to Intervene on January 26 (Canadian Solar, JA Solar, and BYD), January 29 (Trina), and January 31 (Risen). The Motions were thus made within, respectively, 28, 31, and 33 days of Plaintiffs' December 29, 2023 Complaint. Plaintiffs can point to no deadline in the Rules by which intervenors must move to enter a case under Section 1581(i), because there is no such deadline. Indeed, Intervenors generally submitted their Motions to Intervene within the thirty (30)-day period for intervention set forth by CIT Rule 24(a)(3) in Section 1581(c) appeals. Intervenors began moving to intervene before the issuance of any briefing schedule and within just four (4) days of the Defendants' filing of a Motion to Dismiss the appeal for lack of jurisdiction. As such, Intervenors' Motions were timely.

### B.    Intervenors Have an Interest in the Property or Transaction at Issue

Intervenors are U.S. importers and foreign producers and exporters that have oriented their supply chains, imported subject products, executed legally binding contracts, and invested capital in reliance on Commerce's instructions set forth in the Final Rule and its circumvention Preliminary and Final Determinations. *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties In Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't Commerce Sept. 16, 2022) (the "Final Rule"); Final Determinations. Plaintiffs' opposition ignores that the principal transaction at issue in this appeal is the entry of certain subject merchandise absent the suspension of liquidation or the collection of antidumping and countervailing duty ("AD/CVD") cash deposits, as authorized by Final Determinations and accompanying customs instructions and in accordance with both the *Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells*

*and Modules From Southeast Asia,* 87 Fed. Reg. 35,067 (June 9, 2022) ("Proclamation 10414") and the Final Rule. Plaintiffs' requested relief would modify Commerce's Final Determinations by, *inter alia*, invalidating Commerce's Appendix IV certifications, which have been complied with by Intervenors in accordance with the instructions provided by both Commerce and U.S. Customs and Border Protection. Employing this litigation as a means of collateral attack, Plaintiffs seek to alter fundamentally the character and effect of these Final Determinations.

Intervenors have a legal and protectable right to avail themselves of the guarantees of the Final Rule and Proclamation 10414. Formally published and promulgated through notice-and-comment rulemaking, the Final Rule sets forth Intervenors' right to import subject merchandise free of AD/CVD liability. The agency explained: "Commerce is permitting, for the duration provided for in the Proclamation, the importation, free of the collection of AD/CVD duties and estimated duties . . . . Under this final rule, cash deposits will not be collected . . ." Final Rule at 56,870. Intervenors reasonably relied on this clear statement in their sourcing decisions. If Plaintiffs' requested relief is granted, Intervenors' right to import duty-free, pursuant to the Final Rule, would be nullified by the direct legal operation and effect of the judgment.

In this regard, it is notable that Plaintiffs have cited certain precedent to argue that Intervenors have no legally protectable interest in this action. Plaintiffs direct the Court, for example, to *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). Pls.' Resp. at 21. There, the U.S. Court of Appeals for the Fifth Circuit held that beneficiaries of the Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") program were entitled to intervene as a matter of right because they were the "intended beneficiaries of the challenged federal policy." *Id*. at 660. Likewise, here, Intervenors – the manufacturers and importers acting to provide relief for the energy emergency declared by the President and implemented in the Final

Determinations – have acted in reliance on a federal policy that Plaintiffs seek to undo. Intervenors have a direct and concrete stake in the outcome of this litigation – if the Commerce circumvention Final Determinations and accompanying customs instructions are invalidated, as requested by Plaintiffs, Intervenors will lose their opportunity to avail themselves of a certification mechanism that was developed for them and upon which they have relied. Commerce's instructions set forth in the Final Rule and its circumvention Preliminary and Final Determinations have guided Intervenors' sourcing decisions and capital allocations for over a year.

Plaintiffs assert that Intervenors' only interest in the litigation is "duty payments and the anticipated downstream economic effects of those duty payments," which are "manifestly ' economic interests' " that cannot support intervention. Pls.' Resp. at 21. To be sure, as Plaintiffs readily acknowledge, this litigation threatens direct, major economic consequences to Intervenors that have acted in reliance on the agency's guarantees. This fact has legal significance.

Plaintiffs ignore that several courts have held that direct economic consequences are relevant in assessing intervention as a matter of right. The U.S. Court of Appeals for the Fifth Circuit, for example, has observed that there is not a

> bar preventing all intervention premised on "economic interests" {because such} a rule would be inconsistent with Supreme Court precedent permitting intervention based on economic interests. *See, e.g.*, *Bryant v. Yellen*, 447 U.S. 352, 366–67, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980) (allowing intervention by individuals who might be able buy land 'at prices below the market value for irrigated lands' depending on the outcome of the underlying litigation); *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 135–36, 87 S.Ct. 932, 17 L.Ed.2d 814 (1966) (allowing intervention by gas company into an antitrust dispute between the government and the company's supplier because that dispute would affect its access to product).

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 567–568 (5th Cir. 2016). Rather, that court observed that "economic interests can justify intervention when they are

*directly related to the litigation*." *Id*. at 568 (emphasis added)  This Court should thus recognize Plaintiffs' claim of a "Federal Circuit{} prohibition against treating 'economic interests' as 'legally protectable' " is an invention.  Pls.' Resp. at 22.  Direct economic consequences related to the litigation – which are clear here, as conceded by the Plaintiffs – weigh in favor of intervention as a matter of right.  Indeed, for this reason, intervention by interested parties is rarely controversial in Section 1581(c) proceedings; parties like foreign producers and U.S. importers have a direct, immediate economic interest in the outcome of the litigation and are thus given the right to be heard in such appeals.

Moreover, Plaintiffs' reliance on *California Steel* to dismiss the importance of economic interests is wholly misplaced.  Plaintiffs admit that Intervenors bear a tremendous economic stake in the outcome of this litigation but maintain that economic interests are not relevant to the Intervenor's right to be heard (notwithstanding Rule 24(a)(2)'s express reference to the protection of "property" interests).  Plaintiffs state: "{D}uty payments and the anticipated downstream economic effects of those duty payments are manifestly 'economic interests.'  *See California Steel*, 48 F.4th at 1344 (rejecting proposed intervenor's 'economic' interest in imports' tariff treatment)."  In *California Steel*, though, the proposed intervenors' economic interests were not directly related to the litigation but were instead indirect, speculative, and attenuated.  There, the proposed defendant-intervenors were domestic steel producers (including U.S. Steel), and plaintiffs were U.S. importers challenging denials of their requests to be excluded from paying Section 232 national security tariffs.  The CIT observed that "the only 'interest' identified by U.S. Steel in this matter is the *indirect* economic benefit U.S. Steel believes it would receive by ensuring that {the importers are} injured by unfair tariff treatment."  *California Steel*, 48 F.4th at 1341  (emphasis added).  The Federal Circuit upheld the CIT's finding that such "indirect" and speculative

economic benefit was insufficient to support intervention as a matter of right.  *California Steel* thus does not support the proposition that economic interests are never relevant in assessing an intervenor's right to join an appeal; rather, the Federal Circuit has instructed that indirect and speculative economic interests may alone be insufficient to support intervention.  Here, in contrast to U.S. Steel, Intervenors stand to face immediate and direct economic consequences as a result of this litigation.  Whereas in *California Steel* the proposed intervenors' asserted interest was in ensuring *someone else* would suffer tariff liability, here the proposed intervenors are asserting an interest in minimizing *their own* tariff liability.  Further, Intervenors here have oriented global supply chains, negotiated multi-year contracts, and made commitments to U.S. customers on the basis of the Final Determinations and corresponding customs instructions and certification mechanisms.  These significant interests weigh in favor of intervention, and distinguish Intervenors considerably from the proposed intervenors in *California Steel*.

Intervenors also have a legally protectable right to be heard in the issuance and administration of the Final Determinations and their implementation of the Final Rule.  If Plaintiffs are successful in vacating the Final Rule, Commerce will be forced to modify both the (a) circumvention Final Determinations, and (b) the Final Rule.  The Final Determinations and accompanying customs instructions set forth a certification regime implementing the Final Rule.  The Intervenors that participated in the circumvention administrative proceedings as interested parties filed case briefs and commented on these instructions and certifications, consistent with Commerce regulations providing a right to be heard before the agency.  *See Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Thailand*, Case No. A-570-979 (CIRC Thailand–2022) (Aug. 17, 2023) at 3 ("In accordance with 19 CFR 351.309, we invited parties to comment on the Preliminary Determination and our verification findings.").

If proposed Defendant-Intervenors' Motions to Intervene are denied and Plaintiffs were to prevail on the merits or on their Motion for Preliminary Injunction – and they should not – Commerce's Final Determinations will be fundamentally altered, with Intervenors not being permitted to comment on the legality of this outcome. Likewise, as Plaintiffs acknowledge in their Exhibit 1, several Intervenors filed comments before the agency in response to its Proposed Rule. If Plaintiffs are successful and the Final Rule is invalidated, Intervenors' comments will be rendered meaningless.

In this regard, Plaintiffs' claim that *California Steel* found that the opportunity for public comment does not amount to a legally protectable right is inapposite. Pls.' Resp. at 24. The Court explained: "That the proposed intervenors chose to seize on Commerce's administrative grace and object to the pertinent requests does not transform their participation during the administrative proceedings into a legally protectable interest during subsequent judicial proceedings." *California Steel*, 48 F.4th at 1344. Here, in contrast, Intervenors have a right to be heard as (a) their property and financial interests are directly at stake, just as they were in the underlying rulemaking and circumvention inquiries, (b) they participated as "interested parties," in accordance with 19 U.S.C. § 1677(9), in Commerce's conduct of the circumvention inquiries to protect those interests,[4] and (c) as the interested public (and parties providing relief for the emergency declared by the President) taking advantage of a notice-and-comment rulemaking proceeding, consistent with those interests and the dictates of the Administrative Procedure Act. Plaintiffs' claims here threaten those interests and, indeed, are an end run around Intervenors' previous exercises of their rights to be heard.

---

[4]    The Intervenors did not participate in those proceedings thanks to the Government's "administrative grace" but instead were compelled to participate as "mandatory respondents."

**C.    There Is a Direct Relationship between this Litigation and Intervenors' Interests**

Intervenors, as U.S. importers and foreign manufacturers and exporters, have a legally protectable right to participate in the proceedings resulting in Commerce's circumvention Final Determinations and promulgation of the Final Rule.  If Plaintiffs prevail, the resulting judgement will fundamentally alter the scope and character of the circumvention Final Determinations, potentially bypassing and nullifying Intervenors' right to be heard.  Moreover, as explained above, the principal transactions at issue in this appeal are the entries of certain subject merchandise absent the suspension of liquidation or the collection of AD/CVD cash deposits, as authorized by Final Determinations and accompanying customs instructions and in accordance with both Proclamation 10414 and the Final Rule.  Plaintiffs' claims are a direct and immediate threat to this transaction.

Plaintiffs admit that "vacatur of the {Final Rule} would result in the immediate duty assessment for parties that Commerce determined to be circumventing, pending the outcome of {separate Section 1581(c)} appeals." Pls.' Resp. at 27.  Plaintiffs then contend: "But the proposed intervenors' ultimate liability for those duties is contingent upon the results of those separate, ongoing appeals of Commerce's circumvention determinations." *Id*.  As such, Plaintiffs contend that Intervenors will not suffer direct and immediate harm because separate litigation might at some point reverse Commerce's circumvention determinations with respect to certain companies or countries.

Plaintiffs ignore, however, that not all companies subject to the circumvention findings have filed Section 1581(c) appeals challenging those determinations, and it is possible that certain determinations may be modified while others stand unchanged.  Moreover, Intervenors are unable to adequately represent their interests in the separate Section 1581(c) appeals.  Plaintiffs have

already sought to enjoin the liquidation of Intervenors' entries in the instant appeal, a remedy that Auxin was apparently unable to pursue in the Section 1581(c) actions. Intervenors' only means of protecting their procedural rights with respect to the suspension of their own entries is through joining this appeal; the Section 1581(c) actions are irrelevant in this regard. If Plaintiffs prevail in this appeal, there will be certain, immediate, and direct consequences for Intervenors, which will have to post duties, adjust their supply chains, and forego opportunities to be heard before this Court and the agency. The Court should recognize these immediate consequences, rather than speculate about the outcome of separate litigation. In short, if Plaintiffs prevail, Intervenors will face immediate consequences as a result of the judgment, and they should thus be permitted to intervene.

> **D.    The Intervenors Will Not Be Adequately Represented by the Government's Participation Alone**

The Court should additionally recognize that Intervenors may join the case as a matter of right because they will not be adequately represented by the Government's participation alone. Plaintiffs' response fails to acknowledge that the Defendants and Intervenors face unique positions and motivations in this action. If the Plaintiffs prevail, the Government will be forced to find alternative means of addressing the nation's energy emergency and administering the Final Determinations. Intervenors, on the other hand, will face immediate demands for significant duty payments and lose their right to be heard in the administration of laws that govern their day-to-day operations and long-term planning. The Government may not be inclined to manage the Intervenors' property interests in the same manner as the Intervenors. Moreover, several of the Intervenors are adverse to the Government in the separate Section 1581(c) appeals that are similarly related to Commerce's issuance and administration of the Final Determinations.

In addition, one issue has already arisen with respect to which the Government and the Intervenors appear to be in disagreement. That is, in a proposed joint stipulation with Plaintiffs, Defendants represent that "they do not and will not oppose plaintiffs' argument about the Court's authority to order reliquidation of entries that remain unliquidated as of the date when the Court rules on {the Joint Stipulation} . . . ." See Joint Stipulation in Lieu of Preliminary Injunction ¶ 2, ECF No. 19. The Government may concur that a decision in Plaintiffs' favor could result in such reliquidation (potentially with cash deposit or duty liability for the Intervenors), but the Intervenors do not. The Government's proposed stipulation on this issue is direct evidence that the Intervenors' interests are not adequately protected by the Government's participation alone.

Furthermore, Plaintiffs' response fails to acknowledge that there is a low bar for an intervenor to show lack of adequate representation by existing parties in a proceeding. For instance, the Court of Appeals for the District of Columbia Circuit has criticized a lower court for

> {not acknowledging} that we have described this last requirement for intervention as "not onerous," *Fund For Animals*, 322 F.3d at 735, or "low," *id.* at 736 n. 7, and that a movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation," *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1293 (D.C.Cir.1980). Nor did the court acknowledge that we look skeptically on government entities serving as adequate advocates for private parties.

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (internal citations omitted). Here, Intervenors are the parties that will be forced to post deposits, reckon with supply agreements premised on a vacated federal policy, and forego their opportunity to be heard if the Plaintiffs prevail. They are thus situated differently from the Defendants, have unique motivations, and will not be adequately represented by the Government's participation alone.

## IV.   ALTERNATIVELY, INTERVENORS SATISFY THE CRITERIA FOR PERMISSIVE INTERVENTION

Intervenors have also clearly established that they meet the standard for permissive intervention under 28 U S.C. § 2631(j)(l) and Rule 24(b).  The statute provides that "{a}ny person who would be adversely affected or aggrieved by a decision in a civil action pending in the {CIT} may, by leave of court, intervene in such action . . . ."  28 U.S.C. § 2631(j)(l).  The Court's rule likewise provides for permissive intervention when a proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact."  CIT Rule 24(b)(1)(B).  The sole statutory limitation to permissive intervention is whether "the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  28 U.S.C § 2631(j)(2). Intervenors have demonstrated that they satisfy these requirements, and Plaintiffs have presented no plausible argument to the contrary.

### A.   The Intervenors Would Be "Adversely Affected or Aggrieved by a Decision" in This Action

Intervenors would be adversely affected or aggrieved by a decision in this case.  The CIT has explained that "{t}he phrase 'adversely affected or aggrieved,' which mirrors the language in numerous statutes, including the Administrative Procedure Act, 5 U.S.C. § 702, represents a 'congressional intent to cast the {intervention} net broadly – beyond the common-law interests and substantive statutory rights' traditionally known to law."  *Ont. Forest Indus. Assoc. v. United States*, 444 F.Supp.2d 1309, 1321–1323 (Ct. Int'l Trade 2006) (quoting *FEC v. Akins*, 118 S.Ct. 1777 (1998)).

A proposed intervenor must "demonstrate that (1) it is threatened with injury in fact (2) from a decision of the court (3) that is redressable by a ruling in favor of the party on whose side the proposed intervenor seeks to intervene."  *N. Am. Interpipe, Inc. v. United States*,

519 F.Supp.3d 1313, 1329 (Ct. Int'l Trade 2021) (internal citation omitted).  Intervenors have shown concrete and particularized interests in the outcome of this litigation as importers of record and foreign exporters and foreign manufacturers of merchandise that would be directly and profoundly impacted by the cost of AD/CVD duties.  If the Plaintiffs succeed in their litigation, the Intervenors would directly suffer suspensions of liquidation, imposition of cash deposit requirements against subject entries, and the upending of supply chains which Intervenors have made capital expenditures to build.

Indeed, the adverse effect on Intervenors is more concrete and substantial than the basis of Plaintiff Auxin's own motion to intervene in a recent case stemming from the safeguard action on CSPV cells and modules.  The CIT granted permissive intervention when Auxin asserted generalized interests in trade protection under the safeguard statute.  Order, *Invenergy Renewables LLC v. United States*, No. 19-192 (Ct. Int'l Trade Feb. 10, 2020), ECF No. 141.  Intervenors could suffer direct financial consequences if Plaintiffs succeed.  Thus, Intervenors would be "adversely affected or aggrieved by a decision" in this case.

Plaintiffs admit that potential AD/CVD duty liability arises from the circumvention Final Determinations, which are currently on appeal under Section 1581(c).  Pls.' Resp. at 38–39.  And the relief Plaintiffs seek *in this litigation* is the imposition of AD/CVD duties.  Plaintiffs cannot divorce their challenge to the Final Rule from the threat of duties; one would be meaningless without the other.  The Court should afford Intervenors, who could be adversely affected or aggrieved by the Court's decision, the opportunity to be heard in this case.

### B.    The Defenses Raised by Intervenors Share Law and Facts in Common with Defendants' Defenses

Each Intervenor satisfied the second prong for permissive intervention by filing a Motion to Dismiss arguing that the Court lacks jurisdiction over this action, as that defense shares common

law and facts with the Government's Motion to Dismiss for Lack of Jurisdiction. This Court has granted intervention under similar circumstances. In *Ereğli Demir ve Çelik Fabrikaları T.A.ş.*, this Court held that a proposed intervenor's "prospective defenses share{d} common questions of law and fact with the 'main action' " and the proposed intervenor "demonstrate{d} that they meet the criterion of commonality with the 'main action' pursuant to Rule 24(b)" by seeking to "address jurisdictional issues" in common with the Government. *Ereğli Demir ve Çelik Fabrikaları T.A.ş. v. United States Int'l Trade Comm'n*, 639 F.Supp.3d 1245, 1257 (Ct. Int'l Trade 2023).

Moreover, the fact that the present action concerns a government decision does not defeat Intervenors' position that its defense shares common questions of law and fact with those of the Defendants. Pls.' Resp. at 39-41. In *Ereğli Demir ve Çelik Fabrikaları T.A.ş.*, U.S. steel producers sought to intervene in plaintiff's challenge to the U.S. International Trade Commission's decision to not conduct a reconsideration proceeding. *Ereğli Demir ve Çelik Fabrikaları T.A.ş.*, 639 F.Supp.3d at 1248–49. Just as Plaintiffs claim in their Response to the Motions to Intervene with respect to the Intervenors, the plaintiff in *Ereğli Demir ve Çelik Fabrikaları T.A.ş.* could not press its claims against the proposed intervenors (the U.S. steel producers) to pursue reconsideration of the U.S. International Trade Commission's decision. *See* Pls.' Resp. at 41. The CIT nonetheless found that the defendant intervenors met the criterion of commonality of law and facts between the defendant intervenors defense and the main action.

Intervenors also expressly stated they will oppose Plaintiffs' Motion for a Preliminary Injunction and, if this case reaches the merits, Intervenors will defend the Final Rule and its application. Therefore, there is no doubt regarding the Intervenors' position on the case in support of the Defendants.

C.    **Intervenors' Motions to Intervene Were Timely**

For the reasons demonstrated above in Section III.A, Intervenors' Motions to Intervene were timely, and Plaintiffs' confused argument that these Motions were somehow "premature" is of no moment.  The Court should disregard Plaintiffs' claims; no undue delay or prejudice will befall Plaintiffs if the Court grants the Intervenors' Motions to Intervene.

## CONCLUSION

For these reasons and those set forth below, the undersigned Proposed Defendant-Intervenors respectfully requests that the Court grant their Motions to Intervene.

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis
Nicholas W. Laneville
Gregory M.A. Hawkins

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-8613
craig.lewis@hoganlovells.com

*Counsel to BYD (H.K.) Co., Ltd. and BYD America LLC*

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks
Lindsay K. Brown

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar (USA) Inc. and Canadian Solar International Limited*

23

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Kristin H. Mowry
Bryan P. Cenko
Clemence D. Kim
Evan P. Drake
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com

*Counsel to JA Solar USA, Inc., JA Solar Vietnam Company Limited, JA Solar Malaysia Sdn. Bhd. and JA Solar International Limited*

/s/ Jonathan M. Freed
Jonathan M. Freed
Kenneth N. Hammer
MacKensie R. Sugama

TRADE PACIFIC PLLC
700 Pennsylvania Ave, SE
Washington, DC 20003
Phone: (202) 223-3760
E-mail: jfreed@tradepacificlaw.com

*Counsel for Trina Solar (U.S.), Inc., Trina Solar Science & Technology (Thailand) Ltd., Trina Solar Energy Development Company Limited, and Trina Solar (Vietnam) Science & Technology Co., Ltd.*

/s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
J. Kevin Horgan
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005

*Counsel to Risen*

Dated: February 26, 2024

## CERTIFICATE OF COMPLIANCE

Consistent with Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jonathan T. Stoel, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, and signature block, the word count for this memorandum is 6,985 words.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar (USA) Inc. and Canadian Solar International Limited*

Dated: February 26, 2024