**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JUDGE TIMOTHY M. REIF**

| | | |
|---|---|---|
| AUXIN SOLAR INC. AND CONCEPT CLEAN ENERGY, INC., | ) ) ) | Court No. 23-00274 |
| *Plaintiffs*, | ) ) ) | |
| UNITED STATES; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER, | ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) | |

## PROPOSED INTERVENORS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTIONS TO INTERVENE

Jeffrey S. Grimson
Kristin H. Mowry
Bryan P. Cenko
Clemence D. Kim
Evan P. Drake
**Mowry & Grimson, PLLC**

*Counsel to the American Clean Power Association*

Matthew R. Nicely
Julia K. Eppard
Daniel M. Witkowski
**Akin Gump Strauss Hauer & Feld LLP**

*Counsel to NextEra Energy, Inc. and Solar Energy Industries Association*

John B. Brew
Robert L. LaFrankie
Amanda S. Berman
Alexander H. Schaefer
Weronika Bukowski
**Crowell & Moring LLP**

*Counsel to Invenergy Renewables LLC and Invenergy Solar Equipment Management LLC*

Dated: February 26, 2024

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.      Proposed Intervenors Complied with Rule 24(c)(1) by Filing Motions to Dismiss ...........2

II.     Proposed Intervenors May Intervene as a Matter of Right ..................................................3

       A.     Proposed Intervenors' Motions Are Timely ............................................................4
       B.     Proposed Intervenors Have Interests in the Property or Transaction at Issue..........5
       C.     There Is a Direct Relationship Between this Litigation and Proposed
             Intervenors' Interests....................................................................................10
       D.     The Government Does Not Adequately Represent Intervenors' Interests ............11
III.    Alternatively, the Court Should Exercise Its Discretion and Grant Permissive
      Intervention to Afford Proposed Intervenors the Opportunity to be Heard ......................12

       A.     Proposed Intervenors Would Be "Adversely Affected or Aggrieved by a
             Decision" in This Action........................................................................................13
       B.     The Defenses Raised by Proposed Intervenors Share Law and Facts in
             Common with the Government Defendants' Defenses.........................................14
       C.     Proposed Intervenors' Motions to Intervene Were Timely and Intervention
             Will Not Unduly Delay or Prejudice Adjudication of the Case............................15
IV.    Proposed Intervenors Have Standing to Intervene as a Party to the Proceeding..............16

CONCLUSION......................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)....................................................................................13

*Am. Horse Prot. Ass'n v. Veneman*,
    200 F.R.D. 153 (D.D.C. 2001).....................................................................20

*Am. Lung Ass'n v. EPA*,
    No. 19-1140, (D.C. Cir. Sept. 11, 2019 & Nov. 18, 2019).....................16

*American Marine Transport, Inc. v. United States*,
    870 F.2d 1559 (Fed. Cir. 1989).....................................................................8

*Black v. LaHood*,
    No. 11-1928, 2012 WL 13054502 (D.D.C. Mar 1, 2012) ........................2

*Bryant v. Yellen*,
    447 U.S. 352 (1980)......................................................................................8

*California Steel Indus., Inc. v. United States*,
    48 F.4th 1336 (Fed. Cir. 2022) ................................................4, 7, 8, 9, 16, 17

*Canadian Lumber Trade Alliance v. United States*,
    517 F.3d 1319 (Fed. Cir. 2008)....................................................................3

*Carpenters Indus. Council v. Zinke*,
    854 F.3d 1 (D.C. Cir. 2017).........................................................................18

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*,
    386 U.S. 129 (1966)......................................................................................8

*Çelik Fabrikaları T.A.Ş. v. U.S. Int'l Trade Comm'n*,
    639 F. Supp. 3d 1245 (Ct. Int'l Trade 2023) .......................................4, 14

*Conservation L. Found. of New England, Inc. v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992)...........................................................................8

*Crossroads Grassroots Pol'y Strategies v. FEC*,
    788 F.3d 312 (D.C. Cir. 2015).................................................................12, 19

*Czyzewski v. Jevic Holding Corp.*,
    580 U.S. 451 (2017).....................................................................................18

*FEC v. Akins*,
   524 U.S. 11 (1998)..................................................................................13

*Fed'n for Am. Immigration Reform, Inc. v. Reno*,
   93 F.3d 897 (D.C. Cir. 1996).................................................................17

*Fund For Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003)......................................................6, 17, 20

*GreenFirst Forest Prods., Inc. v. United States*,
   577 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) .........................................13

*Invenergy Renewables LLC v. United States*,
   No. 19-192 (Ct. Int'l Trade Nov. 4, 2019)........................................14, 16

*John R. Sand & Gravel Co. v. Brunswick Corp.*,
   143 Fed. Appx. 317 (Fed. Cir. 2005).....................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)................................................................................19

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020).....................................................................17, 19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................17

*Marx v. Gov't of Guam*,
   866 F.2d 294 (9th Cir. 1989) ...................................................................2

*N. Am. Interpipe v. United States*,
   519 F. Supp. 3d 1313 (Ct. Int'l Trade 2021) .........................................13

*Nat'l Parks Conservation Ass'n v. U.S. Envtl. Prot. Agency*,
   759 F.3d 969 (8th Cir. 2014) ....................................................................8

*Neo Solar Power Corp. v. United States*,
   No. 16-88, 2016 WL 3390237 (Ct. Int'l Trade June 17, 2016) ................2

*NLMK Pa., LLC v. United States*,
   553 F. Supp. 3d 1354 (Ct. Int'l Trade 2021) .........................................13

*Norcal/Crosetti Foods, Inc. v. U.S. Customs Serv.*,
   14 C.I.T. 702 (1990) ............................................................................2, 15

*Ont. Forest Indus. Ass'n v. United States*,
   444 F. Supp. 2d 1309 (Ct. Int'l Trade 2006) ..................................3, 13, 15

*SEC v. Invs. Sec. Leasing Corp.*,
   610 F.2d 175 (3rd Cir. 1979) ...............................................................2

*Shevlin v. Schewe*,
   809 F.2d 447 (7th Cir. 1987) ...............................................................2

*Sierra Club v. EPA*,
   No. 13-1112 (D.C. Cir. May 20, 2013)................................................16

*Sierra Club v. Glickman*,
   82 F.3d 106 (5th Cir. 1996) ..............................................................4, 6

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ...............................................................6

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ...............................................................9

*Town of Chester, New York v. Laroe Estates*,
   137 S. Ct. 1645 (2017)........................................................................16

*United States v. Metropolitan St. Louis Sewer Dist.*,
   569 F.3d 829 (8th Cir. 2009) ...............................................................3

*Utah Ass'n of Ctys. v. Clinton*,
   255 F.3d 1246 (10th Cir. 2001) ...........................................................6

*Vivitar Corp. v. United States*,
   585 F. Supp. 1415 (Ct. Int'l Trade 1984) .........................................15

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
   834 F.3d 562 (5th Cir. 2016) ...............................................................8

*Wilderness Soc. v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) .............................................................4

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*,
   695 F.3d 1310 (Fed. Cir. 2012)..........................................3, 4, 7, 8, 12

**Statutes**

5 U.S.C. § 551 ...........................................................................................9

5 U.S.C. § 553 ...........................................................................................9

19 U.S.C. § 1318(a) .................................................................................19

19 U.S.C. § 1516a(a)(2)(A) .....................................................................11

19 U.S.C. § 1677(9) ........................................................................................9

28 U.S.C. § 2631(j)(l) ...............................................................................12, 13

**Rules and Regulations**

19 C.F.R. § 101.1 ..........................................................................................9

19 C.F.R. § 141.1(b)(1) .................................................................................9

Rules of the United States Court of International Trade
    Rule 7(b) ..................................................................................................1
    Rule 12(b) ................................................................................................2
    Rule 24 ....................................................................................................1
    Rule 24(a)..............................................................................3, 4, 7, 8, 11, 20
    Rule 24(b) ..............................................................................................12
    Rule 24(c) ......................................................................................2, 3, 19

**Other Authorities**

*Final Scope Determination and Final Affirmative Determinations of*
    *Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*,
    88 Fed. Reg. 57,419 (Aug. 23, 2023).................................................6, 9, 10, 11, 12

*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in*
    *Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Sept. 16,
    2022) ............................................................................................. *passim*

# INTRODUCTION

Pursuant to Rules 7(b) and 24 of the Rules of the United States Court of International Trade ("CIT"), NextEra Energy, Inc. ("NextEra"), Invenergy Renewables LLC and Invenergy Solar Equipment Management LLC ("Invenergy"), Solar Energy Industries Association ("SEIA"), and American Clean Power Association ("ACP") ("Proposed Intervenors") submit this reply to Plaintiffs' opposition to all motions to intervene in this action challenging the U.S. Department of Commerce's ("Commerce") regulations implementing Proclamation 10414. *See generally* Pls.' Resp. in Opp. to Mots. to Intervene (Feb. 16, 2024), ECF No. 56 ("Pls. Resp"); *see also Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Sept. 16, 2022) ("*Final Rule*").

Through this litigation, Plaintiffs seek to retroactively impose antidumping and countervailing ("AD/CVD") duties on billions of dollars in imports of certain crystalline silicon photovoltaic ("CSPV") cells and modules. Yet, Plaintiffs have no direct stake in those duties, which relate principally to merchandise that already has been imported into the United States and which in any case would be paid to the U.S. government, not to Plaintiffs. Notwithstanding that the importers of the subject merchandise would bear the cost of the duties that Plaintiffs seek to impose, Plaintiffs assert that importers somehow lack a sufficient interest in this litigation and should be precluded from participating as parties. The Court should reject Plaintiffs' attempt to sideline the entities that are most directly impacted by this litigation, as Proposed Intervenors meet the standards for both intervention as of right and permissive intervention. Mots. to Intervene (ECF No. 21, 24, 29, 44).

**ARGUMENT**

**I.      Proposed Intervenors Complied with Rule 24(c)(1) by Filing Motions to Dismiss**

Plaintiffs assert that the motions to intervene should be denied because Proposed Intervenors did not attach answers to the complaint. Pls. Resp. 10-12, 34. Proposed Intervenors satisfied Rule 24(c)(1) by filing motions to dismiss for lack of jurisdiction contemporaneously with their motions to intervene (or soon thereafter).

As a threshold matter, a motion to dismiss for lack of subject matter jurisdiction "*must* be made before pleading if a responsive pleading is allowed." Rule 12(b) (emphasis added). Thus, Proposed Intervenors properly filed motions to dismiss before any answers. Moreover, courts have specifically held that motions to dismiss satisfy the pleading requirement of Rule 24(c). *See, e.g.*, *Marx v. Gov't of Guam*, 866 F.2d 294, 297 (9th Cir. 1989) (construing special appearance and motion to dismiss as motion to intervene satisfying Rule 24); *Black v. LaHood*, No. 11-1928, 2012 WL 13054502, at *2 (D.D.C. Mar 1, 2012) (treating motion to dismiss as pleading that set out intervenors' defenses). Plaintiffs' citations to cases in which no pleading whatsoever was included with a motion to intervene[1] are inapposite. *Cf. Norcal/Crosetti Foods, Inc. v. U.S. Customs Serv.*, 14 C.I.T. 702, 704 (1990) (considering whether the proposed intervenor "supplied *any motion* or other pleading explaining its claims" with the motion to intervene (emphasis added)). Plaintiffs fail to cite any case law supporting their novel claim that a motion to dismiss does not qualify as a responsive pleading for purposes of Rule 24(c)—because no such case law exists.

Furthermore, in *Ceramica Regiomontana, S.A. v. United States*, this court explained that there was "no reason to adopt a strict construction of the pleading requirement of this Court's Rule

---

[1] *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987); *SEC v. Invs. Sec. Leasing Corp.*, 610 F.2d 175, 178 (3rd Cir. 1979); *Neo Solar Power Corp. v. United States*, No. 16-88, 2016 WL 3390237 at *2 (Ct. Int'l Trade June 17, 2016).

24(c)."  590 F. Supp. 1260, 1263 (Ct. Int'l Trade 1984).  In *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1328 (Fed. Cir. 2008), domestic producers that moved to dismiss for lack of subject matter jurisdiction were granted intervention without filing an answer with their motion to intervene.  In *Sunpreme Inc., v. United States*, Ct. No. 15-315, this court granted SolarWorld Americas, Inc.'s unopposed motion to intervene without a pleading when a briefing schedule had been set regarding a motion to dismiss.  These cases confirm that this court has not followed a strict interpretation of Rule 24(c), particularly when a motion to dismiss is pending.

Furthermore, Proposed Intervenors' motions to dismiss serve the same purpose as the required pleading for purposes of Rule 24(c), as they set forth Proposed Intervenors' defense that the court lacks jurisdiction.  *See Ceramica Regiomontana*, 590 F. Supp. at 1263 (explaining that pleadings are "written statements made by the parties of their respective grounds of action or defense.  The object is to ascertain what are the matters in controversy, and to keep the inquiry within reasonable bounds.") (internal quotation marks omitted); *see also Ont. Forest Indus. Ass'n v. United States*, 444 F. Supp. 2d 1309, 1323 (Ct. Int'l Trade 2006) (pleading submitted with motion to intervene "allows the court to assess whether the proposed intervenors will positively, and in good-faith, contribute to the proceedings"); *United States v. Metropolitan St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (proposed intervenor's statement of interest satisfied Rule 24(c) because it provided sufficient notice to the court and parties of intervenor's interests).  The motions to dismiss provide sufficient information regarding the bases for intervention to the Court and the parties.  The Court should consider the Motions to Intervene to be properly filed.

## II.  Proposed Intervenors May Intervene as a Matter of Right

Plaintiffs make many unfounded claims that Proposed Intervenors may not intervene as a matter of right and grossly mischaracterize these parties' interests in the outcome of this litigation and governing law.  Pls. Resp. 19-35.  In evaluating Rule 24(a)(2), and consistent with *Wolfsen*

*Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012) and *California Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1340 (Fed. Cir. 2022), this court has explained that (1) the motion must be timely; (2) the movant must claim a "legally protectable" interest in the property or transaction; (3) the interest must be "direct and immediate" such that the intervenor will "gain or lose" by the judgment; and (4) the interest is not "adequately addressed by the government's participation." *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. U.S. Int'l Trade Comm'n*, 639 F. Supp. 3d 1245, 1253 (Ct. Int'l Trade 2023) (internal quotation marks omitted). These requirements should be construed in favor of intervention. *Wolfsen*, 695 F.3d at 1315; *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (Rule 24(a) should be construed "broadly in favor of proposed intervenors") (internal quotation marks omitted).

Plaintiffs argue that Proposed Intervenors "have ignored the Federal Circuit's holdings in both *Wolfsen* and *California Steel*, which expressly foreclose parties situated like Proposed Defendant-Intervenors from establishing a right to intervene." Pls. Resp. 20. Plaintiffs are incorrect, and Proposed Intervenors may join in this appeal as a matter of right.

### A. Proposed Intervenors' Motions Are Timely

Plaintiffs claim that Proposed Intervenors' motions to intervene are untimely. Pls. Resp. 32-35. Plaintiffs confusingly argue that the motions are untimely both because they are "premature," and because the timing of the motions does not support a "just, speedy, and inexpensive determination" of Plaintiffs' action, which would suggest that the filings are too late. *Id*. at 33-34. Plaintiffs' contention that the motions are premature should be rejected out of hand. "The timeliness requirement only bars intervention applications made too late." *Sierra Club v. Glickman*, 82 F.3d 106, 109 n.2 (5th Cir. 1996).

Plaintiffs, having argued that the motions were filed too early, cannot argue that the motions are untimely because Proposed Intervenors waited too long to seek intervention. There is

no deadline in this court's rules by which intervenors must move to enter a case under Section 1581(i). NextEra, SEIA, and ACP moved to intervene just 28 days after the Complaint, and Invenergy filed its motion three days later. Proposed Intervenors moved to intervene before issuance of any briefing schedule and within a week of Defendants' motion to dismiss the appeal for lack of jurisdiction. As such, Proposed Intervenors' motions were timely.[2]

Plaintiffs' claims that Proposed Intervenors' participation in this action will inevitably result in unacceptable delays are equally misplaced. Plaintiffs argue, for example, that the motions to intervene and dismiss have delayed the disposition of Plaintiffs' Motion for Preliminary Injunction. *See* Pls. Resp. 8. But none of the Proposed Intervenors have responded to that motion, and the briefing regarding that motion has been stayed. Regardless, because Proposed Intervenors support the "just, speedy, and inexpensive determination," they moved to join the appeal within a matter of weeks of the Complaint and just days after Defendants' Motion to Dismiss. The court's rules firstly prioritize a "just" determination. The court should not deny the right to defend legally protectable interests out of expediency. The fact that Proposed Intervenors sought to intervene in this action *before* their interests could be adversely affected in the litigation, instead of waiting for those interests to be affected and then seeking to join the litigation to try to rescind those orders, demonstrates the timeliness of their motions to intervene.

### B. Proposed Intervenors Have Interests in the Property or Transaction at Issue

NextEra and Invenergy are both U.S. importers and purchasers of merchandise covered by the *Final Rule*. SEIA's and ACP's members include U.S. importers (including NextEra and

---

[2] Plaintiffs' arguments to the contrary seem to rely entirely on (a) their misunderstanding of Rule 24's pleading requirements, and (b) the factors other than timeliness that this court has found to be relevant in assessing intervention as a matter of right. But, as explained below, these factors weigh in favor of intervention, too.

Invenergy), foreign producers and exporters, and solar developers that have oriented their supply chains, imported subject products, executed legally binding contracts, and invested capital in reliance on the *Final Rule* and its circumvention Preliminary and Final Determinations. *Final Rule*, 87 Fed. Reg. at 56,868-87; *Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419, 57,425-27 (Aug. 23, 2023) ("*Final Determinations*"). Courts often allow associations to intervene as of right to protect the interests of their members when at least some of their members would have standing to intervene and the litigation is germane to the organization's purpose.[3] *See, e.g.*, *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996).

Plaintiffs' opposition to the motions to intervene ignores that the primary transactions at issue in this appeal are the entries of merchandise without suspension of liquidation or collection of AD/CVD cash deposits and duties, pursuant to the *Final Determinations*, accompanying customs instructions, and the *Final Rule*. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (finding that there "can be no question" of movant's "requisite interest" when the "property" is the subject of a government decision that is the "transaction"). Proposed Intervenors have a legal and protectable right to avail themselves of the guarantees of the *Final Rule*. The rule was promulgated through notice-and-comment rulemaking and sets forth a right by importers to import subject merchandise free of AD/CVD liability. *See Final Rule*, 87 Fed. Reg. at 56,870. Proposed Intervenors reasonably relied on the *Final Rule* in their sourcing

---

[3] To the extent some courts suggest that the case must not require the participation of individual members as parties for an association to intervene, a defense of the *Final Rule* would not require individual members of SEIA or ACP to participate as parties.

decisions for more than a year. If Plaintiffs were to obtain the relief they seek, the right to import duty-free, pursuant to the *Final Rule*, would be nullified by the legal operation and effect of the judgment. Plaintiffs have also stated that they seek to impose substantial financial liability through this litigation via the assessment of AD/CVD duties on both past and continuing entries made in reliance on the *Final Rule*. Retention of the right to import duty-free pursuant to the *Final Rule* and thereby avoid substantial duty liability constitute legally protectable interests for purposes of Rule 24(a).

Plaintiffs assert that these interests are "manifestly economic interests," and mistakenly interpret *California Steel* and *Wolfsen* as establishing a flat "prohibition against treating 'economic interests' as 'legally protectable.'" Pls. Resp. 21-22. Plaintiffs are wrong. The economic interests of the proposed intervenors in *California Steel* were indirect and speculative. The proposed intervenors in that case were domestic steel producers that desired for their competitors to continue to be subjected to additional Section 232 national security duties. In other words, the proposed intervenors' position was analogous to that of the Plaintiffs in this proceeding (who similarly seek an indirect benefit in the form of duties levied on competitors) rather than Proposed Intervenors (who would bear the burden of such duties). This court concluded that the only expressed "interest" was an "indirect economic benefit" that proposed intervenor "believes it would receive." *Cal. Steel*, 48 F.4th at 1341. The Federal Circuit upheld this court's finding that such "indirect" and speculative economic benefit was insufficient to support intervention as a matter of right. *Id.* at 1344. *California Steel* raises a meaningful question as to the legitimacy of the relief Plaintiffs seek, but to the extent that *California Steel* requires that an intervenor have a direct, non-speculative interest in the proceeding, *California Steel* militates in favor of granting intervention.

In *Wolfsen*, the Federal Circuit recited the factors laid out in *American Marine Transport, Inc. v. United States*, 870 F.2d 1559 (Fed. Cir. 1989), but did not reach the question of a legally protectable interest for purposes of Rule 24(a). *See* 695 F.3d at 1315. *American Marine Transport*, like *California Steel*, involved a proposed intervenor with an "indirect and contingent" interest, limited to preventing *another company* from obtaining a more favorable competitive position. *Id.* at 1562. Thus, the Federal Circuit's cases do not stand for the proposition that economic interests can never be the basis for intervention as of right. Rather, generic and indirect economic interests based on the competitive impact of actions taken *with respect to other companies* are insufficient for purposes of Rule 24(a).

Proposed Intervenors, here, are nothing like the proposed intervenors in *California Steel* that sought to indirectly benefit from duties imposed on the imports of *other parties*. Numerous court decisions establish that economic interests can suffice for Rule 24(a) if those interests would be directly impacted by the litigation. For example, the Fifth Circuit has observed that there is *no* bar "preventing all intervention premised on 'economic interests'" because such a rule would be "inconsistent with Supreme Court precedent permitting intervention based on economic interests." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 567 (5th Cir. 2016) (citing *Bryant v. Yellen*, 447 U.S. 352, 366–67 (1980); *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 135–36 (1966)). Rather, "economic interests can justify intervention when they are directly related to the litigation." *Id.* at 568. The Eighth Circuit, citing Third and Fifth Circuit precedent, has held that "when a third party files suit to compel governmental agency action that would directly harm a regulated company, the company's economic interests in the lawsuit satisfy Rule 24(a)(2)'s recognized-interest requirement." *Nat'l Parks Conservation Ass'n v. U.S. Envtl. Prot. Agency*, 759 F.3d 969, 976 (8th Cir. 2014); *see also Conservation L. Found. of New*

*England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (finding intervention appropriate when the entities "seeking intervention are the real targets of the suit and are the subjects of the regulatory plan"); *Texas v. United States*, 805 F.3d 653, 660 (5th Cir. 2015) (finding that interests of "the intended beneficiaries of the challenged federal policy" are distinct from other interests that may be undifferentiated or generalized).

Plaintiffs seek to force Defendants to impose AD/CVD duties on entries covered by the *Final Rule*. *See, e.g.*, Mot. for Prelim. Inj. 14-17. As importers, Proposed Intervenors (or their members) are the regulated parties responsible for paying those duties. *See* 19 C.F.R. § 101.1 (defining "Importer" as person responsible for duties); *id.* § 141.1(b)(1) (establishing liability of importers for duties). Proposed Intervenors thus have a direct and legally protectable interest at stake in this litigation, namely their financial and legal rights and obligations in affected entries.

Proposed Intervenors also have a legally protectable right to be heard in the issuance and administration of the *Final Determinations* and *Final Rule*. NextEra was an interested party under 19 U.S.C. § 1677(9) in the circumvention inquiries and briefed the issue of the certification requirements implementing the Final Rule. SEIA and ACP (of which Invenergy is a member) and NextEra commented during the notice-and-comment process leading to adoption of the *Final Rule*. Unlike the company-specific exclusion process in *California Steel*, which involved "licensing" for purposes of the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 551(8)-(9), Commerce here clearly engaged in rulemaking under the APA, *see id.* § 551(4)-(5) which mandates that agencies "*shall give interested persons an opportunity to participate in the rule making*," *id.* § 553(c) (emphasis added). Proposed Intervenors' participation rights in these proceedings were not a mere product of "administrative grace," *Cal. Steel*, 48 F.4th at 1344, but statutory rights to be heard that would be nullified if Plaintiffs prevail in this case without Proposed Intervenors' participation.

## C. There Is a Direct Relationship Between this Litigation and Proposed Intervenors' Interests

As explained above, the principal transactions at issue in this appeal are the entries of certain subject merchandise free of actual or potential AD/CVD liability, as authorized by the *Final Determinations* and accompanying customs instructions in accordance with the *Final Rule*. Plaintiffs' claims are a direct and immediate threat to these transactions. Plaintiffs admit that "vacatur of the {*Final Rule*} would result in the *immediate duty assessment* for parties that Commerce determined to be circumventing, pending the outcome of {separate Section 1581(c)} appeals." Pls. Resp. 27 (emphasis added). Plaintiffs, however, opine that Proposed Intervenors will not suffer direct and immediate harm because separate ongoing litigation might eventually result in the reversal of Commerce's *Final Determinations* with respect to certain companies or countries. *Id*.

Plaintiffs are wrong for at least two reasons. First, the target of this litigation, and the source of Plaintiffs' supposed injury, is Commerce's *Final Rule* and *not* Commerce's *Final Determinations*; Plaintiffs also acknowledge that the relief they *seek in this litigation* is the imposition of AD/CVD duties on entries that effectively were excluded from Commerce's *Final Determinations* by reason of the *Final Rule*. Plaintiffs thus seek to directly transform the legal status of the entries benefitting from the *Final Rule* through this litigation, which would directly and negatively impact Proposed Intervenors' rights in those entries. The fact that Proposed Intervenors' interests are *also* potentially affected by the litigation of the circumvention determinations is irrelevant and does not change the fact that interests in their entries will be directly and immediately affected by the judgment in this case if Plaintiffs prevail in this action.

Second, Plaintiffs ignore the fact that not all companies subject to the circumvention findings have filed Section 1581(c) appeals challenging those determinations and the deadlines to

appeal and intervene have passed.[4]  Companies had no reason to challenge Commerce's *Final Determinations* in order to ensure that the entries benefitting from the *Final Rule* were not assessed with AD/CVD duties.  In this appeal (but not the Section 1581(c) actions), Plaintiffs have already sought to enjoin the liquidation of Proposed Intervenors' entries.  Thus, Proposed Intervenors' only means of protecting their procedural rights with respect to potential imposition of duties on entries covered by the *Final Rule* is through joining this appeal.

Proposed Intervenors will face immediate financial, legal, and procedural consequences should Plaintiffs obtain the relief they seek, giving Proposed Intervenors a right to intervene.

### D.  The Government Does Not Adequately Represent Intervenors' Interests

Finally, Proposed Intervenors' interests will not be adequately represented by the Government's interests alone.  Plaintiffs' response fails to acknowledge that the Defendants and Proposed Intervenors occupy distinct positions and face distinct consequences in this action.  If Plaintiffs prevail, the Government will have to find alternative means of addressing the nation's energy emergency and administering the *Final Determinations*.  Proposed Intervenors, by contrast, will face immediate demands *from the Government* for significant duty payments and lose their right to be heard in the administration of laws that govern their day-to-day operations and long-term planning.  The Government may not be inclined to manage Proposed Intervenors' property interests in the same manner as Proposed Intervenors.  This is particularly true for Proposed Intervenors who also act as importers, as they face concrete financial liability for duties on both past and future imports of CSPV products.  Indeed, the Government would collect and receive any

---

[4] The *Final Determinations* were mailed on September 20, 2023, making the deadline to file a summons October 20, 2023, which was 30 days later.  19 U.S.C. § 1516a(a)(2)(A)(ii).  The deadline to file a complaint was November 20, 2023, *id.* § 1516a(a)(2)(A), making December 20, 2023 the deadline for seeking intervention, USCIT R. 24(a)(3).

duties imposed as a result of the Court's decisions in this proceeding, and its interests are therefore potentially adverse to importers.

Moreover, Proposed Intervenors are uniquely positioned to address the appropriateness of any remedy Plaintiffs may seek. Whereas Defendants promulgated the *Final Rule*, Proposed Intervenors actually relied upon that rule, including in their decision-making as to (1) from where and whom to source CSPV modules, (2) which of several available certifications to submit to justify duty-free treatment of their imports, (3) whether and how much to participate in the circumvention inquiries, and (4) whether to appeal the *Final Determinations*. Given the impact of the *Final Rule* on Proposed Intervenors' commercial activity, they are far better positioned than Defendants to address the equities of any proposed remedy in this case.

Whether the government is an adequate spokesman for an interested private litigant "depends on the facts of the case." *Wolfsen*, 695 F.3d at 1318. Given their unique interests and perspectives compared to the Government, Proposed Intervenors easily clear the low bar for showing a lack of adequate representation by existing parties. *See Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (explaining "this last requirement for intervention {is} not onerous" and "a movant ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation" (internal quotation marks omitted)); *id.* ("{W}e look skeptically on government entities serving as adequate advocates for private parties."). The Court thus should accept Proposed Intervenors' intervention as a matter of right.

## III. Alternatively, the Court Should Exercise Its Discretion and Grant Permissive Intervention to Afford Proposed Intervenors the Opportunity to be Heard

Contrary to Plaintiffs' arguments, Proposed Intervenors have clearly established that they meet the standard for permissive intervention under 28 U S.C. § 2631(j)(l) and Rule 24(b).

**A. Proposed Intervenors Would Be "Adversely Affected or Aggrieved by a Decision" in This Action**

Plaintiffs' arguments notwithstanding (*see* Pls. Resp. 37-39), Proposed Intervenors "would be adversely affected or aggrieved" by a decision in this case. 28 U.S.C. § 2631(j)(l). "The phrase 'adversely affected or aggrieved,' . . . represents a 'congressional intent to *cast the {intervention} net broadly*—beyond the common-law interests and substantive statutory rights' traditionally known to law." *Ont. Forest Indus. Ass'n*, 444 F. Supp. 2d at 1321-23 (quoting *FEC v. Akins*, 524 U.S. 11, 19 (1998)) (emphasis added).

As discuss in Section II and in their motions to intervene, Proposed Intervenors have fully explained their interests in the action and detailed the injury they will suffer should Plaintiffs prevail in this proceeding. *See N. Am. Interpipe v. United States*, 519 F. Supp. 3d 1313, 1329 (Ct. Int'l Trade 2021); *cf. GreenFirst Forest Prods., Inc. v. United States*, 577 F. Supp. 3d 1349, 1357 (Ct. Int'l Trade 2022) (denying intervention for failure to explain how the intervenor would be adversely affected or aggrieved). Proposed Intervenors, as importers and users of CSPV modules benefitting from the *Final Rule*, will suffer direct financial consequences if Plaintiffs succeed, because the solar products they import and use (including, if Plaintiffs have their way, goods previously imported and used) will be subject to significant additional tariffs. Proposed Intervenors thus have concrete and particularized interests in the outcome of this litigation. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013) (requiring injury that is "particularized and { } concrete."); *cf. NLMK Pa., LLC v. United States*, 553 F. Supp. 3d 1354, 1363-65 (Ct. Int'l Trade 2021) (denying permissive intervention when adverse effect on proposed intervenors based on "purported broad economic impact" was "speculative," "irrelevant," and "conclusory"). Indeed, the adverse effect on Proposed Intervenors is more concrete and substantial than the basis for Auxin's own successful motion to intervene based on its generalized interests (and no direct

financial stake) in trade protection under the safeguard statute in a recent case before this court. *See Invenergy v. United States*, CIT Ct. No. 19-00192, Mot. to Intervene, ECF No. 136; Order, ECF No. 141 (granting intervention). Proposed Intervenors would be "adversely affected or aggrieved" by an adverse decision in this case.

### B. The Defenses Raised by Proposed Intervenors Share Law and Facts in Common with the Government Defendants' Defenses

Proposed Intervenors satisfied the second prong for permissive intervention by filing motions to dismiss for lack of jurisdiction, which share common law and facts with the Government's Motion to Dismiss. This court has granted intervention under similar circumstances. *See Ereğli*, 639 F. Supp. 3d at 1256-57 (proposed intervenor's "prospective defenses share{d} common questions of law and fact with the main action" by seeking to "address jurisdictional issues" in common with the Government).

The fact that the present action concerns a government decision does not undermine that Proposed Intervenors' defenses share common questions of law and fact with those of the Defendants. Pls. Resp. 39-41. As discussed in Section II, the primary transaction at issue in this appeal is application of the *Final Rule* and potential liability for AD/CVD duties. The fact that Plaintiffs could not directly sue Proposed Intervenors for the duties is irrelevant. Pls. Resp. 41. In *Ereğli*, U.S. steel producers satisfied the commonality criterion and were allowed to intervene to defend an agency decision not to conduct a reconsideration proceeding, even though the plaintiffs in that case obviously could not sue the proposed intervenors to pursue reconsideration of that decision. 639 F. Supp. 3d at 1248-49, 1257. Proposed Intervenors' position in this case clearly aligns with the Government Defendants, fulfilling the second criterion for permissive intervention.

### C. Proposed Intervenors' Motions to Intervene Were Timely and Intervention Will Not Unduly Delay or Prejudice Adjudication of the Case

Plaintiffs make spurious claims about the timeliness of the motions to intervene. Proposed Intervenors did not "bide their time" or "artificially delay{} their identification of what defensive arguments they would present." Pls. Resp. 42. As this court has held, "timeliness of an application for intervention must be evaluated in light of the totality of the circumstances before the court." *Norcal/Crosetti Foods, Inc.*, 14 C.I.T. at 703. Courts "look at (1) the stage of the proceedings when the movant seeks to intervene; (2) possible prejudice caused to the other parties by delay; and (3) the reason for the delay." *Id.* (internal quotation marks omitted). "{O}nly undue delay warrants" denial of permissive intervention. *Ont. Forest Indus. Ass'n.*, 444 F. Supp. 2d at 1322. Plaintiffs cannot credibly assert that Proposed Intervenors unduly delayed moving to intervene when they filed their motions within a month of the Complaint and well before a schedule was set and the case was underway. "{T}here is no reason to believe that intervention would prejudice the parties, since the court had not, as of the time of its motion, heard argument on any substantive or procedural issues." *Vivitar Corp. v. United States*, 585 F. Supp. 1415, 1417 (Ct. Int'l Trade 1984), *abrogated on other grounds by Wolfsen*, 695 F.3d 1310; *c.f. John R. Sand & Gravel Co. v. Brunswick Corp.*, 143 Fed. Appx. 317, 319 (Fed. Cir. 2005) (affirming denial of motion filed 16 months after complaint and only five months before trial, and after court had decided summary judgment motion, settlement discussions and some discovery had occurred); *Norcal/Crosetti Foods*, 14 C.I.T. at 703 (denying motion filed a year and a half after the complaint and case was nearly resolved). Proposed Intervenors' motions are by no means untimely by these standards.

Plaintiffs also overstate the burden of intervention, raising the false alarm the "*eighteen separate entities* are seeking to intervene all at once." Pls. Resp. 41-42 (emphasis original). There were only nine motions to intervene, as many of the potential intervenors are related parties that

filed single submissions and will continue to do so if they are allowed to intervene. Moreover, as demonstrated by the fact that the Intervenors coordinated to file only two joint replies to Plaintiffs' responses to their intervention motions, Proposed Intervenors are cognizant of the Court's and the parties' interests in a swift and efficient proceeding. Regardless, appeals of AD/CVD duty determinations often involve numerous parties, including intervenors, and the Court could use a variety of approaches to streamline briefing the merits of this case and any other motions while still allowing Proposed Intervenors to intervene and fully defend their interests.

## IV. Proposed Intervenors Have Standing to Intervene as a Party to the Proceeding

Plaintiffs do not dispute that, under Supreme Court caselaw, defendant-intervenors are not required to independently show standing so long as (1) another party has standing, and (2) the intervenor is seeking the same relief as that party. Invenergy Mot. to Intervene 3–4, ECF No. 44 (citing, inter alia, *Town of Chester, New York v. Laroe Estates*, 137 S. Ct. 1645, 1650–51 (2017)); *see also Cal. Steel*, 48 F.4th at 1343 (proposed intervenors established "piggyback standing" when their requested relief largely mirrored government's prayer for relief). Plaintiffs argue that Proposed Intervenors only "vaguely asserted an intent to seek relief identical to the Government" and "failed to submit an accompanying pleading." Pls. Resp. 11-12. Both arguments fail.

It goes without saying that industry entities that intervene to defend a government rule want the same "relief" as the government: for that rule to be upheld. And that is precisely why industry defendants are regularly permitted to intervene in defense of government rules that apply to their activities.[5] Indeed, the Supreme Court recently held that where a government party and supporting

---

[5] *See, e.g.*, Orders, *Am. Lung Ass'n v. EPA*, No. 19-1140, (D.C. Cir. Sept. 11, 2019 & Nov. 18, 2019), Doc. Nos. 1806066, 1816311 (granting motions to intervene in defense of EPA rule regulating power plant CO2 emissions); Order, *Sierra Club v. EPA*, No. 13-1112 (D.C. Cir. May 20, 2013), Doc. No. 1436907 (granting cement trade association's motion to intervene on behalf of member companies in a petition to review a CAA rulemaking governing Portland cement manufacturing); Order, *Invenergy Renewables LLC v. United States*, No. 19-192 (Ct. Int'l Trade

intervenor seek the same relief (here, dismissal or denial of plaintiffs' petition), a court "err{s} by inquiring" into an intervenor's "independent Article III standing." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). Plaintiffs' reliance on *California Steel* to try to defeat standing is misplaced, as the Federal Circuit found that each of the proposed defendant-intervenors *did* have standing—they failed to meet the additional requirements for intervention as of right. 48 F.4th at 1344. Proposed Intervenors have "piggyback" standing, and thus satisfy any standing requirements to participate in this case.

Further, it is well established that the industry entities regulated by a rule presumptively have standing either to challenge or defend that rule. *See id.*[6] NextEra and Invenergy are directly subject to the rule as importers and purchasers that use the goods imported. ACP and SEIA are clean energy trade associations whose members include solar companies who import or use goods covered by the *Final Rule, see* ACP Motion to Intervene 4, ECF No. 21; SEIA Motion to Intervene 11, ECF No. 24. Consequently, "{a}t least some of {SEIA and ACP's} members would have standing to {intervene} in their own right" as entities who import or use goods covered by the Rule, and therefore would be harmed by the relief sought by Plaintiffs, and SEIA and ACP accordingly have organizational standing to protect those members' interest. *Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 899–900 (D.C. Cir. 1996). All Proposed Intervenors therefore plainly have standing to intervene to support the challenged Rule.

---

Nov. 4, 2019), ECF No. 54 (granting motion to intervene to defend USTR's withdrawal of a previously granted exclusion from safeguard duties).

[6] There is "little question" that a party who "is himself an object of {the governmental} action (or forgone action) at issue" has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992); *see also Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (concrete injury exists when members benefit from current (challenged) regulatory regime).

Plaintiffs also erroneously claim that Invenergy was the only Proposed Defendant Intervenor to assert constitutional standing. Pls. Resp. 14. NextEra also argued constitutional standing based on the harm it will incur if the *Final Rule* is held unlawful. NextEra Mot. to Intervene 10-11, ECF No. 29. Invenergy, for its part, specifically explained that it is both an importer and user of solar modules covered by the *Final Rule*, and thus would be directly harmed by any relief that temporarily or permanently removed the protection from duties that the *Final Rule* provides. Invenergy Mot. to Intervene 3-4, ECF No. 44. Plaintiffs assert that Invenergy's claim of injury is "unexplained" and "not apparent." Pls. Resp. 13, 14. But Invenergy's injury from a decision overturning the *Final Rule* or suspending liquidation so that duties may be imposed in the future is obvious: Invenergy would have to pay, or have to set aside funds so that it can later pay, duties that it otherwise would incur under the Rule. "Economic harm to a business clearly constitutes an injury-in-fact. And the amount is irrelevant. A dollar of economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (citing and quoting *Czyzewski v. Jevic Holding Corp*., 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'")). This economic injury flows directly from the relief sought by Plaintiffs in this case—a set aside of the *Final Rule*. Plaintiffs' contrary argument tries to make a simple concept unnecessarily complex.

Thus, both Invenergy and NextEra have conclusively shown that they would be directly harmed by a decision setting aside the *Final Rule*.[7] Should the Court require further evidence to support what is apparent from Plaintiffs' complaint and Proposed Intervenors' motions, Invenergy

---

[7] Contrary to Plaintiffs' assertion, Invenergy does not need to also show that it has used the goods imported under the Rule by any certain time. It is for Customs to determine whether and what showing importers must make to qualify for duty-free treatment under the *Final Rule*; Plaintiffs cannot impose their own view of what is required as an additional element of the standing inquiry.

and NextEra can promptly provide sample entry forms and supporting documentation showing they imported goods covered by the *Final Rule*.[8]  The record demonstrates that Invenergy and NextEra have standing.  And so long as one intervenor demonstrates standing, all Proposed Intervenors may participate in the case.  *See Little Sisters of the Poor,* 140 S. Ct. at 2379 n.6.

Plaintiffs' other standing-related arguments also fail.  First, Plaintiffs attempt to argue that the Proposed Intervenors "failed to submit an accompanying pleading setting out a prayer for relief and the defense for which intervention is sought."  Pls. Resp. 12.  As explained in Section I, all Proposed Intervenors appended a motion to dismiss, which satisfies Rule 24(c).

Second, Plaintiffs' "zone of interests" argument (Pls. Resp. 13-14) is also off base. Proposed Intervenors are already subject to and benefitting from the action that Plaintiffs challenge, and thus need not show that they could "force Commerce to exercise its discretion to grant duty free treatment" under 19 U.S.C. § 1318(a).  Pls. Resp. 14.  Commerce has promulgated a rule pursuant to its statutory authority and Presidential Proclamation 10414, and Proposed Intervenors are subject to and benefit from that rule, thus placing them well within the statutory "zone of interests."  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014); *see also Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit.").

Finally, Plaintiffs point to Invenergy's arguments that the joint stipulation indicates the Government would not adequately represent their interests as proof that Proposed Intervenors are

---

[8] Proposed Intervenors are currently not covered by the joint protective order entered by the Court.  *See* Consent Motion for Supplemental Protective Order (Jan. 29, 2024), ECF No. 37. Nevertheless, Invenergy and NextEra would be pleased to submit import documentation upon request once covered by the protective order.

not seeking the same relief as the Government. Pls. Resp. 12-13. This argument once again conflates the issues—namely the standards for standing versus intervention as of right. Invenergy's point regarding the Government's willingness to stipulate to partial preliminary relief goes to whether the Government's representation is adequate for the purposes of intervention as of right under Rule 24(a)(2), not standing. Although the Government and Proposed Intervenors all seek the same relief, their interests can diverge because the harms they face from adverse court action differ. That is regularly the case in suits brought against the government, but in which regulated entities have a clear interest based on the potential impacts. *See Fund For Animals*, 322 F.3d at 736-37 ("{W}e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.") (collecting cases); *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001) (EPA's "general interest" in seeing its decision upheld "does not mean {the parties'} particular interests coincide so that representation by the agency alone is justified."). Moreover, for the reasons explained above, Proposed Intervenors would have standing, either independently or based on Invenergy's standing, even if they could not "piggyback" off of the Government's standing.

In short, there can be no question that all Proposed Intervenors have standing to participate in this case.

**CONCLUSION**

For all these reasons and the reasons set forth in their motions to intervene, the Court should

grant Proposed Intervenors' motions to intervene.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Julia K. Eppard
Daniel M. Witkowski
**Akin Gump Strauss Hauer & Feld LLP**
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4046
Email: mnicely@akingump.com

*Counsel to NextEra Energy, Inc. and Solar
Energy Industries Association*

| | |
|---|---|
| /s/ Jeffrey S. Grimson | /s/ John B. Brew |
| Jeffrey S. Grimson | John B. Brew |
| Kristin H. Mowry | Robert L. LaFrankie |
| Bryan P. Cenko | Amanda S. Berman |
| Clemence D. Kim | Alexander H. Schaefer |
| Evan P. Drake | Weronika Bukowski |
| **Mowry & Grimson, PLLC** | **Crowell & Moring LLP** |
| 5335 Wisconsin Avenue, NW, Suite 810 | 1001 Pennsylvania Avenue, N.W. |
| Washington, D.C. 20015 | Washington, DC 20004-2595 |
| Tel: (202) 688-3610 | Tel: (202) 6242720 |
| Email: trade@mowrygrimson.com | E-mail: jbrew@crowell.com |
| | |
| *Counsel to the American Clean Power Association* | *Counsel to Invenergy Renewables LLC and Invenergy Solar Equipment Management LLC* |

Dated: February 26, 2024

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this reply complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures of the U.S. Court of International Trade. Excluding the table of contents, table of authorities, and signature block, the word count for this reply is 6,469 words.

Respectfully submitted,

<u>Matthew R. Nicely</u>
Matthew R. Nicely
**Akin Gump Strauss Hauer & Feld LLP**
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4046
Email: mnicely@akingump.com

*Counsel to NextEra Energy, Inc. and Solar Energy Industries Association*

Dated: February 26, 2024