IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |  |
|---|---|---|
| AUXIN SOLAR, INC., and CONCEPT CLEAN ENERGY, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 23-00274 |
| UNITED STATES; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Of Counsel:

SPENCER NEFF
Attorney
Office of the Chief Counsel for
    Trade Enforcement and Compliance
United States Department of Commerce

EMMA L. TINER
Attorney
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

March 18, 2024

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendants

## <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................... 1

I.  Interested Parties Were Not Precluded From Challenging The Duty Suspension
    Rule In The Circumvention Inquiries ............................................................... 4

II. Jurisdiction Under 28 U.S.C. § 1581(i) Is Not Available Because Jurisdiction Is,
    Or Could Have Been, Available Under 28 U.S.C. § 1581(c) ............................ 7

    A.  The Court Determines The "True Nature" Of The Action By Evaluating
        Whether Or Not Commerce's Liquidation Instructions Are Inconsistent
        With, Or Contain A Legal Error That Is Distinct From, Commerce's Final
        Determination ......................................................................................... 9

    B.  Plaintiffs' Piecemeal Litigation Theory Is Inconsistent With The Statutory
        Scheme, Legislative History, And Precedent ........................................ 13

III. The Remedies Available Under Section 1581(c) Are Not Manifestly Inadequate .......... 18

CONCLUSION ....................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                                                                    **Page(s):**

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021)........13

*Aluminum Extrusions Fair Trade Comm. v. United States*,
    617 F. Supp. 3d 1296 (Ct. Int'l Trade 2023) ...................................................13

*Amsted Rail Co. v. Int'l Trade Comm.*, 600 F. Supp. 3d 1308 (Ct. Int'l Trade 2022)..................14

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) ......................................................21

*Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) .........................10-12

*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) ................................................22

*Dorbest Ltd. v. United States*, 604 F.3d 1363 (Fed. Cir. 2010).............................................19, 21

*Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370 (Fed. Cir. 2019) ......................15

*Ethan Allen Operations, Inc. v. United States*, 121 F. Supp. 3d 1342 (Ct. Int'l Trade 2015).......17

*Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021)..............17

*Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289 (Fed. Cir. 2008).............................18, 20

*Intercontinental Chems., LLC v. United States*,
    483 F. Supp. 3d 1232 (Ct. Int'l Trade 2020)...............................................9, 12

*Int'l Custom Prods. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006)..................................15, 22

*J.D. Irving v. United States*, 615 F. Supp. 3d 1323 (Ct. Int'l Trade 2023) .............................9, 12

*Kairali Decan, Inc. v. United States*, 789 F. Supp. 2d 1372 (Ct. Int'l Trade 2011) ......................6

*Mid Continent Nail Corp. v. United States*, 846 F.3d 1364 (Fed. Cir. 2017)........................19, 21

*Midwest Fastener Corp. v. United States*, 348 F. Supp. 3d 1297 (Ct. Int'l Trade 2018) ............17

*Miller & Co. v. United States*, 824 F.2d 961 (Fed. Cir. 1987) ............................14, 15, 18, 19, 22

*M S Int'l, Inc. v. United States*, 425 F. Supp. 3d 1332 (Ct. Int'l Trade 2020) ............................14

*Pac Fung Feather Co., Ltd. v. United States*, 111 F.3d 114 (Fed. Cir. 1997).........................21, 22

*Shinyei Corp. of Am. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004) ................................11, 12

*Sunpreme Inc. v. United States*, 892 F.3d 1186 (Fed. Cir. 2018) .............................. 15, 18, 20, 21

**TABLE OF AUTHORITIES (continued)**

**Cases (continued):**                                                                 **Page(s):**

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 391 F. Supp. 3d 1301
(Ct. Int'l Trade 2019) ................................................................................ 17

*Taizhou United Imp. & Exp. Co. v. United States*,
475 F. Supp. 3d 1305 (Ct. Int'l Trade 2020) .......................................... 17-18

*Ugine and ALZ Belgium v. United States*, 551 F.3d 1339 (Fed. Cir. 2009) ...................... 9, 10, 12

*United States Steel Corp. v. United States*, 627 F. Supp. 2d 1374 (Ct. Int'l Trade 2009) ........... 19

*United Steel & Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235 (Ct. Int'l Trade 2017) .... 17

*Wanxiang Am. Corp. v. United States*, 399 F. Supp. 3d 1323 (Ct. Int'l Trade 2019) ................ 12

**Statutes & Legislative History:**

19 U.S.C. § 1318 ...................................................................................... 2

19 U.S.C. § 1516a ................................................................................ *passim*

28 U.S.C. § 1581 ................................................................................. *passim*

H.R. Rep. No. 96-1235 (1980) .............................................................. 14-15

**Presidential Proclamation:**

Proclamation 10414 of June 6, 2022, *Declaration of Emergency and Authorization for
Temporary Extensions of Time and Duty-Free Importation of Solar Cells and
Modules from Southeast Asia*, 87 Fed. Reg. 35,067 (June 9, 2022) ...................... 1-3, 7, 8

**Regulations:**

*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties In
Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't of
Commerce Sept. 16, 2022) (the Duty Suspension Rule) ......................................... *passim*

*Regulations To Improve Administration and Enforcement of Antidumping and
Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20,
2021) (final rules) ................................................................................... 16

19 C.F.R. § 362.102 .................................................................................. 7

19 C.F.R. § 362.103 .................................................................................. 7

19 C.F.R. § 351.225 ................................................................................. 16

**TABLE OF AUTHORITIES (continued)**

**Regulations (continued):**                                                    **Page(s):**

19 C.F.R. § 351.226 ........................................................................ 3, 16, 17

**Administrative Decisions:**

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells,*
*Whether or Not Assembled Into Modules, From the People's Republic of China:*
*Final Scope Determination and Final Affirmative Determinations of*
*Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88
Fed. Reg. 57,419 (Dep't of Commerce Aug. 23, 2023) (final determinations) ............... 16

*Aluminum Extrusions from the People's Republic of China*, 82 Fed. Reg. 34,630 (Dep't
of Commerce July 26, 2017) (final circumvention determination) ................................. 16

*Certain Collated Steel Staples from the People's Republic of China*, 89 Fed. Reg. 5,855
(Dep't of Commerce Jan. 30, 2024) (final circumvention determination) ...................... 15

*Certain Corrosion-Resistant Steel Products From Taiwan*, 84 Fed. Reg. 70,937 (Dep't of
Commerce Dec. 26, 2019) (final circumvention determination) ..................................... 16

*Common Alloy Aluminum Sheet From the People's Republic of China*, 88 Fed. Reg.
48,438 (Dep't of Commerce July 7, 2023) (final circumvention determination) ........ 15-16

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |
|---|---|
| AUXIN SOLAR, INC., and CONCEPT CLEAN ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER, <br><br> Defendants. | Court No. 23-00274 |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade (USCIT R.), defendants respectfully submit this reply in support of their motion to dismiss the complaint for lack of subject matter jurisdiction.[1] Defs. Mot. to Dismiss, Jan. 22, 2024, ECF No. 16 (Def. Mot.); Pls. Resp. to Mot. to Dismiss, Feb. 16, 2024, ECF No. 55 (Pls. Resp.).

INTRODUCTION

Plaintiffs Auxin Solar and CCE filed this action invoking the Court's residual jurisdiction statute, 28 U.S.C. § 1581(i), as the jurisdictional basis for their complaint.  Plaintiffs make numerous allegations regarding Proclamation 10414, the Duty Suspension Rule, and their application in the circumvention inquiries that culminated in the final determinations.  Compl., Dec. 29, 2023, ECF No. 2.  Many of the arguments currently made by plaintiffs repeat arguments

---

[1]  Defined terms in our motion to dismiss have the same meaning in this reply brief.

that Auxin Solar made in the circumvention inquiries.  For example, plaintiffs allege that the

Duty Suspension Rule is unlawful insofar as Commerce applied the rule to entries made prior to

June 6, 2022, in the final determinations, because it is inconsistent with 19 U.S.C. § 1318(a) and

Proclamation 10414.  *Id.* ¶¶ 119-122.  Plaintiffs further allege that "Commerce's refusal to take

the actions mandated by" the circumvention regulations in reliance on the Duty Suspension Rule

is unlawful." *Id.* ¶ 145.  Plaintiffs ask this Court to vacate the Duty Suspension Rule, to direct

Commerce to instruct CBP to suspend liquidation and collect cash deposits of estimated duties

on solar cells and modules covered by the final determinations, and to direct CBP to suspend

liquidation and collect cash deposits of estimated duties on solar cells and modules covered by

the final determinations.  Compl. at p. 63.

The Government's motion to dismiss demonstrated that residual jurisdiction pursuant to

28 U.S.C. § 1581(i) is not available to challenge the validity of the Duty Suspension Rule because

jurisdiction is, or could have been, available under 28 U.S.C. § 1581(c) and the remedies available

pursuant to that statute are not manifestly inadequate.  A component of the final determinations

was Commerce's decision that the duties otherwise applicable to the entries should be suspended

in light of the Duty Suspension Rule.  Accordingly, as the Government demonstrated in its motion

to dismiss, the true nature of this action is a challenge to the final determinations that must be

brought under section 1581(c).  Plaintiffs may not avoid this jurisdictional prerequisite, and its

attendant exhaustion and standing requirements, by attempting to divorce their claims from the

final determinations that applied the Duty Suspension Rule to the entries at issue.

In response, plaintiffs make a number of arguments that revolve around three main points.

First, plaintiffs incorrectly argue that Commerce did not allow interested parties to make

arguments about the Duty Suspension Rule in the circumvention inquiries.  Not only did

Commerce invite interested parties to make "all" arguments they wished to make in the circumvention inquiries, which necessarily included any arguments about the potential application of Proclamation 10414 and the Duty Suspension Rule, but Auxin Solar accepted Commerce's invitation and made many such arguments in the circumvention inquiries. Pls. Resp. Ex. 1 at 2. And Commerce substantively addressed all those arguments. Therefore, all of plaintiffs' arguments could have been made in a section 1581(c) case, subject to the normal exhaustion and standing requirements for such cases.

Second, plaintiffs ask this Court to hold, for the first time, that a party challenging two different aspects of *one* final determination must file *two separate* lawsuits, one pursuant to section 1581(c) and another pursuant to section 1581(i). But this novel approach would lead to piecemeal litigation, contrary to the statutory scheme established by Congress. The jurisdictional basis and statutory procedures for challenging Commerce's final determination do not change depending on whether plaintiffs happen to agree with some, but not all, aspects of the final determination. Because Commerce is required to consider the appropriate remedy in every final determination, Commerce routinely includes a statement in each final determination about how the final determination will be carried out in liquidation instructions. 19 C.F.R. § 351.226(m)(1). The true nature of this action is a challenge to a portion of the final determination, which must be pursued under section 1581(c), not in a separate suit brought under section 1581(i).

Finally, plaintiffs argue that the remedies under section 1581(c) are manifestly inadequate because they estimate that approximately $2 billion worth of entries of merchandise could have been liquidated before a section 1581(c) action could have been filed. However, the test for manifest inadequacy has never been measured in terms of the value of merchandise. But even by plaintiffs' logic, a section 1581(c) remedy is not incapable of producing any result because the

total value of *unliquidated* entries of the subject merchandise – as of October 1, 2023, when a section 1581(c) action could have been filed – exceeded $19 billion.[2]  Ex. 1 (Declaration of Marie Andujar, CBP Supervisory Import Specialist, ¶ 7).

Accordingly, the Court does not possess residual jurisdiction to entertain this case and it should be dismissed.

I.      Interested Parties Were Not Precluded From Challenging The Duty Suspension Rule In The Circumvention Inquiries

As an initial matter, plaintiffs make several erroneous assertions about their ability to challenge the Duty Suspension Rule in the circumvention inquiries.  Contrary to their assertions, interested parties had a full opportunity to raise their current claims in those proceedings.

First, plaintiffs argue that "Commerce itself specifically limited administrative briefing to everything except the lawfulness of the *Final Solar Duty Holiday Rule* itself."  Pls. Resp. 6; *see also id.* at 10, 24, 32.  Not so.  Commerce's February 2023 briefing schedule letter, cited by plaintiffs, demonstrates the opposite.  *See id.* (citing Pls. Resp. Ex. 1).  The briefing schedule letter established a schedule for the submission of case briefs in two tranches – one tranche limited to three specific topics, and a second tranche for "all the other issues" that interested parties wished to address.  Pls. Resp. Ex. 1.  Plaintiffs selectively quote from this letter that addressed the topics to be addressed in the first tranche of case briefs, but they omit reference to the express invitation for interested parties to "address all the other issues" in the second tranche.  *Id.*  Commerce *never* instructed interested parties not to address the lawfulness of the Duty Suspension Rule.  *See id.*  Indeed, Auxin Solar chose to make some (but not all) of its present arguments about the lawfulness of the Duty Suspension Rule in its case briefs, and Commerce

_____

[2]  Although the merits of plaintiffs' claims are beyond the scope of this motion to dismiss for lack of jurisdiction, for clarity, we do not concede that plaintiffs are entitled to any relief.

directly addressed the substance of those arguments in the Issues and Decision Memoranda (IDMs). Cambodia IDM 113-22; Malaysia IDM 104-14; Thailand IDM 113-22; Vietnam IDM 111-120.

Plaintiffs also complain that Commerce denied their requests to place any records of *ex parte* communications from the rulemaking on the record of the circumvention inquiries, and then argue that Commerce entirely precluded interested parties from challenging the lawfulness of the Duty Suspension Rule. Pls. Resp. 1, 4, 7, 8, 10, 24, 25. However, the records of the circumvention inquiries do not support this argument. During the circumvention inquiries, Auxin Solar made two requests (in June and July 2022) for Commerce to place records of *ex parte* communications from the rulemaking on the record of the circumvention inquiries. Pls. Compl. Exs. 11, 12. In its case briefs (in March and April 2023), Auxin Solar argued that, absent such documents, the record of the circumvention inquiries would be incomplete. Commerce addressed and rejected that argument in the IDMs (in August 2023). Cambodia IDM 112-13; Malaysia IDM 104; Thailand IDM 112-13; Vietnam IDM 110-11. Commerce explained that it had placed summaries of *ex parte* communications regarding the circumvention inquiries on the record of those proceedings, but it also had determined that it was not required to memorialize for the record *ex parte* communications regarding the rulemaking. *Id.*

Commerce's eventual rejection of Auxin Solar's record completeness argument *in August 2023* did not limit the subjects that interested parties could have addressed in their case briefs back *in March and April 2023*. Rather, as explained above, interested parties were free to address any and all issues, including any arguments about the lawfulness of the Duty Suspension Rule or its application in these circumvention proceedings. Pls. Resp. Ex. 1. And if Auxin Solar had wished to challenge the completeness of the record in the circumvention proceedings, it was

free to raise that argument in a challenge brought pursuant to section 1581(c). But the lack of access to *ex parte* communications (if they exist) does not make § 1581(i) jurisdiction available. *See Kairali Decan, Inc. v. United States*, 789 F. Supp. 2d 1372, 1379 (Ct. Int'l Trade 2011) ("Lack of access to paperwork needed to demonstrate the merits of its claim does not necessarily render a protest futile or nullify the appeal of a denial of that protest under subsection (a) of § 1581. . . . The Court therefore finds that it does not have jurisdiction over this case under § 1581(i)(4).").

Plaintiffs further argue, somewhat confusingly, that they were precluded from making arguments about whether the Duty Suspension Rule was lawful because Commerce ultimately decided to apply the Duty Suspension Rule in the final determinations. Pls. Resp. 1, 4, 7, 8, 11, 16, 31 (citing Cambodia IDM 77; Malaysia IDM 69; Thailand IDM 77; Vietnam IDM 70). But interested parties were free to argue that the Duty Suspension Rule was unlawful and should *not* be applied for that reason in the circumvention inquiries. Indeed, as noted above, Auxin Solar made several such arguments in its case briefs. *See* Cambodia IDM 113-22; Malaysia IDM 104-14; Thailand IDM 113-22; Vietnam IDM 111-120. Commerce committed nearly three single-spaced pages of each IDM to a substantive legal analysis addressing arguments about the Duty Suspension Rule. Thus, not only were plaintiffs afforded the opportunity to challenge the Duty Suspension Rule, but they are also wrong when they claim that Commerce "simply and summarily" rejected their arguments. Pls. Resp. 6; *see also* Cambodia IDM 119-22; Malaysia IDM 111-14; Thailand IDM 119-22; Vietnam IDM 117-120. In any event, if Auxin Solar considered Commerce's analysis inadequate, it could have challenged that analysis in a section 1581(c) case – as it has done with respect to other aspects of the final determinations.

Finally, plaintiffs assert that the Duty Suspension Rule "applied broadly[] to the ongoing circumvention inquiries as well as to new trade actions."  Pls. Resp. 5.  However, the only trade actions identified in the Duty Suspension Rule are the circumvention inquiries at issue here.  *See* 19 C.F.R. § 362.102 (defining "Applicable Entries" as entries of "Southeast Asian-Completed Cells and Modules, defining "Southeast Asian-Completed Cells and Modules" as those subject to the "Solar Circumvention Inquiries," and defining the "Solar Circumvention Inquiries" as the circumvention inquiries at issue in this case).  Commerce has never applied the Duty Suspension Rule in any action other than these circumvention inquiries, and the operative provisions of the Duty Suspension Rule are scheduled to terminate no later than June 6, 2024.  19 C.F.R. §§ 362.102 ("Date of Termination means June 6, 2024, or the date the emergency described in Presidential Proclamation 10414 has been terminated, whichever occurs first."), 362.103(a) ("The Secretary will permit the importation of Applicable Entries free of the collection of antidumping and countervailing duties and estimated duties under sections 701, 731, 751 and 781 of the Act until the Date of Termination.").  Commerce has never applied the Duty Suspension Rule in any action other than the circumvention inquiries at issue here.  In any event, even assuming that the Duty Suspension Rule could apply to another trade action, it would have no relevance to the jurisdictional analysis.  Commerce applied the Duty Suspension Rule in *these* final determinations, and any challenge to that portion of the final determinations must be pursued in a case filed under section 1581(c).

II.    Jurisdiction Under 28 U.S.C. § 1581(i) Is Not Available Because Jurisdiction Is, Or Could Have Been, Available Under 28 U.S.C. § 1581(c)

It is undisputed that plaintiffs seek to challenge one aspect of the final determinations. Plaintiffs agree with Commerce's affirmative circumvention findings in those determinations, but they disagree with Commerce's decision *in the same final determinations* to apply the Duty

Suspension Rule in accordance with Proclamation 10414.  Pls. Compl. at pp. 1-4.  In other words, plaintiffs ask the Court to order Commerce to instruct CBP *differently* from the manner set forth *in the final determinations*.  Thus, as we explained in our motion to dismiss, these claims constitute an attack on the final determinations and are quintessentially the types of arguments that are reviewable, if at all, pursuant to 28 U.S.C. § 1581(c).[3]  In response, plaintiffs ask this Court to hold, for the first time, that a party wishing to challenge two different aspects of *one* final determination must file *two separate* lawsuits, one pursuant to section 1581(c) and another pursuant to section 1581(i).  But this argument is inconsistent with the statutory scheme established by Congress and would invite piecemeal litigation.

Despite the considerable length of plaintiffs' response, there is significant agreement between the parties on the applicable legal principles.  The parties agree that interested parties may challenge a final determination in a circumvention inquiry under 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c).  Pls. Resp. 22-23.  The parties also agree that section 1581(i) does not provide jurisdiction when jurisdiction is or could have been available under section 1581(c).  *Id.* at 11-12.  The parties further agree that the Court must evaluate the true nature of the action brought under section 1581(i) to determine whether the action could have been brought under another subsection.  *Id.* at 12.  But the parties diverge on questions of *how* to evaluate the true nature of the action, and *what* is the true nature of *this* action.

---

[3]  Plaintiffs cannot invoke the Court's section 1581(c) jurisdiction in this case because they did not commence the action within 30 days after mailing of the final determinations.  *See* 19 U.S.C. § 1516a(a)(2)(A)(ii).  Cases brought under sections 1581(c) and 1581(i) have different procedural requirements, different administrative records, and different standards of review.

A.    The Court Determines The "True Nature" Of The Action By Evaluating Whether Or Not Commerce's Liquidation Instructions Are Inconsistent With, Or Contain A Legal Error That Is Distinct From, Commerce's Final Determination

The Court must evaluate whether the true nature of this action is a challenge to the final determinations and therefore whether jurisdiction lies under section 1581(c) rather than section 1581(i)'s residual jurisdiction.  In our motion to dismiss, we demonstrated that this Court evaluates the true nature of the action by considering whether the challenged action is consistent or inconsistent with a determination reviewable under section 1581(c).  Defs. Mot. 17-18 (citing, *e.g.*, *J.D. Irving v. United States*, 615 F. Supp. 3d 1323, 1332 (Ct. Int'l Trade 2023); *Intercontinental Chems., LLC v. United States*, 483 F. Supp. 3d 1232, 1240 (Ct. Int'l Trade 2020)).  If the challenged action is inconsistent with Commerce's final determinations, then the challenged action is reviewable in an action under section 1581(i).  *Id.*  But, if the challenged action is consistent with Commerce's final determinations, then the challenged action is a challenge to those determinations and is only reviewable, if at all, in an action commenced under section 1581(c).  *Id.*

In response, plaintiffs erroneously argue that in *Ugine and ALZ Belgium v. United States*, 551 F.3d 1339, 1341 (Fed. Cir. 2009) (*Ugine II*), the Federal Circuit held that consistency or inconsistency with the underlying final determination is irrelevant to determining the true nature of the action.  Pls. Resp. 16-19.  Plaintiffs' reading of *Ugine II* is incorrect.

In *Ugine II*, the Federal Circuit addressed liquidation instructions for merchandise not subject to the relevant underlying final determination.  In particular, *Ugine II* concerned liquidation instructions for *German* stainless steel plate in coils (SSPC), whereas Commerce's first administrative review concerned only *Belgian* SSPC.  551 F.3d at 1344.  After litigation challenging the final results of the first administrative review of Belgian SSPC concluded, Commerce issued liquidation instructions providing that "[e]ntries of SSPC hot rolled in

Germany and not further cold rolled in Belgium [*i.e.*, German SSPC] should be liquidated at the countervailing duty rate specified in these [Customs] instructions [covering Belgian SSPC]." *Id.* at 1345-46 (bracketed alterations in original). When considering whether the plaintiff's challenge to the liquidation instructions really was a challenge to the final results of the first administrative review, the Federal Circuit found that the final results only addressed SSPC "from Belgium" and Commerce had made "no such determination" with respect to SSPC from Germany. *Id.* at 1348.

The Federal Circuit held that, under these circumstances, section 1581(i) jurisdiction was available to challenge the liquidation instructions. *Ugine II*, 551 F.3d at 1349. In other words, the true nature of the action in *Ugine II* was a challenge to the liquidation instructions addressing German SSPC for the first time, rather than a challenge to the final results that did not address German SSPC at all. *See id.* In contrast, plaintiffs here challenge an aspect of the final determinations – the application and lawfulness of the Duty Suspension Rule – that Commerce specifically addressed during the circumvention inquiries and govern the entries at issue.

Plaintiffs' reliance on *Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003), is also misplaced. In *Consolidated Bearings*, information concerning Consolidated's imports and the reseller who exported to Consolidated was not addressed in either the first administrative review of the order covering antifriction bearings from Germany or subsequent litigation. *Id.* at 1000-01. Following the conclusion of litigation challenging the final results of the first administrative review, Commerce issued instructions to liquidate Consolidated's entries at the time-of-entry cash deposit rates, rather than the all-others rate calculated in the amended final results. *Id.* at 1001. When considering the true nature of Consolidated's challenge, the Federal Circuit found that the alleged legal error in the liquidation instructions was distinct from

the amended final results.  *Id.* at 1002-03.  In other words, the true nature of the action was a challenge to the liquidation instructions, which directed liquidation at the time-of-entry cash deposit rates, rather than a challenge to the amended final results, which calculated an all-others rate for non-respondents like Consolidated.  *See id.*  Accordingly, the Federal Circuit held that this Court possessed residual jurisdiction under section 1581(i) to entertain Consolidated's distinct challenge to the liquidation instructions.  *Id.*

Finally, plaintiffs rely on *Shinyei Corporation of America v. United States*, 355 F.3d 1297, 1304, 1309 (Fed. Cir. 2004), for the proposition that a challenge to liquidation instructions is not a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B) that may be challenged under section 1581(c).  Pls. Resp. 10, 15-16, 22-25.  In *Shinyei*, the plaintiff challenged its exclusion from Commerce's liquidation instructions following litigation over the second administrative review of the antidumping duty order covering antifriction bearings from France and other countries, a matter wholly distinct from the amended final results.  *Shinyei*, 355 F.3d at 1301-04.  Under these circumstances, there was no dispute before the Federal Circuit that this Court possessed jurisdiction under section 1581(i) at the time the lawsuit was filed, and the Federal Circuit merely was called upon to determine whether the case was mooted by liquidation of the underlying entries.[4]  *Id.* at 1304-05.

Plaintiffs go further and misquote *Shinyei* as holding that "[s]ection 1516a speaks of appealable 'determinations,' not appealable 'documents.'"  Pls. Resp. 10 (purporting to quote *Shinyei*, 355 F.3d at 1309); *see also id.* at 23.  In this respect, plaintiffs contend that *Shinyei* stands for the proposition that a final determination reviewable under section 1516a (pursuant to jurisdiction conferred by section 1581(c)) is something less than the entire document that

---

[4]  The *Shinyei* litigation spanned a decade, reached the Federal Circuit three times, and addressed a number of other issues that are not relevant here.

Commerce publishes in the *Federal Register*. But *Shinyei* did not consider the issue plaintiffs are arguing here – that some aspects of a final determination are not reviewable with the final determination. Nor, despite plaintiffs' errant use of quotation marks, does the word "documents" appear in that opinion. We are unaware of any court ever endorsing plaintiffs' view that certain aspects of a final determination are not reviewable in the same manner as the rest of the final determination.

Rather, as this Court reaffirmed only last year, "the 'true nature' of an action" depends upon whether or not Commerce's instructions to Customs "are *inconsistent with* or *contain a legal error that is distinct from* Commerce's determination." *J.D. Irving*, 615 F. Supp. 3d at 1332 (emphasis in original, citing among other cases, *Wanxiang Am. Corp. v. United States*, 399 F. Supp. 3d 1323, 1331 & n.11 (Ct. Int'l Trade 2019); *Intercontinental Chems.*, 483 F. Supp. 3d at 1240-41). If the instructions are "inconsistent with or contain a legal error that is distinct from Commerce's determination," then the challenged action is reviewable in an action under section 1581(i). *Id.* But, if the challenged action is consistent with Commerce's final determination, the challenged action is properly viewed as a challenge to the final determination, and is only reviewable, if at all, in an action commenced under section 1581(c). *Id.*

Unlike the plaintiffs in *Ugine II*, *Consolidated Bearings*, and *Shinyei*, Auxin Solar and CCE challenge an aspect of the final determinations that Commerce specifically addressed as part of the circumvention inquiries. A ruling in their favor would result in reversal or remand of an aspect of the final determinations. Under these circumstances, the Court should find that the true nature of this action is a challenge to the final determinations that is reviewable under section 1581(c).

B.    Plaintiffs' Piecemeal Litigation Theory Is Inconsistent With The Statutory
      Scheme, Legislative History, And Precedent

Next, plaintiffs argue that, even if their complaint raises issues that were or could have

been addressed in the final determination, those issues only constitute "ancillary" matters that are

not reviewable under section 1581(c).  Pl. Resp. 1, 9, 23.  Plaintiffs ask this Court to establish a

new jurisdictional rule that distinguishes between core and ancillary matters and requires

plaintiffs to file two separate lawsuits – one action under section 1581(c) to challenge the final

determination with respect to circumvention, and a second action under section 1581(i) to

challenge "ancillary" matters set forth in the same final determination.  Their argument that the

statute actually *requires* piecemeal litigation is flawed for several reasons.

First, plaintiffs' piecemeal litigation argument is inconsistent with the statutory scheme.

Section 1581(c) broadly confers jurisdiction to review civil actions commenced under 19 U.S.C.

§ 1516a(a), whereas 28 U.S.C. § 1581(i)(2)(A) does "not confer jurisdiction" over such an action.

In turn, section 1516a(a)(2)(B)(vi) confers jurisdiction to review the final determinations in

circumvention inquiries and scope rulings, because those are "determination[s] by the

administering authority as to whether a particular type of merchandise is within the class of kind

of merchandise described in an existing finding of dumping or antidumping or countervailing

duty order."  19 U.S.C. § 1516a(a)(2)(B)(vi); *see Al Ghurair Iron & Steel LLC v. United States*,

536 F. Supp. 3d 1357, 1364 (Ct. Int'l Trade 2021) (holding that the Court possesses jurisdiction to

review final determination in a circumvention inquiry pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi)

and 28 U.S.C. § 1581(c)), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023); *Aluminum Extrusions Fair Trade

Comm. v. United States*, 617 F. Supp. 3d 1296, 1304 (Ct. Int'l Trade 2023) (same for review of

scope rulings).

Jurisdiction under section 1581(c) to review a final determination in a circumvention inquiry is not limited to Commerce's substantive assessment of whether circumvention is occurring. 19 U.S.C. § 1516a(a)(2)(B)(vi). Rather, judicial review includes "any factual findings or legal conclusions upon which the determination is based" and is available to "any interested party who is a party to the proceeding in connection with which the matter arises[.]" 19 U.S.C. § 1516a(a)(2)(A). This includes both challenges to the procedural correctness as well as the substantive merits of a final determination. *See Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) (citing 19 U.S.C. § 1516a(a)(2)).

Thus, by its own terms, the statute encompasses all aspects of a final determination and forecloses piecemeal litigation. The statute provides for review in a single action of challenges to the final determination, the factual findings or legal conclusions upon which the determination is based, and any other questions related to the procedural correctness of the determination. 19 U.S.C. § 1516a(a)(2); *Miller*, 824 F.2d at 964. The statutory prohibition against piecemeal litigation is buttressed by section 1581(i)(2)(A), which expressly precludes residual jurisdiction over determinations reviewable under section 1516a. 28 U.S.C. § 1581(i)(2)(A). Plaintiffs' proposal to divide a final determination into core and ancillary issues and to require those issues to be litigated simultaneously in separate lawsuits filed under sections 1581(c) and 1581(i) cannot be reconciled with the statute.

Second, "[t]he legislative history to 1581(i), the case law, and the Administrative Procedure Act all discourage piecemeal review of Commerce Department international trade proceedings.'" *Amsted Rail Co. v. Int'l Trade Comm.*, 600 F. Supp. 3d 1308, 1320 (Ct. Int'l Trade 2022) (quoting *M S Int'l, Inc. v. United States*, 425 F. Supp. 3d 1332, 1337 (Ct. Int'l Trade 2020)); *see also* H.R. Rep. No. 96-1235, at 48 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729,

3759-60 (legislative history of section 1581(i) showing Congress intended "that any determination specified in section" 1516a, "or any preliminary administrative action which, in the course of the proceeding, will be, directly or by implication, incorporated in or superseded by any such determination, is reviewable exclusively as provided in section" 1516a.). Plaintiffs do not (and cannot) cite any authority that supports their view that Congress intended to require separate lawsuits in this circumstance, nor do they articulate any persuasive reason why Congress would have wanted to do so. In short, there is but one final determination to be reviewed under the statutory scheme, and any preliminary, factual, legal, procedural, or other matters in that final determination must be reviewed, if at all, together in one lawsuit under section 1581(c). *See Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374-75 (Fed. Cir. 2019); *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191-92 (Fed. Cir. 2018); *Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *Miller*, 824 F.2d at 963.

Plaintiffs argue that Commerce's decision to apply the Duty Suspension Rule in the final determinations was not a factual finding or legal conclusion upon which the determination is based. This argument is similarly unavailing. The Duty Suspension Rule directly impacted how Commerce instructed Customs to implement the final determinations. Commerce routinely includes a statement in each final circumvention determination about how it will be carried out in liquidation instructions, because a circumvention inquiry necessarily must determine what merchandise is circumventing an order relative to a particular time and how Commerce plans to address any such circumvention.[5] *See, e.g.*, *Certain Collated Steel Staples from the People's Republic of China*, 89 Fed. Reg. 5,855, 5,857-58 (Dep't of Commerce Jan. 30, 2024) (final circumvention determination); *Common Alloy Aluminum Sheet From the People's Republic of*

_____

[5] In 2023 alone, Commerce issued 12 final affirmative determinations in circumvention inquiries that included similar statements about liquidation instructions and certification regimes.

*China*, 88 Fed. Reg. 48,438, 48,439-40 (Dep't of Commerce July 7, 2023) (final circumvention determination); *Certain Corrosion-Resistant Steel Products From Taiwan*, 84 Fed. Reg. 70,937, 70,938-39 (Dep't of Commerce Dec. 26, 2019) (final circumvention determination); *Aluminum Extrusions from the People's Republic of China*, 82 Fed. Reg. 34,630, 34,631 (Dep't of Commerce July 26, 2017) (final circumvention determination).  That is a required component of every final determination in a circumvention inquiry that is reviewable under section 1581(c).  19 C.F.R. § 351.226(m)(1) ("In conducting a circumvention inquiry under this section, the Secretary shall consider, based on the available record evidence, the appropriate remedy to address circumvention and to prevent evasion of the order.").[6]  Commerce always has to address the "appropriate remedy" in every final circumvention determination.  *Id.*

Presumably for this reason, Auxin Solar and other interested parties submitted comments on the Duty Suspension Rule for Commerce to consider in making the final determinations, and Commerce in turn devoted several pages of the final determinations, and 40 pages of the IDMs, to matters relating to the Duty Suspension Rule.  *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China:  Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419, 57,421-23 (Dep't of Commerce Aug. 23, 2023) (final determinations); Cambodia IDM 113-22; Malaysia IDM 104-14; Thailand IDM 113-22; Vietnam IDM 111-120.  Commerce's determination with respect to the suspension of liquidation in a circumvention inquiry is a required component of its overall class or kind determination, which include the matters

---

[6]  Commerce promulgated 19 C.F.R. § 351.226 in 2021.  *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,381 (Dep't of Commerce Sept. 20, 2021).  Previously, remedy issues associated with final determinations in circumvention inquiries were governed by 19 C.F.R. § 351.225(l) (2020).

challenged by plaintiffs in this case.  *See* 19 C.F.R. § 351.226(m)(1).  Thus, the validity of the

Duty Suspension Rule clearly was a remedy issue that was reviewable under section 1581(c).

Indeed, Auxin Solar currently is challenging Commerce's decision on another remedy issue – the

implementation of a certification requirement – in the section 1581(c) cases.

  Moreover, this Court routinely exercises section 1581(c) jurisdiction to entertain

challenges to how Commerce decided to carry out a final determination under 19 U.S.C.

§ 1516a(a)(2)(B)(vi), when Commerce made that decision in the final determination under

review.  *E.g., Tai-Ao Aluminum (Taishan) Co. v. United States*, 391 F. Supp. 3d 1301, 1313-15

(Ct. Int'l Trade 2019), *aff'd*, 983 F.3d 487, 493-97 (Fed. Cir. 2020) (affirming judgment for

plaintiff in section 1581(c) challenge to portion of final determination that pertained to alleged

retroactivity of liquidation instructions in circumvention case filed under 19 U.S.C.

§ 1516a(a)(2)(B)(vi)); *Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357, 1372-76

(Ct. Int'l Trade 2021) (adjudicating section 1581(c) challenge to portion of final determination

that pertained to remedy barring non-cooperative company from certification process in

circumvention case filed under 19 U.S.C. § 1516a(a)(2)(B)(vi)); *Midwest Fastener Corp. v.

United States*, 348 F. Supp. 3d 1297, 1300, 1304-06 (Ct. Int'l Trade 2018) (adjudicating section

1581(c) challenge to alleged retroactivity of liquidation instructions in scope ruling case filed

under 19 U.S.C. § 1516a(a)(2)(B)(vi), when Commerce had addressed that issue in the

challenged decision); *United Steel & Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235,

1241, 1248-49 (Ct. Int'l Trade 2017) (same); *Ethan Allen Operations, Inc. v. United States*, 121

F. Supp. 3d 1342, 1352-53 n.5 (Ct. Int'l Trade 2015) (same, explaining that "a § 1581(c)

challenge may be the proper method to challenge not only the Scope Ruling and Remand

Results, but also the liquidation instructions deriving therefrom"); *see also Taizhou United Imp.*

*& Exp. Co. v. United States*, 475 F. Supp. 3d 1305, 1312-13 (Ct. Int'l Trade 2020) (adjudicating

section 1581(c) challenge to timing of suspension of entries in final results of administrative

review under 19 U.S.C. § 1516a(a)(2)(B)(iii)).  In contrast, plaintiffs offer no authority holding

that section 1581(c) jurisdiction does not extend to that portion of a final determination

addressing how Commerce intends to effectuate the determination.

   The jurisdictional basis for challenges to Commerce's final determination does not change

depending on whether plaintiffs are challenging only part of the final determination, or whether

they are only challenging the part of the final determination specifying how it should be

implemented.  Plaintiffs challenge one aspect of the final determinations and are seeking a ruling

that would require Commerce to reverse course on an issue decided in the final determinations.

The true nature of this action is a challenge to the final determinations, which could have been

brought under section 1581(c).

III.    The Remedies Available Under Section 1581(c) Are Not Manifestly Inadequate

   In our motion to dismiss, we also demonstrated that the remedies available under section

1581(c) are not manifestly inadequate.  Def. Mot. 19-20.  A remedy is not "manifestly

inadequate" unless the plaintiff can demonstrate that the remedy is an "exercise in futility, or

incapable of producing any result; failing utterly of the desired end through intrinsic defect;

useless, ineffectual vain."  *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed.

Cir. 2008); *accord Sunpreme*, 892 F.3d at 1193-94 (quoting *Hartford Fire*).  Accordingly, "mere

allegations of financial harm, or assertions that an agency failed to follow a statute, do not make

the remedy established by Congress manifestly inadequate."  *Miller*, 824 F.2d at 964.  Here, the

remedies available under section 1581(c) are not manifestly inadequate because they allow for a

Court order setting aside the Duty Suspension Rule – the very result that plaintiffs seek in this case.

When a party challenges the lawfulness of rules or regulations impacting the validity of a final determination in a challenge brought under section 1581(c), this Court may set aside the rule or regulation if it finds the rule to be unlawful. *E.g.*, *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1380 (Fed. Cir. 2017) (setting aside Commerce regulation as failing to comply with APA notice requirements in appeal of a final determination); *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1372, 1377 (Fed. Cir. 2010) (holding Commerce regulation to be facially invalid in section 1581(c) case involving challenge to final antidumping determination); *accord United States Steel Corp. v. United States*, 627 F. Supp. 2d 1374, 1382 (Ct. Int'l Trade 2009) ("The Court, as it has done in other cases under § 1581(c), may address a facial challenge to a general agency practice employed by Commerce, as well as to the final results of an agency proceeding that is subject to judicial review under § 1516a."). Thus, the remedies available in a case brought pursuant to section 1581(c) could have included an order directing Commerce not to apply the Duty Suspension Rule in the circumvention inquiries. *See id.*

Plaintiffs argue that the remedies available under section 1581(c) are manifestly inadequate because they estimate that approximately $2 billion in entries of merchandise could have liquidated before a section 1581(c) action could have been filed. Pls. Resp. 3, 10-11, 26-29 & Ex. 6. Although this sum is substantial, the test for manifest inadequacy is not measured in terms of the value of merchandise. In general, "allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *Miller*, 824 F.2d at 964. But even by plaintiffs' logic, a section 1581(c) remedy was not incapable of producing *any* result because the total value of *unliquidated* entries of the subject

merchandise – as of October 1, 2023, when a section 1581(c) action could have been filed – exceeded $19 billion.  Ex. 1 (Declaration of Marie Andujar, CBP Supervisory Import Specialist, ¶ 7).  A potential remedy under section 1581(c), while not identical to the potential remedy in a section 1581(i) action, is hardly futile and thus is not manifestly inadequate.

Contrary to plaintiffs' assertion, the standard for "manifestly inadequate" is not anything less than "full relief."  Pls. Resp. 13, 29 (citing *Sunpreme*, 892 F.3d at 1194).  In *Sunpreme*, the Federal Circuit confirmed the well-settled law "that to be manifestly inadequate," a remedy "must be an 'exercise in futility, or incapable of producing *any* result; failing *utterly* of the desired end through intrinsic defect; *useless*, ineffectual, vain.'"  832 F.3d at 1193-94 (emphasis supplied, *quoting Hartford Fire*, 544 F.3d at 1294).  The Federal Circuit further elaborated that "mere allegations of financial harm do not render a remedy established by Congress manifestly inadequate."  *Id.* at 1193 (citation omitted).  "Nor can delay serve as the basis for manifest inadequacy; delays inherent in the statutory process do not render it manifestly inadequate."  *Id.* at 1194 (citation omitted).

Applying these principles, the Federal Circuit held that "Sunpreme has not demonstrated that obtaining a scope ruling would have been an exercise in futility, useless or incapable of producing the result it seeks."  *Sunpreme*, 832 F.3d at 1194.  Although it added that requiring exhaustion of administrative remedies "would hardly deprive Sunpreme of the opportunity for full relief," *id.*, the Federal Circuit did not equate manifest inadequacy with the absence of "full relief."  Rather, the Federal Circuit's comment merely reflected its conclusion that "full relief" was potentially available to Sunpreme.  *Id.*  As the Federal Circuit made clear, however, even less than full relief would not have satisfied the standard for manifest inadequacy unless the available

remedy was "useless" or "incapable of producing any result." *Id.* at 1193-94. Plaintiffs have not met that standard here.

Plaintiffs also dismiss our reliance upon *Mid Continent* and *Dorbest* because those cases did not address "the propriety of [section] 1581(c) vs. [section] 1581(i) jurisdiction." Pls. Resp. 29-30. But jurisdiction is at issue in every case. *E.g.*, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). In *Mid Continent* and *Dorbest*, the Federal Circuit reviewed this Court's exercise of section 1581(c) jurisdiction over challenges to Commerce regulations and did not identify any jurisdictional defect when affirming the judgments of this Court. *Mid Continent*, 846 F.3d at 1380; *Dorbest*, 604 F.3d at 1377. Plaintiffs fail to meaningfully distinguish these controlling precedents, nor have they demonstrated that they could not have advanced the same type of challenge to the Duty Suspension Rule under section 1581(c).

Plaintiffs also argue that challenging the Duty Suspension Rule in the circumvention inquiry "would have been a mere formality – a scenario like that in *Pac Fung* which the Federal Circuit has held to be manifestly inadequate." Pls. Resp. 11, 14, 30 (citing *Pac Fung Feather Co., Ltd. v. United States*, 111 F.3d 114, 116 (Fed. Cir. 1997)). This argument is factually and legally flawed. As a matter of fact, Auxin Solar made some (but not all) of its arguments in the circumvention inquiries that the Duty Suspension Rule was unlawful, and Commerce addressed the merits of those arguments. Cambodia IDM 113-22; Malaysia IDM 104-14; Thailand IDM 113-22; Vietnam IDM 111-120. Plaintiffs do not (and cannot) identify any statement by Commerce that it would decline to consider arguments about the lawfulness of the Duty Suspension Rule. Rather, Commerce invited comments on "all" issues that interested parties wished to address in the circumvention inquiries. Pls. Resp. Ex. 1 at 2.

- 21 -

Just because Commerce ultimately decided to apply the Duty Suspension Rule does not show that raising those or other arguments would have been an exercise in futility. *See Miller*, 824 F.2d at 964 (holding that an adverse decision does not render a remedy under section 1581(c) manifestly inadequate); *see also Corus Staal BV v. United States*, 502 F.3d 1370, 1379-80 (Fed. Cir. 2007) (in the context of the futility exception to the rule requiring administrative exhaustion, explaining that "[t]he mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies.") (cleaned up).

Plaintiffs' futility argument is legally flawed as well. In *Pac Fung*, the importer plaintiffs invoked section 1581(i) to challenge Customs regulations governing country of origin and to enjoin their application. 111 F.3d at 115-16. The Federal Circuit held that the importers' option of requesting a pre-importation classification ruling that could be reviewed pursuant to 28 U.S.C. § 1581(h) would constitute "a mere formality," because Customs' promulgation of the rules had "unmistakably indicated" how Customs would rule on a classification ruling request. *Id.* at 116. Thus, the "preordained ruling available to the importers under section 1581(h) would be manifestly inadequate," and consequently "[s]ection 1581(i) was the importers' only available and potentially adequate option." *Id.*

The Federal Circuit has subsequently cabined *Pac Fung* to its unique facts. *Int'l Custom Prods.*, 467 F.3d at 1328. The Federal Circuit "warned parties against making such assumptions of futility," and admonished parties that "Congress' express scheme cannot be bypassed." *Id.* Since that warning nearly two decades ago, neither the Federal Circuit nor this Court has found manifest inadequacy to exist based upon claims of futility. And here, where Auxin Solar did in fact participate in the circumvention inquiries and Commerce substantively addressed all of the

comments that were made by interested parties, there is no basis to find 1581(i) jurisdiction available on the basis of futility.

Plaintiffs' remaining arguments are easily dispatched.  Plaintiffs argue that Commerce summarily rejected their challenges to the Duty Suspension Rule and did not, in fact, provide any meaningful substantive response in the circumvention inquiries, Pls. Resp. 30-32.  Even assuming this argument bears on the jurisdictional issue, our motion to dismiss simply quoted from, and cited, Commerce's lengthy and substantive analysis of the arguments on that issue.  Cambodia IDM 119-22; Malaysia IDM 111-14; Thailand IDM 119-22; Vietnam IDM 117-120. Accordingly, contrary to plaintiffs' assertion, the Government has not supplied any "post-hoc" explanation that Commerce did not articulate in the first instance in the circumvention inquiries. Plaintiffs also argue that Commerce "impeded" its ability to make arguments about the Duty Suspension Rule, Pls. Resp. 13-14, 31-32.  As demonstrated above, Commerce invited interested parties to make "all" of their arguments in their case briefs.  Pls. Resp. Ex. 1 at 1-2.  Nothing prevented any interested party from making arguments in the circumvention inquiries challenging the Duty Suspension Rule.[7]

Accordingly, plaintiffs have failed to show that the remedies available under section 1581(c) are manifestly inadequate.

<u>CONCLUSION</u>

For these reasons, and for the reasons set forth in our motion to dismiss, defendants respectfully request that the Court dismiss the complaint for lack of subject matter jurisdiction.

---

[7]  Plaintiffs respond to an argument by proposed intervenors that plaintiffs waived their manifest inadequacy arguments by failing to include them in the complaint.  Pls. Resp. 34-35. The Government does not join in that waiver argument.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

Of Counsel:                              s/ Tara K. Hogan
                                        TARA K. HOGAN
SPENCER NEFF                            Assistant Director
Attorney
Office of the Chief Counsel for          s/ Douglas G. Edelschick
    Trade Enforcement and Compliance    DOUGLAS G. EDELSCHICK
United States Department of Commerce     Senior Trial Counsel
                                        Commercial Litigation Branch
                                        Civil Division
EMMA L. TINER                           United States Department of Justice
Attorney                                P.O. Box 480, Ben Franklin Station
Office of the Assistant Chief Counsel   Washington, DC 20044
U.S. Customs and Border Protection      Tel: (202) 353-9303

March 18, 2024                          Attorneys for Defendants

- 24 -

CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 6,988 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

 s/ Douglas G. Edelschick