Slip Op. 24-58

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AUXIN SOLAR, INC., AND CONCEPT CLEAN ENERGY, INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS AND BORDER PROTECTION; AND TROY A. MILLER, UNITED STATES CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER,** <br><br> Defendants. | Before: Timothy M. Reif, Judge <br><br> Court No. 23-00274 |

## <u>OPINION AND ORDER</u>

[Denying Defendants' Motion to Dismiss, granting the Joint Stipulation of Plaintiffs and Defendants, granting Proposed Defendant-Intervenors' Motions to Intervene and granting the Supplemental Protective Order of Defendant-Intervenors.]

Dated: May 9, 2024

Thomas M. Beline, Chase J. Dunn, James E. Ransdell, IV, Roop K. Bhatti, Sydney C. Reed, Cassidy Levy Kent (USA) LLP, of Washington D.C., for Plaintiffs Auxin Solar, Inc. and Concept Clean Energy, Inc.

Douglas G. Edelschick, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for the Defendants. With him on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director. Of counsel on the brief were Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington D.C., and Emma L. Tiner, Attorney, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of Washington D.C.

Jeffrey S. Grimson, Bryan P. Cenko, Clemence D. Kim, Evan P. Drake, Kristin H. Mowry, Mowry & Grimson, PLLC, of Washington, D.C., for Defendant-Intervenors American Clean Power Association, JA Solar USA, Inc., JA Solar Vietnam Co. Ltd., JA Solar Malaysia Sdn. Bhd. and JA Solar International Limited.

Jonathan T. Stoel, Michael G. Jacobson, Nicholas R. Sparks, Lindsay K. Brown, Hogan Lovells US LLP, of Washington D.C., for Defendant-Intervenors Canadian Solar (USA) Inc. and Canadian Solar International Limited.

Matthew R. Nicely, Daniel M. Witkowski, James E. Tysse, Julia K. Eppard, Sydney L. Stringer, Yujin K. McNamara, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, D.C., for Defendant-Intervenors Solar Energy Industries Association and NextEra Energy, Inc.

Craig A. Lewis, Nicholas W. Laneville, I, Gregory M.A. Hawkins, Hogan Lovells US LLP, of Washington D.C., for Defendant-Intervenors BYD (H.K.) Co., Ltd. and BYD America LLC.

John B. Brew, Alexander H. Schaefer, Amanda S. Berman, Robert L. LaFrankie, II, Weronika Bukowski, Crowell & Moring, LLP, of Washington D.C., for Defendant-Intervenors Invenergy Renewables LLC and Invenergy Solar Equipment Management LLC.

Jonathan M. Freed, Doris Di, Kenneth N. Hammer, MacKensie R. Sugama, Robert G. Gosselink, Trade Pacific PLLC, of Washington, D.C., for Defendant-Intervenors Trina Solar (U.S.) Inc., Trina Solar (Vietnam) Science & Technology Co., Ltd., Trina Solar Energy Development Company Limited, Trina Solar Science & Technology (Thailand) Ltd.

Gregory S. Menegaz, Alexandra H. Salzman, James K. Horgan, Vivien J. Wang, deKieffer & Horgan, PLLC, of Washington, D.C., for Defendant-Intervenor Risen Solar Technology Sdn. Bhd.

* * *

Reif, Judge:  Before the court are: (1) the motions to dismiss under U.S. Court of International Trade ("USCIT" or the "Court") Rule 12(b)(1) of defendants the United States ("the government"), U.S. Department of Commerce ("Commerce"), Secretary of Commerce Gina M. Raimondo, U.S. Customs and Border Protection ("Customs") and

Court No. 23-00274                                                                Page 3

Acting Customs Commissioner Troy A. Miller (collectively, "defendants"); (2) the

motions to intervene of nine proposed defendant-intervenors[1] under Rule 24; (3) a

supplemental protective order filed by proposed defendant-intervenors; and (4) the Joint

Stipulation in lieu of preliminary injunction proposed by plaintiffs, Auxin Solar Inc.

("Auxin Solar") and Concept Clean Energy, Inc. ("CCE") (together, "plaintiffs"), and

defendants.  Plaintiffs invoke the Court's subject matter jurisdiction under 28 U.S.C. §

1581(i)(1)(B) and (D).[2]  *See* Compl. (Dec. 29, 2023), ECF No. 2.  Plaintiffs state that

their cause of action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §

706(2), and they seek relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §

---

[1] Proposed defendant-intervenors include the American Clean Energy Power
Association ("ACP"); the Solar Energy Industries Association ("SEIA"); Canadian Solar
(USA) Inc. and Canadian Solar International Limited (collectively, "Canadian Solar"); JA
Solar USA, Inc., JA Solar Vietnam Company Limited, JA Solar Malaysia Sdn. Bhd., and
JA Solar International Limited (collectively, "JA Solar"); NextEra Energy, Inc.
("NextEra"); BYD (H.K.) Co., Ltd. ("BYD HK") and BYD America LLC ("BYD America")
(collectively, "BYD"); Invenergy Renewables LLC and its affiliates, including Invenergy
Solar Equipment Management LLC (collectively, "Invenergy"); Trina Solar (U.S.), Inc.
("TUS"), Trina Solar Science & Technology (Thailand) Ltd. ("TTL"), Trina Solar Energy
Development Company Limited ("TEDC"), and Trina Solar (Vietnam) Science &
Technology Co., Ltd. ("TVN") (collectively, "Trina"); and Risen Solar Technology Sdn.
Bhd. ("Risen").  *See* ACP Mot. to Intervene (Jan. 26, 2024) ("ACP Br."), ECF No. 21;
SEIA Mot. to Intervene (Jan. 26, 2024) ("SEIA Br."), ECF No. 24; Canadian Solar Mot.
to Intervene (Jan. 26, 2024) ("Canadian Br."), ECF No. 25; JA Solar Mot. to Intervene
(Jan. 26, 2024) ("JA Solar Br."), ECF No. 28; NextEra Mot. to Intervene (Jan. 26, 2024)
("NextEra Br."), ECF No. 29; BYD Mot. to Intervene (Jan. 26, 2024) ("BYD Br."), ECF
No. 35; Invenergy Mot. to Intervene (Jan. 29, 2024) ("Invenergy Br."), ECF No. 44; Trina
Mot. to Intervene (Jan. 29, 2024) ("Trina Br."), ECF No. 45-1; Risen Mot. to Intervene
(Jan. 31, 2024) ("Risen Br."), ECF No. 50 (together collectively, "proposed defendant-
intervenors").

[2] Further references to the U.S. Code are to the 2018 edition.

2201(a), alleging that defendants failed to collect antidumping and countervailing duty cash deposits and failed to suspend liquidation on products circumventing the antidumping and countervailing duty orders concerning CSPV cells and modules from China.  *See id* ¶¶ 19, 100, 116.  Defendants filed a motion to dismiss for lack of subject matter jurisdiction, arguing that plaintiffs' invocation of residual jurisdiction pursuant to 28 U.S.C. § 1581(i) is not available because jurisdiction is, or could have been, available under 28 U.S.C. § 1581(c).  Defs.' Mot. to Dismiss, ECF No. 16 ("Defs. Mot. Dismiss"); Defs.' Reply Supp. Mot. Dismiss ("Defs. Reply Mot. Dismiss"), ECF No. 69. Plaintiffs and defendants filed a Joint Stipulation in Lieu of plaintiffs' Preliminary Injunction, stipulating to the Court's authority to grant reliquidation as a form of relief. Joint Stipulation in Lieu of Prelim. Inj. ("Joint Stipulation"), ECF No. 19.

Nine proposed defendant-intervenors filed motions to intervene in the instant action, arguing that they are importers who would be liable for the duties, which have been suspended pursuant to the rule suspending liquidation and collection of tariffs and duties issued by Commerce.  *See supra* note 1.  For the following reasons, the court denies defendants' motion to dismiss, and grants the joint stipulation of plaintiffs and defendants, the motions to intervene of proposed defendant-intervenors and the protective order filed by proposed defendant-intervenors.

## BACKGROUND[3]

### I.    Factual background

On January 17, 2024, plaintiffs filed a complaint before the Court challenging the rulemaking, determinations and instructions issued by Commerce concerning the preliminary and final determinations in the circumvention inquiries covering Crystalline Silicon Photovoltaic ("CSPV") cells whether or not assembled into modules ("cells") imported from Cambodia, Malaysia, Thailand and Vietnam using parts and components from the People's Republic of China ("China").  *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord with Presidential Proclamation 10414* ("*Duty Suspension Rule*"), 87 Fed. Reg. 56,868 (Dep't of Commerce Sept. 16, 2022);[4] Compl. ¶¶ 51-55, 65-71.

---

[3] Certain facts addressed in this section are taken from the Complaint.  Such facts constitute allegations at this stage of this matter notwithstanding that defendants and proposed defendant-intervenors admit certain of these facts in their proposed motions to dismiss.  Nothing in this Opinion and Order shall be construed as the court accepting plaintiff's factual allegations as true or making any finding of fact where such facts are or may be disputed.  *See, e.g., GreenFirst Forest Prods. v. United States*, 46 CIT __, __, 577 F. Supp. 3d 1349, 1351 n.3 (2022).

[4] Specifically, the *Duty Suspension Rule* provides the procedures governing the suspension of liquidation and estimated duties in accordance with Presidential Proclamation 10414:

> Commerce shall instruct U.S. Customs and Border Protection [Customs] to discontinue the suspension of liquidation and collection of cash deposits for any SA-Completed Cells and Modules that were suspended, in connection with initiation of the circumvention inquiries, pursuant to § 351.226(l)(1).  If, at the time Commerce issues instructions to [Customs], the entries are suspended only for purposes of the circumvention inquiries, Commerce will direct [Customs] to liquidate those entries without regard to AD/CVD duties

Court No. 23-00274                                                    Page 6

Since 2012, Commerce has applied antidumping and countervailing duty orders

covering CSPV cells and modules from China.  *See Crystalline Silicon Photovoltaic*

*Cells, Whether or Not Assembled Into Modules, from the People's Republic*

---

and refund those cash deposits collected pursuant to the circumvention
inquiries.

*Duty Suspension Rule,* 87 Fed. Reg. at 56,868.  The *Duty Suspension Rule* went
into effect on November 15, 2022, as described *infra* n.6.

19 C.F.R. § 362.103 specifies procedural aspects related to liquidation:

(a) *Importation of applicable entries free of duties and estimated duties.*  The
Secretary will permit the importation of Applicable Entries free of the
collection of antidumping and countervailing duties and estimated
duties under sections 701, 731, 751 and 781 of the Act until the Date of
Termination.  Part 358 of this chapter shall not apply to these imports.
(b) *Suspension of liquidation and collection of cash deposits.* (1) To facilitate
the importation of certain Southeast Asian-Completed Cells and Modules
without regard to estimated antidumping and countervailing duties,
notwithstanding § 351.226(l) of this chapter, the Secretary shall do the
following with respect to estimated duties:" (i) "The Secretary shall instruct
CBP to discontinue the suspension of liquidation of entries and collection
of cash deposits for any Southeast Asian-Completed Cells and Modules
that were suspended;" and (ii) "the Secretary will not, at th{e} time {of an
affirmative circumvention determination}, direct CBP to suspend liquidation
of Applicable Entries and collect cash deposits of estimated duties on those
Applicable Entries."
(c) *Waiver of assessment of duties.* "In the event the Secretary issues an
affirmative final determination of circumvention in the Solar Circumvention
Inquiries and thereafter, in accordance with other segments of the
proceedings, pursuant to section 751 of the Act and § 351.212(b) of this
chapter, issues liquidation instructions to CBP, the Secretary will direct CBP
to liquidate Applicable Entries without regard to antidumping and
countervailing duties that would otherwise apply pursuant to an affirmative
final determination of circumvention."

19 C.F.R. § 362.103.

*of China: Amended Final Determination of Sales at Less Than Fair Value, and*

*Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012);

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the*

*People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017 (Dep't of

Commerce Dec. 7, 2012).  On June 9, 2022, the president declared an emergency

pursuant to 19 U.S.C. § 1318(a)[5] with respect to threats to the availability of sufficient

electricity generation capacity to meet expected customer demand in the United States.

*Proclamation 10414: Declaration of Emergency and Authorization for Temporary*

*Extensions of Time and Duty-Free Importation of Solar Cells and Modules from*

*Southeast Asia* ("Proclamation 10414"), 87 Fed. Reg. 35,067, 35,068 (June 9, 2022).[6]

---

[5] Section 318 of the Tariff Act of 1930 delineates the trade measures that the president may adopt when a state of emergency exists:

> Whenever the President shall by proclamation declare an emergency to exist by reason of a state of war, or otherwise, he may authorize the Secretary of the Treasury to extend during the continuance of such emergency the time herein prescribed for the performance of any act, and may authorize the Secretary of the Treasury to permit, under such regulations as the Secretary of the Treasury may prescribe, the importation free of duty of food, clothing, and medical, surgical, and other supplies for use in emergency relief work.  The Secretary of the Treasury shall report to the Congress any action taken under the provisions of this section.

19 U.S.C. § 1318(a).

[6] President Biden declared that an emergency existed due to the threat that there would be insufficient electricity generation capacity available to meet expected demand. Proclamation 10414.  The proclamation identified multiple factors — including Russia's invasion of Ukraine and extreme weather events exacerbated by climate change — that contributed to the declaration of a state of emergency concerning access to electricity and energy.  *Id.*

Proclamation 10414 authorized Commerce to take action to permit CSPV cells into the United States "free of the collection" of antidumping and countervailing duties ("AD/CV duties"). *Id.*

On August 23, 2023, Commerce issued a final determination concluding that CSPV cells and modules from Cambodia, Malaysia, Thailand, and Vietnam were circumventing the AD/CV duty orders on CSPVs from China. *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam* ("*Final Determinations*")*,* 88 Fed. Reg. 57,419, 57,421-22 (Dep't of Commerce Aug. 23, 2023); *see Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam* ("*Preliminary Affirmative Determinations of Circumvention*")*,* 87 Fed. Reg. 75,221, 75,223-26 (Dep't of Commerce Dec. 8, 2022). Commerce relied on the *Duty Suspension Rule* to exempt from the collection and assessment of AD/CV duties all

"applicable entries"[7] that were certified to be utilized within 180 days after the expiration of the emergency period.  *See Final Determinations*, 88 Fed. Reg. at 57,419.

## II.    Procedural history

Plaintiffs declare unlawful the *Duty Suspension Rule* issued by Commerce along with Commerce's instructions to Customs to exempt CSPV cells from suspension of liquidation and cash deposit requirements, so long as the importers and exporters complied with Commerce's certification regime.  Plaintiffs argue further that Commerce's rulemaking was unlawful and request that the court order vacatur of the *Duty Suspension Rule,* or in the alternative, suspend and remand the *Duty Suspension Rule* for further proceedings and order Customs to suspend liquidation of entries of CSPV cells and collect cash deposits.  Compl. at 63.[8]  According to plaintiffs, the *Duty Suspension Rule* has "precipitated a lawless CSPV cell and module marketplace characterized by a massive and sustained wave of cheap CSPV cells and modules from

---

[7] "Applicable entries" are defined in the *Duty Suspension Rule* as "entries of Southeast Asian-Completed Cells and Modules that are entered into the United States, or withdrawn from warehouse, for consumption before the Date of Termination and, for entries that enter after November 15, 2022, are used in the United States by the Utilization Expiration Date."  19 C.F.R. § 362.102.  The "Utilization Expiration Date" means "180 days after the Date of Termination" on "June 6, 2024, or the date the emergency described in Presidential Proclamation 10414 has been terminated, whichever comes first."  *Id.*

[8] Specifically, plaintiffs ask the court to: (1) hold unlawful Commerce's *Duty Suspension Rule*; (2) vacate Commerce's *Duty Suspension Rule*; (3) direct Commerce to instruct Customs to suspend liquidation and collect cash deposits of AD/CV estimated duties on applicable entries; and (4) direct Customs to suspend liquidation and collect cash deposits of AD/CV estimated duties on applicable entries.  Compl. at 63.

Malaysia, Thailand, Vietnam, and Cambodia that are made from components originating in the People's Republic of China." *Id.* ¶ 20.

On January 9, 2024, plaintiffs filed a motion for a preliminary injunction, requesting that the court order the suspension of liquidation of entries that would be subject to the Final Determinations. Pls.' Public Mot. for Prelim. Inj., ECF No. 8; Pls.' Confidential Mot. for Prelim. Inj. (Jan. 17, 2024), ECF No. 15. On January 22, 2024, defendants filed a motion to dismiss for lack of jurisdiction, stating that jurisdiction was available under 28 U.S.C. § 1581(c). Defs. Mot. Dismiss.

On January 25, 2024, plaintiffs and defendants filed a Joint Stipulation in Lieu of plaintiffs' motion for a preliminary injunction. *See* Joint Stipulation.

The court addresses first the threshold jurisdictional issue raised by defendants. Defs. Mot. Dismiss; Pls.' Resp. Opp'n Mot. to Dismiss. ("Pls. Resp. Opp'n Mot. Dismiss"), ECF No. 55; Defs. Reply Mot. Dismiss; Mots. to Dismiss of Def.-Intervenors ("Mots. Dismiss of Def.-Ints."), ECF Nos. 32, 36, 39, 40, 41, 48, 49 53. The court addresses next the joint stipulation. Finally, the court addresses the motions to intervene filed by the nine proposed defendant-intervenors. *See* ACP Br., SEIA Br., Canadian Br., JA Solar Br., NextEra Br., BYD Br., Invenergy Br., Trina Br., Risen Br.

On January 29, 2024, SEIA, NextEra and ACP filed a consent motion for a supplemental protective order to govern the information submitted by proposed defendant-intervenors in the instant action. Mot. Supp. Protective Order ("Protective Order"), ECF No. 37.

On February 16, 2024, plaintiffs filed a consolidated response in opposition to the motions to intervene of proposed defendant-intervenors, arguing that they failed to meet the standing requirements, do not qualify for intervention of right and should not be permitted to intervene.  Pls.' Resp. Opp'n Intervention ("Pls. Resp. Opp'n"), ECF No. 56.

On February 26, 2024, BYD, Canadian Solar, JA Solar, Risen and Trina filed a joint reply to plaintiffs' response in opposition to their motions to intervene.  Prop. Def.-Intervenors' Consol. Reply ("Def.-Int. Reply I"), ECF No. 58.  Also on February 26, 2024, ACP, Invenergy, NexEra and SEIA filed a joint reply to plaintiffs' response in opposition to their motions to intervene.  Prop. Def.-Intervenors' Consol. Reply ("Def.-Int. Reply II"), ECF No. 59.

For the reasons set forth below, the court: (1) exercises jurisdiction under the Court's residual jurisdiction statute, 28 U.S.C. § 1581(i), and denies the motion to dismiss of defendants; (2) grants the motions to intervene of proposed defendant-intervenors; (3) grants the consent motion for a supplemental protective order governing the information of defendant-intervenors; and (4) grants plaintiffs' and defendants' Joint Stipulation in Lieu of plaintiffs' Preliminary Injunction.

**JURISDICTION AND STANDARD OF REVIEW**

Plaintiffs bring the action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers upon the Court exclusive jurisdiction over civil actions commenced against the United States, its agencies, or its officers arising out of any U.S. law providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).  In the alternative, plaintiffs state that the

Court No. 23-00274                                                                 Page 12

Court has jurisdiction under 28 U.S.C. § 1581(i)(1)(D), which confers on this Court

jurisdiction over disputes arising under the "administration and enforcement with respect

to the matters referred to in subparagraphs (A) through (C) of this paragraph and

subsections (a)-(h) of this section." *Id*. § 1581(i)(1)(D).  Plaintiffs argue that: (1) this

action does not challenge Commerce's affirmative determinations that circumvention is

in fact occurring; (2) plaintiffs' cause of action does not lie under 19 U.S.C. § 1516a; and

(3) 28 U.S.C. § 1581(c)[9] does not provide an alternative jurisdictional basis for this

action.  Compl. ¶ 3.[10]

       Section 1581(i) is the Court's "residual" jurisdictional provision.  *Fujitsu Gen. Am.,*

*Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002) (citing *Conoco, Inc. v.*

*United States Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1584 n.4 (Fed. Cir. 1994)), and

allows the Court to "take jurisdiction over designated causes of action founded on other

provisions of law."  *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359

(Fed. Cir. 1992) (citing *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1557 (Fed.

Cir. 1988)).  Defendants state that this Court lacks subject matter jurisdiction because

the instant action should have been brought under 28 U.S.C. § 1581(c).  Defs. Mot.

Dismiss at 2.

---

[9] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

[10] Plaintiffs challenge the *Duty Suspension Rule* that Commerce applied in four recently completed circumvention proceedings for which judicial review under 28 U.S.C. § 1581(c) currently is being sought.  The issue is whether the complaint should be dismissed for lack of jurisdiction under 28 U.S.C. § 1581(i) because jurisdiction is, or could have been, available under 28 U.S.C. § 1581(c).

Whether a court has subject matter jurisdiction to hear an action is a "threshold" inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Id.* at 94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)); *accord Salmon Spawning & Recovery Alliance v. United States*, 33 CIT 515, 519, 626 F. Supp. 2d 1277, 1281 (2009) (citing *Ex parte McCardle*, 74 U.S. at 514).  The party "seeking the exercise of jurisdiction . . . ha[s] the burden of establishing that jurisdiction exists."  *Bush v. United States*, 717 F.3d 920, 924-25 (Fed. Cir. 2013) (citing *Keener v. United States*, 551 F.3d 1358, 1361 (Fed. Cir. 2009)).

"An inquiry into § 1581(i) jurisdiction thus primarily involves two questions.  First, [the court] consider[s] whether jurisdiction under a subsection other than § 1581(i) was available.  Second, if jurisdiction was available under a different subsection of § 1581, [the court] examine[s] whether the remedy provided under that subsection is 'manifestly inadequate.'"  *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citing *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012)).  Rule 12(b)(1) provides that "a party may assert . . . by motion" the defense of "lack of subject-matter jurisdiction."  USCIT R. 12(b)(1).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  USCIT R. 12(h)(3).

The court considers the questions of intervention in the instant action under USCIT Rule 24 and in accordance with the standard delineated by the U.S. Court of

Appeals for the Federal Circuit ("Federal Circuit").  *See Cal. Steel Indus., Inc. v. United States,* 48 F.4th 1336, 1342 (Fed. Cir. 2022).

## DISCUSSION

**I.     Whether the court has jurisdiction under 28 U.S.C. § 1581(i)**

**A.     Legal framework**

Under 28 U.S.C. § 1581(i), the USCIT has "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or officers, that arises out of any law of the United States providing for . . . [the] administration and enforcement" of "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B), (D).  Section 1581(i) expressly provides that "[t]his subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by . . . the Court of International Trade under section 516A(a) of the Tariff Act of 1930" pursuant to 28 U.S.C. § 1581(c).[11]  *Id*. § 1581(i)(2)(A).

---

[11] 28 U.S.C. § 1581(c) provides jurisdiction to the Court for challenges to Commerce's final determinations in circumvention inquiries, stating that this Court "shall have exclusive jurisdiction of any civil action commenced under" 19 U.S.C. § 1516a.  Actions pursuant to 19 U.S.C. § 1516a provide "[j]udicial review in countervailing duty and antidumping duty proceedings," including final determinations by Commerce. 19 U.S.C. § 1516a(a)(2)(B)(vi).  Judicial review covers "any factual findings or legal conclusions upon which the determination is based" and is available to "an interested party who is a party to the proceeding in connection with which the matter arises[.]"  19 U.S.C. § 1516a(a)(2)(A).  An "interested party" is "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise," 19 U.S.C. § 1677(9)(A), and a "party to the proceeding" is "any interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding."  19 C.F.R. § 351.102(b)(36).

Residual jurisdiction under § 1581(i) is "strictly limited" and may not be invoked "when jurisdiction under another subsection of § 1581 is or *could have been available*, unless the remedy provided under the other subsection would be manifestly inadequate." *Erwin Hymer Grp. N. America, Inc.*, 930 F.3d at 1374-75 (citations omitted); *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (citations omitted).  In assessing jurisdiction under other subsections of § 1581, the court must "'look to the true nature of the action' brought before the CIT under § 1581(i) to determine whether the action could have been brought under another subsection." *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1374-75 (Fed. Cir. 2021); *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008); *cf. Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) ("[A] party may not expand a court's jurisdiction by creative pleading."); *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191, 1193-94 (Fed. Cir. 2018) (concluding that the plaintiff's "characterization of its appeal . . . [was] unavailing" in view of the nature of the relief that the plaintiff sought in its complaint and, consequently, that the court lacked jurisdiction under 28 U.S.C. § 1581(i)).

## B.    Positions of parties

Defendants state that "[b]ecause jurisdiction is, or could have been, available pursuant to 28 U.S.C. § 1581(c), this Court cannot exercise its limited residual jurisdiction over the complaint pursuant to section 1581(i)."  Defs. Mot. Dismiss at 11. Defendants state that plaintiffs challenge aspects of the final determinations and cite to plaintiffs' "numerous arguments regarding why [plaintiffs] believed that the Duty

Suspension Rule was unlawful and should not [sic] applied to the liquidation instructions

in that proceeding."  Defs. Mot. Dismiss at 15 (citing *Final Determinations*, Cambodia

IDM, Comment 26, at 113-22; Malaysia IDM, Comment 23, at 104-14; Thailand IDM,

Comment 21, at 113-22; Vietnam IDM, Comment 24, at 111-20).

 Defendants state that plaintiffs may invoke § 1581(i) to challenge Commerce's

liquidation instructions only when alleging that the instructions are not consistent with

Commerce's underlying final determination.  Defs. Mot. Dismiss at 17-18 (quoting *Ugine*

*and ALZ Belgium v. United States* ("*Ugine I*"), 452 F.3d 1289, 1296 (Fed. Cir. 2006)

("[A]n action challenging Commerce's liquidation instructions [as being inconsistent with

the final results] is not a challenge to the final results, but a challenge to the

'administration and enforcement' of those final results,' and thus falls squarely within 28

U.S.C. § 1581(i)(4).") (quoting *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297,

1305 (Fed. Cir. 2004)).  Defendants argue that the instant action concerns liquidation

instructions that take into account the *Duty Suspension Rule* and therefore does not

present the inconsistencies between liquidation instructions and final results of *Ugine*

and *Shinyei.*  Defs. Mot. Dismiss at 18 (quoting Compl. ¶¶ 18, 86).

 Plaintiffs invoke the residual jurisdiction of the court under 28 U.S.C. §

1581(i)(1)(B) or, in the alternative under 28 U.S.C. § 1581(i)(1)(D).  Compl. ¶ 2.  In

October 2023, plaintiffs commenced four actions in this Court challenging various

aspects of the final circumvention determinations and invoking this Court's jurisdiction

pursuant to 28 U.S.C. § 1581(c).  *Auxin Solar, Inc. v. United States*, Court Nos. 23-223,

23-224, 23-225.  In those separate actions, unlike in the instant action, plaintiffs

challenge certain aspects of the final determinations, but do not challenge Proclamation

10414 or the *Duty Suspension Rule*.  *Id.*

      Plaintiffs state further that the instant action "takes Commerce's affirmative

circumvention determinations as-is [sic]."  Pls. Resp. Opp'n Mot. Dismiss at 9.  Plaintiffs

"'seek application of those final results,' and challenge Defendants' unlawful failure to

enforce the antidumping and countervailing duty laws in reliance on the [*Duty*

*Suspension Rule*]."  *Id.* (quoting *Consol. Bearings Co. v. United States,* 348 F.3d 997,

1002 (Fed. Cir. 2003)).  Further, plaintiffs argue that defendants' reliance on *Ugine I* is

"inapposite, as that opinion explicitly declined to 'decide the scope of *Shinyei* in a

preliminary injunction context,' 452 F.3d at 1297, and was followed by a subsequent

Federal Circuit decision that 'h[e]ld that the Court of International Trade had jurisdiction

under 28 U.S.C. § 1581(i)' but which Defendants fail to acknowledge."  *Id.* at 16-17

(quoting *Ugine and ALZ Belgium v. United States* ("*Ugine II*"), 551 F.3d 1339 (Fed. Cir.

2009) (alteration in original) (rehearing and rehearing *en banc* denied)).

    **C.**    **Analysis**

        **1.**    **Whether subject matter jurisdiction "is or could have been**
                **available" under 28 U.S.C. § 1581(c)**

      The Court does not have and would not have had jurisdiction over the instant

action under 28 U.S.C. § 1581(c).  28 U.S.C. § 1581(c) provides the Court with subject

matter jurisdiction with respect to "any civil action commenced under [19 U.S.C. §

1516a]."  Further, 19 U.S.C. § 1516a(a)(2)(B)(iii) provides that "[a] final determination . .

. by [Commerce] . . . under [19 U.S.C. § 1675]" constitutes a "[r]eviewable

determination[]" under 28 U.S.C. § 1581(c).  19 U.S.C. § 1516a(a)(2)(B)(iii).

Subject matter jurisdiction for the instant action, which involves plaintiffs'

challenge to Commerce's authority to issue and apply the *Duty Suspension Rule* in

respect of the administration and enforcement of the Final Determinations, could not

have been available under 28 U.S.C. § 1581(c).  That is because the *Duty Suspension

Rule* relates to the "administration and enforcement," 28 U.S.C. § 1581(i)(1)(D), of those

determinations — in particular, Commerce's cash deposit and liquidation instructions to

Customs — rather than the lawfulness of Commerce's Final Determinations

themselves.

The Federal Circuit has stated that the Court is to "look to the true nature of the

action" to determine whether jurisdiction would be available under another subsection of

28 U.S.C. § 1581.  *Hartford Fire*, 544 F.3d at 1293.  As specified in plaintiffs' complaint,

the underlying issue raised by plaintiffs concerns Commerce's *Duty Suspension Rule*,

which Commerce issued pursuant to and under the authority of Proclamation 10414.[12]

*See* Compl. ¶¶ 101, 108, 116, 127, 134, 138, 145; *see also Wanxiang Am. Corp.*, 12

F.4th at 1374-75 (directing the jurisdictional inquiry to look to the "true nature of the

---

[12] The *Duty Suspension Rule* provides:

> To respond to the emergency declared in the proclamation, and pursuant
> to the Proclamation and section 318(a) of the Act, in this final rule,
> Commerce is adding Part 362 to extend the time for, and waive, the actions
> provided for in 19 C.F.R. 351.226(l)(1) . . . .

87 Fed. Reg. at 56,869.

action").  The *Duty Suspension Rule* by its terms states explicitly that Commerce will direct CBP to take certain actions with respect to the "Applicable Entries" defined in section 362.102 and further states *explicitly* that these directions by Commerce to CBP are *despite* — not in furtherance of — Commerce's initiation of its circumvention inquiries and Commerce's final affirmative circumvention determinations:

> Commerce will direct [Customs] to discontinue the suspension of liquidation and collection of cash deposits that were ordered based on Commerce's initiation of these circumvention inquiries . . . [and] Commerce will not direct CBP to suspend liquidation, and require cash deposits, of estimated ADs and CVDs based on these affirmative determinations of circumvention on any "Applicable Entries."

*Final Determinations,* 88 Fed. Reg. at 57,421.  Further, Commerce's directions to CBP as specified do not alter in any respect Commerce's circumvention findings in those determinations.  *Id*.

19 U.S.C. § 1516a(a)(2)(B) lists under subparagraph (B) the specific types of determinations[13] contestable under that provision.  None of those listed determinations

---

[13] Section 1516a(a)(2)(B) delineates the types of determinations that allow for the invocation of § 1581(c) and judicial review:

> (B) Reviewable determinations

> The determinations which may be contested under subparagraph (A) are as follows:

> (i) Final affirmative determinations by the administering authority and by the Commission under section 1671d or 1673d of this title, including any negative part of such a determination (other than a part referred to in clause (ii)).
> (ii) A final negative determination by the administering authority or the Commission under section 1671d or 1673d of this title, including, at

describes or encompasses the *Duty Suspension Rule*.  Therefore, none is applicable in

the instant action.  In sum, the instant action does not concern a "reviewable

determination" under 19 U.S.C. § 1516a(a)(2)(B), thereby precluding jurisdiction under

28 U.S.C. § 1581(c).

      In contrast, the instant action deals with actions expressly described under 28

U.S.C. § 1581(i)(1): the non-collection of "tariffs, duties, fees, or other taxes on the

importation of merchandise for *reasons other than the raising of revenue*," in this

instance, the president's declared emergency to meet domestic electricity demands as

---

the option of the appellant, any part of a final affirmative determination
which specifically excludes any company or product.
(iii) A final determination, other than a determination reviewable under
paragraph (1), by the administering authority or
the Commission under section 1675 of this title.
(iv) A determination by the administering authority, under section 1671c
or 1673c of this title, to suspend an antidumping duty or a countervailing
duty investigation, including any final determination resulting from a
continued investigation which changes the size of the dumping margin or
net countervailable subsidy calculated, or the reasoning underlying such
calculations, at the time the suspension agreement was concluded.
(v) An injurious effect determination by the Commission under section
1671c(h) or 1673c(h) of this title.
(vi) A determination by the administering authority as to whether a
particular type of merchandise is within the class or kind of merchandise
described in an existing finding of dumping or antidumping or
countervailing duty order.
(vii) A determination by the administering authority or
the Commission under section 3538 of this title concerning
a determination under subtitle IV of this chapter.
(viii) A determination by the Commission under section 1675b(a)(1) of this
title.

19 U.S.C. § 1516A(B).

Court No. 23-00274                                                                                          Page 21

per § 1581(i)(1)(B) (emphasis supplied) and the "administration and enforcement with

respect to the matters referred to in subparagraphs (A) through (C) of this paragraph

and subsections (a)-(h) of this section," which include circumvention determinations by

Commerce such as the Final Determinations.  *See, e.g., NLMK Pa., LLC v. United*

*States*, 46 CIT __, 558 F. Supp. 3d 1401, 1405 (2022) (exercising jurisdiction pursuant

`to 28 U.S.C. § 1581(i)(1)(B) and (D)).   As a consequence, the action falls squarely

within the terms of § 1581(i).

       This Court has stated — and the Federal Circuit has affirmed — that 28 U.S.C. §

1581(i) constitutes "a [c]ongressional fail-safe device" and that "[i]f the circumstances of

a case are sufficiently unusual so that one may presume that Congress could not have

provided for such a case under the general language of 19 U.S.C. § 1516a . . . 28

U.S.C. § 1581(i) is available to afford a means of vindication of statutory rights."  *Hylsa,*

*S.A. de C.V. v. United States*, 21 CIT 222, 227-28, 960 F. Supp. 320, 324 (1997), *aff'd*

*sub nom. Hylsa, S.A. v. Tuberia Nat., S.A.*, 135 F.3d 778 (Fed. Cir. 1998).  One such

"unusual" circumstance exists in the instant action.  Commerce took an unprecedented

action to issue the *Duty Suspension Rule* under Proclamation 10414, which was issued

under separate provision of the U.S. code.  19 U.S.C. § 1318; 19 U.S.C. § 1677j; 19

C.F.R. § 351.225; 19 C.F.R. § 351.226.  The *Duty Suspension Rule* in turn contains

express direction to Customs with respect to suspension of liquidation, collection of

cash deposits and payment of estimated duties.

In addition, the Federal Circuit has provided a framework to confirm the proper

exercise of residual jurisdiction.  *Shinyei*, 355 F.3d at 1296-97; [14] *Ugine II*, 551 F.3d at

1339.  The *Shinyei* decision addressed the administrative review of an AD order, in

which Customs (due to Commerce's erroneous instructions) liquidated certain entries at

a rate higher than that set in Commerce's final determination.  *Shinyei*, 335 F.3d at

1303.  Plaintiff Shinyei invoked jurisdiction pursuant to § 1581(i): (1) arguing that

Commerce's instructions violated 19 U.S.C. § 1675(a)(2)(C) (with respect to the

antidumping duty margin determination); and (2) seeking reliquidation.  *Id.* at 1305-

06.  The USCIT dismissed Shinyei's action for lack of subject matter jurisdiction.  *Id.* at

1304.  Plaintiff appealed.  Before the Federal Circuit, the government argued that no

relief was available under APA § 702 because 19 U.S.C. § 1516a and the protest

statute, 19 U.S.C. § 1514, barred the court from granting plaintiff's requested relief —

reliquidation.  *Id.* at 1306, 1308.  The Federal Circuit reversed the USCIT and concluded

that § 1516a was not applicable to Shinyei's APA challenge because § 1516a deals with

---

[14] It is notable that the Federal Circuit in *Shinyei* expressly confirmed the authority of the
USCIT to exercise residual jurisdiction and order reliquidation.  *Shinyei,* 355 F.3d at
1311-12 (stating that "[t]he absence of an express reliquidation provision should not be
read as a prohibition of such relief when the statute provides the Court of International
Trade with such broad remedial powers").  It is parties' acknowledgement of and
intention not to contest this authority to which plaintiffs and defendants stipulate in the
Joint Stipulation in Lieu of Plaintiffs' Preliminary Injunction.  Joint Stipulation ¶ 2.  The
Federal Circuit stated that no provision in the Tariff Act "provides that liquidations are
final except within the narrow confines of section 1514."  *Shinyei*, 355 F.3d at 1311.  In
*Shinyei*, the Federal Circuit remanded the action to the USCIT directing it to reach the
merits of requested relief because the Tariff Act "does not '*impliedly forbid*
[reliquidation] relief which [Shinyei] sought' under the APA. . . ."  *Id.* at 1312.  In its
remand, the Federal Circuit stated that "the requested relief [to grant reliquidation] is
easily construed as 'any other form of relief that is appropriate in a civil action.'"  *Id.*

"final determinations" of Commerce and not actions or directions related to Commerce's *implementation* of the final determination.  *Id*. at 1309.  The instant action is analogous because it relates to Commerce's liquidation instructions and Commerce's failure therein to order the collection of duties consistent with Commerce's findings in the Final Determinations.[15]

Defendants argue that the holding in *Shinyei* is inapposite.  Defendants maintain that plaintiffs in the instant action contest Commerce's failure to instruct Customs to suspend liquidation and collect duties according to an affirmative finding of circumvention in the Final Determinations, whereas plaintiff in *Shinyei* challenged its exclusion from Commerce's liquidation instructions that did not reflect the results of the administrative review and final determination.  Defs. Reply Mot. Dismiss at 11 (citing *Shinyei*, 355 F.3d at 1301-04).

Defendants' argument is not persuasive.  Plaintiffs in this action, as in *Shinyei* and *Ugine II*, were subject to liquidation instructions that did not reflect Commerce's Final Determinations.  In particular, Commerce's liquidation and collection instructions to Customs in the instant action as specified in the *Duty Suspension Rule* are

---

[15] The court notes that both plaintiffs and proposed defendant-intervenors have filed actions in this Court challenging the Final Determinations.  *Auxin Solar Inc. v. United States*, Court No. 23-223; *Auxin Solar Inc. v. United States*, Court No. 23-224; *Auxin Solar Inc. v. United States*, Court No. 23-227; *BYD (H.K.) Co., Ltd. v. United States*, Court No. 23-221; *Canadian Solar Int'l Ltd. v. United States*, Court No. 23-222; *Trina Solar Science & Tech. (Thailand) Ltd. v. United States*, Court Nos. 23-227, 23-228; *Red Sun Energy Long An Co. Ltd v. United States*, Court No. 23-229.  In those actions, Auxin Solar and CCE do not contest the *Duty Suspension Rule* and the consequent liquidation instructions that are the subject of this action.

inconsistent with Commerce's affirmative circumvention determinations as set forth in the Final Determinations.[16]  *See Ugine II,* 551 F.3d at 1347 ("If the party challenges the liquidation instructions issued by Commerce to implement a final order, review is available under 28 U.S.C. § 1581(i)[1][B], [D].").[17]  As such, the Federal Circuit's decisions in *Shinyei* and *Ugine II* are on point.  That Commerce chose to incorporate in the same document containing Commerce's Final Determinations of circumvention Commerce's liquidation and collection instructions to Customs is not determinative.

---

[16] Commerce determined that the CPSV cells were circumventing AD/CVD Orders covering certain solar modules:

> As detailed in the Issues and Decision Memoranda for Cambodia, Malaysia, and Vietnam, and in the *Preliminary Determination* for Thailand, with the exception of certain U.S. imports from the exporters identified in Appendix III to this notice, we determine that U.S. imports of inquiry merchandise are circumventing the *Orders* on a countrywide basis. As a result, we determine that this merchandise is covered by the *Orders.*

*Final Determinations*, 88 Fed. Reg. at 57,420.

The *Duty Suspension Rule* is referenced in Commerce's analysis as pertaining to the liquidation and cash deposit instructions: (footnote continued)

> *See* the ''Suspension of Liquidation and Cash Deposit Requirements'' section below for details regarding suspension of liquidation and cash deposit requirements. *See* the ''Certification'' and ''Certification Requirements'' section below for details regarding the use of certifications.

*Id.*

[17] The version of the USCIT's jurisdictional statute at 28 U.S.C. § 1581(i)(2) and (4) analyzed in *Ugine II* corresponds in substance to the current 28 U.S.C. § 1581(i)(1)(B) and (D).  *Compare* 28 U.S.C. § 1581(i)(2) and (4) (2020), *with* current version at 28 U.S.C. § 1581(i)(1)(B) and (D).

Were it to be so, it would elevate form over substance rather than focus on "the true

nature of the action" before the court.  *Wanxiang Am. Corp. v. United States*, 12 F.4th at

1374-75; *Hartford Fire*, 544 F.3d at 1292-93.[18][19]

　　In sum, the court concludes that the instant action could not have been brought

under 28 U.S.C. § 1581(c) and falls within the residual jurisdiction of the Court under 28

---

[18] As stated in the Final Determinations, Commerce determined that the subject CSPV cells were circumventing AD/CVD orders on solar cells and modules from China.  *Final Determinations*, 88 Fed. Reg. at 57,419.

[19] Defendants maintain that "a party challenging two different aspects of *one* final determination [should not be required to] file *two separate* lawsuits, one pursuant to § 1581(c) and another pursuant to § 1581(i)."  Defs. Reply Mot. Dismiss at 3.  This argument is contrary to the decisions of this court and the Federal Circuit.  For example, in *Ugine II*, the Federal Circuit expressly recognized that "[u]nfortunately . . . there is no single judicial review method for challenging the imposition of antidumping duties."  551 F.3d at 1347.  The Federal Circuit elaborated:

> If the challenge is to the final order of an administrative review, the determination can be reviewed by the Court of International Trade under 28 U.S.C. § 1581(c) . . . .  On the other hand, if the final order is unclear, 19 C.F.R. § 351.225 makes available a scope review under 28 U.S.C. § 1581(c). . . .  If the party challenges the liquidation instructions issued by Commerce to implement a final order, review is available under 28 U.S.C. § 1581(i). . . .  If the liquidation order is clear, but is being improperly applied by Customs, then Customs' actions can be challenged under 28 U.S.C. § 1581(a). . . .

*Id.* (citations omitted).

As noted, that Commerce chose to embed its instructions to Customs in the same notice containing Commerce's Final Determinations does not change the legal nature of those instructions.  As in other actions decided by this Court and the Federal Circuit, instructions as to the implementation of a final determination are appropriately considered under § 1581(i).

U.S.C. § 1581(i)(1)(D) because it pertains to the "administration and enforcement" of Commerce's circumvention findings.

> **2.     Whether the relief provided to plaintiffs would be "manifestly inadequate"**

Jurisdiction was not available under 28 U.S.C. § 1581(c).  Accordingly, the court need not and does not address parties' arguments concerning whether any such relief under § 1581(c) would have been "manifestly inadequate."

## II.     Whether the Joint Stipulation in Lieu of Plaintiffs' Motion for a Preliminary Injunction should be granted by this court

Parties may stipulate to certain facts before the court and propose certain conclusions of law.  *See, e.g., LDA Incorporado v. United States,* 39 CIT __, 79 F. Supp. 3d 1331 (2015); *United States v. Carnation Creations, Inc.,* 27 CIT 604 (2003).  In the instant action, plaintiffs and defendants stipulate to the authority of the court to order reliquidation and direct the United States to reliquidate entries "for which liquidation was not suspended and cash deposits were not collected pursuant to *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord with Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Sept. 16, 2022)."  Joint Stipulation ¶ 1.

Further, plaintiffs and defendants clarified for the court the purpose of the Joint Stipulation to support the availability of reliquidation as a remedial power, which defendants concede in the instant action.  *See* Defs.' Resp. Order re: Joint Stipulation at 2, ECF No. 72; *see* Pls.' Resp. Order re: Joint Stipulation at 2, ECF No. 73 (stating that "Defendants obtain the benefit of mooting Solar Plaintiffs' Motion and avoiding a court-imposed injunction"); *Sumecht NA, Inc. v. United States*, 923 F.3d 1340 (Fed. Cir. 2019)

(finding that the government would be judicially estopped from taking a contrary position

regarding the USCIT's authority to order reliquidation due to the government's

representation that reliquidation was available as a form of relief); *In re Section 301

Cases*, 45 CIT __, __, 524 F. Supp. 3d 1355, 1362-63 (2021).

As such, the court grants the Joint Stipulation proposed by plaintiffs and

defendants.

**III.    Whether proposed defendant-intervenors have standing**

**A.    Legal framework**

The court addresses first whether proposed defendant-intervenors have standing

under Article III of the Constitution.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112

S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("[S]tanding is an essential . . . part of the case-or-

controversy requirement of Article III.").  Article III limits the jurisdiction of federal courts

to cases and controversies.  U.S. Const. art. III, § 2.  A justiciable Article III case or

controversy requires a "party invoking federal court jurisdiction" to demonstrate, as "the

irreducible constitutional minimum of standing": (1) that it has suffered "an injury in fact,"

that is, "an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a "causal

connection between the injury and the conduct complained of"; and (3) "it must be likely

that the injury will be redressed by a favorable decision."  *Lujan,* 504 U.S. at 560-61

(internal citations and quotations omitted).

The court begins by addressing issues of standing because standing is a

threshold jurisdictional question.  *California Steel Indus., Inc. v. United States,* 48 F.4th

1336, 1342 (Fed. Cir. 2022) (citing *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581

U.S. 433, 434 (2017)).  "For all relief sought, there must be a litigant with standing,

whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of

right." *Town of Chester*, 581 U.S. at 434.  This means that, "at the least, an intervenor

of right must demonstrate Article III standing when it seeks additional relief beyond that

which the plaintiff requests." *Id.*  Proposed intervenors have "the burden of

demonstrating either . . . independent constitutional standing or. . . 'piggyback standing,'

i.e., standing based on seeking the same relief sought by an existing party to the case."

*N. Am. Interpipe, Inc. v. United States*, 45 CIT __, __, 519 F. Supp. 3d 1313, 1321-22

(2021).

       The Federal Circuit has clarified the rationale for Article III standing of defendant-

intervenors, stating that:

> A defendant-intervenor does not fit the same mold as the traditional
> unwilling defendant.  Rather, a defendant-intervenor actively seeks to
> participate in the resolution of a case in which the plaintiff did not bring a
> claim against or request any relief from the proposed intervenor.  Thus,
> "where a party tries to intervene as another defendant," that defendant-
> intervenor must "demonstrate Article III standing."

*California Steel*, 48 F.4th at 1343 (quoting *Crossroads Grassroots Pol'y Strategies v.*

*Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015)).  "[A]t least one party must

demonstrate Article III standing for each claim for relief." *Little Sisters of the Poor*

*Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. __, 140 S. Ct. 2367, 2379 n.6, 207

L.Ed.2d 819 (2020) (citing *Town of Chester*, 581 U.S. at 434).  "Article III standing is not

a threshold determination that courts normally make before allowing a defendant to

enter a case.  The standing inquiry is generally 'directed at those who invoke the court's

jurisdiction,' and most defendants are pulled into a case unwillingly."  *Crossroads*

*Grassroots*, 788 F.3d at 316 (citing *Roeder v. Islamic Republic of Iran,* 333 F.3d 228,

233 (D.C. Cir. 2003)).  Where a putative intervenor seeks only the same relief as an

existing party to the litigation, the proposed intervenor may "piggyback" on the existing

party's standing.  *See Caifornia Steel*, 48 F.4th at 1343; *HiSteel Co., Ltd. v. United*

*States*, 47 CIT __, ___, 592 F.Supp.3d 1339, 1342 (2022).

    USCIT Rule 24(c) requires that proposed intervenors state the grounds for their

intervention and accompany their motions with "a pleading that sets out the claim or

defense for which intervention is sought."  USCIT R. 24(c)(1).

    B.    **Positions of parties**

    Plaintiffs argue that none of the proposed intervenors has established Article III

Standing.  Pls. Resp. Opp'n at 9.  Plaintiffs note that the USCIT "has previously denied

motions that 'fail to even address, must less establish, either. . .  independent

constitutional standing or . . . piggyback standing as required by Article III.'"  *Id.* (citing

*N. Am. Interpipe*, 45 CIT at __, 519 F. Supp. 3d at 1322.  Plaintiffs state that all

proposed defendant-intervenors violate USCIT Rule 24(c) for failing to submit an

accompanying pleading setting out a prayer for relief and the defense for which

intervention is sought.  Pls. Resp. Opp'n at 12 (citing USCIT Rule 24(c)).

    All proposed defendant-intervenors address the elements of Article III standing in

their initial or reply briefs, stating that "[i]t goes without saying that industry entities that

intervene to defend a government rule pursue the same 'relief' as the government: for

that rule to be upheld."  Def.-Int. Reply I at 5; Mot. Leave to File Opp'n to Mot. Int. of

Prop. Def.-Int. ("Def.-Int. Reply II") at 16, ECF No. 59.

### C.    Analysis

The court concludes that proposed defendant-intervenors demonstrate that they

meet Article III piggyback standing requirements as set out by the Supreme Court and

the Federal Circuit to intervene in the instant action because proposed defendant-

intervenors seek the same relief as named defendants and filed their motions to

intervene with sufficient pleadings.  In the following analysis, the court does not address

the issues concerning the independent constitutional standing[20] of proposed defendant-

intervenors because they have demonstrated that they meet the requirements to

establish piggyback standing alongside defendants.

### 1.    Prayers for relief

In their motions to intervene, proposed defendant-intervenors request the same

relief as the defendants named by plaintiffs: the enforcement and judicial upholding of

the *Duty Suspension Rule* contested by plaintiffs in the instant action.  *See* Mots.

Dismiss, ECF Nos. 16, 32, 36, 39, 40, 41, 48, 49 53.  In *California Steel,* the Federal

Circuit held that the proposed intervenors' requested relief was largely identical to the

---

[20] Standing requires that (1) the party invoking federal jurisdiction and asserting
standing "shows that it has suffered an injury in fact — an invasion of a legally protected
interest which is concrete and particularized," (2) there must be a "causal connection
between the injury and the conduct complained of — the injury has to be fairly . . .
trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the
independent action of some third party not before the court," and (3) "it must be likely,
as opposed to merely speculative, that the injury will be redressed by a favorable
decision."  *Lujan*, 504 U.S. at 561 (internal citations and quotations omitted).

government's prayer for relief and that the proposed intervenors therefore established

the first element of piggyback standing.  *California Steel*, 48 F.4th at 1343.  Each of the

proposed defendant-intervenors in the instant action shares the same prayer for relief

as the government.  Consistent with the *California Steel* holding, the court concludes

that the proposed defendant-intervenors have demonstrated the first element of Article

III piggyback standing because they share the same prayer for relief as the named

defendants.

## 2.    Pleadings

All proposed defendant-intervenors complied with Rule 24(c)(1) by filing motions

to dismiss with their motions to intervene.  Mots. Dismiss, ECF Nos. 32, 36, 39, 40, 41,

48, 49, 50, 53.  Motions to dismiss for lack of subject matter jurisdiction constitute

pleadings satisfying the requirements of Rule 24(c).  Further, Rule 12 states that a

defense for lack of subject matter jurisdiction "must be made before pleading if a

responsive pleading is allowed."  USCIT R. 12(b)(1).  The court concludes that the

motion to dismiss accompanying each motion to intervene of each proposed defendant-

intervenor satisfies the pleading requirement of Rule 24.  USCIT R. 24(c)(1).[21]

---

[21]  Plaintiffs maintain that the *only* pleading that meets the requirement in Rule 24(c) is
an Answer to plaintiffs' Complaint.  Pls. Resp. Opp'n at 12 (citing USCIT R. 7(a)).  The
court in this case is called upon to apply Rules 7, 24 and 12, which states that a motion
to dismiss "must be made before pleading if a responsive pleading is allowed."  USCIT
R.12.  Rule 24(c) states in relevant part: "The motion must state the grounds for
intervention and be accompanied by a pleading that sets out the claim or defense for
which intervention is sought."  In this case, defendants have not yet filed an Answer.
Proposed defendant-intervenors cannot be expected to file an Answer prior to the
defendants they seek to join.  Further, to effectively preclude proposed defendant-

The shared prayers for relief and attached pleadings of proposed defendant-

intervenors demonstrate that the proposed defendant-intervenors meet the threshold

standing requirements set forth by this Court for intervention in the instant action.

**IV.    Whether proposed defendant-intervenors are entitled to intervene as a matter of right**

    **A.    Legal framework**

Pursuant to Rule 24(a), intervention as a matter of right is available to anyone

who:

> in an action described in section 517(g) of the Tariff Act of 1930 . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

USCIT R. 24(a)(2).

This Court and the Federal Circuit have interpreted the clause of Rule 24(a)(2)

that does not pertain to evasion cases under 19 U.S.C. § 1517 to provide for a four-part

test:

> (1) [T]he motion must be timely; (2) the moving party must claim an interest in the property or transaction at issue that is "'legally protectable'—merely economic interests will not suffice"; (3) "that interest's relationship to the litigation must be 'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment,'"; and (4) "the movant must demonstrate that said interest is not adequately addressed by the government's participation."

---

intervenors from utilizing Rule 24 such that their motions to intervene may be
considered would narrow the opportunities for intervention provided under Rule 24.

*N. Am. Interpipe*, 45 CIT __, 519 F. Supp. 3d at 1323 (quoting *Wolfsen Land & Cattle*

*Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012)),

*aff'd sub nom. Cal. Steel Indus., Inc. v. United States*, 48 F.4th 1336 (Fed. Cir. 2022);

*California Steel*, 48 F.4th at 1340 (first quoting *N. Am. Interpipe*, 45 CIT at __, 519 F.

Supp. 3d at 1323; then quoting *Wolfsen*, 695 F.3d at 1315).

**B.      Positions of parties**

Plaintiffs argue that none of the proposed defendant-intervenors meets any of the

four factors to be weighed by the court in deciding motions to intervene as a matter of

right.  Pls. Resp. Opp'n at 5-6.  All proposed defendant-intervenors except for Risen

Energy argue that they meet the requirements for intervention as of right.

**C.      Analysis**

The court concludes that none of the proposed defendant-intervenors meets the

second and third factors of the four-part test, thereby failing to meet the standard for

intervention as of right under USCIT Rule 24(a).  *See Wolfsen*, 695 F.3d at 1315.  In

denying intervention as of right under USCIT Rule 24(a), the court analyzes each of the

four factors contested by plaintiffs.

**1.      Timeliness of the motions to intervene**

The court concludes that each proposed defendant-intervenor filed its motion to

intervene in the instant action in a timely manner.

The Federal Circuit has established the following test for timeliness under Rule

24(a):

[T]he following factors must be weighed:

(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene;
(2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention. [sic]
(3) existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 69 CCPA 75, 81, 669 F.2d 703, 707 (1982) (citations omitted).

The court concludes that the timing of the motions to intervene weighs in favor of proposed defendant-intervenors under the *Sumitomo* standard.  *Id.* Plaintiffs argue that each proposed defendant-intervenor filed a motion to intervene prematurely "because no proposed defendant-intervenor has demonstrated that defendants inadequately represent a legally protectable interest in the subject of this litigation."  Pls. Resp. Opp'n at 33.  The court disagrees.  The first factor for intervention does not depend on the second factor and the court iterates that the timeliness of intervention is considered in the context of the status of litigation of the case.  In the instant action, the motions to intervene were filed within 30 days of the complaint and were accompanied with motions to dismiss for lack of subject matter jurisdiction.  Mots. Dismiss of Def.-Ints.

All proposed defendant-intervenors filed to intervene in the instant action to argue the same position as the government and filed motions to dismiss for

lack of subject matter jurisdiction.  *Id.*  Rule 12(b)(1) pleadings are proper in the

early stages of the adjudication of the instant action.  USCIT R. 12(b)(1).

As such, proposed defendant-intervenors meet the first factor required for

intervention as a matter of right under Rule 24(a).

### 2.    Legally protectable interests

The court addresses next whether proposed defendant-intervenors have a right

to intervene under USCIT Rule 24(a) based on a "legally protectable" interest.  *Wolfsen*,

695 F.3d at 1315 (citation omitted).  Proposed defendant-intervenors do not explain how

their interests in this action are "legally protectable" as opposed to "merely

economic."  *Id.*

In *California Steel*, the Federal Circuit made the distinction between parties with

a "legally protectable interest" and parties that "participat[ed] in adversarial

administrative proceedings."  *California Steel,* 48 F.4th at 1344 (finding no "legally

protectable interest[ ]" on the basis that proposed defendant-intervenors participated in

administrative proceedings that could have revoked tariffs in which the proposed

defendant-intervenors had an interest); *see Glob. Aluminum Distrib. LLC v. United

States*, 45 CIT __, __, 579 F. Supp. 3d 1338, 1341 (2021) (quoting *N. Am. Interpipe*, 45

CIT at __, __, 519 F. Supp. 3d at 1323 (2021) (quoting *Wolfsen,* 695 F.3d at 1315)).

Similar to proposed intervenors in *California Steel,* proposed defendant-intervenors in

the instant action argue that their participation in the administrative proceedings and the

potential effect of the court's ruling concerning the *Duty Suspension Rule* necessarily

equate to a legally protectable interest.  The court disagrees.

Plaintiffs in the instant action contest the underlying rulemaking procedure by Commerce when issuing the *Duty Suspension Rule*, which exempted the collection of AD/CV duties on the CSPV cells and Commerce's non-collection of AD/CV duties on the CSPV cells.   Compl. ¶¶ 3-4.  Proposed defendant-intervenors argue that they have "oriented their supply chains, imported subject products, executed legally binding contracts and invested capital in reliance on [the *Duty Suspension Rule*]."  Def.-Int. Reply I at 11; Def.-Int. Reply II at 6.  Proposed defendant-intervenors may be affected financially by the court's judgment concerning the *Duty Suspension Rule,* but the rulemaking process and the substance of the *Duty Suspension Rule* do not create legally protectable interests beyond "merely economic" ones.  *Am. Mar. Transp., Inc. v. United States,* 870 F.2d 1559, 1562 (Fed. Cir. 1989) (citation omitted).

Intervention as a matter of right is not available in the instant action because proposed defendant-intervenors have not sufficiently shown that their financial interests rise above the "merely economic."

### 3.  Direct relationship between litigation and proposed defendant-intervenors' interests

Proposed defendant-intervenors argue that whether the *Duty Suspension Rule* is upheld by the court "will have a demonstrable and significant impact" on them because they "stand to face immediate and direct economic harm as a result of this litigation." Def.-Int. Reply I at 2.  The court concludes that the economic harm from which proposed defendant-intervenors may suffer does not constitute a legally protectable interest and the question of whether there is a direct relationship between the litigation

and those interests turns on the second factor.  In the instant action, because the court

concludes that the second factor is not met, there can be no direct relationship between

the litigation and the interests of proposed defendant-intervenors.

### 4.    Adequacy of government's representation

Proposed defendant-intervenors demonstrate that their interests are not

adequately protected by the government in the instant action.  The burden of showing

inadequacy of representation is "minimal," requiring a showing only that an existing

party's representation of interests of proposed defendant-intervenors "may be"

inadequate as to some aspect of the case at bar.  *Wolfsen,* 695 F.3d at 1315 (citing

*Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972) (permitting intervention

by a union member notwithstanding participation of the Secretary of Labor because the

Secretary's twin duties to represent both the aggrieved member and the public generally

might engender an adversity of interest)).  In the instant action, proposed defendant-

intervenors have shown that the government will not adequately represent their financial

and economic interests.

In sum, and as noted, proposed defendant-intervenors meet two of the four

requirements for intervention as of right, but do not meet the second and third

requirements.  Accordingly, the court concludes that none of the proposed defendant-

intervenors meets the standard for intervention as of right under USCIT Rule 24(a).

**V.     Whether proposed defendant-intervenors should be permitted to intervene**

    **A.     Legal framework**

"Subject to the statutory provisions of 28 U.S.C. § 2631(j), permissive intervention is governed by Rule 24(b) of the Rules of this Court."  *Manuli Autoadesivi, S.p.A. v. United States*, 9 CIT 24, 25, 602 F. Supp. 96, 98 (1985) (citing 28 U.S.C. § 2631(j)(1) ("Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action . . . .")).  The court may permit a party to intervene under USCIT Rule 24(b) if such a party "has a claim or defense that shares with the main action a common question of law or fact."  USCIT R. 24(b)(1)(B).  If proposed intervenors satisfy the requirements of USCIT Rule 24(b)(1)(B), the court may exercise its discretion to permit intervention.  USCIT R. 24(b)(3).  "In 28 U.S.C. § 1581(i) cases, intervention is left to the sound discretion of the court as stated in [USCIT] Rule 24(b) and 28 U.S.C. § 2631(j)."  *Neo Solar Power Corp. v. United States*, Slip Op. 2016-60, 2016 Ct. Int'l. Trade LEXIS 58, at *2 (CIT June 9, 2016) (citing *Vivitar Corp. v. United States*, 7 CIT 165, 169, 585 F. Supp. 1415, 1419 (1984)).  Further, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  USCIT R. 24(b)(3).

    **B.     Positions of parties**

Plaintiffs state that proposed defendant-intervenors' motions cannot be treated as timely because they do not include answers or pleadings with their motions to intervene.  Pls. Resp. Opp'n at 36.  Plaintiffs state further that proposed defendant-

intervenors reference 28 U.S.C. § 2631(j)(1) as creating a conditional right to intervene for purposes of Rule 24(b)(1)(A), but that none possesses that right because proposed defendant-intervenors need to establish independent Article III standing to support the position that they would be "adversely affected or aggrieved by a decision in this action." *Id.* at 37-39.  Plaintiffs also maintain that proposed defendant-intervenors do not share a defense with the government because they do not demonstrate any defense in the instant action.  *Id.*  at 39-41.  Finally, plaintiffs state that if the court "were to find a proposed intervenor theoretically eligible for intervention under Rule 24(b)(1), it should nevertheless decline to exercise its discretion to permit intervention.  Proposed defendant-intervenors' participation in this action would unduly delay proceedings."  *Id.* at 41-46.  Plaintiffs add that proposed defendant-intervenors attack the Joint Stipulation in lieu of plaintiffs' preliminary injunction and that the many motions to intervene in the instant action have unduly prejudiced parties already.  *Id.* at 42-44.

Proposed defendant-intervenors argue that, to the contrary, they meet each prong of the four-part permissive intervention inquiry.  *See* ACP Br. at 13-15; SEIA Br. at 10-12; Canadian Br. at 7-11; JA Solar Br. at 12-14; NextEra Br. at 9-11; BYD Br. at 6-8; Invenergy Br. at 9-11; Trina Br. at 6-8; Risen Br. at 4-7.  Consolidated Intervenors argue that they would be adversely affected or aggrieved by a decision in this case.  Def.-Int. Reply I at 20.

**C.    Analysis**

The court considers: (1) whether proposed defendant-intervenors have shown that they would be adversely affected or aggrieved by the outcome of the instant action;

(2) whether proposed defendant-intervenors' defenses and arguments share a common question of law or fact with those of the government; (3) the timeliness of their motions to intervene; and (4) whether permitting intervention would unduly delay or prejudice plaintiffs in the instant action.  The court concludes that proposed defendant-intervenors meet each of the four factors and, therefore, permissive intervention by them in the instant action is warranted.

### 1.    Adversely affected or aggrieved

The court concludes that proposed defendant-intervenors have adequately demonstrated that they would be adversely affected or aggrieved within the meaning of 28 U.S.C. § 2631(j)(1).  Plaintiffs state that proposed defendant-intervenors must demonstrate independent constitutional standing in the instant action to show that they "would be adversely affected or aggrieved by a decision in [the instant] action within the meaning of 28 U.S.C. § 2631(j)(1)."  Pls. Resp. Opp'n at 37.  No such requirement exists.  *Cf. PrimeSource Bldg. Prod., Inc. v. United States*, 45 CIT __, __, 494 F. Supp. 3d 1307, 1329 (2021) (Baker, J., concurring) (stating that "a putative intervenor invoking 28 U.S.C. § 2631(j)(1) must demonstrate "injury in fact," i.e., constitutional standing.").

Further, each proposed defendant-intervenor references both its reliance on the *Duty Suspension Rule* in making business decisions and the potential financial ramifications of the instant action.  ACP Br. at 9 ("ACP's project developers, electric utilities and project financing companies to varying extents bear contractual liability for duties that may be imposed on 'applicable entries' in the event plaintiffs' claims

prevail."); SEIA Br. at 7 ("SEIA members imported and purchased CSPV cells and modules from Southeast Asia, based on the understanding that the imported CSPV cells and modules would not be subject to [AD/CV] duties."); Trina Br. at 7 ("[the *Duty Suspension Rule*] shaped Trina's decisions regarding the materials and production assets used to serve the U.S. market.");  Def.-Int. Reply I at 21 ("Plaintiffs admit that potential AD/CVD duty liability arises from the circumvention Final Determinations, which are currently on appeal under Section 1581(c).  And the relief Plaintiffs seek *in this litigation* is the imposition of AD/CV duties."); Def.-Int. Reply II at 13 ("Proposed Intervenors, as importers and users of CSPV modules benefitting from the [*Duty Suspension Rule*], will suffer direct financial consequences if plaintiffs succeed, because the solar products they import and use (including . . . goods previously imported and used) will be subject to significant additional tariffs.").

Finally, this Court has explained that "[t]he phrase 'adversely affected or aggrieved,' which mirrors the language in numerous statutes, including the [APA], 5 U.S.C. § 702, represents a 'congressional intent to cast the [intervention] net broadly — beyond the common-law interests and substantive statutory rights' traditionally known to law."  *Ont. Forest Indus. Assoc. v. United States*, 30 CIT 1117, 1130, 444 F.Supp.2d 1309, 1321-22 (2006) (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 19 (1998)).

As such, the court concludes that proposed defendant-intervenors have shown that they would be adversely affected or aggrieved by the outcome of the instant action.

## 2.    Common question of law or fact

Proposed defendant-intervenors participated in the underlying administrative proceedings and their defenses share law and facts in common with those of the government.  Proposed defendant-intervenors note that "the primary transaction at issue in this appeal is application of the [*Duty Suspension Rule*] and potential liability for AD/CV duties."  Def.-Int. Reply II at 14.  Proposed defendant-intervenors have shown that their "participation could add some material aspect beyond what is already present."  *Wolfsen*, 695 F.3d at 1318.[22]  Proposed defendant-intervenors represent a segment of the solar industry that is aligned with the position of defendants.  Def.-Int. Reply II at 14.  As such, and based on their filings, the court concludes that proposed defendant-intervenors have demonstrated that they share a common question of law or fact with defendants.  In addition, proposed defendant-intervenors would defend their differentiated interests in this case.  *Id*.

## 3.    Timeliness

The motions to intervene of proposed defendant-intervenors are timely given that they were filed within 30 days of plaintiffs' complaint and include motions to dismiss for lack of subject matter jurisdiction as discussed in Section IV.C.1, *supra*.

---

[22] Although *Wolfsen* considers intervention as of right, the court finds its reasoning — including as set forth by the Ninth Circuit Court of Appeals in *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 898 (9th Cir. 2011) — relevant and persuasive in light of the discretionary standard in Rule 24(b)(1).  695 F.3d at 1318.

### 4.      Undue delay or prejudice

The potential for undue delay or prejudice toward parties in the instant action requires particular consideration by the court given the number of proposed defendant-intervenors and the Joint Stipulation in Lieu of the Preliminary Injunction filed by plaintiffs. *See* Joint Stipulation. Plaintiffs argue that the sheer number of proposed defendant-intervenors will unduly delay and prejudice plaintiffs in the litigation of the instant action. Pls. Resp. Opp'n at 41-42.

The court has clarified that motions for intervention must be weighed against the principles of USCIT Rule 1 to promote the "just, speedy and inexpensive determination of every action and proceeding":

> [S]ix plaintiffs have expressed opposition to the Coalition's intervention. In exercising its discretion under § 2631(j)(2) and Rule 24(b), the court concludes that adding the Coalition as intervenors will burden the plaintiffs in all twelve actions with the need to respond to additional submissions and, unavoidably, also cause delays. These burdens and delays are not justified by broadening this litigation to allow the intervention that is sought here. In summary, allowing the intervention would not promote the principle expressed in USCIT Rule 1 that this Court's rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

*PrimeSource*, 45 CIT at __, 494 F. Supp. 3d at 1312-13 (2021) (quoting USCIT R. 1). The court weighs the burden presented by nine additional litigants in the instant action under Rule 1 against the effects (including potential reliquidation of entries that remain unliquidated) that the proposed defendant-intervenors may experience if the court decides in plaintiffs' favor. Joint Stipulation ¶ 3. These potential effects include that "if plaintiffs ultimately prevail upon the merits, the Court has the power to order

reliquidation of entries that remain unliquidated as of the date that the Court enters an order upon [the Joint Stipulation]." See *id.*

The reliquidation of entries would affect not only defendants in the instant action, but also proposed defendant-intervenors.  Weighing plaintiffs' rights under Rule 1 with the interests and rights of proposed defendant-intervenors and the court's motivation to receive a full understanding of the legal and factual issues presented and the perspectives of interested parties, the court determines that the intervention of proposed defendant-intervenors would not "unduly delay or prejudice the adjudication of the original parties' rights."  USCIT R. 24(b).  Further, to ensure the most effective presentation of arguments given the number of proposed defendant-intervenors, the court orders duplicative arguments to be omitted from the briefs of proposed defendant-intervenors.  The court notes also that the granting of defendants' and plaintiffs' Joint Stipulation and plaintiffs' subsequent withdrawal of its motion for a preliminary injunction will diminish further the chances for any such undue delay.

## CONCLUSION

For the foregoing reasons, the court denies defendants' motions to dismiss for lack of subject matter jurisdiction and grants the Joint Stipulation of plaintiffs and defendants.  The court grants the motions to intervene under Rule 24(b) of proposed defendant-intervenors.  In consideration of the large number of defendant-intervenors and the potential that their participation will "unduly delay or prejudice the rights of the original parties," the court orders defendant-intervenors to omit duplicative arguments in all future submissions.  Finally, the court grants the Supplemental Protective Order.

Court No. 23-00274                                                          Page 45

Accordingly, it is hereby

      **ORDERED** that the Motions to Dismiss of defendants and proposed defendant-intervenors are **DENIED**; it is further

      **ORDERED** that the Motions to Intervene of proposed defendant-intervenors are granted; it is further

      **ORDERED** that the Supplemental Protective Order is granted; it is further

      **ORDERED** that the Joint Stipulation of plaintiffs and defendants is granted; and it is further

      **ORDERED** that parties file a Joint Proposed Briefing Schedule within 14 days of this opinion and order.

      **SO ORDERED.**


                             /s/     Timothy M. Reif
                             Timothy M. Reif, Judge

Dated:     May 9, 2024
       New York, New York