**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| AUXIN SOLAR, INC., and CONCEPT CLEAN ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants, <br><br> and <br><br> AMERICAN CLEAN POWER ASSOCIATION, et al., <br><br> Defendant-Intervenors. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  **Court No. 23-00274** |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT-INTERVENORS'**
**UNOPPOSED MOTION FOR SUSPENSION OF LIQUIDATION AND A STAY OF**
**ENFORCEMENT OF JUDGMENT PENDING APPEAL**

Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER &**
**FELD LLP**
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4046
mnicely@akingump.com

*Counsel to NextEra Energy, Inc. and Solar*
*Energy Industries Association*

Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks
Lindsay K. Brown
**HOGAN LOVELLS US LLP**
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar (USA) Inc. and*
*Canadian Solar International Limited*

Craig A. Lewis
Nicholas W. Laneville
Gregory M.A. Hawkins
**HOGAN LOVELLS US LLP**
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-8613
craig.lewis@hoganlovells.com

*Counsel to BYD (H.K.) Co., Ltd. and BYD
America LLC*


John B. Brew
Robert L. LaFrankie
Amanda S. Berman
Alexander H. Schaefer
Weronika Bukowski
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2720
jbrew@crowell.com

*Counsel to Invenergy Renewables LLC and
Invenergy Solar Equipment Management LLC*

David M. Morrell
**JONES DAY**
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3652
dmorell@jonesday.com

*Counsel to Boviet Solar Technology Co., Ltd. and
Boviet Solar USA, Ltd.*

Jonathan M. Freed
Kenneth N. Hammer
MacKensie R. Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Ave, SE
Washington, DC 20003
(202) 223-3760
jfreed@tradepacificlaw.com

*Counsel for Trina Solar (U.S.), Inc., Trina
Solar Science & Technology (Thailand) Ltd.,
Trina Solar Energy Development Company
Limited, and Trina Solar (Vietnam) Science &
Technology Co., Ltd.*

Jeffrey S. Grimson
Kristin H. Mowry
Bryan P. Cenko
**MOWRY & GRIMSON, PLLC**
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
(202) 688-3610
trade@mowrygrimson.com

*Counsel to JA Solar USA, Inc., JA Solar
Vietnam Company Limited, JA Solar Malaysia
Sdn. Bhd., JA Solar International Limited,
and the American Clean Power Association*

Gregory S. Menegaz
Alexandra H. Salzman
**THE INTER-GLOBAL TRADE LAW
GROUP, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005
(202) 868-0300
gmenegaz@igtlaw.com

*Counsel to Risen Solar Technology Sdn. Bhd.
and Co-Counsel to Boviet Solar Technology
Co., Ltd. and Boviet Solar USA, Ltd.*

Ned H. Marshak*
Jordan C. Kahn
**GRUNFELD DESIDERIO LEBOWITZ
SILVERMAN & KLESTADT LLP**
*599 Lexington Avenue FL 36
New York, NY 10022-7648
(212) 557-4000
-and-
1201 New York Avenue NW Ste 650
Washington, DC 20005-3917
(202) 783-6881
nmarshak@gdlsk.com

*Counsel to Jinko Solar (U.S.) Industries Inc.,
JinkoSolar (U.S.) Inc., Jinko Solar Technology
Sdn. Bhd., Jinko Solar (Malaysia) Sdn. Bhd.,
JinkoSolar (Vietnam) Co., Ltd., JinkoSolar
Holding Co., Ltd., Jinkosolar Middle East
DMCC, JINKOSOLAR INVESTMENT LIMITED
(f/k/a/ Jinkosolar Technology Limited), and
Jinkosolar (Vietnam) Industries*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 2

BACKGROUND ........................................................................................................................ 4

ARGUMENT ............................................................................................................................. 7

    I.      DEFENDANT-INTERVENORS WILL SUFFER IRREPARABLE HARM ABSENT A STAY ................................................................................................................... 7

    II.    THE REQUESTED STAY WILL NOT INJURE OTHER PARTIES ........................ 13

    III.   A STAY WOULD SERVE THE PUBLIC INTEREST .............................................. 16

    IV.   DEFENDANT-INTERVENORS ARE LIKELY TO PREVAIL ON APPEAL .......... 21

CONCLUSION......................................................................................................................... 40

CERTIFICATE OF COMPLIANCE........................................................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Ass'n of Exporters & Importers-Textile & Apparel Gp. v. United States*,
  751 F.2d 1239 (Fed. Cir. 1985) ................................................................. 36

*Am. Grape Growers Alliance for Fair Trade v. United States*,
  9 CIT 505 (Ct. Int'l Trade 1985) ................................................................. 7

*AMS Assocs., Inc. v. United States*,
  737 F.3d 1338 (Fed. Cir. 2013) ................................................................. 28

*Arizona v. California*,
  460 U.S. 605 (1983) ................................................................................. 39

*ARP Materials, Inc. v. United States*,
  47 F.4th 1370 (Fed. Cir. 2022) ................................................................. 22

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012) ................................................................. 11

*Corus Staal BV v. United States*,
  493 F. Supp. 2d 1276 (Ct. Int'l Trade 2007) ............................................. 29

*Deckert v. Independence Shares Corp.*,
  311 U.S. 282 (1940) ................................................................................. 11

*Dofasco Inc. v. United States*,
  326 F. Supp. 2d 1340 (Ct. Int'l Trade 2004) ............................................. 30

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ............................................................................. 10, 11

*Erwin Hymer Grp. N.A., Inc. v. United States*,
  930 F.3d 1370 (Fed. Cir. 2019) ............................................................. 22, 26

*Harmoni Int'l Spice, Inc. v. United States*,
  211 F. Supp. 3d 1298 (Ct. Int'l Trade 2017) ............................................. 10

*Hartford Fire Ins. Co. v. United States*,
  544 F.3d 1289 (Fed. Cir. 2008) ................................................................. 23

*In re Section 301 Cases*,
  524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ........................................... 8, 22

*Intercontinental Chems., LLC v. United States*,
  483 F. Supp. 3d 1232 (Ct. Int'l Trade 2020) ............................................. 28

*Invenergy Renewables LLC v. United States*,
  422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) ............................................. 14

*J.D. Irving, Ltd. v. United States*,
  119 F.4th 48 (Fed. Cir. 2024) ................................................................. 23

*J.D. Irving, Ltd. v. United States*,
  615 F. Supp. 3d 1323 (Ct. Int'l Trade 2023) .................................................. 29

*Juancheng Kangtai Chem. Co., Ltd. v. United States*,
  932 F.3d 1321 (Fed. Cir. 2019) ...................................................... 28, 29

*Koyo Seiko Co. v. United States*,
  715 F. Supp. 1097 (Ct. Int'l Trade 1989) ............................................. 31

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369, 403 (2024) ................................................................ 35

*Maple Leaf Fish Co. v. United States*,
  762 F.2d 86 (Fed. Cir. 1985) ........................................................... 35

*Miller & Co. v. United States*,
  824 F.2d 961 (Fed. Cir. 1987) .......................................................... 31

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................ 7

*Qingdao Taifa Group Co., Ltd. v. United States*,
  581 F.3d 1375 (Fed. Cir. 2009) ........................................................... 7

*Scripps-Howard Radio, Inc. v. FCC*,
  316 U.S. 4 (1942) ............................................................................. 7

*Seko Customs Brokerage, Inc. v. U.S.*,
  719 F. Supp. 3d 1279 (Ct. Int'l Trade 2024) ........................................11, 12

*Shinyei Corp. of Am. v. United States*,
  355 F.3d 1297 (Fed. Cir. 2004) ...................................................... 26, 27

*Silfab Solar, Inc. v. United States*,
  892 F.3d 1340 (Fed. Cir. 2018) ......................................................... 35

*Solar Energy Industries. Ass'n v. United States*,
  86 F.4th 885 (Fed. Cir. 2023) ........................................................... 34

*Sunpreme Inc. v. United States*,
  181 F. Supp. 3d 1322 (Ct. Int'l Trade 2016) ........................................... 7

*Tai-Ao Aluminium (Taishan) Co., Ltd. v. United States*,
  983 F.3d 487 (Fed. Cir. 2020) .......................................................... 28

*Target Corp. v. United States*,
  134 F.4th 1307 (Fed. Cir. 2025) ...................................................... 8, 39

*U.S. Auto Parts Network, Inc. v. U.S.*,
  307 F. Supp. 3d 1373 (Ct. Int'l Trade 2018) ......................................10, 11, 12

*Ugine and ALZ Belgium v. United States*,
  551 F.3d 1339 (Fed. Cir. 2009) ...................................................... 26, 27

*V.O.S. Selections, Inc. v. Trump*,
  No. 25-1812 (Fed. Cir. Aug. 29, 2025) ................................................. 34

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
   587 F.3d 464 (1st Cir. 2009) ................................................................ 11

*Wanxiang Am. Corp. v. United States*,
   12 F.4th 1369 (Fed. Cir. 2021) ............................................................ 23

*Wanxiang Am. Corp. v. United States*,
   399 F. Supp. 3d 1323 (Ct. Int'l Trade 2019) ....................................... 28

*Wind Tower Trade Coal v. United States*,
   741 F.3d 89 (Fed. Cir. 2014) ............................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................ 38

*Yates v. United States*,
   574 U.S. 528 (2015) ............................................................................ 37

*Yingli Energy (China) Company Limited v. U.S.*,
   Slip. Op. 25-101 (Ct. Int'l Trade Aug. 19, 2025) ............................... 18

*Zenith Radio Corp. v. United States*,
   710 F.2d 806 (Fed. Cir. 1983) ........................................................ 8, 12

## <u>Statutes</u>

19 U.S.C. § 1318 ........................................................................................ 36

19 U.S.C. § 1318(a) ........................................................................... 3, 21, 32

19 U.S.C. § 1318(b) .................................................................................... 36

19 U.S.C. § 1514 ........................................................................................ 38

19 U.S.C. § 1516a .................................................................................. *passim*

19 U.S.C. § 1516a(c)(2) .............................................................................. 15

19 U.S.C. § 1673d(c)(1)(B)(ii) .................................................................... 15

19 U.S.C. § 1673e(a)(3) .............................................................................. 15

19 U.S.C. § 1675(a) .................................................................................... 20

19 U.S.C. § 1675(a)(1) ................................................................................ 15

19 U.S.C. § 1675(a)(2)(B)(iii) ..................................................................... 15

19 U.S.C. § 1675(a)(2)(C) ........................................................................... 15

28 U.S.C. § 1581 ........................................................................................ 22

28 U.S.C. § 1581(c) .................................................................................. 23, 29, 31

28 U.S.C. § 1581(i) ......................................................................................... 16, 30

28 U.S.C. § 1581(i)(1)(D) ................................................................................. 22, 23

28 U.S.C. § 1581(i)(2)(A) ........................................................................................ 28

## REGULATIONS

19 C.F.R. § 351.213(d) .......................................................................................... 20

19 C.F.R. § 362.102 ............................................................................................... 15

## OTHER AUTHORITIES

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam,*
88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) ............................................... 6, 25

*Antidumping Duty and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam,*
87 Fed. Reg. 75,221 (Dep't Commerce Dec. 8, 2022) ..................................................... 5

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam,*
Inv Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Pub. 5631 (U.S. Int'l Trade Comm'n June 2025) ......................................................................................... 6

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order,*
77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012) ..................................................... 9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022,*
89 Fed. Reg. 55,562 (Dep't Commerce Jul. 5, 2024) ....................................................... 9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022,*
89 Fed. Reg. 55,562 (Dep't Commerce July 5, 2024) ..................................................... 18

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2022–2023*,
90 Fed. Reg. 15,439 (Dep't Commerce Apr. 11, 2025) .................................................... 18

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Re-view, and Rescission in Part; 2022*,
90 Fed. Reg. 16,666 (Dep't Commerce Apr. 21, 2025) .................................................... 19

*Declaration of Emergency & Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules from Southeast Asia*,
87 Fed. Reg. 35,067 (E.O.P. June 6, 2022) ............................................................ *passim*

H.R. 2667, H.R. Doc. No. 15 (May 9, 1929) ................................................................. 37

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
88 Fed. Reg. 7,060 (Dep't Commerce Feb. 2, 2023) ........................................................ 18

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
89 Fed. Reg. 8,641 (Dep't Commerce Feb. 8, 2024) .................................................. 18, 19

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
90 Fed. Reg. 10,048 (Dep't Commerce Feb. 21, 2025) ...................................................... 19

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
90 Fed. Reg. 8,187 (Dep't Commerce Jan. 27, 2025) ...................................................... 19

*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord with Presidential Proclamation 10414*,
87 Fed. Reg. 56,868 (Dep't Commerce Sep. 16, 2022) ...................................................... 5

*Proclamation No. 2708*,
11 Fed Reg. 12,695 (E.O.P. Oct. 29, 1946) ................................................................. 37

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| **AUXIN SOLAR, INC., and CONCEPT CLEAN ENERGY, INC.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES, et al.,** | ) |
| | )    **Court No. 23-00274** |
| **Defendants,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **AMERICAN CLEAN POWER ASSOCIATION, et al.,** | ) |
| | ) |
| **Defendant-Intervenors.** | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT-INTERVENORS'
UNOPPOSED MOTION FOR SUSPENSION OF LIQUIDATION AND A STAY
OF ENFORCEMENT OF JUDGMENT PENDING APPEAL**

Defendant-Intervenors respectfully request that this Court stay enforcement of its
August 22, 2025, order and judgment, as amended, in this matter pending final resolution of the
litigation, including Defendant-Intervenors' appeal, which has been filed prior to submission of
this motion. Consistent with common international trade practice in litigation involving
antidumping and countervailing duty proceedings, the stay we are requesting is necessary to
preserve the *status quo* through the litigation's duration and to prevent irreparable harm to
Defendant-Intervenors as appeal proceeds.

Defendant-Intervenors have conferred regarding this motion with counsel for the other
parties and understand that counsel for Plaintiffs consents to the relief requested in this motion and
counsel to the Government does not object to the motion. Correspondingly, we have agreed with
counsel for both Plaintiffs and the Government to request that this Court's stay order also require

suspension of liquidation (without bond or further submission of cash deposits) for any unliquidated entries that would be covered by the terms of this Court's August 22 judgment, as amended. The enclosed proposed order reflects the precise suspension language agreed upon by the parties to effectuate the foregoing.

Absent a stay, Defendant-Intervenors—and, indeed, members of the U.S. public whose livelihoods are tied to the health of the companies and U.S. investments affected by this Court's decision—will suffer significant and irreparable harm, regardless of the outcome of any appeal. Conversely, any harm to other parties from a stay would be minimal given that the claims here concern the application of antidumping duty ("AD") and countervailing duty ("CVD") duties to past entries of merchandise.

Given the effects of this Court's order, and relevant time constraints to avoid irreparable injury, Defendant-Intervenors intend to seek a stay from the Court of Appeals for the Federal Circuit (if needed) on October 2, 2025. Should this motion remain under consideration by this Court at that time, we will relay this Court's decision on the motion to the Federal Circuit immediately upon issuance.

## INTRODUCTION

For two years, the U.S. solar industry relied on the exemption from AD/CVD liability implemented by the President of the United States and Department of Commerce to import very substantial volumes of solar modules to address a declared national emergency. The Government assured industry that merchandise entered during the emergency period would not be subject to suspension or AD/CVD liability. This Court's decision and judgment upend that reliance, and as a result, have enormous consequences for the U.S. solar industry, as set forth below and in the accompanying evidence.

In 2022, the President determined that importing solar modules, including from Southeast Asia, was in our country's best interest and indeed an economic necessity. The President explained that a growing solar energy sector is "critical to the function of major sectors of the economy, including hospitals, schools, public transportation systems, and the defense industrial base." *Declaration of Emergency & Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules from Southeast Asia*, 87 Fed. Reg. 35,067, 35,067 (E.O.P. June 6, 2022) ("Proclamation 10414"). But as the President's emergency proclamation also explained, the domestic solar industry could not yet satisfy demand on its own. *Id.* at 35,068. "{I}n the interim," foreign imports were vital to ensure "a sufficient supply of solar modules to assist in meeting our electricity generation needs." *Id.* To invite those mission-critical foreign imports, the President invoked 19 U.S.C. § 1318(a) and authorized the Department of Commerce to waive duties on certain entries for a two-year period.

Relying on the assurance provided by the President's invitation, Defendant-Intervenors imported, sold, and installed solar modules, delivering much-need capacity to U.S. electricity generators and American consumers. Without the assurance that these entries were not subject to prohibitive duties, Defendant-Intervenors would not have provided that necessary capacity.

This Court's judgment dramatically alters the situation for Defendant-Intervenors, who would potentially owe billions of dollars in retroactively assessed duties if this Court's order is implemented. Absent a stay, the imposition of these tariffs will impose a massive financial burden on these companies—resulting in severe economic consequences—and also disrupt contracts, business relationships, and substantial U.S. investments. Defendant-Intervenors will have no choice but to take out hefty loans at unfavorable rates, scale back their U.S. operations, strain customer and stakeholder relationships, and potentially even declare bankruptcy if they are unable

to finance the massive retroactive duty bills. 1/  All of these harms come with attendant consequences for U.S. workers and communities: as the attached declarations attest, implementation of this Court's judgment threatens thousands of manufacturing jobs across the U.S. *See* Ex. 1 Declarations.

None of these harms could be remedied, moreover, even if Defendant-Intervenors prevail on appeal.  And this is especially so given the terms of the judgment, which require "prompt" liquidation of affected entries with AD/CVD liability without provision either for further litigation on appeal or for pending administrative proceedings that are potentially available to Defendant-Intervenors if the judgment is upheld.

Absent a stay of judgment, this irreparable harm will necessarily ensue.  This Court should thus stay enforcement of its August 22 judgment, as amended, pending appeal.  A stay is necessary to give Defendant-Intervenors the ability to make their case to the Federal Circuit, while preserving lawful opportunities to seek administrative reviews of the entries, and it will not harm the other parties.

## BACKGROUND

"Solar energy is among the fastest growing sources of new electric generation," and it plays an important role in remedying "projected electricity supply shortfalls and record electricity demand."  Proclamation 10414, 87 Fed. Reg. at 35,067.  Yet in 2022, the Department of Commerce was poised to deter imports of "the vast majority of solar modules."  *Id*.  Prompted by allegations brought by Plaintiff Auxin Solar, Commerce initiated inquiries to determine whether imports of solar modules from Cambodia, Malaysia, Thailand, and Vietnam circumvented AD/CVD orders

---

1/    Examples of these harms are discussed in greater detail in the declarations accompanying this motion.  *See* Attached Defendant-Intervenor Company Declarations (Ex. 1).

placed on Chinese imports.  *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam,* 87 Fed. Reg. 75,221, 75,222 (Dep't Commerce Dec. 8, 2022) ("Preliminary Circumvention Determinations").  Imports from these countries constituted "approximately three-quarters of imported modules in 2020," so the proceedings would "abruptly put at risk near-term solar capacity additions that could otherwise have the potential to help ensure the sufficiency of electricity generation to meet customer demand."  Proclamation 10414, 87 Fed. Reg. at 35,067.

The domestic industry was demonstrably unable to fill the market gap, and that inability coupled with the prospective import duties put a panoply of ongoing and planned clean energy projects at risk without any evident mitigation options.  The White House deemed the situation critical, and in response the President issued an emergency proclamation to allow duty-free importation from the four countries for a two-year period ending last summer, *id.*, while Commerce issued a regulation consistent with the President's directive.  *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord with Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't Commerce Sept. 16, 2022) (the "Final Rule").  Together, these actions assured Defendant-Intervenors that, even "in the event of an affirmative determination of circumvention, no resulting AD/CVD estimated duties … will be applied" to solar modules that entered during that two-year emergency period and were used in the six months after.  *Id.* at 56,869.

Based on these assurances from the President of the United States and the Department of Commerce, Defendant-Intervenors imported substantial quantities of merchandise.  The U.S. International Trade Commission ("ITC") estimates that imports of solar cells and modules from

the four countries covered by the President's proclamation amounted to nearly $8.5 billion for 2023 and nearly $10.7 billion for 2024. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Pub. 5631 (U.S. Int'l Trade Comm'n June 2025) at Tbl. C.1, p. C.4.

No party challenged in court either the President's proclamation or Commerce's regulation when they issued in 2022. Nor did any challenge follow Commerce's affirmative preliminary determination in the circumvention review in December 2022, *Preliminary Circumvention Determinations*, 87 Fed. Reg. 75,221, or immediately after Commerce's August 2023 affirmative final determination in the review. *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) (*"Final Circumvention Determinations"*).

Instead, just a few months before the emergency period was set to expire, Plaintiffs in December 2023 challenged Commerce's September 2022 regulation implementing the President's proclamation. In its judgment, this Court ordered Commerce to vacate the (now-expired) rule and to retroactively subject to AD/CVD duties the entries made during the two-year emergency period. ECF No. 116. Specifically, this Court has ordered Commerce to "promptly liquidate and collect antidumping and countervailing duties on any currently unliquidated entries" that entered during the two-year emergency period. *Id.* Defendant-Intervenors have appealed this decision. In the meantime, as discussed in the attached declarations, absent a stay the ruling will result in massive liability for Defendant-Intervenors, even if they ultimately prevail on appeal.

## ARGUMENT

Rule 62(d) of the Court's rules, as well as the Court's inherent authority, authorize this Court to stay its judgments during the pendency of an appeal. "The power to stay a judgment pending appeal is part of a court's 'traditional equipment for the administration of justice.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)). The purpose of a stay pending appeal is to preserve the *status quo* so that the appellate court may take the necessary time to make a reasoned decision. *See id.* at 428–30. When assessing a stay pending appeal, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . . ; and (4) where the public interest lies." *Id.* at 434 (citation omitted).

In the post-judgment context, courts have recognized that the "likelihood of success" factor carries lesser weight. *See Sunpreme Inc. v. United States*, 181 F. Supp. 3d 1322, 1332 (Ct. Int'l Trade 2016) (*citing Qingdao Taifa Group Co., Ltd. v. United States*, 581 F.3d 1375, 1382 (Fed. Cir. 2009)); *Am. Grape Growers Alliance for Fair Trade v. United States*, 9 CIT 505, 507 (Ct. Int'l Trade 1985). Rather, "{t}he crux of the matter . . . is the question of whether the stay will *avoid* an injury or *cause* an injury." *Am. Grape Growers*, 9 CIT at 507. Here, a stay pending appeal would both prevent irreparable harm to Defendant-Intervenors while also serving the public interest, without any negative effect on the other parties.

## I.    DEFENDANT-INTERVENORS WILL SUFFER IRREPARABLE HARM ABSENT A STAY

Absent a stay, Defendant-Intervenors will suffer irreparable harm on several levels. *First*, this Court has repeatedly recognized that the possibility of liquidation of entries while litigation remains pending constitutes irreparable harm. *See*, *e.g.*, *In re Section 301 Cases*, 524 F. Supp.

3d 1355, 1362–66 (Ct. Int'l Trade 2021) (explaining that "the liquidation of Plaintiffs' entries constitutes irreparable harm in this case because it may foreclose Plaintiffs' ability to challenge the Government's imposition of duties paid or have those duties returned"). Liquidation, as the final computation of duties, will constitute irreparable harm unless an importer can obtain refunds or reliquidation because it cuts off judicial review and eliminates any chance of recovery of unlawful exactions. *Id.* at 1362 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983)). In the *Section 301 Cases*, the CIT observed that there was sufficient uncertainty with respect to the availability of relief through reliquidation as to "establish the likelihood that Plaintiffs will be unable to recover duties unlawfully paid should they be successful in their claim on the merits, thus demonstrating irreparable harm." *Id.* The same holds true here, since (notwithstanding other parties' position on reliquidation earlier in the proceeding) the Federal Circuit has not further resolved questions surrounding the availability of reliquidation in circumstances akin to the Defendant-Intervenors' position in this case. *See, e.g.*, *Target Corp. v. United States*, 134 F.4th 1307, 1315 (Fed. Cir. 2025) (explaining that "it is not the CIT's role to use inherent powers to override limits set by Congress's carefully crafted statutory scheme as recognized by binding precedent."). The risk that Defendant-Intervenors may not be able to recover their duties constitutes irreparable harm. *In re Section 301 Cases*, 524 F. Supp. 3d at 1362–66. This alone warrants a stay pending appeal. 2/

    *Second*, this Court's judgment would cause immense and irreparable economic harm to Defendant-Intervenors. This Court's judgment requires Commerce to begin liquidating and

---

2/     In the *Section 301 Cases*, the CIT held that, based on such a showing of irreparable harm, "Plaintiffs' burden to demonstrate a likelihood of success on the merits is reduced, and Plaintiffs satisfy their reduced burden by raising sufficiently serious and substantial questions" in the litigation. 524 F. Supp. 3d at 1362.

collecting duties on numerous entries that arrived during the emergency period—entries for which Defendant-Intervenors were assured by the President of the United States that they would *not* have to pay duties due to the declared emergency. *See Auxin Solar, Inc. v. United States*, Consol. Ct. No. 23-00274, Slip. Op. 25-111 (Ct. Int'l Trade Aug. 22, 2025) ("Slip Op. 25-111"). 3/ This Court itself acknowledges that there are at least 20,400 "live" entries potentially affected by its decision. *Id.* at 28. This Court's order instructs that Defendants shall now "promptly liquidate and collect antidumping and countervailing duties" on such entries. *Id*. at 37. Total potential liability on these entries may amount to billions of dollars if Commerce assesses AD and CVD duties at the anticipated very high rates, which combined exceed 250% *ad valorem*. 4/ The immediate monetary exposure on these and other entries is substantial and potentially crippling to some companies—including those with significant U.S. operations.

Moreover, the adverse consequences of this massive and unexpected reversal in duty liability are not solely economic. The attached evidence demonstrates the types of severe monetary and non-monetary harm that Defendant-Intervenors will experience in the absence of a stay while an appeal proceeds. This evidence establishes that Defendant-Intervenors comprise companies providing billions of dollars in U.S. investments and employing thousands of U.S. workers in a

---

3/    Indeed, Plaintiffs never challenged that proclamation and this Court acknowledges that Plaintiffs assume that the Proclamation "constitutes the declaration of an emergency." *Id.* at 5 n.3.

4/    Defendant-Intervenors understand that the current AD countrywide rate is 238.95%, while the CVD all others rate is 15.24%. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022*, 89 Fed. Reg. 55,562 (Dep't Commerce Jul. 5, 2024); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012) ("*Solar I* Orders"); *see also Final Circumvention Determinations*, 88 Fed. Reg. at 57,422 ("if neither the exporter of the solar cells or solar modules nor the exporter of the wafers described in item (2) above has a company-specific cash deposit rate, the {AD or CVD} cash deposit rate will be" 238.95% and 15.24%, respectively).

manner that generates positive economic impacts in the United States. *See* Ex. 1 Declarations. The massive duty liability threatened by this Court's judgment puts these substantial investments, employees, and associated public benefits at risk.

The sheer size of the potential duty bill, and the fact that it affects long-completed sales, means that companies will be unable to shield themselves from severe adverse consequences and will need to take drastic measures to pay the retroactive duties. *See* Ex. 1 Declarations. Further, to the extent that the massive new liability exceeds companies' working capital, as discussed in the declarations, they will need to borrow to cover demands for duties and face significant liquidity problems. *Id.* As a result, Defendant-Intervenors are likely to need to forego planned investments in U.S. manufacturing and workers, scale back or close existing facilities, and lay off U.S. employees, as the attached declarations explain. *Id.* Indeed, there is a significant risk that companies will have to declare bankruptcy. *Id.*; *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (upholding interim relief ordered by trial court based on allegations that parties "would suffer a substantial loss of business and perhaps even bankruptcy"); *Harmoni Int'l Spice, Inc. v. United States*, 211 F. Supp. 3d 1298, 1307 (Ct. Int'l Trade 2017) (citing *Doran*) ("Bankruptcy or substantial loss of business is irreparable harm because, in addition to the obvious economic injury, loss of business renders a final judgment ineffective, depriving the movant of meaningful judicial review."); *U.S. Auto Parts Network, Inc. v. United States*, 307 F. Supp. 3d 1373, 1377 (Ct. Int'l Trade 2018) (same).

Likewise, at an operating level, imposition of massive retroactive duties will impact companies' ability to fulfill existing orders, thereby adversely affecting their customer relationships and goodwill, as well as causing damage to their reputations in the industry more broadly. *See* Ex. 1 Declarations. Defendant-Intervenors are also likely to suffer other business

harms from reduced cashflow, including: (1) lost opportunities and/or relationships from projects and investments that Defendant-Intervenors may have to turn down; (2) reduced capital or equipment they will not be able to acquire; (3) reduced credit ratings; and (4) high-interest payments on loans they are required to obtain. *See id.* Each of these additional adverse consequences represents further compelling evidence that Defendant-Intervenors face irreparable harm in the absence of a stay. *See Seko Customs Brokerage, Inc. v. United States*, 719 F. Supp. 3d 1279, 1285 (Ct. Int'l Trade 2024) (noting that "price erosion, damage to customer relationships or reputation, and loss of business opportunities can be considered irreparable harm"), citing *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *accord U.S. Auto Parts*, 307 F. Supp. 3d at 1377.

It is cold comfort that Defendant-Intervenors may be able to recoup any duties if they prevail on appeal, which, as explained above, is far from certain if their entries are liquidated. A refund certainly cannot remedy the significant operational and reputational harms from a bankruptcy or other substantial loss of business, rendering any appellate victory "ineffective, depriving the movant of meaningful judicial review." *U.S. Auto Parts*, 307 F. Supp. 3d at 1377; *accord Doran*, 422 U.S. at 932; *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940); *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009). Nor would a refund remedy the many other business harms from reduced cashflow, such as the adverse effects on companies' customer relationships, goodwill, and reputation, as well as the lost projects and investment opportunities and other effects set forth above. As we established above, this "damage to customer relationships or reputation" coupled with "loss of business opportunities" constitute irreparable harm. *Seko*, 719 F. Supp. 3d at 1285; (citing *Celsis*, 664 F.3d 922 at 930); *U.S. Auto Parts*, 307 F. Supp. 3d at 1377. Each of these irreparable harms warrants a stay pending appeal.

*Third*, by ordering liquidation, this Court's judgment causes Defendant-Intervenors irreparable procedural harm.  Enforcement of this Court's judgment requiring the U.S. Government to "promptly liquidate" entries with AD/CVD liability will permanently deprive Defendant-Intervenors of any opportunity to seek administrative review of these entries and obtain refunds of deposited funds under the normal annual administrative review process.  As Defendant-Intervenors previously explained to this Court (and as discussed in more detail below), Defendant-Intervenors and other parties who imported or exported merchandise subject to Commerce's Final Rule have not yet been afforded the opportunity for their entries to be reviewed via the normal AD/CVD administrative review process.  *See* Defendant-Intervenors' Resp. to Pls.' Mot. for J. on the Agency R. at 34 (Nov. 19, 2024).  The AD/CVD review process would allow Defendant-Intervenors "to establish that a rate lower than the China-wide entity AD rate or the all-others CVD rate should apply."  *Id*.  Immediate enforcement of this Court's order requiring liquidation of the entries forecloses any possibility of a lawful review of those entries.  That, in turn, constitutes "irreparable harm" under well-established court precedent.  *See, e.g.*, *Zenith*, 710 F.2d at 810 (indicating that loss of such procedural rights constitutes irreparable injury).

Furthermore, Defendants have represented to the Court their position that, once Commerce publishes the vacatur notice in the *Federal Register*, the agency cannot reinstate the Final Rule without another notice-and-comment rulemaking.  Defs.' Unopposed Motion to Amend the Judgment (Sep. 5, 2025), ECF No. 123. 5/  Indeed, Defendants state that, unlike a standard challenge to a Commerce administrative determination in which a *Timken* notice would be issued and could be revised following the appellate process, Commerce's revocation of the Final Rule

---

5/      We report Defendants' position on this issue without prejudice to Defendant-Intervenors' ability to disagree with that position in a future filing.

will be conclusive and will significantly impair the rights of parties to seek potential redress on

appeal. *Id*. Vacatur will thus impact how Commerce and CBP treat entries while appeal is ongoing,

and the agencies' actions absent a stay may permanently impact Defendant-Intervenors' rights.

A stay pending appeal would enable the Federal Circuit to determine on appeal whether

Defendant-Intervenors are entitled to a review of their entries, and to allow time for the

Government to assess and sort out how that process should unfold. Indeed, even setting aside

uncertainties about the availability of review after liquidation, it is unclear at this time how

Commerce will or could fold these entries into the ongoing administrative review process given

the varying different statuses of the entries in question. Certain entries remain as "Type 01"

(meaning potentially not subject to review), while others have been converted to "Type 03"

(meaning potentially subject to review). Certain entries have been "suspended" and others

"extended." Based on our current understanding, still others have been liquidated. *See* Ex. 1

Declarations. 6/ Thus, this Court should stay its judgment pending appeal so that Commerce will

have time to assess and sort out how to review these entries should the decision be upheld.

## II.     THE REQUESTED STAY WILL NOT INJURE OTHER PARTIES

On the other hand, the other parties will not be harmed by a stay pending appeal. Consider

first the Government. It was the Government that decided not to collect duties on imports from

the Southeast Asian countries during the emergency period, and the Government has consistently

---

6/     Notwithstanding this Court's contrary statements, based on the most current information available to Defendant-Intervenors, many entries that entered duty free during the emergency period have in fact already liquidated. *See* Ex. 1 Declarations. This is important inasmuch as this Court relied on its finding that "no applicable entries have liquidated thus far" in balancing the harms in this case. Slip Op. 25-111 at 34. This Court concluded that "defendant-intervenors' finality interests are far weaker than if reliquidation were the primary remedy." *Id*. Given that many entries have in fact liquidated, this Court should re-evaluate this aspect of its ruling for purposes of granting a stay. This additional factor likewise counsels in favor of granting a stay.

defended that choice in this Court.   The Government will not be harmed by a temporary continued

adherence to its own policy, especially when it can liquidate and collect any duties after appeal.

*See Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1292 (Ct. Int'l Trade 2019)

(short-term lost revenue to the Government did not outweigh irreparable harm to movant).   And,

as explained above, the Government has represented to this Court that immediate revocation of the

rule could "impair the rights of party to seek potential redress on appeal."   ECF No. 123 at 3.

Nor can the Plaintiffs plausibly claim irreparable harm.   At the judgment stage, Plaintiffs

argued that they suffered competitive harms when the emergency allowed lower-priced imports

from Southeast Asian countries free of AD/CVD liability that they could not match during the

emergency period.   *See* Pls. Reply Br. at 22–23. 7/  Plaintiffs claimed an "existential threat" to

their operations.   *See* Compl. at para 20.  This Court found this argument persuasive, concluding

that Plaintiffs suffered irreparable harm "resulting from the non-collection" of AD/CVD duties

during the emergency period under the duty suspension rule.  Slip. Op. 25-111 at 31.

But whatever harm Plaintiffs may have suffered from the non-collection of duties is no

longer imminent.   The emergency period ended on June 5, 2024—over a year ago—long before

this Court's order.  Whether or not this Court stays its judgment pending appeal, solar modules

imported now and going forward are, and will continue to be, subject to the collection of AD and

CVD deposits consistent with the final circumvention findings, 8/ just as they have been since the

---

7/    References to Pls. Br, Def. Br., and Def.-Int. Br. refer to the briefs filed in connection with
Plaintiffs' motion for judgments on the administrative record.

8/    Imports from the four countries at issue are now also subject to independent AD/CVD
orders under Commerce's *Solar III* proceedings.  *Crystalline Silicon Photovoltaic Cells, Whether
or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic
of Vietnam*, 90 Fed. Reg. 29,843 (Dep't Commerce July 7, 2025) (antidumping duty orders;
correction); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From
Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 90 Fed. Reg. 26,791 (Dep't
Commerce June 24, 2025) (countervailing duty orders).

emergency period ended.  The collection of such AD and CVD deposits remedies any competitive harms claimed by Plaintiffs going forward.  *See*, *e.g.*, *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 101 (Fed. Cir. 2014) (finding "prospective collection of duties" protects against irreparable harm).

Correspondingly, this Court's judgment affects only products that have already entered the country and have been sold to and utilized by consumers.  *See* 19 C.F.R. § 362.102 (defining "Applicable Entries").  But for Plaintiffs' purposes in terms of assessing any harms imposed by a stay of this Court's order, it does not matter whether duties on these products are assessed now (as this Court has ordered) or in the future (if a stay is entered pending appeal and this Court's judgment is affirmed).  Whatever "harm" Plaintiffs may have suffered from the earlier non-collection of these duties is no longer occurring.  The immediate collection of those duties on such past entries (before resolution of any appeal) has no impact on the purported harm suffered by Plaintiffs stemming from actions in the past.  Suspending the relevant entries, rather than hastening liquidation, preserves importers' legal options for full and fair review of duty determinations before liquidation, and is contemplated by the statutory scheme.  *See* 19 U.S.C. § 1516a(c)(2), 19 U.S.C. §§ 1673d(c)(1)(B)(ii), 1673e(a)(3), 1675(a)(1), 1675(a)(2)(B)(iii), 1675(a)(2)(C).

Nor will the immediate collection of such past duties otherwise benefit Plaintiffs.  Plaintiffs have no economic stake in these prior entries.  As Defendants pointed out in their brief, "Plaintiffs will neither pay nor receive any payment of duties based on the outcome of this lawsuit."  Def. Br. at 38.  Any duties ultimately collected will go into the federal coffers, not Plaintiffs' pockets.  And these retroactive duties cannot un-ring the bell.  Products that Defendant-Intervenors already sold will remain sold.  Products that have already been deployed in the field will not suddenly vanish.  Moreover, Defendant-Intervenors' customers cannot travel back in time to purchase Plaintiffs'

solar modules instead.  Any effect on Plaintiffs' standing in the solar market does not depend on whether Commerce assesses duties now or after Defendant-Intervenors have exhausted the appellate process.  Whatever "existential threat" may have existed previously, as a consequence of the Final Rule, it is not impacted by the U.S. Government's retroactive collection of AD/CVD duties on Defendant-Intervenors' prior entries.

Finally, any assertion of harm to Plaintiffs is further belied by the fact that Plaintiffs voluntarily delayed in filing their summons and complaint in this case.  *See* Def. Br. at 39; Def. Int. Br. at 37.  As both Defendants and Defendant-Intervenors have explained, if this case does in fact fall within this Court's jurisdiction under 28 U.S.C. §1581(i)—and thus is not a challenge to Commerce's Final Circumvention Determinations 9/—Plaintiffs waited nearly 15 months after Commerce issued the Final Rule to file their lawsuit challenging that rule.  *Id.*  They also failed to enjoin the rule while the imports supposedly inflicting such massive harm were entering free of AD/CVD duties.  *Id.*  Had Plaintiffs been suffering actual harm, they would have moved quickly to file suit and seek an injunction.  Plaintiffs' delay in doing so undermines any claim they are somehow further harmed by a stay of the collection of duties on past entries pending appeal.

## III.    A STAY WOULD SERVE THE PUBLIC INTEREST

If anything, a stay pending appeal would *serve* the interests of the public.  This litigation stems from the fact that the U.S. Government, and the President more specifically, made a determination that it was in the public interest (and indeed critical) for imports of solar modules to enter the United States free of AD/CVD liability during the emergency period.  Although this Court

---

9/    As we explain in Section IV.A, the true nature of Plaintiffs' challenge is to Commerce's implementation of the duty moratorium in its final circumvention determination, making 28 U.S.C. § 1581(c), which Plaintiffs failed to invoke, the sole jurisdictional avenue for Plaintiffs' challenge.

found the Final Rule unlawful, no party has challenged—and this Court certainly has not invalidated—the President's emergency declaration or determinations in this regard. *See* Slip Op. 25-111 at 5 n.3. These facts weigh strongly in favor of a stay.

Moreover, the attached declarations explain that Defendant-Intervenors invest billions of dollars in the U.S., employ thousands of U.S. workers, and seek to employ thousands more, all in a manner that generates a positive economic impact in the United States. *See* Ex. 1 Declarations. Without a stay, the massive duty liability imposed by this Court's decision will put these investments, employees, and associated public benefits at risk. *See* Ex. 1 Declarations.

A stay pending appeal will also provide the Government with the opportunity to develop an appropriate process to review any duties owed. First, as explained above, the Government has taken the position that once Commerce publishes the vacatur notice in the *Federal Register*, the agency will not be able to reinstate the Final Rule without another notice-and-comment rulemaking if Defendant-Intervenors are successful on appeal. Defs.' Unopposed Motion to Amend the Judgment (Sept. 5, 2025), ECF No. 123.

Second, beyond that impairment, there are significant burdens on the Government, which must sort out how to conduct ongoing and/or succeeding administrative reviews and, subsequently, to determine how to assess any duties ultimately owed. *See* Def. Br. at 39 (noting that "injunctive relief is not in the public interest because it would frustrate the proper administration of the antidumping and countervailing duty laws and burden the Government."). As noted earlier, there are more than 20,400 "live" entries affected by this Court's decision. Slip. Op. 25-111 at 28. Many of these "live" entries will become subject to ongoing "administrative reviews" of the AD and CVD orders due to this Court's vacatur of the Final Rule. Assessing how to fold these entries into the various ongoing administrative reviews will be complex. Indeed, Defendants have observed

17

that it will be akin to trying to "'unscramble' the egg' with a retroactive remedy." Def. Br. at 41 (citation omitted).

Multiple complexities will confront both Defendants and Defendant-Intervenors in trying to sort out how to review any such entries given the way the administrative review process works. As this Court is aware, Commerce conducts annual administrative reviews to determine final AD and CVD rates applicable to specific entries subject to review. Six Commerce administrative reviews of the *China Solar I* orders encompass entries made during the moratorium period (i.e., April 1, 2022 to June 6, 2024). As set forth below, Commerce's final results in one of those administrative reviews is on appeal to the CIT, four of those reviews are ongoing, and Commerce has not yet issued its opportunity to request review for one of the reviews. As such, the final rates to be applied to entries made during all of these review periods are yet-to-be-determined. Trying to shoehorn this Court's ruling into the ongoing reviews (listed below) would pose extreme administrative hardships on both the Government and Defendant-Intervenors.

- **AD Review Period 10** (covering entries from December 1, 2021, through November 30, 2022) – Commerce initiated this AD review on February 2, 2023. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 7,060 (Dep't Commerce Feb. 2, 2023). Commerce's final results were published on July 5, 2024. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021– 2022*, 89 Fed. Reg. 55,562 (Dep't Commerce July 5, 2024). That decision has been appealed to the CIT, which affirmed Commerce's final results in *Yingli Energy (China) Company Limited v. U.S.*, Slip. Op. 25-101 (Ct. Int'l Trade Aug. 19, 2025).

- **AD Review Period 11** (covering entries from December 1, 2022, through November 30, 2023) – Commerce initiated this AD review on February 8, 2024. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 8,641 (Dep't Commerce Feb. 8, 2024). Commerce's preliminary results were published on April 11, 2025. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2022–2023*, 90 Fed. Reg. 15,439 (Dep't Commerce Apr. 11, 2025). The deadline for Commerce's final

determination has been extended until October 8, 2025. *See* Memorandum from Benjamin Blythe to Scot Fullerton, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Extension of Deadline for Final Results of Antidumping Duty Administrative Review*, Case No. A-570-979 (July 31, 2025).

- **AD Review Period 12** (covering entries from December 1, 2023, through November 30, 2024) – Commerce initiated this review on February 21, 2025. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 90 Fed. Reg. 10,048 (Dep't Commerce Feb. 21, 2025). Commerce has yet to select "mandatory respondents" or publish its preliminary results.

- **CVD Review Period 11** (covering entries from January 1, 2022, through December 31, 2022) – Commerce initiated this review on February 8, 2024. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 8,641 (Dep't Commerce Feb. 8, 2024). Commerce's preliminary results were published on April 21, 2025. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Re-view, and Rescission in Part*; 2022, 90 Fed. Reg. 16,666 (Dep't Commerce Apr. 21, 2025). The deadline for Commerce's final determination has been extended until October 20, 2025. See Memorandum from Jose Rivera to Scot Fullerton, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Extension of Deadline for Final Results of Countervailing Duty Administrative Review*, Case No. A-570-980 (Aug. 1, 2025).

- **CVD Review Period 12** (covering entries from January 1, 2023, through December 31, 2023) – Commerce initiated this review on January 27, 2025. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 90 Fed. Reg. 8,187 (Dep't Commerce Jan. 27, 2025). Commerce has yet to issue its preliminary results in this review.

- **CVD Review Period 13** (covering entries from January 1, 2024, through December 31, 2024) – Commerce has yet to publish its opportunity to request review for this proceeding.

This Court's judgment thus creates considerable uncertainty as to how Commerce is to conduct the ongoing reviews and the yet-to-be commenced review. There is potential for turmoil while an appeal proceeds. Once this Court's judgment is effectuated, it likely will be necessary for Commerce to add a very substantial number of entries to the ongoing reviews, which are in various stages of the administrative process. Relatedly, entitlement to a company-specific rate through Commerce's ordinary review process requires that an interested party had sales, exports, or shipments of subject merchandise during the period of review. *See* 19 U.S.C. § 1675(a);

19 C.F.R. § 351.213(d).   The retroactive nature of this Court's order presents unique and challenging circumstances for Defendants and Defendant-Intervenors (and non-party companies that would be affected by this Court's judgment).   Specifically Commerce will need to determine which imports entered free of AD/CVD duties solely because of the Final Rule, what deposit rate should apply to each entry, and whether and how to allow administrative reviews of the entries in order to determine their assessed rate.   *See* Def. Br. at 40–43.   This uncertainty is only further amplified by this Court's order noting that it applies to certain entries "found to be circumventing" the AD and CVD orders on solar cells and modules from China.   Slip. Op. 25-111 at 37.   It is unclear whether and how Commerce might make this determination, particularly for entries that may have relied on the Proclamation but were also factually not circumventing. 10/

        Moreover, this Court's order will also need to be administered by CBP.   The agency has already expended extensive efforts to ensure that the entries subject to this litigation remain unliquidated throughout these proceedings.   That includes changing the liquidation status of thousands of entries.   Now that this Court has determined that these entries should be subject to AD/CVD duties, CBP will need to determine how to treat "type 01" consumption-type entries that have become subject to AD/CVD.   Further, as explained above, CBP will need to work with Commerce to arrange for the orderly suspension of relevant entries to the extent they (now) are covered by the Commerce administrative reviews identified above.

        All of these procedures will take time and extensive coordination among several agencies and with the importing public, including Defendant-Intervenors.   A stay pending appeal would give Commerce and CBP that additional time.   Moreover, as noted earlier, a stay would also ensure

---

10/    This could include, for example, any entries taking advantage of the Proclamation certification even if they may have qualified for the Appendix VI (*i.e.*, non-circumventing certification).

that Defendant-Intervenors are not deprived of an opportunity to have their entries reviewed prior to liquidation.

Thus, at this point, when the Final Rule has already expired, imposing retroactive duties on importers would greatly harm the importers who relied on the Final Rule, create a significant administrative burden for the Government, and provide no concrete benefit to Plaintiffs. This gross imbalance in the equities strongly weighs in favor of a stay of this Court's judgment.

## IV.    DEFENDANT-INTERVENORS ARE LIKELY TO PREVAIL ON APPEAL

This Court should also stay its judgment because Defendant-Intervenors are likely to prevail on appeal. Although courts have de-emphasized likelihood of success in the post-judgment context, Defendant-Intervenors expect to raise strong arguments at the Federal Circuit, including (without limitation) the following: (A) Plaintiffs could have, and should have, brought this action pursuant to 28 U.S.C. § 1581(c), thus foreclosing relief under § 1581(i); (B) the Court's decision and judgment do not address the legality of Proclamation 10414, which remains in effect and provides the underlying legal authority for the duty moratorium; (C) this Court's decision relies on an overly restrictive (and thus incorrect) interpretation of 19 U.S.C. § 1318(a); and (D) the retroactive injunctive relief that this Court ordered is overbroad and unlawful in its assessment of the equities (not least because the relief will do nothing to address or mitigate the harm Plaintiffs alleged). These issues raise sufficiently serious and substantial questions to warrant a stay of judgment while appeal proceeds. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1362 (applying this standard in the context of ordering interim relief).

**A.      The CIT Lacks Subject Matter Jurisdiction under Section 1581(i)**

**1.      Plaintiffs Challenge Commerce's Final Circumvention Determinations, Not Its Final Rule or Customs Instructions, Such That Jurisdiction Is Not Available Under Section 1581(i)**

On appeal, the Federal Circuit will observe that this Court exercised residual Section 1581(i) jurisdiction over the complaint on the ground that jurisdiction was not available under another subsection of 28 U.S.C. § 1581.  *See generally* Order and Opinion, *Auxin Solar Inc. and Concept Clean Energy Inc. v. United States, et al.*, Slip Op. 24-58, ECF No. 75 (May 9, 2024) at sec. I; *see also* 28 U.S.C. § 1581(i)(1)(D).  But it was the Final Circumvention Determinations, not the Final Rule, that implemented the duty moratorium at the U.S. border by not suspending or collecting AD/CVD deposits on entries subject to the moratorium (over Plaintiffs' objection), thereby reflecting the true nature of the challenge at issue. 11/

Plaintiffs therefore could have—and should have—challenged the duty moratorium in the context of a 28 U.S.C. § 1581(c) appeal of the Final Circumvention Determinations.  Indeed, Plaintiffs' direct challenges to the duty moratorium during the circumvention proceeding and their claims on the merits since this Court's jurisdictional finding make crystal clear that Plaintiffs should have brought their challenge to the duty moratorium in the context of an appeal of the Final

---

11/      As a general matter, the statute expressly provides that Section 1581(i) "shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by . . . the CIT under {19 U.S.C. § 1516a}." 28 U.S.C. § 1581(i)(2)(A).  Interpreting the statute's jurisdictional framework, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has described the scope of jurisdiction under Section 1581(i) as "strictly limited." *Erwin Hymer Grp. N.A., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019) (citations omitted).  When assessing jurisdiction under Section 1581(i), Plaintiffs must prove that either (a) jurisdiction under a subsection other than Section 1581(i) is (or was) not available, or, where not otherwise prohibited by the statute, (b) that the remedy provided under another provision of Section 1581 is "manifestly inadequate." *See, e.g.*, *id.* at 1375.  To determine whether a plaintiff has met the first prong of the jurisdictional analysis under Section 1581(i), a court must "discern the particular agency action that is the source of the alleged harm {as to} identify which subsection of § 1581 provides the appropriate vehicle for judicial review." *Id.* at 1378.

Circumvention Determinations.  Hence, the Federal Circuit likely will conclude that this Court improperly exercised jurisdiction over this action under Section 1581(i). 12/

In this Court's May 9, 2024, Order and Opinion, this Court found that subject matter jurisdiction was available in this suit pursuant to the residual jurisdiction provided by Section 1581(i).  Slip Op. 24-58, at sec. I.  This Court reasoned that jurisdiction was not available under 28 U.S.C. § 1581(c) " . . . because the Duty Suspension Rule relates to the 'administration and enforcement,' 28 U.S.C. § 1581(i)(1)(D), of those determinations — in particular, Commerce's cash deposit and liquidation instructions to {CBP} — rather than the lawfulness of Commerce's Final Determinations themselves."  *Id.* at 18.

The Federal Circuit has explained that a court must "'look to the true nature of the action' brought before the CIT under § 1581(i) to determine whether the action could have been brought under another subsection."  *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1374–75 (Fed. Cir. 2021) (citation omitted); *accord Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008).  The "true nature" inquiry requires that the court engage with the "totality" of the allegations of the party invoking § 1581 jurisdiction and "identify the particular agency action underlying the claimed harm."  *J.D. Irving, Ltd. v. United States*, 119 F.4th 48, 54 (Fed. Cir. 2024).

This Court failed to recognize that, to the extent Plaintiffs seek to challenge implementation of Proclamation 10414's two-year duty moratorium, that challenge should be made to Commerce's Final Circumvention Determinations—not Commerce's Final Rule, nor Commerce's cash deposit

---

12/    Conversely, to the extent that the true nature of Plaintiffs' action is a challenge to Commerce's Final Rule announcing the moratorium, it is clear that Plaintiffs delayed in brining such a claim to Defendant-Intervenors' significant prejudice.

instructions issued to CBP. 13/  Moreover, as we discuss further below, in fact Plaintiffs **did** challenge the duty moratorium through the Final Circumvention Determinations.  Thus, to the extent Plaintiffs challenge any measure other than the Presidential Proclamation itself, 14/ the "true nature" of Plaintiffs' action is a challenge to Commerce's Final Circumvention Determinations.

Auxin's claimed harm results from Commerce's failure to collect cash deposits on certain entries of solar cells and modules from certain countries despite Commerce's affirmative circumvention findings in the Final Circumvention Determinations.  Compl. at 49.  Commerce's decision to pause collection of cash deposits was given effect as part of the certification remedies provided for in Commerce's Final Circumvention Determinations.  Specifically, the Final Circumvention Determinations implemented both Proclamation 10414 and the Final Rule through the Appendix IV certification process that they established.  Final Circumvention Determinations at App'x IV.  In other words, Commerce decided in the Final Circumvention Determinations not to direct CBP to suspend liquidation or to require cash deposits of estimated duties on "applicable entries" (made from April 1, 2022, through June 6, 2024), so long as U.S. importers complied with Commerce's certification requirements and published certification language that would be administered by CBP.  *Id*. at 57, 78, nn.421-22.  As such, to the extent that Plaintiffs challenge the implementation of the duty moratorium, it is the Final Circumvention Determinations that did so.

---

13/    *See* U.S. Customs & Border Prot., Message No. 3041408 (Feb. 10, 2023) (preliminary determination of circumvention with respect to certain solar cells and solar modules completed or assembled in certain third countries); U.S. Customs & Border Prot., Message No. 3243401 (Aug. 31, 2023) (final determination of circumvention with respect to certain solar cells and solar modules completed or assembled in certain third countries); U.S. Customs & Border Prot., Message No. 4165404 (June 13, 2024) ("termination of Presidential Proclamation 10414 and imposition of cash deposit requirements").

14/    *See generally* sec. IV.B. *infra*.

Thus, the "true nature" of Plaintiffs' appeal is a challenge to the Final Circumvention Determinations.

Moreover, Plaintiffs **did** challenge the application of Commerce's Final Rule throughout the administrative proceeding.  Specifically, Plaintiff Auxin argued to Commerce as follows:

> The *Preliminary Determination* is inconsistent with the statute and regulations as Commerce's circumvention regulations state that following an affirmative preliminary determination: (1) the Secretary will direct the Customs service to continue the suspension of liquidation and apply the applicable cash deposit rate; and (2) direct the Customs service to begin the suspension of liquidation and require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry on or after the date of publication of the notice of initiation of the inquiry.  Memorandum from James Maeder to Lisa W. Wang, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Cambodia*, Case No. A-570-979, C-570-980 (Aug. 17, 2023) at cmt. 26, p. 114.

Therefore, as Commerce was deciding the scope of the circumvention remedy, including the manner in which the Final Rule would be effectuated to imports covered by it, Plaintiffs repeatedly acknowledged that it was the agency's administrative determinations—and not merely the Final Rule—that would give effect to Proclamation 10414's duty moratorium.  In fact, Plaintiff Auxin specifically argued that "Commerce's failure to suspend liquidation and collect cash deposits from April 1, 2022, through June 6, 2022, is unlawful for many reasons and **should be reversed in the final determination**."  *Id.* at cmt. 26, p. 115.  In other words, Plaintiff's own briefing recognized that it was the Final Circumvention Determinations, not the Final Rule, that caused the alleged harms at the center of this litigation (i.e., the failure to suspend and collect AD/CVD deposits on entries made pursuant to Proclamation 10414's duty moratorium).

The truth is that once Commerce reached its Final Circumvention Determinations, Plaintiffs could have challenged them and their failure to implement suspension of liquidation and

cash deposit requirements. Auxin acknowledged as much before Commerce. But Plaintiffs elected

not to do so. Instead, they waited and challenged the Final Rule long after its issuance. 15/ This

course of action is fatal to Plaintiffs' challenge to the Final Rule because jurisdiction under Section

1581(i) is only available if a remedy is unavailable (or manifestly inadequate) under Section

1581(c). *See*, *e.g.*, *Erwin Hymer*, 930 F.3d at 1375.

Plaintiffs also asserted before this Court at oral argument that any injury before Commerce

implemented the certification regime likely did not constitute an "injury in fact," for standing

purposes when the Final Rule was published. U.S. Court of International Trade, *Oral Argument,

Ct. No. 23-00274*, at 42:25 (June 26, 2025), https://www.cit.uscourts.gov/sites

/cit/files/20250626_23-00274_TMR%20.mp3 (Mr. Beline: "So I think for Article 3 standing, we

need to have injury in fact. And I think it's a little bit surprising that the government is saying we

did not have to wait for an actual determination that duties should have been collected on these

goods."). Thus, in alleging that they needed to wait until the Final Circumvention Determinations

were published to have standing, Plaintiffs acknowledge that it was the Final Circumvention

Determinations that gave rise to their alleged injury. This is a further reason why Plaintiffs needed

to challenge the Final Circumvention Determinations under Section 1581(c), not the Final Rule

under Section 1581(i).

This Court's reliance on *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1305 (Fed.

Cir. 2004), and *Ugine and ALZ Belgium v. United States*, 551 F.3d 1339, 1339–1351 (Fed. Cir.

2009), to support its jurisdictional finding is likewise erroneous. Slip Op. 25-111 at 23–25. First,

---

15/    In this regard, to the extent that Plaintiffs believe it was appropriate for them to challenge
the Final Rule rather than the Final Circumvention Determinations, the time for Plaintiffs to do so
was when the Final Rule issued in September 2022, not in late-December 2023 (many months after
even the Final Circumvention Determinations). The substantial harm to Defendant and Defendant-
Intervenors caused by such a delay underscores why a stay is appropriate in this case.

this Court erroneously states that "Plaintiffs in this action . . . were subject to liquidation instructions that did not reflect Commerce's Final Determinations." *Id*. at 23. This is inaccurate. Plaintiffs were not subject to any liquidation instructions because they did not import CSPV solar cells and modules pursuant to the Final Circumvention Determinations' Appendix IV certifications. More importantly, the customs instructions do not materially deviate from the Final Circumvention Determinations, as explained above. To the contrary, the customs instructions directly incorporate the certification requirements issued in the Final Circumvention Determinations. 16/ Plaintiffs' claims of inaccurate instructions are nothing more than a "straw man."

Second, *Shinyei* and *Ugine* relate to fundamentally different circumstances from this case. *Shinyei*, 355 F.3d at 1305; *Ugine*, 551 F.3d at 1339–1351. In *Shinyei* and *Ugine*, the respective plaintiffs did ***not*** challenge an aspect of the underlying determinations; rather, they contended that the customs instructions were inconsistent with the underlying determinations. *See Ugine*, 551 F.3d at 1347–49 (challenging liquidation instructions issued long after final results that were directed at merchandise not covered by antidumping order); *Shinyei*, 355 F.3d at 1309 ("As we have recently held, a challenge to Commerce instructions *on the ground that they do not correctly implement the published, amended administrative review results*, is not an action defined under section 516A of the Tariff Act.") (emphasis added and internal quotations omitted). Where there

---

16/     *See* U.S. Customs & Border Prot., Message No. 3243401 (Aug. 31, 2023) (". . . for Southeast Asian-Completed Cells and Modules that were entered, or withdrawn from warehouse, for consumption during the period 04/01/2022 through 06/05/2024, (the day before the currently-scheduled date of termination of the Presidential Proclamation), for which the certification requirements described in either paragraph 14, 15, 16, 17, or 18 below have not been met, CBP shall suspend liquidation of those entries under the appropriate case number(s) identified in paragraph 7 below, or under any other appropriate case number(s) established by Commerce, and require the applicable AD and CVD cash deposits described in paragraphs 5b through 5d below.").

is an error in customs instructions but not the underlying determination by Commerce (*i.e.*, the customs instructions fail to effectuate Commerce's finding in the administrative proceeding), jurisdiction is available under Section 1581(i) because there is no error in an antidumping or countervailing duty determination reviewable by the CIT under 19 U.S.C. § 1516a. 28 U.S.C. § 1581(i)(2)(A). Thus, Section 1581(c) jurisdiction is unavailable in these circumstances—absent residual Section 1581(i) jurisdiction, affected parties would not be able to challenge such errors.

This scenario is not applicable where the relevant customs instructions accurately implement Commerce's administrative determination. In those circumstances, challenges to Commerce's determination, including the corresponding customs instructions, are properly brought under Section 1581(c), not 1581(i). *See, e.g.*, *Tai-Ao Aluminium (Taishan) Co., Ltd. v. United States*, 983 F.3d 487, 493 (Fed. Cir. 2020) (treating a challenge to customs instructions that directly implemented a circumvention determination as falling under Section 1581(c)); *Juancheng Kangtai Chem. Co., Ltd. v. United States*, 932 F.3d 1321, 1327–29 (Fed. Cir. 2019) (denying Section 1581(i) jurisdiction where liquidation instructions directly implemented decisions made by Commerce during underlying administrative reviews); *AMS Assocs., Inc. v. United States*, 737 F.3d 1338, 1342–43 (Fed. Cir. 2013) (applying the "substantial evidence" standard applicable to cases under Section 1581(c) in review of customs instructions issued by Commerce); *Intercontinental Chems., LLC v. United States,* 483 F. Supp. 3d 1232, 1240 (Ct. Int'l Trade 2020) (dismissing Section 1581(i) action and explaining "Commerce did not commit a new error," but rather "issued liquidation instructions based on the Final Results of an administrative review"); *Wanxiang Am. Corp. v. United States*, 399 F. Supp. 3d 1323, 1331-33 (Ct. Int'l Trade 2019) (dismissing Section 1581(i) action and concluding that contested guidance of Commerce "reiterated — . . . rather than deviat{ed} from — the results of the administrative reviews" and,

consequently, plaintiff could have brought action under Section 1581(c)).  Indeed, in a decision recently affirmed by the Federal Circuit, this Court dismissed a Section 1581(i) challenge to customs instructions because the CIT's caselaw limited residual jurisdiction over challenges to Commerce's instructions to Customs to circumstances in which the instructions are "*inconsistent with or contain a legal error that is distinct from Commerce's determination*."  *J.D. Irving, Ltd. v. United States*, 615 F. Supp. 3d 1323, 1332–33 (Ct. Int'l Trade 2023) (emphasis in original), *aff'd J.D. Irving, Ltd. v. United States*, 119 F.4th 48 (Fed. Cir. 2024) (*J.D. Irving I*); *see also J.D. Irving, Ltd. v. United States*, No. 22-00256, 2025 WL 2417751, at *6 (Ct. Int'l Trade Aug. 21, 2025) ("The instant case aligns with *J.D. Irving I* . . . .").

This Court and the Federal Circuit have consistently recognized that under these circumstances, which mirror the underlying facts presented here, challenges to the customs instructions are actually challenges to the underlying administrative determination made by Commerce.  *See*, *e.g.*, *Corus Staal BV v. United States*, 493 F. Supp. 2d 1276, 1285 (Ct. Int'l Trade 2007) ("This Court finds that Corus's action is not actually a challenge to the liquidation instructions.  A challenge to liquidation instructions contends that the instructions themselves do not accurately reflect the results of the underlying administrative proceeding.") (internal citations omitted).  *See also*, *e.g.*, *Juancheng Kangtai Chem.*, 932 F.3d 1321, 1327–29 (Fed. Cir. 2019) (finding jurisdiction lacking under Section 1581(i) over purported challenge to liquidation instructions when instructions directly implemented decisions made by Commerce during underlying administrative reviews).

Accordingly, because Plaintiffs could have brought a challenge to Commerce's Final Circumvention Determinations in an appeal under 28 U.S.C. § 1581(c), this Court did not have

jurisdiction under 28 U.S.C. § 1581(i). The Federal Circuit thus will likely conclude that this Court improperly exercised jurisdiction over the complaint under Section 1581(i).

> **2.    The Remedy Available to Plaintiffs Under Section 1581(c) Was Not Manifestly Inadequate**

On appeal, the Federal Circuit likely will observe that the relief available to Plaintiffs under 28 U.S.C. § 1581(c) was not manifestly inadequate. The facts of this case indicate that the remedy sought by Plaintiffs would not be foreclosed had Plaintiffs sought relief in an action brought under 28 U.S.C. § 1581(c), and the Federal Circuit has consistently found that agency rulemakings can be challenged in the context of a review of Commerce determinations reviewable under 19 U.S.C. § 1516a. The Federal Circuit will therefore likely conclude that this Court improperly exercised jurisdiction over this action under Section 1581(i).

This Court did not address whether any relief available under 28 U.S.C. § 1581(c) was manifestly inadequate because "{j}urisdiction was not available under 28 U.S.C. § 1581(c)." Slip Op. 24-58 at 26. Notwithstanding this statement, because the Federal Circuit will likely observe that jurisdiction was, in fact, available under 28 U.S.C. § 1581(c) for the reasons we explain above, the Federal Circuit will likely reach this question on appeal.

Because the decision to implement a duty moratorium consistent with the Final Rule would be challengeable in the context of a suit against Commerce's Final Circumvention Determinations, the relief available under Section 1581(c) is not manifestly inadequate. In making such a determination, the Federal Circuit will likely assess whether the agency action "the plaintiff seeks to prevent will have already occurred by the time relief under another provision of section 1581 {other than § 1581(i)} is available, rendering such relief manifestly inadequate." *Dofasco Inc. v. United States*, 326 F. Supp. 2d 1340, 1346 (Ct. Int'l Trade 2004), *aff'd*, 390 F.3d 1370 (Fed. Cir. 2004). That is not the case here. As explained above, the harm that Plaintiffs claim—namely,

failure to suspend entries and to collect duty deposits despite an affirmative circumvention determination—took place when the circumvention determinations were issued, not the promulgation of the Final Rule. No party disputes that plaintiffs could have challenged the Final Circumvention Determinations under Section 1581(c) jurisdiction.

Furthermore, an agency's alleged failure to follow required procedures does not render a Section 1581(c) remedy manifestly inadequate. For instance, the Federal Circuit has affirmed this Court's dismissal of an appeal brought under Section 1581(i) because the plaintiff could have brought its action under Section 1581(c) to challenge Commerce's final determination as unenforceable when Commerce did not complete its review within the statutory time period. *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) (holding that "under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a, the procedural correctness of a countervailing duty determination, as well as the merits, are subject to judicial review." (internal citations omitted)); *see Koyo Seiko Co. v. United States*, 715 F. Supp. 1097, 1100 (Ct. Int'l Trade 1989) ("{Congress} intended that {Section 1581(i)} should not be used to permit the appeal of a procedural determination, but rather, that all procedural considerations should be decided by this court when the final agency determination is made." (internal quotation marks and citation omitted)). To the extent Plaintiffs allege that the Final Circumvention Determinations waived tariff requirements without observing required procedures, such allegations could be remedied in a Section 1581(c) action as in *Miller & Co.*

Accordingly, because a remedy was available to Plaintiffs under Section 1581(c) and that remedy was not manifestly inadequate, Defendant-Intervenors are likely to prevail on appeal.

### B.  Plaintiffs' Suit and this Court's Judgment Do Not Address the Legality of the Underlying Legal Authority for Duty Suspension—Proclamation 10414

On appeal, the Federal Circuit will likely observe that the failure of this Court's order to address the legality of Presidential Proclamation 10414 of June 6, 2022, 87 Fed. Reg. 35,067, is reversible error.  It is undisputed that this Court has ordered vacatur of the Final Rule but left unexamined the legality of Proclamation 10414, which remains effective for entries of relevant solar modules made in the period before June 6, 2024.  The Federal Circuit will likely note that (a) the source of the statutory interpretation examined and rejected by this Court is the Proclamation, which remains effective, rather than Commerce's Final Rule, and (b) the applicable standard of review and interpretive principles for a presidential proclamation are not the Administrative Procedure Act ("APA") standards, but rather the "clear misconstruction of law" standard, which counsels the opposite outcome here.

This Court found that 19 U.S.C. § 1318(a)'s reference to "other supplies" cannot encompass CSPV products in light of the "'elephants in mouseholes' canon as well as *noscitur a sociis* and *ejusdem generis*."  Slip Op. 25-111 at 20.  The issue of statutory interpretation is decisive in this Court's analysis.  That is, this Court's order of vacatur of the Final Rule, the collection of AD/CVD duties, and the reliquidation of assessed entries is entirely predicated on its finding that the Commerce Department's interpretation of Section 1318(a) was faulty.  But it was Proclamation 10414 that deemed solar modules to be "other supplies" meant for emergency relief, and neither this Court nor Plaintiffs have fully addressed the legality of that determination.

Specifically, Proclamation 10414 states that "the authority under section 1318(a) of title 19, United States Code, is invoked and made available, according to its terms, to the Secretary." 87 Fed. Reg. at 35,068.  Proclamation 10414 further mandates that the Commerce Department:

> {S}hall consider taking appropriate action under section 1318(a) of title 19, United States Code, to permit, until 24 months after the date of this proclamation or until the emergency declared herein has terminated . . . under such regulations and under such conditions as the Secretary may prescribe, the importation, free of the collection of duties and estimated duties . . . of certain solar cells and modules, exported from the Kingdom of Cambodia, Malaysia, the Kingdom of Thailand, and the Socialist Republic of Vietnam, and that are not already subject to an antidumping or countervailing duty order as of the date of this proclamation . . .

*Id.*

Section 1318(a), in turn, allows the President to authorize "the importation free of duty of food, clothing, and medical, surgical, and other supplies for use in emergency relief work." By invoking this statutory provision, the President was (a) defining solar modules to constitute "other supplies" for emergency relief, and (b) directing the Commerce Department to allow their entry free of AD/CVD duties for the purpose of addressing a specific emergency. The agency made subsequent determinations to implement the Proclamation, but this Court's opinion finds that the classification of solar modules as "other supplies" described by Section 1318(a)— a decision made by the President—determines all other issues. For instance, the Commerce Department devised a utilization requirement and clarified treatment for entries made before June 6, 2022, but this Court deemed these questions entirely mooted by its statutory interpretation analysis. Slip Op. 25-111 at 25, 26. The statutory interpretation examined and found deficient by this Court came from Presidential Proclamation 10414, and that Proclamation remains unchallenged and effective.

The Federal Circuit likely will also note that this Court's examination of the history of Section 1318(a) demonstrates that interpretation of the statutory terms "food, clothing, and medical, surgical, and other supplies for use in emergency relief work" comes from presidential proclamations, not subsequent rulemaking from executive agencies. This Court explains: "§ 1318(a) has been invoked six prior times, all between 1930 and 1946." *Id.* at 22. In previous

33

applications that defined a specific merchandise for relief, it was the President who determined whether the identified tool constituted "food, clothing, and medical, surgical, and other supplies for use in emergency relief work." This Court cites presidential proclamations, not agency rulemaking, in considering historical applications of the statute. For example, President Roosevelt—not the Secretary—determined "feed" and "forage" for livestock to be "food," as described by Section 1318(a). *Id*. at 22. Similarly, here, it was Proclamation 10414 that classified "Solar Cells and Modules from Southeast Asia," 87 Fed. Reg. at 35,067, to constitute "other supplies" meant to address an emergency.

Additionally, because the President (rather than Commerce) directed this statutory interpretation, a different standard of review governs. As the CIT has recently explained, for presidential determinations in the sphere of international trade, the court should only intervene if there has been a clear misconstruction of the governing law. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1382 (Ct. Int'l Trade 2025) ("Rather, the Trafficking Orders' "clear misconstruction" of § 1701's 'deal with' condition renders them 'action{s} outside delegated authority.'") (citing *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985); *aff'd V.O.S. Selections, Inc. v. Trump*, No. 25-1812 at 37 (Fed. Cir. Aug. 29, 2025) (per curiam). The APA is not an appropriate basis for judicial review of presidential action, and a plaintiff may not elide its burden in such cases through creative pleading challenging the agency action rather than the predicate proclamation. To show that a presidential proclamation is unlawful, consistent with courts' traditionally broad interpretation of presidential authority in the realm of foreign affairs, plaintiffs must demonstrate a clear misconstruction of the law. *Solar Energy Industries. Ass'n v. United States*, 86 F.4th 885, 896 (Fed. Cir. 2023), *adhered to on reh'g*, 111 F.4th 1349 (Fed. Cir. 2024) (considering a challenge to presidential proclamation and applying a "clear misconstruction"

standard of review); *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018) ("{T}here are limited circumstances when a presidential action may be set aside if the President acts beyond his statutory authority, but such relief is only rarely available."); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985) ("In international trade controversies of this highly discretionary kind—involving the President and foreign affairs—this court and its predecessors have often reiterated the very limited role of reviewing courts.").

On appeal, the Federal Circuit, observing its precedent, is likely to consider whether the President's classification of solar modules as a category of merchandise described by section 1318(a) was a clear misconstruction of the law. This Court's judgment relies on a standard of review applicable to ***agency*** rather than presidential determinations. Slip Op. 25-111 at 10 ("In agency cases, courts will analyze the meaning of statutes using 'the traditional tools of statutory construction.'") (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024); *see id.* at 12 (discussing whether Commerce's recognition of solar modules as "other supplies" for emergency relief is the "best reading of the statute"). Accordingly, Defendant-Intervenors likely will prevail on appeal following application of the correct standard of review, a clear misconstruction of the statute, relevant for presidential actions.

### C. This Court's August 22 Decision Relies on an Incorrect Interpretation of Section 1318

As authority for his emergency proclamation, the President invoked 19 U.S.C. § 1318, *see* 87 Fed. Reg. at 35,068, which permits the President to waive in emergency duties on "food, clothing, and medical, surgical, and other supplies for use in emergency relief work." The phrase "other supplies" is, "on its face, a very broad one that appears to encompass" solar modules. Slip Op. 25-111 at 14. Even so, this Court determined that the emergency proclamation fell outside Section 1318's scope. *See id.* at 16. In part because of its concern that Congress would not have

intended a broad reading, *see id.* at 19, this Court held that "'other supplies' is most naturally read to encompass items for use in healthcare-related applications," such as "pharmaceuticals, physical therapy equipment, nursing supplies or hospital beds," not solar modules. *Id.* at 18.

This Court's construction is wrong, and there is a significant likelihood that it will be reversed on appeal. This Court neglected to apply the constitutionally grounded canon that "congressional authorizations of presidential power" in the area of international trade "should be given a broad construction and not hemmed in or cabined" because they implicate "the President's constitutional power to oversee the political side of foreign affairs." *Am. Ass'n of Exporters & Importers-Textile & Apparel Gp. v. United States*, 751 F.2d 1239, 1248 (Fed. Cir. 1985). As such, the best reading of Section 1318 is the obvious one: "other supplies" is a broad phrase that encompasses any items necessary "for use in emergency relief work," and there is no reason to cabin that phrase to the medical context.

A broad interpretation also makes better sense of statutory context than this Court's cramped reading. Section 1318 enables the Executive Branch to deal with emergencies of all sorts. *See* Section 1318(a) ("*Whenever* the President shall by proclamation declare an emergency to exist by reason of a state of war, *or otherwise*…") (emphases added); § 1318(b)(1) (enabling actions by the Secretary of the Treasury "*when necessary* to respond to a national emergency declared under the National Emergencies Act or *to a specific threat to human life or national interests*" (citation omitted) (emphases added)); § 1318(b)(2) ("the Commissioner of U.S. Customs and Border Protection, *when necessary* to respond to a specific threat to human life *or national interests*…") (emphases added). Food, clothing, and medical supplies are critical to responding to many emergencies, but they are not the sum total of necessary supplies. Depending on the circumstances, Americans may also be in need of housing, transportation, or electricity, among other things, and

statutory history confirms Congress intended § 1318 to enable the duty-free importation of these supplies too. *See* H.R. 2667, H.R. Doc. No. 15 at 334 (May 9, 1929); Proclamation No. 2708, 11 Fed Reg. 12,695 (E.O.P. Oct. 29, 1946).

These features make § 1318 quite unlike the statute at issue in *Yates v. United States*, 574 U.S. 528 (2015). *Contra* Slip Op. 25-111 at 17. Whereas all signs point to a broad reading of "other supplies" here, text, context, and statutory history cut against a broad reading of the statute at issue in that case. The provision of Sarbanes-Oxley at issue in *Yates* created a "felony punishable by up to 20 years in prison." 574 U.S. at 547. A broad reading would have looked unlike anything else in the Code, and it would have run afoul of the principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* at 548. Further, it would have rendered superfluous an entire other crime "passed in proximity as part of the same Act." *Id.* at 543. A broad reading of § 1318 creates no similar surplusage problem. And though this Court expressed concern that a broad reading could "potentially" nullify "the entirety of Congress' lengthy and intricate tariff scheme," Slip Op. 25-111 at 19, this concern is overstated. Any suspension of duties must be tied to a declared emergency ("for use in emergency relief work"), and emergencies are generally limited in scope, duration, and need. No President has ever used § 1318 to nullify the tariff scheme, and it is unlikely any could. Thus, Defendant-Intervenors are also likely to prevail on appeal with respect to this Court's flawed statutory construction of § 1318.

### D. The Broad Retroactive Relief That this Court Ordered Is Unlawful

Finally, the Federal Circuit will likely recognize that the relief ordered by this Court with respect to entries made dating back many years, since 2022, is overly broad and unlawful. This Court has ordered the collection of duties on entries made in good faith reliance on the President's and Commerce's word that they would not be subject to duty requirements because they played an

important role in combatting a national emergency. The utilization requirement, which required swift installation of solar modules, solidified importers' expectation that these entries would be assessed free of duties. In fact, as consideration for being able to benefit from the Final Rule, importers had to expend substantial resources (*e.g.*, incurring attorney and accountant time and fees) and work diligently to ensure that their modules timely contributed to the U.S. energy grid. These Government assurances created an expectation of finality with respect to the disposition of these entries. This reliance interest on Government promises "plainly outweighs the interests" advanced by Plaintiffs. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008). This Court failed to address adequately this and other interests in its analysis of remedy, rendering the broad and retroactive relief ordered unlawful.

Moreover, on appeal, the Federal Circuit will also likely find that this Court lacks the authority to order the reliquidation of liquidated entries that entered duty-free pursuant to the Final Rule. The Opinion acknowledges "importers' interests in the finality of liquidation" but nonetheless orders reliquidation for entries that have already liquidated duty-free pursuant to Proclamation 10414 and the Final Rule. Slip Op. 25-111 at 34. At the hearing, counsel explained that some percentage of entries had liquidated, *see* recording at 1:56:30, and this Court has now ordered reliquidation with respect to these entries. This reliquidation is not lawful.

The governing statute, 19 U.S.C. § 1514, makes liquidation final and conclusive on all parties, including the United States, absent a valid and timely-filed protest. This finality of liquidation ensures certainty for importers: once liquidation occurs, the duty amounts owed are finalized and only subject to certain time-sensitive exceptions enumerated by Congress, *e.g.*, a civil action is brought before the CIT pursuant to 19 U.S.C. § 1516a. Liquidation thus is ultimately a mechanism to ensure certainty and finality and to foreclose the possibility that the Government

or another party will attempt to re-open entries and create importer liability years after those entries were made. The Federal Circuit has emphasized in the context of reliquidation: "Congress has carefully crafted a statutory scheme that specifically articulates grounds for finality and certain exceptions to finality." *Target Corp. v. United States*, 134 F.4th 1307, 1315 (Fed. Cir. 2025) (referencing *Arizona v. California*, 460 U.S. 605, 626 (1983), *decision supplemented*, 466 U.S. 144 (1984) ("Finality principles would become meaningless if an adversarially-determined issue were final only if the equities were against revising it.")). Here, this Court has acknowledged the importers' finality interests but not identified a lawful avenue for disturbing them. On appeal, the Federal Circuit will likely find this broad retroactive relief to be unlawful.

## CONCLUSION

For these reasons, we respectfully request that this Court stay enforcement of its judgment, as amended, pending appeal.

Dated: September 18, 2025

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4046
mnicely@akingump.com

*Counsel to NextEra Energy, Inc. and Solar Energy Industries Association*

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks
Lindsay K. Brown
**HOGAN LOVELLS US LLP**
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar (USA) Inc. and Canadian Solar International Limited*

/s/ Craig A. Lewis
Craig A. Lewis
Nicholas W. Laneville
Gregory M.A. Hawkins
**HOGAN LOVELLS US LLP**
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-8613
craig.lewis@hoganlovells.com

*Counsel to BYD (H.K.) Co., Ltd. and BYD America LLC*

/s/ Jonathan M. Freed
Jonathan M. Freed
Kenneth N. Hammer
MacKensie R. Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Ave, SE
Washington, DC 20003
(202) 223-3760
jfreed@tradepacificlaw.com

*Counsel for Trina Solar (U.S.), Inc., Trina Solar Science & Technology (Thailand) Ltd., Trina Solar Energy Development Company Limited, and Trina Solar (Vietnam) Science & Technology Co., Ltd.*

40

/s/ John B. Brew\_\_\_\_
John B. Brew
Robert L. LaFrankie
Amanda S. Berman
Alexander H. Schaefer
Weronika Bukowski
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2720
jbrew@crowell.com

*Counsel to Invenergy Renewables LLC and Invenergy Solar Equipment Management LLC*

/s/ David M. Morrell\_\_\_\_
David M. Morrell
**JONES DAY**
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3652
dmorell@jonesday.com

*Counsel to Boviet Solar Technology Co., Ltd. and Boviet Solar USA, Ltd.*

/s/ Jeffrey S. Grimson\_\_\_\_
Jeffrey S. Grimson
Kristin H. Mowry
Bryan P. Cenko
**MOWRY & GRIMSON, PLLC**
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
(202) 688-3610
trade@mowrygrimson.com

*Counsel to JA Solar USA, Inc., JA Solar Vietnam Company Limited, JA Solar Malaysia Sdn. Bhd., JA Solar International Limited, and the American Clean Power Association*

/s/ Gregory S. Menegaz\_\_\_\_
Gregory S. Menegaz
Alexandra H. Salzman
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
1156 Fifteenth Street, N.W., Suite 1101
Washington, D.C. 20005
(202) 868-0300
gmenegaz@igtlaw.com

*Counsel to Risen Solar Technology Sdn. Bhd. and Co-Counsel to Boviet Solar Technology Co., Ltd. and Boviet Solar USA, Ltd.*

/s/ Ned H. Marshak_____

Ned H. Marshak*
Jordan C. Kahn
**GRUNFELD DESIDERIO LEBOWITZ**
**SILVERMAN & KLESTADT LLP**
*599 Lexington Avenue FL 36
New York, NY 10022-7648
(212) 557-4000
-and-
1201 New York Avenue NW Ste 650
Washington, DC 20005-3917
(202) 783-6881
nmarshak@gdlsk.com

*Counsel to Jinko Solar (U.S.) Industries Inc.,
JinkoSolar (U.S.) Inc., Jinko Solar Technology Sdn.
Bhd., Jinko Solar (Malaysia) Sdn. Bhd., JinkoSolar
(Vietnam) Co., Ltd., JinkoSolar Holding Co., Ltd.,
Jinkosolar Middle East DMCC, JINKOSOLAR
INVESTMENT LIMITED (f/k/a/ Jinkosolar
Technology Limited), and Jinkosolar (Vietnam)
Industries*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 12,439 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Jonathan T. Stoel
Jonathan T. Stoel

Dated: September 18, 2025